## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

| | | |
|---|---|---|
| MIRIAM EDWARDS, Individually and On Behalf of All Others Similarly Situated,<br><br>Plaintiff,<br><br>v.<br><br>MCDERMOTT INTERNATIONAL, INC., DAVID DICKSON, STUART SPENCE,<br><br>Defendants | : : : : : : : : : : : : | **Case No. 4:18-cv-4330-GCH (Consolidated)**<br><br>**CLASS ACTION** |
| JOHN ARDEN AHNEFELDT, ROBERT BROWER, JR. ROBERT BROWER, SR., KHANH L. BUI, JIGNESH CHANDARANA, KRUITIKA CHANDARANA, AMIRA YOUSUF CHOWDHURY, CHRISTOPHER COLIGADO, DANIAL GAD, EDWIN HOWELL, SIOE LIE HOWELL, DARREN HUNTING, ANNE INGLEDEW, SHITAL MEHTA, THOMAS CARL RABIN, ADAM SHULTZ, AMIT SOMANI, JAYAPRAKASH SRINIVASAN, AARTHI SRINIVASAN, CHRISTOPHER SWEDLOW, and ALEXANDRE TAZI, on Behalf of Themselves and All Others Similarly Situated,<br><br>Plaintiffs,<br><br>v.<br><br>DAVID DICKSON, STUART A. SPENCE, and CHRISTOPHER A. KRUMMEL,<br><br>Defendants | : : : : : : : : : : : : : : : : : : : : : : : | **Case No. 4:20-cv-02539-ASH**<br><br>**CLASS ACTION** |

## MEMORANDUM OF LAW IN SUPPORT OF THE
## MOTION BY §10(B) LEAD PLAINTIFF
## NOVA SCOTIA HEALTH EMPLOYEES' PENSION PLAN
## TO CONSOLIDATE CASES AND
## <u>TO VACATE ADDITIONAL NOTICE AND LEAD PLAINTIFF DEADLINE</u>

## TABLE OF CONTENTS

I.      Introduction ..................................................................................................... 1

II.     Relevant Procedural and Factual Background ......................................... 6

III.    The Related *Ahnefeldt* Action Should Be Consolidated with This Action ........... 10

IV.     Having Already Appointed Lead Plaintiffs, the Court Should Vacate the
        Duplicative PSLRA Deadline Published in the Related Action and Require
        Publication of a Corrected Notice ........................................................ 16

V.      Conclusion ..................................................................................................... 22

# <u>TABLE OF AUTHORITIES</u>

<u>Page(s)</u>

<u>Cases</u>

*Arnold v. E. Air Lines, Inc.*,
   681 F.2d 186 (4th Cir. 1982) ............................................................................ 11, 12

*Cal. Pub. Emps.' Ret. Sys. v. Chubb Corp.*,
   127 F. Supp. 2d 572 (D.N.J. 2001) ............................................................................ 21

*China Agritech, Inc. v. Resh*,
   __ U.S. __, 138 S. Ct. 1800 (2018) ............................................................ 14, 15, 19

*Dube v. Signet Jewelers Ltd.*, No. 16-CV-6728(JMF),
   2017 WL 1379385 (S.D.N.Y. Apr. 14, 2017) ............................................................ 18

*Greenberg v. Bear Stearns & Co.*,
   80 F. Supp. 2d 65 (E.D.N.Y. 2000) ............................................................................ 17

*Hom v. Vale, S.A.*, No. 1:15-cv-9539-GHW,
   2016 WL 880201 (S.D.N.Y. Mar. 7, 2016) ............................................................... 17

*Horowitz v. SunEdison, Inc.*, No. 4:15CV1769 RWS,
   2016 WL 1161600 (E.D. Mo. Mar. 24, 2016) ............................................................ 17

*In re Air Crash Disaster at Fla. Everglades on Dec. 29, 1972*,
   549 F.2d 1006 (5th Cir. 1977) ................................................................................... 10

*In re Bank of Am. Corp. Sec., Derivative & ERISA Litig.*, No. 09 MDL 2058(DC),
   2010 WL 1438980 (S.D.N.Y. Apr. 9, 2010) ................................................... 13, 15, 19

*In re CenturyLink Sales Practices & Sec. Litig.*, No. 17-2795,
   2018 WL 1902725 (D. Minn. Apr. 20, 2018) ................................................. 13, 18, 19

*In re Facebook, Inc., IPO Sec. & Derivative Litig.*, No. MDL 12-2389,
   2013 WL 4399215 (S.D.N.Y. Aug. 13, 2013) ...................................................... 13, 15

*In re Houston Am. Energy Corp. Sec. Litig.*,
   970 F. Supp. 2d 613 (S.D. Tex. 2013),
   *rev'd on other grounds*, 758 F.3d 676 (5th Cir. 2014) .............................................. 17

*In re Royal Ahold N.V. Sec. & ERISA Litig.*,
   219 F.R.D. 343 (D. Md. 2003) ................................................................................... 11

*In re Telxon Corp. Sec. Litig.*,
  67 F. Supp. 2d 803 (N.D. Ohio 1999) .......................................................................... 18

*In re Thornburg Mortg., Inc., Sec. Litig.*,
  629 F. Supp. 2d 1233 (D.N.M. 2009) .......................................................................... 17

*Kipling v. Flex Ltd.*, No. 118-CV-02706-LHK,
  2019 WL 1472358 (N.D. Cal. Apr. 3, 2019) ................................................................ 17

*Okla. Law Enf't Ret. Sys. v. Adeptus Health Inc.*, No. 4:17-CV-00449,
  2017 WL 3780164 (E.D. Tex. Aug. 31, 2017) .................................... 14, 15, 17, 18, 19

*Sudunagunta v. NantKwest, Inc.*, No. 16-01947-MWF-JEM,
  2017 WL 8811608 (C.D. Cal. Feb. 6, 2017) ................................................................. 17

*Thomas v. Magnachip Semiconductor Corp.*, No. 14-cv-01160-JST,
  2015 WL 3749784 (N.D. Cal. June 15, 2015) .............................................................. 17

*Vanleeuwen v. Keyuan Petrochemicals, Inc.*, No. CV 11-9495 PSG (JCG),
  2013 WL 2247394 (C.D. Cal. May 9, 2013) ................................................................. 18

## Statutes

15 U.S.C. §78u-4(a)(3)(A)(ii) ............................................................................................ 16

Private Securities Litigation Reform Act of 1995 ....................................................... *passim*

Securities Exchange Act of 1934 §10(b) ..................................................................... *passim*

Securities Exchange Act of 1934 §20(a) ........................................................................ 3, 4

## Rules

Fed. R. Civ. P. 12(b)(6) ...................................................................................................... 3

Fed. R. Civ. P. 23 ........................................................................................................... 6, 21

Fed. R. Civ. P. 42 ..................................................................................................... 6, 10, 11

L.R. 5.2 ........................................................................................................................... 4, 10

L.R. 7.6 ................................................................................................................................ 6

Securities and Exchange Commission Rule 10b-5 ....................................................... 4, 11

## I.   Introduction

This consolidated litigation –  filed in November 2018 – has proceeded under the guidance and oversight of the Nova Scotia Health Employees' Pension Plan ("§10(b) Lead Plaintiff") and the Public Employees' Retirement System of Mississippi ("14(a) Lead Plaintiff") since June 4, 2019, when the Court appointed these sophisticated institutional investors, pursuant to the Private Securities Litigation Reform Act of 1995 ("PSLRA"), to oversee as lead plaintiffs "***all***" class-wide claims on behalf of investors in McDermott International, Inc. ("McDermott") arising under  Securities Exchange Act of 1934 §§10(b) and 14(a), respectively.  *See* Dkt. No. 84 at 2.  They are now vested with the ***sole discretion and authority*** to decide whether, when, and to what extent to prosecute such claims on behalf of McDermott investors regarding the facts and circumstances at issue.

Once appointed, the §10(b) Lead Plaintiff has diligently overseen the Exchange Act §10(b) claims at issue, coordinating and collaborating with the §14(a) Lead Plaintiff to investigate the facts, zealously safeguard the rights of McDermott investors in its bankruptcy proceeding, and advance this consolidated action nearly through dispositive motion briefing, despite the effects of a global pandemic.  The §10(b) Lead Plaintiff filed the operative §10(b) amended complaint (Dkt. No. 105) – a detailed, 262-page filing based on internal company documents and statements from 24 confidential witnesses – on October 4, 2019, as bankruptcy rumors fueled the latest steps of McDermott's 92.5% market capitalization evisceration to that point.  That complaint alleged an ***entire thread of fraud*** – the "Technology Business Fraud" – arising from Defendants' public statements and omissions

regarding McDermott's purchase, ownership, and potential sale of the Lummus technology business segment, which McDermott acquired from Chicago Bridge & Iron Company, N.V. ("CB&I") in their Merger on May 10, 2018.  It alleged another ***entire thread of fraud*** – the Capital Structure / Liquidity Fraud – arising from Defendants' public statements and omissions regarding McDermott's post-Merger ability to maintain a stable capital structure and sufficient liquidity.  It also alleged factual developments and partial corrective disclosures through September 27, 2019, a week before the Court's extended deadline for an amended pleading due in early October 2019.

Under this Court's then-operative schedule (Dkt. No. 111), Defendants were due to move to dismiss by January 21, 2020.  Instead, they filed a Suggestion of Bankruptcy on January 22, 2020 (Dkt. No. 120) and, on January 30, 2020, moved to dismiss both the §10(b) complaint (Dkt. No. 125) and the §14(a) complaint (Dkt. No. 124).  Faced with the company's bankruptcy and heightened demands on available insurance policies, the §10(b) Lead Plaintiff exercised its discretion and chose to oppose Defendants' motion, which it did via a 75-page opposition brief filed June 19, 2020 (Dkt. No. 145), rather than further amend at that juncture and risk resetting the clock for dispositive motion practice.  Its opposition brief, *inter alia*, set forth ***extensive*** factual developments since its operative complaint was filed in early October 2019 – including the resignation of Defendant Spence, launching of an SEC investigation, empaneling of a Federal Grand Jury, and filing of McDermott's bankruptcy – and ***expressly sought leave to amend*** to allege them in the future.  *Id.* at 34-35. The §14(a) Lead Plaintiff also opposed (Dkt. No. 143), and Defendants' reply briefs are due

by August 5, 2020. *See* Dkt. No. 144. This Court indicated during the June 2020 video conference that a decision resolving Defendants' motions should issue by October 2020.

The §10(b) Lead Plaintiff also worked with the §14(a) Lead Plaintiff, through collaborative effort by the §10(b) and §14(a) Lead Counsel and additional bankruptcy counsel, to file a comprehensive class-wide reservation of rights in McDermott's bankruptcy proceeding and to negotiate important protective language within the bankruptcy court's Confirmation Order, entered March 12, 2020, which expressly exempted "any claims and causes of action now or hereafter asserted…in the consolidated securities class action captioned as *Edwards v. McDermott International, Inc., et al.*, Case No. 4:18-cv-4330 (S.D. Tex.)" from the extensive releases implemented via McDermott's bankruptcy proceeding or any adverse impacts therefrom. *See In re McDermott, Int'l, Inc.*, Case No. 20-30336 (Bankr. S.D. Tex.), Dkt. Nos. 559 and 665 ¶73. Thus, the §10(b) Lead Counsel not only exempted the Exchange Act §10(b), SEC Rule 10b-5, and Exchange Act §20(a) claims it is overseeing *as pled* in the current operative complaint, it also protected such claims as they may be *expanded or evolved* through further, future amendment ***in this action***.

Through these steps, the §10(b) Lead Plaintiff – a sophisticated institutional investor with billions of dollars of assets under management and years of experience overseeing complex securities litigation, has adeptly, diligently, and zealously advanced the Exchange Act §10(b) claims at issue, on behalf of McDermott's investors, pursuant to its sole discretion and oversight authority under the PSLRA as the Court-appointed lead plaintiff, while protecting investors from the adverse impacts of McDermott's bankruptcy. The §10(b) Lead Plaintiff's operative complaint encompasses the first 92.5% of McDermott's pre-bankruptcy market capitalization decline and, as the Court noted in the June 2020 video status conference, Defendants' Fed. R. Civ. P. 12(b)(6) motion may be resolved by early fall

2020. At that time, as Court-appointed PSLRA lead plaintiff, the §10(b) Lead Plaintiff can exercise its *sole discretion and authority* to decide whether, when, and how to seek recovery under Exchange Act §10(b) for the final 7.5% of the decline – whether by further amendment or otherwise – that occurred after the operative §10(b) complaint was filed.

While other McDermott investors may file *individual* claims now, should they so desire, the PSLRA *prohibits* them from seeking to contravene or otherwise side-step the §10(b) Lead Plaintiff's Court-ordered, statutory role by filing tag-along *class actions* and trying to carve off a piece of the Exchange Act §10(b) claims for themselves and their counsel to oversee on a *class-wide* basis. Yet, a collection of individual investors has attempted *exactly* that, by recently filing *Ahnefeldt, et al. v. Dickson, et al.*, No. 4:20-cv-02539 (S.D. Tex.), an action assigned to Judge Hanen after it was improperly not tagged as related to this action pursuant to L.R. 5.2. The 47-page *Ahnefeldt* complaint (No. 4:20-cv-02539, Dkt. No. 1) *unquestionably* overlaps with the operative §10(b) complaint here. Both allege violations of Exchange Act §10(b), SEC Rule 10b-5 promulgated thereunder, and Exchange Act §20(a) – the very class-wide claims that §10(b) Lead Plaintiff is exclusively overseeing as Court-appointed PSLRA lead plaintiff – on behalf of McDermott's common stock investors. Both name common Defendants (Dickson and Spence), implicating the same insurance policies. Both concern a common nucleus of operative facts, including, *inter alia*, public statements or omissions regarding McDermott's Lummus technology business segment acquired from CB&I in the May 2018 Merger, the financial motives for company leadership to mislead McDermott investors, the artificial inflation of McDermott's stock price due to false or misleading statements or omissions, and the detrimental effects of McDermott's financial distress and bankruptcy on its stock price and investors.

Consequently, the §10(b) Lead Plaintiff is simultaneously filing a Notice of Related Case (Exhibit 1 hereto) in *Ahnefeldt*, seeking to have it transferred to this Court for oversight.

The *Ahnefeldt* plaintiffs have violated the PSLRA by improperly initiating a tag-along class action, by publishing an improper and misleading PSLRA notice that wrongly invites investors to file a second round of belated lead plaintiff motions by September 16, 2020, and by seeking to launch an unlawful, duplicative lead plaintiff process, barred by the PSLRA's express terms, so as to try and get themselves redundantly appointed as lead plaintiffs to oversee the back-end sliver of the class-wide claims at issue here. Boiled down, they seek to substitute their 11th hour judgment for that of the §10(b) Lead Plaintiff, a sophisticated institutional investor with billions in assets and extensive securities litigation experience, and Court-appointed §10(b) Lead Counsel, one of the nation's leading securities litigation firms, to extend the Exchange Act §10(b) claims at issue to the final 7.5% decline in McDermott's market capitalization ***now***, via a duplicative lawsuit and a threadbare 47-page complaint that risks conflicting rulings and adjudications, when the §10(b) Lead Plaintiff is on the cusp of securing a ruling on the sufficiency of its operative, 262-page §10(b) complaint, which, if upheld in whole or in part, will advance this litigation as a whole into discovery due to the lifting of the PSLRA-imposed automatic discovery stay. This course of action is barred by statute and precedent and would be highly prejudicial both to the §10(b) Lead Plaintiff and the McDermott investors being represented. For instance, core elements of the Exchange Act §10(b) claims, such as Defendants' scienter, are best litigated based the more fulsome and detailed allegations set forth in the §10(b) Lead Plaintiff's operative complaint.

Even if they could lawfully initiate a second class action, which they cannot, the *Ahnefeldt* plaintiffs – an incoherent, unwieldy assemblage of nearly two dozen individual retail investors epitomizing the lawyer-driven litigation the PSLRA sought to eliminate –

are subject to myriad unique defenses, rendering them utterly unfit to represent *any* class regarding the §10(b) claims at issue.  Such defenses arise from not only the Fed. R. Civ. P. 23 adequacy and typicality problems due to their unmanageable group size – indeed, their initial filing has as many certifications (45 pages) as allegations (47 pages) – but also from their failure to comply with the PSLRA's lead plaintiff and notice provisions and their failure to preserve their rights and to secure exemptions from the extensive releases and deleterious impacts of McDermott's bankruptcy, its Bankruptcy Plan and supplements, and the bankruptcy court's orders, which collectively create extensive risks of dismissal and extinguishment of their claims if pursued outside of the *Edwards* action.

For these reasons, the §10(b) Lead Plaintiff respectfully urges the Court, pursuant to Fed. R. Civ. P. 42(a)(2) and L.R. 7.6, to promptly correct the landscape by consolidating the *Ahnefeldt* action with this action, vacating the improper notice and purported lead plaintiff deadline published in the *Ahnefeldt* action, and ordering publication of a corrective notice.

## II.    Relevant Procedural and Factual Background

The initial complaint in this litigation was filed on November 15, 2018.  *See* Dkt. No. 1.  The PSLRA's statutory deadline for motions seeking a lead plaintiff appointment was January 15, 2019.  At the deadline, *seven* motions were timely filed and were eligible to be considered under the statutory framework imposed by the PSLRA.  *See* Dkt. Nos. 10 -24. Four were by institutional investors – by the §10(b) Lead Plaintiff (Dkt. No. 22), by the §14(a) Lead Plaintiff (Dkt. No. 16), by the University of Puerto Rico Retirement System Trust Fund (Dkt. No. 20), and by the City of Pontiac General Employees' Retirement System ("Pontiac") (Dkt. No. 21).  Three were by individual investors – one by Wah Kee Ho (Dkt. No. 10), one by Donald Piliero (Dkt. No. 14), and one by Alfred Rodrigues (Dkt. No. 18).

Contested lead plaintiff briefing ensued regarding leadership and oversight of the Exchange Act §10(b) claims, with the §10(b) Lead Plaintiff and Pontiac filing oppositions (Dkt. Nos. 49-50) and reply briefs (Dkt. Nos. 62-63). The §14(a) Lead Plaintiff also pursued a lead plaintiff role over only the Exchange Act §14(a) claims, which were alleged in a separately-filed complaint (Dkt. No. 9). All other movants failed to pursue or later withdrew their motions or filed non-oppositions in deference to the motions by the §10(b) Lead Plaintiff, Pontiac, and the §14(a) Lead Plaintiff. *See* Dkt. Nos. 25, 45, 47, 65. A hearing was held on February 25, 2019. *See* Minute Entry; Dkt. No. 74. Another hearing was scheduled. *See* Dkt. No. 80. At that point, Pontiac withdrew its motion. *See* Dkt. No. 81.

On June 4, 2019, the Court entered an Order consolidating the cases into the first-filed *Edwards* action and stating, "Any substantially similar securities class actions relating to the allegations in this case before other judges in this Court may on motion be similarly consolidated with the *Edwards* action." *See* Dkt. No. 84 at 1-2. It also granted the §10(b) Lead Plaintiff's motion and appointed it pursuant to the PLSRA to serve as "lead plaintiff for **all claims** related to Section 10(b) of the Securities Exchange Act." *Id.* at 2. It likewise appointed the §14(a) Lead Plaintiff to serve as "lead plaintiff for all claims related to Section 12(a) of the Securities Exchange Act." *Id.*

Thereafter, the §10(b) Lead Plaintiff has zealously investigated, pursued, and litigated the Exchange Act §10(b) claims at issue, coordinating and working collaboratively with the §14(a) Lead Plaintiff to advance the litigation. During the investigation, the §10(b) Lead Plaintiff twice sought to extend the amended complaint deadline, originally set at August 19,

2019 (*see* Dkt. No. 85 at 2), seeking more time to investigate and process still-unfolding events related to the deteriorating financial circumstances at McDermott.  First, the §10(b) Lead Plaintiff stipulated to move the deadline to September 19, 2019, *inter alia*, so that it could further analyze McDermott's alarming Q2 2019 operating results and correlating stock declines.  *See* Dkt. No. 93.  Second, the §10(b) Lead Plaintiff filed a motion (Dkt. No. 95), which Defendants contested (Dkt. No. 96), on September 18, 2019, seeking more time to digest the massive stock declines and trading halts prompted by leaks that McDermott had hired a turnaround consultant and was considering bankruptcy.  *See* Dkt. No. 95.  The Court belatedly granted that request, pushing the deadline two more weeks.  *See* Dkt. No. 100.

The §10(b) Lead Plaintiff filed the operative §10(b) amended complaint (Dkt. No. 105) – a detailed, 262-page filing based on internal company documents and statements from 24 confidential witnesses identified during the investigation – on October 4, 2019, as rumors of McDermott's potential bankruptcy fueled the most recent steps of a 92.5% market capitalization evisceration to that point.  As part of a three-legged alleged fraud, that complaint alleged one ***entire thread of fraud*** – the Technology Business Fraud – arising from Defendants' public statements and omissions regarding McDermott's purchase, ownership, and potential sale of the Lummus technology business segment, which McDermott acquired from Chicago Bridge & Iron Company, N.V. ("CB&I") in their Merger on May 10, 2018.  *Id.*  It alleged a second ***entire thread of fraud*** – the Capital Structure / Liquidity Fraud – arising from Defendants' public statements and omissions regarding McDermott's post-Merger ability to maintain a stable capital structure and sufficient

8

liquidity.  It alleged factual developments and partial corrective disclosures related to the multiple threads of fraud through September 27, 2019, just a week before the Court's extended deadline for an amended pleading.  *Id.*

Under this Court's then-operative schedule, Defendants were due to move to dismiss by January 21, 2020.  *See* Dkt. No. 111.  Instead, they filed a Suggestion of Bankruptcy on January 22, 2020, stating that McDermott's long-rumored bankruptcy had been filed.  *See* Dkt. No. 120.  On January 30, 2020, they belatedly moved to dismiss both the §10(b) complaint (Dkt. No. 125) and the §14(a) complaint (Dkt. No. 124).

Over the ensuing months, coinciding with the outbreak of a global pandemic, the §10(b) Lead Plaintiff simultaneously worked to advance the Exchange Act §10(b) claims in two courts.  In the bankruptcy court, the §10(b) Lead Plaintiff and the §14(a) Lead Plaintiff, through the §10(b) and §14(a) Lead Counsel and bankruptcy counsel, filed a comprehensive class-wide reservation of rights and negotiated vital protective language within the bankruptcy court's Confirmation Order, which entered March 12, 2020, to expressly exempt "any claims and causes of action now or hereafter asserted…in the consolidated securities class action captioned as *Edwards v. McDermott International, Inc., et al.*, Case No. 4:18-cv-4330 (S.D. Tex.)" from the extensive releases imposed or any adverse impacts therefrom. *See In re McDermott, Int'l, Inc.*, Case No. 20-30336 (Bankr. S.D. Tex.), Dkt. Nos. 559 and 665 ¶73.  In this Court, rather than amend at that juncture and reset the dispositive motion clock, the §10(b) Lead Plaintiff filed a 75-page opposition to Defendants' motion to dismiss on June 19, 2020.  *See* Dkt. No. 145.  The opposition, *inter alia*, set forth **extensive** factual

developments that arose after the operative §10(b) complaint was filed in early October 2019 – including not only McDermott's bankruptcy filing, but also Defendant Spence's resignation, the launching of an SEC investigation, and the empaneling of a Federal Grand Jury concerning the facts and alleged misconduct at issue here – and ***expressly sought leave to amend*** to allege them later.  *Id.* at 34-35.  The §14(a) Lead Plaintiff also filed an opposition (Dkt. No. 143), and Defendants' reply briefs are due by August 5, 2020.  *See* Dkt. No. 144.  This Court indicated during the June 2020 video conference that a decision resolving Defendants' motions should be forthcoming by October 2020.

    On July 17, 2020, the related action, *Ahnefeldt, et al. v. Dickson, et al.*, No. 4:20-cv-02539 (S.D. Tex.), was filed, and, because it was wrongly not tagged as related under L.R. 5.2 despite obvious overlap with this action, it was assigned to Judge Hanen.  The §10(b) Lead Plaintiff is simultaneously filing a Notice of Related Case in the *Ahnefeldt* action (Exhibit 1 hereto), seeking to have this related action transferred to this Court for oversight.

## III.    The Related *Ahnefeldt* Action Should Be Consolidated with This Action

    Actions before the Court that involve common legal or factual questions may be consolidated to avoid unnecessary cost and delay.  *See* Fed. R. Civ. P. 42(a).  "'In this Circuit, district judges have been "urged to make good use of Rule 42(a) . . . in order to expedite the trial and eliminate unnecessary repetition and confusion."'"  *In re Air Crash Disaster at Fla. Everglades on Dec. 29, 1972*, 549 F.2d 1006, 1013 (5th Cir. 1977).  In deciding whether to consolidate, the Court must determine whether risks of prejudice and possible confusion are outweighed by

> the risk of inconsistent adjudications of common factual and legal issues, the burden on parties, witnesses and available judicial resources posed by multiple lawsuits, the length of time required to conclude multiple suits as against a single one, and the relative expense to all concerned of the single-trial, multiple-trial alternatives.

*Arnold v. E. Air Lines, Inc.*, 681 F.2d 186, 193 (4th Cir. 1982) (citing Fed. R. Civ. P. 42). "Differences in class periods, parties, or damages among the suits do not necessarily defeat consolidation, so long as the essential claims and facts alleged in each case are similar." *In re Royal Ahold N.V. Sec. & ERISA Litig.*, 219 F.R.D. 343, 348 (D. Md. 2003) (consolidating related securities cases).

Here, the related *Ahnefeldt* action involves overlapping factual questions, defendants, and time periods and asserts identical legal claims as the Court-appointed §10(b) Lead Plaintiff has asserted in the operative complaint here.  Thus, the related action should be consolidated into this *Edwards* action, as contemplated by this Court's June 4, 2019 lead plaintiff Order.  The two actions are perfectly suited for consolidation as both allege the same violations of law (§§10(b) and 20(a) of the Exchange Act and SEC Rule 10b-5) by a majority of the same Defendants (Dickson and Spence) during overlapping time periods involving functionally the same alleged wrongdoing, *i.e.*, public misstatements and omissions concerning McDermott's Lummus technology business segment and McDermott's financial distress and potential bankruptcy.  Moreover, the §10(b) Lead Plaintiff's complaint – across its 262 pages – includes substantially more alleged misstatements, detailed allegations drawn from 24 confidential witnesses and internal company documents, additional theories of liability, and more alleged corrective disclosures correlating to a

11

greater number of alleged recoverable stock drops and greater class-wide damages.  Thus, consolidation is appropriate here, as it will avoid the risk of inconsistent judgments on common legal and factual issues, lessen the burden on the parties and witnesses, conserve judicial resources, minimize duplicative drains on available insurance coverage, and expedite the resolution of the action and adjudication of the Exchange Act §10(b) claims.  *See Arnold*, 681 F.2d at 193.  Indeed, issues on which there exists a high risk of inconsistent judgments here include many of the core elements of the Exchange Act §10(b) claims that the §10(b) Lead Plaintiffs is by Order of this Court charged with overseeing – falsity of alleged misstatements, Defendants' scienter, and loss causation.  Consolidation will also enhance judicial economy by avoiding duplicative, time-consuming procedural steps – two motions to dismiss, two motions for class certification, etc. – with risks of conflicting rulings.

Moreover, the only new facts alleged in the related action's complaint that were not pled here relate to events that occurred subsequent to filing of the operative §10(b) complaint in early October 2019, including additional statements about McDermott's Lummus technology business segment, further deterioration of its financial condition during Q4 2019, and the filing of McDermott's bankruptcy in January 2020, which nevertheless are a *continuation* of the facts alleged in the operative §10(b) complaint.  Of course, *both* Defendants' public statements and omissions about the Lummus technology business segment *and* McDermott's financial distress and its potential bankruptcy are clearly an important part of the operative §10(b) complaint here.  Moreover, the §10(b) Lead Plaintiffs' motion to dismiss opposition, filed on June 19, 2020, *expressly sought leave to further*

*amend* to allege the additional, more recent factual developments, including Defendant

Spence's resignation, the launching of an SEC investigation, the empaneling of a Federal

Grand Jury, and McDermott's bankruptcy filing. *See* Dkt. No. 145 at 34-35. For these

reasons alone, consolidation is warranted. *See, e.g.*, *In re CenturyLink Sales Practices &*

*Sec. Litig.*, No. 17-2795 (MJD/KMM), 2018 WL 1902725, at *4 (D. Minn. Apr. 20, 2018)

(consolidating later-filed securities case with existing case and finding them related where, if

"the matters were not consolidated, there would be a risk of inconsistent or conflicting

rulings regarding Defendants' liability and class members' recoverable damages"); *see also*

*id.* ("Consolidation will result in substantial judicial economy and avoid the inconvenience,

expense, and prejudice from having the parties litigate two identical class actions.").

There is another reason to consolidate the related *Ahnefeldt* action with this action,

where the cases are subject to the PSLRA:

> [I]n a securities class action, a lead plaintiff is empowered to control the
> management of the litigation as a whole . . . . Permitting other plaintiffs to
> bring additional class actions now, with additional lead plaintiffs and
> additional lead counsel, would interfere with Lead Plaintiffs' ability and
> authority to manage the [action].

*In re Bank of Am. Corp. Sec., Derivative & ERISA Litig.*, No. 09 MDL 2058(DC), 2010 WL

1438980, at *2 (S.D.N.Y. Apr. 9, 2010); *CenturyLink*, 2018 WL 1902725, at *4 ("The

PSLRA intended to centralize decision-making into the hands of one lead plaintiff or

plaintiffs' group in order to avoid waste and empower investors."). Courts also recognize

that late-to-the-show "[p]laintiffs cannot displace Lead Plaintiffs from their leadership role

by laying claim to representation of a supposedly more inclusive class." *In re Facebook,*

*Inc., IPO Sec. & Derivative Litig*., No. MDL 12-2389, 2013 WL 4399215, at *6 (S.D.N.Y. Aug. 13, 2013).

To hold otherwise would serve to invite lawyer-driven litigation that the PSLRA expressly sought to avoid and would encourage the filing of "tag-along" actions each time a new fact emerges (as occurred here), interfering with a court-appointed lead plaintiff's ability to effectively manage the existing litigation in an efficient and diligent manner that is in the best interests of the putative class. Indeed, as the Supreme Court recognized in *China Agritech, Inc. v. Resh*, __ U.S. __, 138 S. Ct. 1800 (2018):

> The PSLRA, which governs this litigation, evinces a similar preference, this time embodied in legislation, for grouping class-representative filings at the outset of litigation. When the *Dean* and *Smyth* timely commenced actions were first filed, counsel put any shareholder who might wish to serve as lead plaintiff on notice of the action. Several heeded the call – six in *Dean* and eight in *Smyth*. The PSLRA, by requiring notice of the commencement of a class action, aims to draw all potential lead plaintiffs into the suit so that the district court will have the full roster of contenders before deciding which contender to appoint. With notice and the opportunity to participate in the first (and second) round of class litigation, there is little reason to allow plaintiffs who passed up those opportunities to enter the fray several years after class proceedings first commenced.

*Id.* at 1807-08; *Okla. Law Enf't Ret. Sys. v. Adeptus Health Inc*., No. 4:17-CV-00449, 2017 WL 3780164, at *3 (E.D. Tex. Aug. 31, 2017) (recognizing that "a new notice is not automatic because issuing a new notice after each new complaint or amendment could cause 'appointment of lead counsel [to] be delayed indefinitely . . . [, and s]uch result would clearly thwart the intent of the PSLRA'").

The *Ahnefeldt* plaintiffs took ***no action*** prior to July 2020, despite being investors in McDermott who were notified of the *Edwards* action in November 2018 and the opportunity

14

to seek a lead plaintiff appointment in January 2019. Instead, they sat on the sidelines as seven other investors filed motions, some of which were litigated into June 2019. As the §10(b) Lead Plaintiff pursued the claims at issue in two courts during 2019 and 2020, these investors stood idle, waiting until six months *after* McDermott declared bankruptcy and one month *after* the §10(b) Lead Plaintiff's 75-page motion to dismiss opposition sought leave to amend to allege recent factual developments including the bankruptcy, before they *finally* decided to act – by impermissibly filing a tag-along class action seeking to assert these facts themselves. Such passivity and inaction ***disqualify*** them from pursuing ***any*** class-wide relief at this late juncture. *See, e.g.*, *China Agritech*, 138 S. Ct. 1808 ("With notice and the opportunity to participate in the first (and second) round of class litigation, there is little reason to allow plaintiffs who passed up those opportunities to enter the fray several years after class proceedings first commenced."). Thus, the related *Ahnefeldt* action should be consolidated into this *Edwards* action under the control of the §10(b) Lead Plaintiff. *See Bank of Am.*, 2010 WL 1438980, at *3 (consolidating newly filed securities case with existing case, denying new lead plaintiff motions, and holding that "the plaintiffs in [the newly filed cases] are free to pursue their claims as individual cases-but not as class actions"); *Facebook*, 2013 WL 4399215, at *6 (denying motion to sever later-filed securities case from consolidated action because "[p]laintiffs remain free to pursue their claims through an individual action"); *Adeptus*, 2017 WL 3780164, at *3 (to hold otherwise "'would clearly thwart the intent of the PSLRA'").

**IV.   Having Already Appointed Lead Plaintiffs, the Court Should Vacate the Duplicative PSLRA Deadline Published in the Related Action and Require Publication of a Corrected Notice**

On June 4, 2019, this Court already appointed the §10(b) Lead Plaintiff pursuant to the PSLRA to oversee "*all claims* related to §10(b) of the Exchange Act" and its choice of counsel, Pomerantz LLP, to serve as Lead Class Counsel overseeing such claims.  *See* Dkt. No. 84.  It likewise appointed the §14(a) Lead Plaintiff to oversee "all" Exchange Act §14(a) claims, and its choice of Lead Class Counsel.  *Id.*  The Court's Order doing so is clear and unambiguous.  Yet, despite the clear relation between the related *Ahnefeldt* action and this action, its filing counsel issued a redundant press release, informing investors of a purported right to seek a duplicative appointment as lead plaintiff in that action by September 16, 2020.  *See* Exhibit 2 hereto.  Because the *Ahnefeldt* action should be consolidated with this action, where there are already Court-appointed, institutional Lead Plaintiffs represented by premiere securities litigation firms vigorously pursuing the Exchange Act claims at issue, the §10(b) Lead Plaintiff respectfully requests that the Court vacate the *Ahnefeldt* action's purported lead plaintiff deadline and require publication of a corrected notice informing investors that the cases are consolidated and no new lead plaintiff motions will be heard.

First, the PSLRA expressly states that "[i]f more than one action on behalf of a class asserting substantially the same claim or claims arising under this chapter is filed, only the plaintiff . . . in the first filed action shall be required to cause notice to be published."  15 U.S.C. §78u-4(a)(3)(A)(ii).  The claims in both these lawsuits – Exchange Act §10(b) violations arising from public statements and omissions regarding McDermott's Lummus

16

technology business segment and its financial health – are "substantially the same." *See* §III,

*supra*.  Importantly, courts nationwide recognize that a later-filed complaint that "simply

chang[es] the class period" or includes "an additional defendant or a closely related new

claim" does not necessitate a new notice.  *See Adeptus*, 2017 WL 3780164, at *3 ("[S]imply

changing the class period does not necessitate a new notice be sent out."); *Thomas v.*

*Magnachip Semiconductor Corp*., No. 14-cv-01160-JST, 2015 WL 3749784, at *4 (N.D.

Cal. June 15, 2015) ("In general, republication is not required where a complaint expands the

class period or includes an additional defendant or a closely related new claim.").[1]  Indeed,

courts require republication of the lead plaintiff notice only in the rare case – not present here

– where a new complaint "***substantially alters*** the class's allegations." *Kipling v. Flex Ltd*.,

---

[1]    *See also Horowitz v. SunEdison, Inc.*, No. 4:15CV1769 RWS, 2016 WL 1161600, at *2 (E.D.
Mo. Mar. 24, 2016) (finding that the "PSLRA does not require republication of notice" where
original case and subsequent case assert "'substantially the same claim or claims'"); *Hom v. Vale,*
*S.A.*, No. 1:15-cv-9539-GHW, 2016 WL 880201, at *4 (S.D.N.Y. Mar. 7, 2016) (same); *In re*
*Houston Am. Energy Corp. Sec. Litig*., 970 F. Supp. 2d 613, 646 (S.D. Tex. 2013) (finding that "cost
of republication would outweigh any marginal gains from notifying class members of the extension
of the Class Period"), *rev'd on other grounds*, 758 F.3d 676 (5th Cir. 2014); *In re Thornburg Mortg.,*
*Inc., Sec. Litig*., 629 F. Supp. 2d 1233, 1241-42 (D.N.M. 2009) (republication not required where
"[t]he new claims are closely related to the initial claims expressly covered in the notice, and
requiring further notice for the amendments here would serve only to delay the progress of this case
and would contravene the PSLRA notice provisions' goal of securing lead plaintiffs 'as soon as
practicable'"); *Greenberg v. Bear Stearns & Co.*, 80 F. Supp. 2d 65, 69 (E.D.N.Y. 2000) ("[N]either
case law nor the provisions of the PSLRA require a second notice to be published when the
complaint was amended to add the . . . additional defendant."); *Sudunagunta v. NantKwest, Inc.*, No.
16-01947-MWF-JEM, 2017 WL 8811608, at *4 (C.D. Cal. Feb. 6, 2017) (finding no republication
of notice required even where "newly filed complaints expanded the class period (by about sixteen
months)" and "added a Securities Act claim to the previously alleged Exchange Act claims").

No. 118-CV-02706-LHK, 2019 WL 1472358, at *1 (N.D. Cal. Apr. 3, 2019).[2]  Thus, the related *Ahnefeldt* action's notice is invalid and should not have issued.

Second, "[b]ecause no new notice was required, the deadline to file a request to be Lead Plaintiff expired [on January 15, 2019], and [any new] motion is time-barred." *CenturyLink*, 2018 WL 1902725, at *5-*6 (recognizing that the "PSLRA has a strict deadline for filing lead plaintiff motions, stemming from Congress's intent 'to have lead plaintiffs appointed as soon as practicable'"); *see also Adeptus*, 2017 WL 3780164, at *3 (holding that because "all potential plaintiffs in the [newly filed expanded class period cases] had adequate notice to file a motion for appointment as lead plaintiff [when the original case was filed]," the "appropriate time to respond was sixty days from the notice being published in the [original] action, and the Adeptus Investor Group motion was late"); *In re Telxon Corp. Sec. Litig.*, 67 F. Supp. 2d 803, 818 (N.D. Ohio 1999) ("The PSLRA is unequivocal and allows for no exceptions.  All motions for lead plaintiff must be filed within sixty (60) days of the published notice for the first-filed action.").  Absent this well-established principle, every PSLRA case with a subsequent development would be usurped by follow-on class action complaints carefully designed to evade earlier complaints and lead plaintiff orders.  Here, the

---

[2]    S*ee also CenturyLink*, 2018 WL 1902725, at *5 (recognizing that courts only appoint separate lead plaintiffs when there are "vast differences between the classes the lead plaintiffs sought to represent"); *Dube v. Signet Jewelers Ltd.*, No. 16-CV-6728(JMF), 2017 WL 1379385, at *2 (S.D.N.Y. Apr. 14, 2017) (recognizing new notice and reopening of lead plaintiff process is only appropriate when subsequent complaints "'dramatically alter[] the contours of the lawsuit'"); *Vanleeuwen v. Keyuan Petrochemicals, Inc*., No. CV 11-9495 PSG (JCG), 2013 WL 2247394, at *5 (C.D. Cal. May 9, 2013) (requiring republication where amended pleadings added allegations based on "an entirely different factual scenario").

deadline for lead plaintiff motions expired on January 15, 2019.  No new motions can be considered, by statutory mandate, after that date.

Third, once a lead plaintiff is appointed, it is vested with the sole authority to prosecute all related claims – a responsibility that necessarily includes the "authority to decide what claims to assert on behalf of the class." *Bank of Am.*, 2010 WL 1438980, at *2. Permitting a related action's filing counsel to initiate a second lead plaintiff process for a putative class consisting of investors already represented by the §10(b) Lead Plaintiff here runs directly counter to the PSLRA and would lead to significant inefficiency and needless expenditure of judicial resources. *See China Agritech*, 138 S. Ct. at 1807-08; *Adeptus*, 2017 WL 3780164, at *3.  The §10(b) Lead Plaintiff here "ha[s] every incentive to pursue all of their losses – including the losses suffered in the later period of the proposed [related action] class period[] if those claims are likely to be meritorious." *See Synergy*, 2019 WL 6150713, at *5.  Consequently, "the interests of the class are fully protected and there is no need to appoint separate leadership to assert the claims that [the §10(b) Lead Plaintiff] has already been appointed to pursue." *See CenturyLink*, 2018 WL 1902725, at *5.

Finally, the circumstances of the *Ahnefeldt* action bear noting, as it appears to be the very sort of lawyer-driven litigation that the PSLRA expressly was designed to eliminate.  Its plaintiffs are an incoherent amalgam of nearly two dozen individual retail investors.  The procedural record is devoid of ***any*** action by them or their counsel to pursue the Exchange Act §10(b) claims at issue the ***entire time*** that McDermott's investors suffered a ***total wipeout*** due to the facts at issue.  They failed to file the first (or second) lawsuit that were

already consolidated here, with such litigation initiated back in November 2018.  They failed to file a timely PSLRA lead plaintiff motion in the first-filed *Edwards* action, when *seven* other investors, including three individual retail investors, did so at the statutory deadline in January 2019.  They failed to take *any* action during the contested lead plaintiff process that unfolded throughout the first half of 2019, culminating in the June 4, 2019 lead plaintiff Order that appointed the §10(b) Lead Plaintiff and the §14(a) Lead Plaintiff.  They made *no inquiry* of §10(b) Lead Counsel *at any time* – not when the §10(b) Lead Plaintiff's operative complaint was filed in October 2019, not when McDermott filed bankruptcy in January 2020, not when an SEC investigation was launched or when a Federal Grand Jury was empaneled, and not when the §10(b) Lead Plaintiff filed its 75-page opposition to Defendants' motion to dismiss expressly requesting leave to amend to allege the additional post-pleading circumstances like McDermott's bankruptcy in June 2020.  They did *nothing* to safeguard the rights of McDermott's common stock investors in its bankruptcy proceeding, during which the §10(b) Lead Plaintiff filed a reservation of rights and secured important exemptions, which expressly apply *only* to claims asserted within this consolidated *Edwards* action, from the extensive releases imposed by the bankruptcy court.

Consequently, even assuming, *arguendo*, these newly-filed plaintiffs could lawfully initiate a second, 11th hour class action, which they cannot, they are subject to myriad unique defenses rendering them utterly unfit to represent *any* class regarding the §10(b) claims at issue.  Such defenses arise from not only from their sheer numbers and the likely questionable connection (if any) among them, but also from their failure to comply with the PSLRA's lead plaintiff and notice provisions, which together render them atypical and

inadequate under Fed. R. Civ. P. 23, as well as from their failure to preserve their rights and to secure exemptions from the releases and deleterious impacts of McDermott's bankruptcy, its Bankruptcy Plan and supplements, and the bankruptcy court's orders, which collectively pose risks of dismissal and extinguishment of their claims if pursued outside of the *Edwards* action.  Significantly, these same unique defenses would apply with equal force to any investor, institutional or otherwise, who might be induced by the related *Ahnefeldt* action's published notice into filing a belated PSLRA lead plaintiff motion in September 2020.

In sum, because no new notice was required and none should have issued, the §10(b) Lead Plaintiff respectfully submits that the Court should vacate the purported September 16, 2020 lead plaintiff deadline in the related *Ahnefeldt* action and require that a corrected notice be published informing investors that the actions have been consolidated and that the deadline to file motions for lead plaintiff has already passed.  *See Aydin v. Signet Jewelers Ltd.*, No. 1:17-CV-09853, ECF No. 6 (S.D.N.Y. Jan. 7, 2018) ("As all parties agree that this action should be consolidated with 16-CV-6728 (JMF), it is hereby consolidated for all purposes.  The PSLRA notice issued by counsel is hereby vacated, and Lead Counsel in 16-CV-6728 (JMF) is authorized to issue the proposed corrective notice."); *cf. Cal. Pub. Emps.' Ret. Sys. v. Chubb Corp*., 127 F. Supp. 2d 572, 581 (D.N.J. 2001) (requiring plaintiff to redraft misleading PSLRA notice).[3]  Thereafter, the §10(b) Lead Plaintiff will continue to efficiently and zealously litigate the Exchange Act §10(b) claims at issue within the flagship *Edwards* action, per this Court's June 4, 2019 lead plaintiff Order.

---

[3]   A proposed form of press release clarifying the deadline is attached as Exhibit A to the [Proposed] Order Granting Motion By §10(B) Lead Plaintiff to Consolidate Cases and Vacate Notice and Lead Plaintiff Deadline, filed herewith.

It bears noting that, once the Court grants this relief, the *Ahnefeldt* plaintiffs, if they so choose, are free to pursue their own claims on an ***individual*** (not class-wide) basis.  Thus, they face ***literally zero*** prejudice due to this Court's granting this motion to consolidate.

## V.      Conclusion

The §10(b) Lead Plaintiff respectfully submits that the related *Ahnefeldt* action is substantially similar to the *Edwards* Action and should be consolidated.  In addition, because the §10(b) Lead Plaintiff is already serving as the Court-appointed PSLRA lead plaintiff overseeing "all claims related to §10(b) of the Exchange Act" in the *Edwards* action, the §10(b) Lead Plaintiff further respectfully submits that the notice issued to investors by the related *Ahnefeldt* action's filing counsel as to a purported right to seek appointment as a duplicative lead plaintiff therein by September 16, 2020 was improper and legally invalid and should be vacated and corrected as soon as practicable in advance of that date by a corrective notice in the form of Exhibit A to the Proposed Order submitted herewith.

Dated: July 28, 2020                  Respectfully submitted,
                                      **POMERANTZ LLP**

                                      */s/Matthew L. Tuccillo*
                                      Matthew L. Tuccillo
                                      (S.D. Tex. Federal Bar # 1467939)
                                      Jeremy A. Lieberman
                                      (S.D. Tex. Federal Bar Number 1466757)
                                      J. Alexander Hood II
                                      (S.D. Tex. Federal Bar Number 3086579)
                                      Jennifer Banner Sobers
                                      (*Admitted Pro Hac Vice*)
                                      600 Third Avenue, 20th Floor
                                      New York, NY 10016
                                      Telephone: (212) 661-1100
                                      Facsimile: (212) 661-8665

Email: jalieberman@pomlaw.com
Email: mltuccillo@pomlaw.com
Email: ahood@pomlaw.com

*Counsel for §10(b) Lead Plaintiff Nova Scotia Health Employees' Pension Plan and Lead Counsel for the §10(b) Class*

**THE BRISCOE LAW FIRM, PLLC**

*/s/Willie C. Briscoe*
Willie C. Briscoe
Texas Bar No.: 24001788
Southern District No.: 25157
1980 Park Oak Blvd.
Houston, TX  77056
Telephone: 713-752-2600
Facsimile: 832-201-9950
wbriscoe@thebriscoelawfirm.com

*Attorney-In-Charge, Counsel for §10(b) Lead Plaintiff Nova Scotia Health Employees' Pension Plan, and Liaison Counsel for the §10(b) Class*

## CERTIFICATE OF CONFERENCE

This is to certify that on July 28, 2020, the undersigned counsel, Court-appointed §10(b) Lead Counsel, contacted counsel for the plaintiffs in the Related Action to seek their consent to the relief sought by this Motion, which consent was not obtained.

*/s/ Matthew L. Tuccillo*

## **CERTIFICATE OF SERVICE**

This is to certify that on July 28, 2020, a true and correct copy of the foregoing document was filed on the Court's CM/ECF electronic filing system, and that by virtue of this filing, all attorneys of record will be served electronically with true and correct copies of this filing.

*/s/ Matthew L. Tuccillo*
Matthew L. Tuccillo