# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

| | | |
|---|---|---|
| MIRIAM EDWARDS, Individually and on Behalf of All Others Similarly Situated, | § § § | |
| Plaintiff, | § § | |
| v. | § § | Civil Action No. 4:18-cv-04330 |
| McDERMOTT INTERNATIONAL, INC., DAVID DICKSON, and STUART SPENCE, | § § § | |
| Defendants. | § § | |

## DEFENDANTS' REPLY IN SUPPORT OF THEIR MOTION TO DISMISS PLAINTIFF'S § 14(a) CLASS ACTION COMPLAINT

51542616

TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ................................................................................................ ii

INTRODUCTION .......................................................................................................... 1

ARGUMENT ............................................................................................................... 1

    I.    The CAC fails to plead a viable direct claim independent of its procedurally deficient derivative claim. .......................................................... 1

          A.    Section 14(a) claims for stockholder losses are routinely derivative. .......................................................................................... 2

          B.    Plaintiff's claimed economic harm is derivative of harm to McDermott. .......................................................................................... 4

          C.    Plaintiff's direct theory fails the PSLRA's loss-causation requirement and cannot be conflated with its derivative, economic-loss theory in an effort to state a claim. .................................................. 9

    II.    Plaintiff fails to render Defendants' vague puffing statements actionable. ............................................................................................ 12

    III.    Plaintiff cannot escape the PSLRA's safe harbor. ....................................... 15

    IV.    The CAC's opinion-laden statements are non-actionable. ............................ 19

          A.    Plaintiff cannot disregard the subjective nature of the statements. ....... 19

          B.    The CAC does not state an *Omnicare* claim. ...................................... 22

CONCLUSION .......................................................................................................... 25

CERTIFICATE OF SERVICE ...................................................................................... 27

## TABLE OF AUTHORITIES

**Page(s)**

### CASES

*7547 Corp. v. Parker & Parsley Dev. Partners, L.P.*,
38 F.3d 211 (5th Cir. 1994) ........................................................................... 3

*Adams v. Standard Knitting Mills, Inc.*,
623 F.2d 422 (6th Cir. 1980) ....................................................................... 24

*Anastasio v. Internap Network Servs. Corp.*,
2010 WL 11459838 (N.D. Ga. Sept. 15, 2010) ............................................. 6

*Barrie v. Intervoice-Brite, Inc.*,
397 F.3d 249 (5th Cir. 2005) ....................................................................... 21

*Calamore v. Juniper Networks Inc.*,
364 F. App'x 370 (9th Cir. 2010) ..................................................... 5, 10, 11

*Carlton v. Cannon*,
184 F. Supp. 3d 428 (S.D. Tex. 2016) .......................................................... 17

*City of Dearborn Heights Act 345 Police & Fire Ret. Sys. v. Align Tech., Inc.*,
856 F.3d 605 (9th Cir. 2017) ....................................................................... 22

*City of Pontiac Gen. Emps.' Ret. Sys. v. Wal-Mart Stores, Inc.*,
278 F. Supp. 3d 1128 (W.D. Ark. 2017) ........................................................ 4

*City of Roseville Emps' Ret. Sys. v. EnergySolutions, Inc.*,
814 F. Supp. 2d 395 (S.D.N.Y. 2011) .......................................................... 20

*Copeland v. Lane*,
2013 WL 1899741 (N.D. Cal. May 6, 2013) ................................................ 12

*Copeland v. Lane*,
621 F. App'x 449 (9th Cir. 2015) ................................................................. 10

*Daily Income Fund, Inc. v. Fox*,
464 U.S. 523 (1984) ....................................................................................... 2

*Dyson, Inc. v. Oreck Corp.*,
2009 WL 537074 (E.D. La. Mar. 4, 2009) ................................................... 13

*Evanston Police Pension Fund v. McKesson Corp.*,
411 F. Supp. 3d 580, 2019 WL 5587311 (N.D. Cal. Oct. 30, 2019) ............ 16

*Fait v. Regions Fin. Corp.*,
    655 F.3d 105 (2d Cir. 2011)...................................................................................... 22

*Frankfurt-Tr. Inv. Luxemburg AG v. United Techs. Corp.*,
    336 F. Supp. 3d 196 (S.D.N.Y. 2018).......................................................................... 23

*Freedman v. magicJack Vocaltec. Ltd.*,
    2018 WL 6110996 (S.D. Fla. Nov. 21, 2018)................................................................ 7

*Freedman v. magicJack Vocaltec Ltd.*,
    963 F.3d 1125 (11th Cir. 2020) ................................................................... 4, 7, 8, 12

*Gentile v. Rossette*,
    906 A.2d 91 (Del. 2006) ........................................................................................... 5

*Goldkrantz v. Griffin*,
    1999 WL 191540 (S.D.N.Y. Apr. 6, 1999)................................................................... 11

*Herskowitz v. Nutri/Sys., Inc.*,
    857 F.2d 179 (3d Cir. 1988)...................................................................................... 24

*Hubner v. Mayer*,
    2015 WL 12513581 (C.D. Cal. June 8, 2015) ............................................................. 11

*In re Advance Auto Parts, Inc., Sec. Litig.*,
    2020 WL 599543 (D. Del. Feb. 7, 2020) .................................................................... 25

*In re AOL Time Warner, Inc. Sec. & ERISA Litig.*,
    381 F. Supp. 2d 192 (S.D.N.Y. 2004)......................................................................... 11

*In re Aratana Therapeutics Inc. Sec. Litig.*,
    315 F. Supp. 3d 737 (S.D.N.Y. 2018)......................................................................... 19

*In re Azurix Corp. Sec. Litig.*,
    198 F. Supp. 2d 862 (S.D. Tex. 2002) .................................................................. 14, 15

*In re Bank of Am. Corp. Sec., Deriv., & ERISA Litig.*,
    757 F. Supp. 2d 260 (S.D.N.Y. 2010)........................................................................... 8

*In re BP p.l.c. Sec. Litig.*,
    2016 WL 3090779 (S.D. Tex. May 31, 2016) .............................................................. 21

*In re DaimlerChrysler AG Sec. Litig.*,
    294 F. Supp. 2d 616 (D. Del. 2003).......................................................................... 11

*In re Fossil, Inc.*,
  713 F. Supp. 2d 644 (N.D. Tex. 2010) .......................................................... 3

*In re Gen. Tire & Rubber Co. Sec. Litig.*,
  726 F.2d 1075 (6th Cir. 1984) ..................................................................... 9

*In re Gold Res. Corp. Sec. Litig.*,
  957 F. Supp. 2d 1284 (D. Colo. 2013).......................................................... 18

*In re J.P. Morgan Chase & Co. S'holder Litig.*,
  2005 WL 5783536 (Del. Ch. Apr. 29, 2005) ................................................ 6

*In re JPMorgan Chase & Co. Sec. Litig.*,
  2007 WL 4531794 (N.D. Ill. Dec. 18, 2007) ............................................... 11

*In re McKesson HBOC, Inc. Sec. Litig.*,
  126 F. Supp. 2d 1248 (N.D. Cal. 2000) ....................................................... 11

*In re Neustar Sec.*,
  83 F. Supp. 3d 671 (E.D. Va. 2015) ............................................................ 20

*In re RAIT Fin. Tr. Sec. Litig.*,
  2008 WL 5378164 (E.D. Pa. Dec. 22, 2008) ............................................... 15

*In re Real Estate Assocs. Ltd. P'ship Litig.*,
  223 F. Supp. 2d 1142 (C.D. Cal. 2002) ....................................................... 11

*In re SCANA, Corp. Secs. Litig.*,
  2019 WL 1427443 (D.S.C. Mar. 29, 2019) .................................................. 19

*In re TETRA Techs., Inc. Sec. Litig.*,
  2009 WL 6325540 (S.D. Tex. July 9, 2009)............................................. 16, 17

*In re Triarc Cos.*,
  791 A.2d 872 (Del. Ch. 2001)...................................................................... 3

*In re Wells Real Estate Inv. Tr., Inc. Sec. Litig.*,
  2012 WL 12888849 (N.D. Ga. Sept. 26, 2012) ........................................... 5

*In re Wells Real Estate Inv. Tr., Inc. Sec. Litig.*,
  2010 WL 11468441 (N.D. Ga. Aug. 2, 2010) .............................................. 5

*Ind. State Dist. Council of Laborers & HOD Carriers
  Pension & Welfare Fund v. Omnicare, Inc.*,
  719 F.3d 498 (6th Cir. 2013) ....................................................................... 24

*J. I. Case Co. v. Borak*,
377 U.S. 426 (1964) ......................................................................................... 3, 4

*Jaroslawicz v. M&T Bank Corp.*,
962 F.3d 701 (3d Cir. 2020) .................................................................................. 24

*Johnson v. CBD Energy Ltd.*,
2016 WL 3654657 (S.D. Tex. July 6, 2016) ........................................................... 21

*Kelly v. Elec. Arts, Inc.*,
71 F. Supp. 3d 1061 (N.D. Cal. 2014) ................................................................... 15

*Knurr v. Orbitral ATK Inc.*,
276 F. Supp. 3d 527 (E.D. Va. 2017) ............................................................... 23, 25

*Kurtzman v. Compaq Comput. Corp.*,
2002 WL 32442832 (S.D. Tex. Mar. 30, 2002) ...................................................... 13

*LaSala v. Bordier et Cie*,
519 F.3d 121 (3d Cir. 2008) ................................................................................. 6, 7

*Lormand v. US Unwired, Inc.*,
565 F.3d 228 (5th Cir. 2009) ................................................................................. 18

*Matrixx Initiatives, Inc. v. Siracusano*,
563 U.S. 27 (2011) ............................................................................................... 18

*Miller Inv. Tr. v. Morgan Stanley & Co.*,
308 F. Supp. 3d 411 (D. Mass. 2018) ................................................................... 25

*Mills v. Elec. Auto-Lite Co.*,
396 U.S. 375 (1970) ............................................................................................. 10

*Nathenson v. Zonagen Inc.*,
267 F.3d 400 (5th Cir. 2001) ................................................................................. 13

*N.Y.C. Emps.' Ret. Sys. v. Jobs*,
593 F.3d 1018 (9th Cir. 2010) ............................................................................ 9, 10

*Noble v. AAR Corp.*,
2013 WL 1324915 (N.D. Ill. Apr. 3, 2013) ............................................................ 12

*Okla. Firefighters Pension & Ret. Sys. v. Xerox Corp.*,
300 F. Supp. 3d 551 (S.D.N.Y. 2018) .................................................................... 20

*Omnicare, Inc. v. Laborers Dist. Council Constr. Indus. Pension Fund*,
    575 U.S. 175 (2015) ............................................................................... 1, 19, 23, 24, 25

*Owens v. Jastrow*,
    789 F.3d 529 (5th Cir. 2015) ...................................................................... 21

*Panella v. Tesco Corp.*,
    2019 WL 1606349 (S.D. Tex. Mar. 29, 2019)..................................... 10, 19

*Plaisance v. Schiller*,
    2019 WL 1205628 (S.D. Tex. Mar. 14, 2019).......................................... 21

*Police Ret. Sys. of St. Louis v. Granite Constr. Inc.*,
    2020 WL 2559939 (N.D. Cal. May 20, 2020) ................................ 16, 19, 20

*Raab v. Gen. Physics Corp.*,
    4 F.3d 286 (4th Cir. 1993)....................................................................... 14

*Ramirez v. Exxon Mobil Corp.*,
    334 F. Supp. 3d 832 (N.D. Tex. 2018) ................................................ 21, 25

*Resnik v. Woertz*,
    774 F. Supp. 2d 614 (D. Del. 2011).......................................................... 10

*Rosenzweig v. Azurix Corp.*,
    332 F.3d 854 (5th Cir. 2003) .......................................................... 12, 13, 14, 15

*Rougier v. Applied Optoelectronics, Inc*,
    2019 WL 6111516 (S.D. Tex. Mar. 27, 2019).......................................... 25

*Rubinstein v. Collins*,
    20 F.3d 160 (5th Cir. 1994) ..................................................................... 15

*Rudolph v. Cummins*,
    2007 WL 1189632 (S.D. Tex. Apr. 19, 2007) ................................ 4, 5, 9, 10

*Sanchez v. Centene Corp.*,
    407 F. Supp. 3d 831 (E.D. Mo. 2019)...................................................... 25

*Smith v. Robbins & Myers*,
    969 F. Supp. 2d 850 (S.D. Ohio 2013) .................................................. 9, 10

*Southland Sec. Corp. v. INSpire Ins. Sols., Inc.*,
    365 F.3d 353 (5th Cir. 2004) ............................................................. 13, 15

*Southland Sod Farms v. Stover Seed Co.*,
   108 F.3d 1134 (9th Cir. 1997) ..................................................................... 13

*Sweeney v. Harbin Elec. Inc.*,
   2011 WL 3236114 (D. Nev. July 27, 2011) .................................................. 6

*Thornton v. Bernard Techs., Inc.*,
   2009 WL 426179 (Del. Ch. Feb. 20, 2009) ........................................... 11, 12

*Tooley v. Donaldson, Lufkin & Jenrette, Inc.*,
   845 A.2d 1031 (Del. 2004) ............................................................... 5, 8, 10

*Va. Bankshares, Inc. v. Sandberg*,
   501 U.S. 1083 (1991) .................................................................................... 9

*Weiner v. Tivity Health, Inc.*,
   365 F. Supp. 3d 900 (M.D. Tenn. 2019) ..................................................... 17

*Yamamoto v. Omiya*,
   564 F.2d 1326 (9th Cir. 1977) ...................................................................... 8

*Zwick Partners, L.P. v. Quorum Health Corp.*,
   2018 WL 2933406 (M.D. Tenn. Apr. 19, 2018) .......................................... 25

**STATUTES**

15 U.S.C. § 78u-5(c)(1) (2018) ............................................................................. 15

## INTRODUCTION[1]

Plaintiff's response does not salvage the CAC's baseline deficiencies. It fails to rebut on-point authority treating as non-puffery the aspirational Challenged Statements. It fails to negate both prongs of the PSLRA's safe-harbor for the forward-looking Challenged Statements. And it fails to identify where the CAC contains what *Omnicare* requires for the opinion-based Challenged Statements—a total lack of inquiry by Defendants, or actually-known, contrary facts.

But the Court need not even reach those liability questions, for Plaintiff has failed to articulate how its claimed economic loss—the drop in McDermott's stock price after the CB&I merger—is not *derivative* of an injury to McDermott. With Plaintiff's conceded failure to meet the procedural requirements for such a derivative claim, the Court must dismiss the CAC.

## ARGUMENT

## I.     The CAC fails to plead a viable direct claim independent of its procedurally deficient derivative claim.

In addressing the threshold, dispositive issue of whether the CAC pleads a viable direct or derivative claim, Plaintiff does not contest several fundamental points laid out in Defendants' motion to dismiss:

- Plaintiff failed to make the demand required of a derivative claim under Rule 23.1 and Panamanian law. Mot. 23–24.

- The absence of such a demand warrants dismissal if Plaintiff's claim is a derivative one. *Id.* at 24 & n.7.

- A direct § 14(a) claim must plead economic loss under the PSLRA's loss-causation

---

[1] Capitalized terms are the same as in Defendants' motion. All internal quotation marks, citations, and footnotes have been omitted from quoted material, and all emphases and alterations are from the original (unless otherwise noted).

requirement. *Id.* at 25.

- To plead a direct § 14(a) claim, Plaintiff's alleged harm must be cognizable *independent* of any harm inflicted upon McDermott. *Id.* at 25–26.

Boxed in by those truths, Plaintiff takes a winding detour. It first makes a handful of arguments suggesting that § 14(a) claims for shareholder losses can *never* qualify as derivative—despite Supreme Court authority saying precisely the opposite. Plaintiff next tries to characterize as direct its claimed stock-drop loss—something entirely derivative of harm to McDermott—all the while ignoring or drawing meaningless distinctions from the legion of cases saying otherwise. And finally, Plaintiff tries, as Defendants predicted it would, to paper over that defective derivative theory by conflating it with claimed voter-suffrage impairment—a putative direct harm, but one that indisputably flunks the PSLRA's economic-loss requirement.

The sum total is this: the CAC must be dismissed for pleading both a procedurally deficient derivative claim and a substantively deficient direct claim. That is hardly a novel resolution; it is what well-established authority requires.

## A.    Section 14(a) claims for stockholder losses are routinely derivative.

Before analyzing the particulars of the § 14(a) claim pleaded here, Defendants will address Plaintiff's two categorical arguments that would exclude all § 14(a) claims from derivative treatment. Both are miles off the mark. First up is Plaintiff's citation to *Daily Income Fund, Inc. v. Fox*, 464 U.S. 523, 529 (1984), for the principle that derivative claims involve rights "the corporation could itself have enforced in court." Opp. 25. Plaintiff feigns ignorance at how shareholders could ever seek such relief on behalf of the

corporation for "its **own** misconduct to address its stockholder's losses." *Id.* The answer is that the Supreme Court in *Borak* said not only that they can, but also that a § 14(a) claim usually will be a derivative (not direct) action because "[t]he injury which a stockholder suffers from corporate action pursuant to a deceptive proxy solicitation *ordinarily flows from the damage done the corporation*, rather than from the damage inflicted directly upon the stockholder." *J. I. Case Co. v. Borak*, 377 U.S. 426, 432 (1964) (emphasis added). Consistent with *Borak*, shareholders routinely bring derivative § 14(a) claims—*i.e.*, ones "on behalf of the [injured] corporation"—against the nominal defendant corporation and the target defendant officers and directors to enforce the corporation's rights and recover losses suffered as a result of harm inflicted on the corporation. *E.g.*, *In re Fossil, Inc.*, 713 F. Supp. 2d 644, 649 n.3, 655 (N.D. Tex. 2010) (involving successful derivative § 14(a) claim). When such derivative actions succeed, recovery inures to the benefit "of the corporation and, indirectly, its stockholders." *In re Triarc Cos.*, 791 A.2d 872, 878 (Del. Ch. 2001) (involving settlement of derivative proxy claim).

Second, Plaintiff suggests that its § 14(a) claim cannot be derivative because it is brought by "only those McDermott shareholders who were entitled to vote on the transaction and to whom the Proxy was directed." Opp. 23 (citing *7547 Corp. v. Parker & Parsley Dev. Partners, L.P.*, 38 F.3d 211, 226–30 (5th Cir. 1994)). Again, the same could be said about *every* § 14(a) claim, and yet those claims are regularly deemed derivative and dismissed for lack of pre-suit demand. *See* Mot. 24 & n.7 (collecting cases). Moreover, highlighting that all vote-eligible McDermott shareholders would be members of the § 14(a) class simply emphasizes an attribute of § 14(a) claims that *Borak* found so

indicative of their "ordinarily" derivative character: "The damage suffered results not from the deceit practiced on [the plaintiff] alone but rather from the deceit practiced on *the stockholders as a group*." 377 U.S. at 432 (emphasis added). Unlike a § 10(b) claim, which depends on a stockholder's buying stock at an allegedly inflated price,[2] § 14(a) claims like this one may be based on the theory that a misleading proxy caused the shareholders ("as a group") to vote for something that injured the corporation and caused its stock price to drop, thereby indirectly harming the voting shareholders ("as a group"). That contrast confirms the "ordinarily" derivative, not direct, character of § 14(a) claims of this nature. *Id.*; *see also Freedman v. magicJack Vocaltec Ltd.*, 963 F.3d 1125, 1137 (11th Cir. 2020) (holding § 14(a) claim was derivative when the shareholder's injury was not "distinct from that experienced by [the company] or its other shareholders").

## B.    Plaintiff's claimed economic harm is derivative of harm to McDermott.

Categorical arguments aside, the question becomes whether the CAC pleads a viable direct theory of economic loss in *this* case. To recap the direct-derivative analysis, *Borak* instructs that the "nature of the injury alleged" controls, making an injury that "flows from damage done to the corporation" a "classic derivative action." *Rudolph v. Cummins*, 2007 WL 1189632, at *2 (S.D. Tex. Apr. 19, 2007) (Harmon, J.) (citing *Borak*, 377 U.S. at 432). That federal-substantive-law inquiry mirrors the first prong of Delaware's *Tooley* test, which dictates that a direct injury "must be independent of any alleged injury to the

---

[2] Because the injury associated with § 10(b) claims is both purchaser-specific and untethered to any injury to the corporation, courts treat them as direct claims. *See, e.g.*, *City of Pontiac Gen. Emps.' Ret. Sys. v. Wal-Mart Stores, Inc.*, 278 F. Supp. 3d 1128, 1131 (W.D. Ark. 2017) ("Because [the plaintiff] alleges [under § 10(b)] that Defendant's fraud caused class members to overpay for shares of Wal-Mart's stock, the alleged injury to the class members is a direct injury that they have standing to pursue.").

corporation." *Tooley v. Donaldson, Lufkin & Jenrette, Inc.*, 845 A.2d 1031, 1039 (Del. 2004).[3] Underscoring the point, the Delaware Supreme Court held that "[t]he stockholder must demonstrate that the duty breached was owed to the stockholder and that he or she can prevail *without showing an injury to the corporation.*" *Id.* (emphasis added).

So framed, there is little question that Plaintiff's alleged "economic losses"—*i.e.*, "McDermott's stock price decreased after the truth . . . was revealed"—are quintessentially derivative in nature. Opp. 23; *see* CAC ¶ 23 (claiming damages for a "precipitous decline in the market value of the Company's stock price"). Such a theory of economic loss relies on a direct injury to McDermott (via its acquisition of CB&I) and a corresponding downstream impact to its shareholders (the resulting stock drop)—but that is "merely the unavoidable result (from an accounting standpoint) of the reduction in the value of the entire corporate entity, of which each share of equity represents an equal fraction." *Gentile v. Rossette*, 906 A.2d 91, 99 (Del. 2006). Courts consistently treat similar indirect losses as derivative. *See* Mot. 21–22 (collecting cases).[4]

Plaintiff responds to that hornbook law by ignoring some of Defendants' most on-

---

[3] Plaintiff criticizes Defendants for not focusing on the second *Tooley* prong ("regarding relief sought"), despite making no effort to explain why Judge Harmon's reliance on federal substantive law—*i.e.*, the "nature of the injury" test—was incorrect. *Compare* Opp. 21 n.7, *with Rudolph*, 2007 WL 1189632, at *2. In any event, Plaintiff never explains how the "relief sought" prong of *Tooley* somehow supports Plaintiff's argument—likely because many of Defendants' cases cited in their motion and this reply (*J.P. Morgan*, *Freedman*, *Thornton*, and *Gentile*, to name a few) relied on both prongs of *Tooley*'s test to characterize similar claims as derivative.

[4] Plaintiff's citation to *In re Wells Real Estate Investment Trust, Inc. Securities Litigation*, 2010 WL 11468441, at *6 (N.D. Ga. Aug. 2, 2010), confirms this principle. Opp. 23. The court there ended up dismissing the "direct" § 14(a) claim for "economic loss" as substantively derivative, upon concluding that those damages were "suffered by the Company itself and not directly by individual shareholders." *In re Wells Real Estate Inv. Tr., Inc. Sec. Litig.*, 2012 WL 12888849, at *4 (N.D. Ga. Sept. 26, 2012). What *Wells* left standing—and what is unquestionably not at issue here—was a direct claim for only an "*equitable* remedy." *Id.* (emphasis added); *see also Calamore v. Juniper Networks Inc.*, 364 F. App'x 370, 372 (9th Cir. 2010) ("Direct proxy disclosure claims, if made promptly, may support equitable relief such as an order to amend a proxy solicitation and require a re-vote.").

point cases. Chief among them is *In re J.P. Morgan Chase & Co. Shareholder Litigation*, 2005 WL 5783536 (Del. Ch. Apr. 29, 2005), in which the court found a self-styled "direct" claim for "money damages" based on an allegedly misleading proxy disclosure to be substantively derivative. *Id.* at *12. It so held because the claim—based on the inducement of an allegedly unfavorable merger—was for "a harm suffered by all pre-merger JPMC stockholders, and, consequently, JPMC itself." *Id.* at *6, *12. Plaintiff similarly ignores *Anastasio v. Internap Network Services Corp.*, 2010 WL 11459838 (N.D. Ga. Sept. 15, 2010), simply restating its holding as if it bore "no relevance." Opp. 55 n.28. But *Anastasio* could hardly be more on point, as the court there rejected a near-identical attempt to "argue that the [§ 14(a)] claim [wa]s direct because the overpayment 'resulted in a material decrease in [the company's] stock price,' which hurts shareholders." 2010 WL 11459838, at *13. "While this may have ultimately harmed individual shareholders, as harm to a company often does," the court explained, "the damage [t]here flow[ed] from damage done to the corporation rather than damage inflicted directly on Plaintiffs" and was thus derivative in nature. *Id.*

For Defendants' other cases, Plaintiff offers the flimsiest of distinctions. It ignores the uniform view reflected in *Sweeney v. Harbin Electric Inc.*, 2011 WL 3236114 (D. Nev. July 27, 2011)—that "an allegation of diminution in the value of stock based on a breach of fiduciary duty gives rise to a derivative action only," *id.* at *2—as somehow confined to the fiduciary context. Opp. 25 n.11. Yet in the same breath, Plaintiff invokes its own fiduciary case (*Tooley*) as the governing standard. *Id.* at 21. For *LaSala v. Bordier et Cie*, 519 F.3d 121 (3d Cir. 2008), Plaintiff simply ends up highlighting that opinion's *contrast*

between a corporation's "los[s] [of] economic viability, as reflected in its declining stock price and eventual bankruptcy"—a "purely derivative harm"—and a stock purchaser's overpayment claim for the "value discrepancy between what they paid and what they received"—a direct harm. *Id.* at 131; Opp. 24–25. The § 14(a) claim here is decidedly of the former variety; it is not at all akin to the § 10(b) plaintiff's purchaser-specific overpayment claim.

Perhaps most glaring is Plaintiff's footnote relegation of *Freedman v. magicJack Vocaltec. Ltd.*, 2018 WL 6110996 (S.D. Fla. Nov. 21, 2018), which found a self-styled "direct" § 14(a) claim to be substantively derivative and dismissed it for lack of pre-suit demand. *Id.* at *6. The Eleventh Circuit recently affirmed that decision in a published opinion, applying the now-familiar principle that "a decline in the value of a company caused by misrepresentations and false statements made by officers of a company constitutes damage caused to the company and as a result . . . to all shareholders equally." *See Freedman*, 963 F.3d at 1137. The Eleventh Circuit further confirmed that the "recovery sought"—based upon the stock price at the time of the transaction—was "[i]ndubitably . . . derivative in nature." *Id.* at 1137–38.

Plaintiff offers two responses to *Freedman*, neither of which is the least bit compelling. First, it points out that *Freedman* did not involve a challenge to the merger proxy itself. Opp. 22 n.9. True enough. But the *Freedman* plaintiffs unquestionably challenged two other proxies as misleading, and the Eleventh Circuit noted that "if [the plaintiffs] *had*" challenged "the proxy statement related to the [merger] transaction," that challenge would have just as "clearly fall[en] within the ambit of a derivative lawsuit." 963

F.3d at 1138 n.14 (emphasis added). Second, Plaintiff characterizes *Freedman*'s application of Israeli law as an outlier. Opp. 22 n.9. But the Eleventh Circuit explained that just the opposite is true: "the result [the court] reach[es] here, is not an anomaly driven by the application of Israeli law, which is wholly consistent with Florida law on the key issue in this case." *Freedman*, 963 F.3d at 1136. In applying Florida and Israeli law, the court made crystal clear that each aligned with the host of core principles echoed throughout this brief. *Id.* at 1137 (citing *Borak* and *Tooley*).

Against the above wall of authority, Plaintiff offers a lone § 14(a) case in which a court speculated that "[t]here is at least a *potential* that the Securities Plaintiffs could show a diminution in the value of the shares that they held which was not due to an injury inflicted upon [the corporation]." *In re Bank of Am. Corp. Sec., Deriv., & ERISA Litig.*, 757 F. Supp. 2d 260, 292 (S.D.N.Y. 2010) (emphasis added) (finding that "it [wa]s *possible* for both sets of plaintiffs [*i.e.*, the direct and derivative plaintiffs] to prevail without double recovery") (emphasis added). The *Bank of America* court, however, cited no authority for the proposition that an ill-fated merger could inflict stock-drop-based economic losses on § 14(a) plaintiff-shareholders *independent* of the direct, threshold harm to the corporation,[5] *cf. Tooley*, 845 A.2d at 1039 (explaining that a direct injury "must be independent of any alleged injury to the corporation"), nor did it ever explain how such a splitting-of-the-atom could be accomplished. And Plaintiff, for its part, provides neither its own elaboration on

---

[5] In fact, *Bank of America* cited only *Yamamoto v. Omiya*, 564 F.2d 1326 (9th Cir. 1977), which did nothing more than echo the same principle recognized in Defendants' motion and discussed fully below—that a § 14(a) claim can be both "direct and derivative," with the former to "protect[] the shareholders' interest in 'fair corporate suffrage.'" *Id.* at 1319; *see also* Mot. at 24; *infra* 9–12.

that issue, nor any authority validating, or even echoing, *Bank of America*'s hypothesis. To be perfectly clear, not a word of Plaintiff's response explains *how* its claimed economic losses are independent of an injury to the Company.

That is because the law is otherwise uniform that shareholder losses of the type asserted here cannot be extricated from the predicate corporate injury to which they owe their existence. *Supra* 4–8. Thus, the claimed economic harm here is one for which a "derivative action[] [is] the only means of private redress for a § 14(a) violation." *In re Gen. Tire & Rubber Co. Sec. Litig.*, 726 F.2d 1075, 1082 (6th Cir. 1984).

### C.    Plaintiff's direct theory fails the PSLRA's loss-causation requirement and cannot be conflated with its derivative, economic-loss theory in an effort to state a claim.

Unable to obscure the derivative character of its claimed economic losses, Plaintiff predictably turns to its voter-suffrage allegations. Opp. 22–23. Two fatal problems ensue. First, voter-suffrage impairment—while a "direct" harm for purposes of the standing inquiry—is not an independently viable theory under the PSLRA's loss-causation requirement. And second, Plaintiff cannot bootstrap its derivative, economic losses onto that direct theory in hopes of salvaging the problems fatal to each.

The bulk of Plaintiff's direct-derivative cases either have nothing to do with the topic,[6] or reiterate the abstract principle that "impairment of voting rights" constitutes a direct harm. Opp. 22–23 & n.8 (citing *Rudolph*, 2007 WL 1189632, at *2; *N.Y.C. Emps.' Ret. Sys. v. Jobs*, 593 F.3d 1018, 1022–23 (9th Cir. 2010); *Smith v. Robbins & Myers*, 969

---

[6] *E.g.*, *Va. Bankshares, Inc. v. Sandberg,* 501 U.S. 1083 (1991) (pre-PSLRA case containing no discussion of the direct-derivative question).

F. Supp. 2d 850, 864 n.13 (S.D. Ohio 2013)). Defendants' motion acknowledged, rather than "omit[ted]" or "ignore[d]," that principle. *Id.* at 22–23 & n.8; *see* Mot. 24–25 (citing *Rudolph* and *Jobs* on this point). But the critical question remains whether such voter-suffrage impairment is *both* "independent of any alleged injury to the corporation," *Tooley*, 845 A.2d at 1039, *and* independently viable under the PSLRA—*i.e.*, whether the CAC "suggest[s] any form of relief that can be granted" to Plaintiff through that "direct claim." *Copeland v. Lane*, 621 F. App'x 449, 450 (9th Cir. 2015).[7]

Plaintiff points to no authority demonstrating that impairment of voting rights suffices for the requisite "economic harm" under § 14(a). *See Panella v. Tesco Corp.*, 2019 WL 1606349, at *3 (S.D. Tex. Mar. 29, 2019) (PSLRA's loss-causation element requires "economic harm" for § 14(a) claim). Most of its cases do not deal with the topic at all.[8] And Plaintiff's only case that does, *Jobs*, is squarely on Defendants' side, for it dictates that voter-suffrage impairment is *not* a cognizable economic loss under the PSLRA. *See* 593 F.3d at 1022–24 (affirming dismissal of direct § 14(a) claim based on "right to a fully informed vote" and expressly holding that plaintiff "cannot use *Mills*" and its pre-PSLRA discussion of equitable remedies "to avoid pleading economic loss"). Defendants' motion identified several other cases that are in accord with *Jobs*, and Plaintiff never disputes their core holding. Mot. 25 (citing *Resnik v. Woertz*, 774 F. Supp. 2d 614, 632 (D. Del. 2011);

---

[7] *See also, e.g.*, *Calamore*, 364 F. App'x at 372 (rejecting direct § 14(a) claim because plaintiff "request[ed] no remedy that the court can provide" for the direct claim).

[8] *E.g.*, *Rudolph*, 2007 WL 1189632, at *2 (involving motion to stay direct-and-derivative § 14(a) claim, not to dismiss the direct claim for lack of economic loss); *Smith*, 969 F. Supp. 2d at 864 n.13, 868 (identifying direct-and-derivative § 14(a) claim but not discussing the available remedy or whether the voter-suffrage impairment in particular met the standard for economic harm under the PSLRA); *Mills v. Elec. Auto-Lite Co.*, 396 U.S. 375, 388–89 (1970) (pre-PSLRA direct-and-derivative § 14(a) case discussing in *dicta* various equitable theories of damages).

*Hubner v. Mayer*, 2015 WL 12513581, at *8 (C.D. Cal. June 8, 2015) (each dismissing direct § 14(a) claim for lack of economic loss)).

Seeing the writing on the wall, Plaintiff pivots from its voting-rights theory back to its claimed derivative harm, discussed *supra* 4–8, arguing that it "has adequately pled 'economic harm' through out-of-pocket losses measured by the decline in share price resulting from the misleading Proxy Solicitations." Opp. 54. For support, Plaintiff then cites a handful of cases generally discussing the availability of "out-of-pocket" damages in § 14(a) claims.[9] But those cases get Plaintiff nowhere because, critically, none of them addressed the gating issue of the direct or derivative nature of the § 14(a) claims at issue.

On that key issue, Plaintiff's gambit—use voter-suffrage impairment to argue that it has pleaded a direct claim, but then point to derivative, economic harm to argue that it has pleaded a substantively viable § 14(a) claim—is neither novel nor appropriate. That approach improperly "conflate[s]" the direct claim with the derivative one. *Calamore,* 364 F. App'x at 372. And it is a ploy that was thoroughly dismantled in *Thornton v. Bernard Technologies, Inc.*, 2009 WL 426179 (Del. Ch. Feb. 20, 2009), where the court identified voting-impairment claims that were "on their face . . . direct" but made sure to clarify that the recovery sought was, in fact, derivative:

> When, however, [plaintiffs] assert that bad things happened to [the company] *because* they were induced into voting [based on a misleading proxy], the Plaintiffs *have done nothing more than painted derivative claims with a disclosure coating*. To the extent that the Plaintiffs seek to

---

[9] Opp. 53–54 & n.27 (*citing, e.g., Goldkrantz v. Griffin*, 1999 WL 191540, at *7, 8 (S.D.N.Y. Apr. 6, 1999); *In re DaimlerChrysler AG Sec. Litig.*, 294 F. Supp. 2d 616, 626 (D. Del. 2003); *In re Real Estate Assocs. Ltd. P'ship Litig.*, 223 F. Supp. 2d 1142, 1152 n.9 (C.D. Cal. 2002); *In re AOL Time Warner, Inc. Sec. & ERISA Litig.*, 381 F. Supp. 2d 192, 231 (S.D.N.Y. 2004); *In re JPMorgan Chase & Co. Sec. Litig.*, 2007 WL 4531794, *9 (N.D. Ill. Dec. 18, 2007); *In re McKesson HBOC, Inc. Sec. Litig.*, 126 F. Supp. 2d 1248, 1266, 1269 (N.D. Cal. 2000)).

> recover for losses suffered by [the company], those claims are derivative
> in nature because any recovery would benefit the entity as a whole.

*Id.* at *3 & n.28 (emphases added); *accord Noble v. AAR Corp.*, 2013 WL 1324915, at *5 (N.D. Ill. Apr. 3, 2013) (same). While *Thornton* and *Noble* are fiduciary cases, their anti-conflation principle is no less applicable to § 14(a) claims, for which courts have routinely rejected efforts to use nominally direct claims to sneak derivative theories in through the back door. *E.g.*, *Copeland v. Lane*, 2013 WL 1899741, at *10 (N.D. Cal. May 6, 2013) (rejecting attempt to "recast a derivative proxy claim as a direct claim based on lack of disclosure" and dismissing direct claim for failure to identify a legally viable remedy), *aff'd*, 621 F. App'x 449 (9th Cir. 2015); *Freedman*, 963 F.3d at 1129 (affirming dismissal of § 14(a) claim seeking derivative economic losses despite plaintiff's pleading that he was "denied the ability to exercise an informed vote").

The rub is that direct and derivative § 14(a) claims must stand *on their own*, and Plaintiff cannot pick and choose attributes from each to cobble together a viable claim. Because Plaintiff's claim suffers from a fatal defect whether framed as derivative (in which case it fails for a procedural failure to make demand) or direct (in which case it fails for a substantive failure to plead a recoverable loss), it must be dismissed in its entirety.

## II.   Plaintiff fails to render Defendants' vague puffing statements actionable.

Having challenged numerous statements of vague corporate optimism, Plaintiff tries to minimize the puffery doctrine as one for which "Defendants face a very high burden." Opp. 30. On the contrary, courts routinely categorize similar statements as puffery. *See, e.g.*, *Rosenzweig v. Azurix Corp.*, 332 F.3d 854, 859, 869–70 (5th Cir. 2003) (dismissing

puffery statements); *Southland Sec. Corp. v. INSpire Ins. Sols., Inc.*, 365 F.3d 353, 372, 374–75, 377–78, 380 (5th Cir. 2004) (same); *Kurtzman v. Compaq Comput. Corp.*, 2002 WL 32442832, at *17–18 (S.D. Tex. Mar. 30, 2002) (holding that statements touting merger synergies were non-actionable puffery because "[m]erging companies always predict . . . that they will achieve 'synergies' from the combination").

Plaintiff also contends that statements cannot be puffery if they relate to important underlying *subject matter*, but the Fifth Circuit clearly rejects that approach. In *Rosenzweig*, for instance, the court found that statements relating to a $1 billion, 30-year water project in Buenos Aires were puffery, even though the project was the defendant's second-largest asset and a basis for analyst "buy" recommendations. 332 F.3d at 859, 869–70; *see also Nathenson v. Zonagen Inc.*, 267 F.3d 400, 419 (5th Cir. 2001) ("*Even though Vasomax's potential commercial viability is material*," statements "that Vasomax was a 'fast-acting,' 'improved formulation'" were puffery) (emphasis added).

Relying on inapposite Lanham Act cases,[10] Plaintiff further asserts that the Challenged Statements contain "specific representations of fact," or at least have "embedded fact[s]." Opp. 32–33. Yet many of the Challenged Statements contain no "specific representations of fact" and, indeed, could hardly be vaguer.[11] Nor does the mere fact that certain Challenged Statements have some conceivable relationship to specific facts

---

[10] *E.g.*, *Dyson, Inc. v. Oreck Corp.*, 2009 WL 537074, at *6–8 (E.D. La. Mar. 4, 2009) (considering "puffery" in the consumer-products context); *Southland Sod Farms v. Stover Seed Co.*, 108 F.3d 1134, 1145 (9th Cir. 1997) (same).

[11] *See, e.g.*, CAC ¶ 139 ("***We also expect the combination will generate substantial cost and revenue synergies.***"); ¶ 142 ("McDermott was "[c]onfident in [its] ability to apply McDermott's operational excellence and turnaround experience to unlock near- and long-term value from CB&I['s] portfolio.") (alterations in original).

or contain numeric quantifications make them non-puffery;[12] the test is whether a reasonable investor could rely upon them as something more than aspirational corporate cheerleading. *See Raab v. Gen. Physics Corp.*, 4 F.3d 286, 288 (4th Cir. 1993) (classifying as puffery statement that "[r]egulatory changes . . . have created a marketplace for the DOE Services Group with an expected annual growth rate of 10% to 30% over the next several years"); *see also In re Azurix Corp. Sec. Litig.*, 198 F. Supp. 2d 862, 888 n.20 (S.D. Tex. 2002) (noting "the Fifth Circuit has adopted the *Raab* holdings").

As Plaintiff acknowledges, the Fifth Circuit has expressly treated "due diligence assurances" as puffery, affirming Judge Lake's holding that "a rational investor would not have relied on the due diligence statements contained in the prospectus." *Rosenzweig*, 332 F.3d at 859–60, 869 (quoting *In re Azurix*, 198 F. Supp. 2d at 883). Plaintiff posits that the *Rosenzweig* "statements were generic and unrelated to a specific project." Opp. 35. But Judge Lake's opinion proves the opposite: "Plaintiffs allege that these statements regarding due diligence were specifically false and misleading *with respect to the Buenos Aires project*." 198 F. Supp. 2d at 870 (emphasis added). After all, statements in the IPO prospectus that allegedly "misled the investing public into concluding that defendants had performed due diligence for its projects before bidding on them" would naturally apply to

---

[12] Plaintiff mistakenly seizes on McDermott's mention of particular "dollar amounts," including the statement that the Merger "is also **expected to generate annualized cost synergies of $250 million in 2019**," Opp. 37 (quoting CAC ¶ 138), insinuating that those predicted synergies related to the Focus Projects. As Defendants explained in their § 10(b) motion, those $250 million in savings were explicitly tied to the sort of consolidation and redundancy elimination that happens with any merger. Mot. Ex. 4, 1/8/18 MDR Presentation at 31 (identifying $250 million in cost-savings between "combined procurement," "optimization of headcount and office facilities," "resource pooling, facility rationalization, aligning cost centers, management and expat overlap and efficiency," and "efficiency in travel and expense, overlapping public company and insurance costs"). The CAC never suggests that McDermott did not in fact realize those particular synergies post-Merger.

the massive Buenos Aires acquisition announced just weeks earlier. *See id.* at 869–70. Yet those project-specific diligence assurances were non-actionable all the same.[13]

Plaintiff also fails to distinguish Defendants' authority classifying "de-risking" statements as puffery. *See Kelly v. Elec. Arts, Inc.*, 71 F. Supp. 3d 1061, 1070 (N.D. Cal. 2014). Offering no responsive citation of its own, Plaintiff argues that *Kelly* is inapplicable because "'de-risking' in the video game development industry did not have a specific or unique meaning." *See* Opp. 36. But there exists no daylight between Plaintiff's proffered example of what de-risking means in *this* case—related in some way to "quantify[ing] the risks of the various Projects," *id.*—and the commonsense, vague meaning ascribed in *Kelly*: "improved." 71 F. Supp. 3d at 1070. Plaintiff's failure to articulate a more precise meaning here all but proves Defendants' point.

## III.    Plaintiff cannot escape the PSLRA's safe harbor.

Plaintiff fails to show that the forward-looking Challenged Statements fall outside the PSLRA's safe harbor. The disjunctive safe-harbor immunizes forward-looking statements when *either* (1) they are identified as forward looking and accompanied by meaningful cautionary language, *or* (2) the plaintiff fails to prove the forward-looking statement was made with actual knowledge that it was false or misleading. *See* 15 U.S.C. § 78u-5(c)(1) (2018); *Southland Sec. Corp.*, 365 F.3d at 371. Both prongs apply here, Mot.

---

[13] Plaintiff also claims that the Challenged Statements are "no less 'verifiable' than the estimates of natural gas production in *Rubinstein* [*v. Collins*, 20 F.3d 160, 163 (5th Cir. 1994)]," Opp. 35, but that is incorrect. As Plaintiff notes, *Rosenzweig* itself distinguished its due-diligence puffery statements from the highly "verifiable" statements in *Rubinstein*. *Rosenzweig*, 332 F.3d at 870. Plaintiff also points to statements about diligence in *In re RAIT Financial Trust Securities Litigation*, where the plaintiffs alleged that the defendant "did not conduct *any* meaningful ongoing credit analysis whatsoever." 2008 WL 5378164, at *6 (E.D. Pa. Dec. 22, 2008) (emphasis added). This case, by contrast, is not a "total lack of inquiry" case. *Infra* 22–24.

32–35, and Plaintiff fails to show otherwise.

Forward-Looking Statements:[14] Plaintiff contends that the "de-risking" statements do not qualify as forward-looking because they contain statements of "present fact." Opp. 38. In doing so, Plaintiff glosses over Defendants' contrary authority. *See Evanston Police Pension Fund v. McKesson Corp.*, 411 F. Supp. 3d 580, 2019 WL 5587311, at *10 (N.D. Cal. Oct. 30, 2019) (labeling "statements claim[ing] that McKesson had derisked its FY17 earnings" as "essentially forward-looking" and subject to the safe harbor).[15] The cases cited by Plaintiff do not hold otherwise. In *Police Retirement System of St. Louis v. Granite Construction Inc.*, the court found actionable statements about "existing" costs on projects. 2020 WL 2559939, at *5 (N.D. Cal. May 20, 2020) (emphasis omitted). Plaintiff, by contrast, complains not about *existing* cost overruns, but rather about *forward-looking financial projections* for the Four Focus Projects. *E.g.*, CAC ¶ 14 (describing "over $1.2 billion in *forecasted* costs for the Cameron Project" and "Cameron's *future* operational charges") (emphases added). Notably, the only mention of "projection[s]" in *Granite Construction* proves Defendants' point: "[t]he PSLRA's safe harbor protects forward-looking statements containing a *projection* of revenues, income (including income loss) . . . or other financial items." 2020 WL 2559939, at *7 (emphasis added) (quoting 15 U.S.C. § 78u-5(i)(1)(A)).[16]

---

[14] Plaintiff incorrectly categorizes the challenged due diligence statements as forward-looking statements, Opp. 39–41, when Defendants instead categorized those statements as puffery. *See* Mot at 30–31; *supra* 14–15.

[15] Plaintiff suggests that *McKesson* is different because it involved de-risking "*future earnings.*" Opp. 41 n.16 (emphasis added). But the relevant risk here—estimated future costs to complete the projects—was similarly forward-looking. *Infra* 19–20.

[16] Plaintiff fares no better with *In re TETRA Technologies, Inc. Securities Litigation*, 2009 WL 6325540 (S.D. Tex. July 9, 2009). The statement that Plaintiff points to there—that TETRA's "third quarter pretax earnings [] exceeded

<u>Cautionary Language:</u> To the extent Plaintiff criticizes Defendants' cautionary language for failing to predict the precise risk (over $1 billion in cost overruns) that materialized, Opp. 42, courts have refused to require such "[p]erfect clairvoyance." *Weiner v. Tivity Health, Inc.*, 365 F. Supp. 3d 900, 911 (M.D. Tenn. 2019); *see also Carlton v. Cannon*, 184 F. Supp. 3d 428, 455 (S.D. Tex. 2016) (relationship between disclosed risks and those "actually realized" need only be "similar"). As for the allegation that Defendants' risks disclosures were insufficiently "specific," Opp. 42, Plaintiff neglects Defendants' detailed cautionary language disclosing the risks not only of the Merger but also of the projects themselves—including, for example: the companies' "ability to realize cost savings from [its] expected performance of contracts"; "risks associated with labor productivity"; "cost overruns on fixed-price or similar contracts"; "changes in the costs or availability of, or delivery schedule for, equipment, components, materials, labor or subcontractors"; and "adverse impacts from weather . . . which could lead to increased costs . . . ." Mot. Ex. 8, 2/21/2018 CB&I 10-K at 3–4, 10–11; *see also* Mot. Ex. 4, 1/8/18 MDR Presentation at 2; Mot. Ex. 10, 2/21/18 MDR 10-K at 11–12.

Defendants also described the "unique characteristics" of each project and included project-specific details advising of each project's risks. For example, Defendants disclosed that the Cameron Project had experienced "[l]ower than anticipated productivity" and "[a]dverse weather-related delays" and Defendants' belief that a "[m]ajority of remaining risk related to labor and schedule." Mot. Ex. 4, 1/8/18 MDR Presentation at 38. Those

---

third quarter 2005 levels by 152 percent"—was based on a cost-of-goods-sold input that the plaintiff alleged was understated due to inventory write-ups. *Id.* at *28. Neither the statement nor the allegedly misleading input bears any resemblance whatsoever to the de-risking predictions that Plaintiff takes issue with here.

project-specific cautions contrast sharply from the boilerplate language in Plaintiff's cases. *Cf. Lormand v. US Unwired, Inc.*, 565 F.3d 228, 245–48 (5th Cir. 2009) (rejecting as "generic" warnings that disclaimed any "guarantee[] of future performance").

Plaintiff likewise never disputes that Defendants warned that such losses on the projects could continue—Defendants specifically stated that there could be "cost overruns on fixed-price or similar contracts," detailed the Focus Projects and the issues they faced, and stated that if such problems continued, "the project[s] would experience further losses." Mot. Ex. 8, 2/21/18 CB&I 10-K at 3, 36–37. Instead, Plaintiff seems to conflate the second safe-harbor prong (related to the Defendants' knowledge) with the first, claiming that Defendants' cautionary language was not meaningful because Defendants should have known that the risks *would* materialize (not merely that they could). Opp. 41.

<u>No Actual Knowledge:</u> The second prong of the safe harbor applies unless Defendants had "actual knowledge" of the falsity of the statements. *Matrixx Initiatives, Inc. v. Siracusano*, 563 U.S. 27, 48 n.14 (2011). Plaintiff has evidently abandoned the knowing-falsity theory alluded to in the CAC, arguing instead only that the cost overruns were "internally documented and discussed" and "Defendants had *access* to information" demonstrating the magnitude and likelihood of the risks. Opp. 42–43 (emphasis added).

But  allegations that Defendants had "access to adverse information" or "should have known" do not satisfy the "stringent actual knowledge test in the safe harbor provision." *In re Gold Res. Corp. Sec. Litig.*, 957 F. Supp. 2d 1284, 1298 (D. Colo. 2013),

*aff'd*, 776 F.3d 1103 (10th Cir. 2015).[17] Plaintiff cites no case—under § 14(a) or otherwise—to the contrary. In fact, Plaintiff cites only cases in which plaintiffs *demonstrated* the requisite actual knowledge.[18] Having failed to plausibly connect information about the projected costs with any individual defendant, Mot. 40–47, Plaintiff cannot claim that Defendants made these "de-risking" and other forward-looking statements (*id.* at 33–35) with actual knowledge that they were false or misleading.

## IV.    The CAC's opinion-laden statements are non-actionable.

The remaining Challenged Statements fail under the Supreme Court's heightened rubric for opinion statements laid out in *Omnicare, Inc. v. Laborers District Council Construction Industry Pension Fund*, 575 U.S. 175 (2015).

### A.    Plaintiff cannot disregard the subjective nature of the statements.

Aware that meeting *Omnicare* is "no small task," *id.* at 194, Plaintiff first tries to avoid it entirely by recasting Defendants' opinions as facts. Plaintiff suggests that forward-looking statements are not quintessentially opinions. Opp. 45. But Plaintiff's cases dictate precisely the opposite:  "Statements that express expectations about the future rather than presently existing, objective facts are also statements of opinion." *In re Aratana Therapeutics Inc. Sec. Litig.*, 315 F. Supp. 3d 737, 758 (S.D.N.Y. 2018). The central thesis of the CAC relates to such forecasts and expectations, thus distinguishing it from the

---

[17] This actual-knowledge requirement holds true in § 14(a) cases *even if* they do not generally require scienter. *See Panella*, 2019 WL 1606349, at *4 (explaining in § 14(a) case that safe harbor applies if "the plaintiff fails to prove that it was made with actual knowledge that it was false or misleading").

[18] *See Granite Construction*, 2020 WL2559939, at *7 (finding, in § 10(b) case, that complaint "establish[ed] that the defendants *had personal knowledge* of the cost overruns and GAAP violations that underlie this action") (emphasis added); *In re SCANA, Corp. Secs. Litig.*, 2019 WL 1427443, at *9, 11 (D.S.C. Mar. 29, 2019) (finding, in § 10(b) case, cautionary language not meaningful because defendants were "*sufficiently aware* of the Project's deficiencies" and "*knew* . . . there was no material improvement in progress") (emphasis added).

allegations at issue in Plaintiff's allegedly "strikingly similar" case discussed earlier. *Compare Granite Constr.*, 2020 WL 2559939, at *5 ("statements misrepresented *existing*, rather than future, overruns"), *with, e.g.*, CAC ¶ 14 ("*forecasted* costs for the Cameron Project") (emphasis added).[19]

Second, Plaintiff argues that many of Defendants' statements do not qualify as opinions because they either (1) conveyed "certainty" (through words like "confident" and "comfortable") or (2) were not accompanied by sufficient "limiting language" (words like "feel" or "believe"). Opp. 45. Neither contention is correct. Courts uniformly hold that "an expression of confidence is best characterized as an opinion." *In re Neustar Sec.*, 83 F. Supp. 3d 671, 683 (E.D. Va. 2015); *see also, e.g.*, *City of Roseville Emps' Ret. Sys. v. EnergySolutions, Inc.*, 814 F. Supp. 2d 395, 414–15 (S.D.N.Y. 2011) (statement that defendants "were 'comfortable' and 'confident' in the chance" of a particular result was opinion). Indeed, the type of factual "certainty" statements at issue in the cases cited by Plaintiff serve as a helpful contrast to the subjective observations and evaluative statements challenged here. *Compare* Am. Compl. ¶ 205, *In re SCANA Corp. Sec. Litig.*, No. 3:17-CV-2616-MBS (D.S.C. Mar. 30, 2018), ECF 72 ("The pace of this project is quickening."), *with, e.g.*, CAC ¶ 192 ("we . . . *feel very comfortable* with the progress they've made"); ¶ 139 ("all four [projects] are *fairly well* progressed") (emphasis changed).[20]

Nor is there any rule requiring express "limiting language" for *Omnicare*'s rubric

---

[19] *See also, e.g.*, CAC ¶ 106 ("forecasting the cost of future events"); ¶ 119 ("forecasted future costs changes").

[20] Note, however, that "evaluative assessments," including observations that a project was "doing fairly well," have been held to be "quintessential statements of opinion." *Okla. Firefighters Pension & Ret. Sys. v. Xerox Corp.*, 300 F. Supp. 3d 551, 575 (S.D.N.Y. 2018), *aff'd*, 771 F. App'x 51 (2d Cir. 2019).

to apply. While often "cloaked in . . . language" like "I believe (or I think)," statements that convey "uncertainty or personal judgment" still qualify as opinions even when "*unadorned with such express language.*" *In re BP p.l.c. Sec. Litig.*, 2016 WL 3090779, at *8 (S.D. Tex. May 31, 2016) (Ellison, J.) (emphasis added). The statements that Plaintiff identifies, *see* Opp. 45 n.19 (citing CAC), thus qualify as opinions based on their substantively subjective character, notwithstanding the absence of so-called "limiting language."

Finally, Plaintiff insinuates that forecasts, accounting projections, and the like are not opinions. Opp. 45–46 & nn.18, 20. Plaintiff relies on *Ramirez v. Exxon Mobil Corp.*, which dealt with "asset valuation and impairment" and observed that "alleged GAAP violation[s] . . . are not opinion statements." 334 F. Supp. 3d 832, 847–48 (N.D. Tex. 2018). *Ramirez* not only finds no support in the sole case it cites—*Barrie v. Intervoice-Brite, Inc.*, 397 F.3d 249 (5th Cir. 2005), a pre-*Omnicare* case that said nothing about facts versus actionable opinions; *Ramirez* also is at odds with the consensus in this District and elsewhere that projections and accounting estimates are quintessential opinions. Since *Barrie*, the Fifth Circuit has acknowledged the "subjective nature of the GAAP requirements" and referred to "accounting estimates" as "opinions." *Owens v. Jastrow*, 789 F.3d 529, 543–44 & n.14 (5th Cir. 2015). Judge Ellison has held that "[e]stimates and projections are classic examples of opinions." *In re BP*, 2016 WL 3090779, at *8. And Judges Lake and Miller have applied that same principle to accounting opinions. *See Johnson v. CBD Energy Ltd.*, 2016 WL 3654657, at *10 (S.D. Tex. July 6, 2016) ("statement regarding [GAAP] compliance inherently is one of opinion"); *Plaisance v.*

21

*Schiller*, 2019 WL 1205628, at *9 (S.D. Tex. Mar. 14, 2019) (same).[21]

In sum, Plaintiff cannot subvert the opinion character of the statements identified in Defendants' motion, and the CAC must meet *Omnicare*'s test to render them actionable.

### B.     The CAC does not state an *Omnicare* claim.

Although Plaintiff alleged that the opinion statements were misleading because "they were . . . not believed by the Defendants," CAC ¶ 196, Plaintiff has abandoned that subjective-disbelief theory, insisting in its opposition that it "is not alleging . . . *any particular state of mind*." Opp. 47 n.21 (emphasis added). Keeping with that statement, Plaintiff offers no defense of its former-employee accounts (the deficiency of which was explained at Mot. 39–47) or its scattered allegations of actual knowledge. Instead, Plaintiff is apparently content to rely on its bare allegation of negligence—*i.e.*, that sufficient due diligence by Defendants "would have uncovered" the purported contrary facts. Opp. 12. But that retooled theory does not satisfy *Omnicare*.

### 1.     The CAC does not properly allege an inquiry-based claim.

Plaintiff proceeds in part under *Omnicare*'s inquiry prong. Opp. 51 ("Plaintiff may plead an omission based on facts about the inquiry the issuer did or did not conduct."). Plaintiff argues that Defendants' "due diligence . . . was minimal and not 'thorough' and 'extensive,' as repeatedly described," and that sufficient diligence "would have uncovered the truth." *Id.* at 2, 48. But that fundamentally misunderstands *Omnicare*, which is not a

---

[21] Other circuits agree that accounting estimates are opinion statements. *See, e.g.*, *Fait v. Regions Fin. Corp.*, 655 F.3d 105, 110 (2d Cir. 2011) ("Estimates of goodwill depend on management's determination of the 'fair value' of the assets acquired and liabilities assumed, which are not matters of objective fact."); *City of Dearborn Heights Act 345 Police & Fire Ret. Sys. v. Align Tech., Inc.*, 856 F.3d 605, 613 (9th Cir. 2017) (same).

free-wheeling basis to second-guess the sufficiency of a speaker's diligence.

An opinion statement implies that the speaker relied on "some meaningful . . . inquiry—rather than, say, on mere intuition, however sincere"—the inverse implication being that liability arises only when the "the speaker failed to conduct *any* investigation" or spoke despite the "*absence* of the expected inquiry." *Omnicare*, 575 U.S. at 188–89 & n.6, 191 (emphasis added). As Defendants' motion explained, courts have rightly applied that theory to require a "total lack of inquiry." Mot. 48 (quoting *Knurr v. Orbital ATK Inc.*, 276 F. Supp. 3d 527, 538 (E.D. Va. 2017)). Plaintiff's opposition *never disputes* that principle, and none of its cited cases deals with the inquiry prong at all.

Nor does Plaintiff suggest that Defendants failed to conduct "any investigation." *Omnicare*, 575 U.S. at 191. To the contrary, the CAC and its FE accounts (*e.g.*, CAC ¶ 119) are "replete with detail[s] about the process" that took place. *Frankfurt-Tr. Inv. Luxemburg AG v. United Techs. Corp.*, 336 F. Supp. 3d 196, 228 (S.D.N.Y. 2018), *aff'd*, 779 F. App'x 69 (2d Cir. 2019); *see Knurr*, 276 F. Supp. 3d at 538 (rejecting inquiry claim when "plaintiffs recognize that the directors conducted a nine-month inquiry"). And Plaintiff does not quibble with the summary of diligence in Defendants' SEC filings (*e.g.*, Mot. Ex. 14, 3/27/18 CB&I Form S-4, at 58–66), save for calling the "thorough" and "extensive" adjectives misleading, Opp. 48—a theory already debunked by controlling Fifth Circuit authority on puffery.[22] *Supra* 14–15.

Thus, Plaintiff's theory is not that a "total lack" of inquiry took place, *Knurr*, 276

---

[22] Even if not puffery, Defendants' subjective descriptors of the thoroughness of their diligence are *themselves* opinion statements. And Plaintiff never alleges that Defendants subjectively disbelieved the sufficiency of their diligence or knew of facts indicating that their diligence was in some way insufficient.

F. Supp. 3d at 538, but rather that Defendants' inquiry was not good enough. That puts this case on all fours with a recent Third Circuit decision affirming a § 14(a) claim's dismissal for failure to meet the "rigorous benchmark" of *Omnicare*'s inquiry prong. *Jaroslawicz v. M&T Bank Corp.*, 962 F.3d 701, 717 (3d Cir. 2020). There, the plaintiff argued that the defendant's diligence efforts "were not enough." *Id.* at 717–18. The Third Circuit rejected that "general allegation[] of negligence," explaining that the proxy statement "provided enough information to understand what the [the defendant] did" and thus foreclosed *Omnicare* liability "even if a reasonable investor would have expected the [defendant] to conduct" more diligence. *Id.* at 718.

### 2.    The CAC fails to identify any *known*, contrary facts.

Inquiry aside, Plaintiff digs its heels into the position that it can assert an *Omnicare* omission claim without demonstrating Defendants "actually knew of the forecasted cost overruns" (the "contrary facts"). Opp. 51. But the cases speak in unison that even if a claim does not normally require proof of scienter, challenging an opinion for omitting facts requires particularized allegations that the speaker knew of the omitted facts.[23]

Look no further than *Omnicare* itself, a case under § 11 of the Securities Act's "strict liability standard." 575 U.S. at 181. Even in that context, *Omnicare* speaks of its omissions

---

[23] While ultimately immaterial for the opinion-statement discussion, Defendants maintain that scienter should be required for a § 14(a) claim. Mot. 15–16. Plaintiff wrongly suggests that there is no "debate" over the proper standard by attempting to cabin the Sixth Circuit's scienter requirement in *Adams v. Standard Knitting Mills, Inc.*, 623 F.2d 422 (6th Cir. 1980), to the "outside accountant" or "outside director" context. Opp. 26. But neither the Sixth Circuit nor others have viewed *Adams* so narrowly. *See Ind. State Dist. Council of Laborers & HOD Carriers Pension & Welfare Fund v. Omnicare, Inc.*, 719 F.3d 498, 507 (6th Cir. 2013) (citing *Adams* and explaining generally that "[i]n this Circuit § 14(a) does in fact require proof of scienter to state a claim"), *vacated on other grounds*, 575 U.S. 175 (2015); *Herskowitz v. Nutri/Sys., Inc.*, 857 F.2d 179, 190 (3d Cir. 1988) (explaining that *Adams* "suggests that the *scienter* standard would apply in a section 14(a) case even for officers and directors"). Nor would there be any textual basis for doing so, as § 14(a) makes no defendant-specific distinctions.

prong in terms of the speaker's "*knowledge* concerning [its] statement of opinion," such that liability arises only when the speaker "*knows*" of facts "incompatible with [its] opinion." *Id.* at 189–91 (emphasis added). Cases in *Omnicare*'s wake—both under § 14(a) and other non-scienter provisions—have recognized this actual-knowledge requirement for what it is. *See, e.g.*, *Knurr*, 276 F. Supp. 3d at 538–40 (applying "negligence standard" to § 14(a) claim but requiring "actual knowledge of contrary facts" for *Omnicare* omission claim); *Miller Inv. Tr. v. Morgan Stanley & Co.*, 308 F. Supp. 3d 411, 426, 443 (D. Mass. 2018) (for § 18 claim in which "scienter is not required," *Omnicare* omission claim "hinge[d] on what [the speaker] knew when it offered its opinion").

Plaintiff offers no rebuttal to *Omnicare*'s language or the cases interpreting it. Instead, Plaintiff cites cases that serve only to illustrate the need to demonstrate actual knowledge of contrary facts.[24] Defendants' motion discussed at length why Plaintiff's now-abandoned actual-knowledge allegations did not suffice, Mot. 39–47, and Plaintiff's unwillingness to confront that argument speaks volumes.[25] Opp. 47 n.21, 51.

## CONCLUSION

For these reasons and those in Defendant's motion, the CAC should be dismissed.

---

[24] Opp. 49–50 (citing *Rougier v. Applied Optoelectronics, Inc*, 2019 WL 6111516, at *1, *5 (S.D. Tex. Mar. 27, 2019) (involving a "*known* decrease in demand") (emphasis added); *In re Advance Auto Parts, Inc., Sec. Litig.*, 2020 WL 599543, at *4 (D. Del. Feb. 7, 2020) (relying on theory that "speaker omitted *known* material facts") (emphasis added); *Ramirez*, 334 F. Supp. 3d at 846 ("ExxonMobil *knew*" that certain "reserves no longer qualified as proved reserves") (emphasis added); *Sanchez v. Centene Corp.*, 407 F. Supp. 3d 831, 836 (E.D. Mo. 2019) (involving "all matters that were *known* to Defendants when the statements were made") (emphasis added); *Zwick Partners, L.P. v. Quorum Health Corp.*, 2018 WL 2933406, at *5 (M.D. Tenn. Apr. 19, 2018) ("there were 'triggering events' *known* to Defendants") (emphasis added)).

[25] Because this lack of actual knowledge proves fatal to the CAC's omission claim, the Court need not reach whether the allegedly omitted facts would otherwise be actionable under *Omnicare*. But even if it does, it should nevertheless reject that claim for reasons stated in Defendants' motion. Mot. 50–53.

Respectfully submitted,

BAKER BOTTS L.L.P.

By: */s/ David D. Sterling*

David D. Sterling
  *Attorney-In-Charge*
State Bar No. 19170000
Federal I.D. No. 07079
Amy Pharr Hefley
State Bar No. 24046046
Anthony J. Lucisano
State Bar No. 24102118
Federal I.D. No. 3369146
Elizabeth P. Furlow
State Bar. No. 24109899
Federal I.D. No. 3402815
910 Louisiana Street
Houston, Texas 77002
Telephone: (713) 229-1234
Fax: (713) 229-1522
david.sterling@bakerbotts.com
amy.hefley@bakerbotts.com
anthony.lucisano@bakerbotts.com
elizabeth.furlow@bakerbotts.com

**ATTORNEYS FOR DEFENDANTS**

**CERTIFICATE OF SERVICE**

I hereby certify that a true and correct copy of the foregoing document was served via ECF and/or electronic mail on all counsel of record on this 30th day of July, 2020.

*/s/ Amy Pharr Hefley*
Amy Pharr Hefley