## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

| | |
|---|---|
| **MIRIAM EDWARDS, Individually and on Behalf of All Others Similarly Situated,** | **Case No. 4:18-cv-04330-GCH** |
| **Plaintiff,** | **Hon. George C. Hanks, Jr.** |
| **v.** | |
| **MCDERMOTT INTERNATIONAL, INC., DAVID DICKSON, and STUART SPENCE,** | |
| **Defendants.** | |
| **JOHN ARDEN AHNEFELDT, ROBERT BROWER, JR., ROBERT BROWER, SR., KHANH L. BUI, JIGNESH CHANDARANA, KRUITIKA CHANDARANA, AMIRA YOUSUF CHOWDHURY, CHRISTOPHER COLIGADO, DANIEL GAD, EDWIN HOWELL, SIOE LIE HOWELL, DARREN HUNTING, ANNE INGLEDEW, SHITAL MEHTA, THOMAS CARL RABIN, ADAM SHULTZ, AMIT SOMANI, JAYAPRAKASH SRINIVASAN, AARTHI SRINIVASAN, CHRISTOPHER SWEDLOW and ALEXANDRE TAZI, on Behalf of Themselves and All Others Similarly Situated,** | **Case No.  4:20-cv-02539**<br><br>**Hon. Andrew S. Hanen** |
| **Plaintiffs,** | |
| **v.** | |
| **DAVID DICKSON, STUART A. SPENCE, and CHRISTOPHER A. KRUMMEL** | |
| **Defendants.** | |

## <u>TABLE OF CONTENTS</u>

INTRODUCTION ............................................................................................. 1

RELEVANT BACKGROUND AND PROCEDURAL HISTORY ....................................... 4

ARGUMENT ................................................................................................. 10

I.     *AHNEFELDT* SHOULD NOT BE CONSOLIDATED WITH *EDWARDS* ............ 10

   A.  Legal Standard ............................................................................ 10

   B.  Analysis ..................................................................................... 11

II.    THE NOTICE AND LEAD PLAINTIFF DEADLINE SHOULD
      NOT BE VACATED ...................................................................... 15

   A.  Legal Standard ............................................................................ 15

   B.  Analysis ..................................................................................... 17

CONCLUSION ............................................................................................... 23

## <u>TABLE OF AUTHORITIES</u>

<u>CASES</u>                                                                                                <u>Page(s)</u>

*In re Cyberonics Inc. Securities Litigation,*
    468 F. Supp. 2d 936 (S.D. Tex. 2006).............................................. 16, 17, 19, 20

*Dube v. Signet Jewelers Ltd.,*
    No. 16-CV-6728 (JMF)
    2017 U.S. Dist. LEXIS 57624 (S.D.N.Y. Apr. 14, 2017).............................................. 21

*Frazier v. Garrison I.S.D.,*
    980 F.2d 1514 (5th Cir. 1993) .............................................. 10

*In re Central European Distribution Corp.,*
    No. 11-6247 (JBS-KMW)
    2012 U.S. Dist. LEXIS 160248 (D.N.J. Nov. 8, 2012).............................................. 11, 14

*Hachem v. General Electric Inc.,*
    No. 17-CV-8457 (JMF)
    2018 U.S. Dist. LEXIS 62278 (S.D.N.Y. Apr. 11, 2018).............................................. 17

*Jones v. Cain,*
    600 F.3d 527 (5th Cir. 2010) .............................................. 19

*Kaplan v. S.A.C. Capital Advisors, L.P.*
    947 F. Supp. 2d 366 (S.D.N.Y. 2013) .............................................. 17

*In re Leapfrog Enterprises Securities Litigation,*
    No. C-03-05421 (RMW)
    2005 U.S. Dist. LEXIS 44899 (N.D. Cal. July 5, 2005).............................................. 15, 20

*In re Synergy Pharmaceuticals Inc. Securities Litigation,*
    No. 18-CV-873 (AMD) (VMS)
    2019 U.S. Dist. LEXIS 201363 (E.D.N.Y. Nov. 20, 2019).............................................. 20

*Neutron Depot, LLC v. Bankrate, Inc.,*
    No. 2:14-CV-192
    2016 U.S. Dist. LEXIS 84245 (S.D. Tex. Jun. 29, 2016).............................................. 11

*Oklahoma Law Enforcement Retirement System v. Adeptus Health Inc.*
  No. 4:17-CV-00449
   2017 U.S. Dist. LEXIS 140268 (E.D. Tex. Aug. 31, 2017) ........................................ 19

*Parker v. Hyperdynamics Corp.*,
  126 F. Supp. 3d 830 (S.D. Tex. 2015) .................................................... 10, 12

*Rizzo v. Wyeth, Inc.,*
  No. H-03-00425
  2010 U.S. Dist. LEXIS 64927 (S.D. Tex. Jun. 28, 2010) ............................................ 11

*Sayce v. Forescout Technologies, Inc.*,
  No. 20-cv-00076-SI
  2020 U.S. Dist. LEXIS 129646 (N.D. Cal. Jul. 22, 2020) ...................................... 10, 16

*Teamsters Local 445 Freight Division Pension Fund v. Bombardier Inc.,*
  No. 05 Civ. 1898 (SAS)
  2005 U.S. Dist. LEXIS 10780 (S.D.N.Y. June 1, 2005).......................................... 16, 19

*Vanleeuwen v. Keyuan Petrochemicals, Inc.*,
  No. CV 11-9495 PSG (JCGx)
  2013 U.S. Dist. LEXIS 72683 (C.D. Cal. May 9, 2013) ........................................ 17, 19

*Wenderhold v. Cylink Corp.,*
  188 F.R.D. 577 (N.D. Cal. 1999) .................................................................. 10

## STATUTES & RULES

Fed. R. Civ. P. 42
  Fed. R. Civ. P. 42 .......................................................................................... 10

Private Securities Litigation Reform Act of 1995
  15 U.S.C. § 78u-4(a)(1) ................................................................................ 15
  15 U.S.C. § 78u-4(a)(3)(A)...................................................................... 16, 22
  15 U.S.C. § 78u-4(a)(3)(B)............................................................... 14, 21, 22

## OTHER AUTHORITIES

  Federal Civil Procedure Before Trial § 12.107 ............................................. 19

**MEMORANDUM OF LAW OF *AHNEFELDT* PLAINTIFFS IN
OPPOSITION TO MOTION OF NOVA SCOTIA HEALTH
EMPLOYEES' PENSION PLAN TO CONSOLIDATE CASES
AND VACATE NOTICE AND LEAD PLAINTIFF DEADLINE**

Plaintiffs in *Ahnefeldt, et al. v. Dickson, et al.*, No. 4:20-cv-2539 (S.D. Tex.)

("*Ahnefeldt*"), by their undersigned attorneys, hereby oppose the motion of Nova Scotia

Health Employees' Pension Plan ("NSHEPP"), Lead Plaintiff in *Edwards v. McDermott

International, Inc., et al.*, No. 4:18-cv-4330 (S.D. Tex.) ("*Edwards*") for an Order: (1)

consolidating *Ahnefeldt* with and into *Edwards,* administratively closing *Ahnefeldt*, and

consolidating into *Edwards* all securities class actions against any or all defendants

subsequently filed in, or transferred to this District; (2) appointing NSHEPP as lead

plaintiff for the class-wide claims asserted in *Ahnefeldt*; (3) vacating the July 18, 2020

notice, pursuant to the Private Securities Litigation Reform Act of 1995 (the "PSLRA"),

that established the September 16, 2020 lead plaintiff deadline in connection with the

*Ahnefeldt* action and deeming any lead plaintiff motion filed in response to the July 18

notice as untimely; and (4) directing NSHEPP to publish a corrective notice to inform

investors that the September 16 lead plaintiff deadline in *Ahnefeldt* has been vacated.

## INTRODUCTION

NSHEPP's motion to consolidate cases and vacate the notice and lead plaintiff

deadline for the *Ahnefeldt* action is a naked ploy to (i) deprive investors that purchased or

otherwise acquired the securities of McDermott International, Inc. ("McDermott" or the

"Company") during the *Ahnefeldt* class period of the notice they are *required* to be

furnished under the PSLRA, and (ii) deny them the opportunity to participate in the class

action litigation by showing that they have the largest financial interest in the relief sought by the class.  Consolidation of the two actions is not sought for convenience and economy in administration, but, rather, as a means for NSHEPP to usurp control over the *Ahnefeldt* action.

Consolidation of related securities actions is appropriate where the complaints are based on the *same* public statements and reports.  That is not the case here.  *Edwards* and *Ahnefeldt* are brought on behalf of investors who purchased McDermott securities during ***different*** class periods that do not overlap.  The securities fraud claims in each action rely on ***different*** public statements and reports, made during ***different*** time periods, and that concern ***different*** transactions (*Edwards*: May 2018 merger transaction to ***acquire*** peer company Chicago Bridge & Iron Company N.V. ("CB&I")) (*Ahnefeldt*: public statements regarding ***sale process*** for Lummus Technology first announced on September 20, 2019).

The decision whether to consolidate necessarily requires an examination of the specific allegations of the operative complaints.  Because the differences between *Edwards* and *Ahnefeldt* are stark, NSHEPP's motion eschews reference to any specific allegation in the pleadings to establish the existence of common questions of fact. Instead, NSHEPP relies on broad generalizations that do not satisfy its burden.  Thus, the request to consolidate should be denied.

NSHEPP also seeks to vacate the *Ahnefeldt* PSLRA notice and lead plaintiff deadline based on its sweeping claim that the June 4, 2019 Order endowed it with control over all future securities fraud claims to be filed against McDermott and its management regardless of the factual basis for the claim or its time period.  NSHEPP requests that the

2

Court *reaffirm* it as lead plaintiff for the class-wide claims in *Ahnefeldt* per the June 4, 2019 Order despite the fact that it did not *affirm* NSHEPP as lead plaintiff for those claims in the first instance.  The claims of the *Ahnefeldt* class simply did not exist at the time the Order was entered.  NSHEPP's additional argument for vacating the *Ahnefeldt* notice and lead plaintiff deadline, because Plaintiffs did not participate in the January 2019 lead plaintiff selection process in *Edwards*, is equally illogical.

NSHEPP has provided no evidence to show that it purchased McDermott securities during the *Ahnefeldt* class period (from September 20, 2019 through January 23, 2020) and, thus, possesses an interest in any recovery to be allocated to *Ahnefeldt* class members.  NSHEPP nonetheless improperly seeks appointment as lead plaintiff for the class-wide claims in *Ahnefeldt* per the June 4, 2019 Order **without** demonstrating that it has the largest financial interest in the relief sought by the class during the *Ahnefeldt* class period or any expanded class period as required by the PSLRA.  Allowing NSHEPP to wrest control over the *Ahnefeldt* claims, which are vastly different from the *Edwards* claims, violates the letter and spirit of the PSLRA by unfairly excluding potentially qualified candidates from participating in the lead plaintiff selection process.  Further, permitting NSHEPP to serve as lead plaintiff for a class of which it is not a member, and exercise control over claims that it has not asserted and has no interest in prosecuting unduly prejudices Plaintiffs and other purported *Ahnefeldt* class members.

The motion should be denied in its entirety.

3

## RELEVANT BACKGROUND AND PROCEDURAL HISTORY

The *Edwards* action was commenced on November 15, 2018.  On January 15, 2019, following the publication of a November 16, 2018 notice (E-ECF No.[1] 24-1) ("*Edwards* Notice"),[2] NSHEPP moved (E-ECF Nos. 22-24) for an Order: (i) appointing NSHEPP as lead plaintiff on behalf of all persons and entities who purchased or otherwise acquired common stock of McDermott International, Inc. ("McDermott" or the "Company") during the class period extending between January 24, 2018 and October 30, 2018;[3] and (ii) approving its selection of Pomerantz LLP ("Pomerantz") as lead counsel.

On June 4, 2019, the Court entered an Order (E-ECF No. 84) ("Order") granting the motion.  It consolidated the action entitled *Public Employees' Retirement System of Mississippi v. McDermott, International, Inc.*, No. 4:19-cv-0135 (S.D. Tex.) into *Edwards*, and ruled that "[a]ny substantially similar actions relating to the allegations in

---

[1] For ease of reference, ECF citations to documents filed in the various actions will hereinafter referred to as follows: (i) documents filed in this action – "E-ECF"; (ii) documents filed in the bankruptcy proceeding captioned *In re McDermott International, Inc.*, Case No. 20-30336 (DRJ) (Bankr. S.D. Tex., Houston Div.) (the "Bankruptcy Proceeding") – "B-ECF"; and (iii) documents filed in *Ahnefeldt* – "A-ECF".

[2] The *Edwards* Notice sets forth in relevant part as follows:

> The complaint filed in this action alleges that throughout the Class Period, Defendants made materially false and/or misleading statements, as well as failed to disclose material adverse facts about the Company's business, operations, and prospects. Specifically, Defendants failed to disclose to investors: (1) that the Company was facing strong headwinds and would fail to meet revenue and earnings estimates; (2) that there were material problems with the integration of the CB&I business; (3) that certain CB&I projects were reasonably likely to incur higher costs; (4) that, as a result, the fair value of these CB&I projects would be materially impacted; and (5) that, as a result of the foregoing, Defendants' positive statements about the Company's business, operations, and prospects were materially misleading and/or lacked a reasonable basis.

[3] In connection with its motion (E-ECF No. 23 at 7; E-ECF No. 24-3 at 2), NSHEPP claimed that it had the largest financial interest in the relief sought in connection with the 10b-5 claims based on a single purchase of 25,052 shares of McDermott common stock on May 14, 2018 and losses of $318,682.

4

this case before other judges in this Court may on motion be similarly consolidated with the *Edwards* action." *Id*. at 1-2. With respect to the consolidated actions, the Court appointed NSHEPP as lead plaintiff for all claims under Section 10(b) of the Securities Exchange Act of 1934 ("Exchange Act"), and Public Employees' Retirement System of Mississippi ("MissPERS") as lead plaintiff for all claims under Section 14(a) of the Exchange Act. *Id*. at 2.

On October 4, 2019, NSHEPP filed an amended complaint (E-ECF No. 105) ("Amended Complaint"). It asserts claims under of Section 10(b) of the Securities Exchange Act of 1934 ("Exchange Act"), and Securities Exchange Commission ("SEC") Rule 10b-5 promulgated thereunder (collectively, "10b-5") on behalf of a class consisting of all persons and entities that purchased or otherwise acquired McDermott common stock between December 18, 2017 and September 17, 2019. *See* Am. Compl., ¶ 1. The Amended Complaint alleges that defendants violated 10b-5 by making materially false and misleading statements and/or omissions about certain undisclosed risks associated with the May 10, 2018 stock for stock merger transaction whereby CB&I was acquired by McDermott. *Id*., ¶¶ 78, 86. As summarized within the pleading:

> *During the 10(b) Class Period*, in press releases, SEC filings, and teleconferences with analysts and investors, *Defendants made extensive public statements about four large challenging CB&I projects* in the U.S. ("Four Focus Projects" or "Focus Projects") *that McDermott acquired as part of its May 2018 acquisition of CB&I*, two gas turbine projects known as the Calpine Gas Turbine Power Project … and the IPL Project … and two liquefied natural gas ("LNG") export facility projects known as the Freeport LNG Project … and the Cameron LNG Project …; (b) *the importance of McDermott's acquisition of CB&I's technology business, Lummus* … and McDermott's ability to integrate and operate that business as a post-Merger company despite the challenges posed by the Four Focus

5

Projects; and (c) *the strength and viability of McDermott's post-merger capital structure, balance sheet, liquidity, and financial health in light of its acquisition of CB&I*, and specifically the Four Focus Projects. …

*Id.*, ¶ 2 (emphasis added); *see also id.*, ¶¶ 135-305 (detailing alleged materially misleading statements made by McDermott, David Dickson, and Stuart Spence during the class period).   The Amended Complaint does not contain any allegations that investors were deceived or defrauded in connection with their class period purchases of McDermott stock by any post-class period public statement or report.   It does not mention the post-class period September 20, 2019 announcement regarding the Lummus Technology sale process.

On January 21, 2020, McDermott announced its entry into a restructuring transaction to equitize nearly all of the Company's debt, and that said transaction would be implemented through a joint prepackaged Chapter 11 plan of reorganization.   *See* McDermott Form 8-K (filed Jan. 21, 2020).   According to the Disclosure Statement for the Joint Chapter 11 Plan of Reorganization ("Disclosure Statement") and the Joint Chapter 11 Plan of Reorganization of McDermott and its Affiliates, as amended ("Chapter 11 Plan"), McDermott investors holding shares of common stock were not entitled to vote on whether to accept or reject the Chapter 11 Plan and, upon the effective date, McDermott investors' common shares shall be cancelled, released, and extinguished without any distribution.

On this news, Plaintiffs, in their capacity as purchasers of McDermott securities, organized as a group (the "Coligado Shareholder Group" or "CSG") and took action to protect their rights and the rights of other commonly situated McDermott shareholders.

6

As set forth in the accompanying Declaration of Christopher Coligado in Support of *Ahnefeldt* Plaintiffs' Opposition to Motion to Consolidated Case and Vacate Notice and Lead Plaintiff Deadline ("Coligado Declaration"), Plaintiffs retained and paid bankruptcy counsel to represent their interests in the Bankruptcy Proceeding, and searched for securities counsel to pursue their claims. *See* Coligado Decl., ¶¶ 2, 12, 20, 25-26, 34-35.

In February 2020, Christopher Coligado, one of the members of the Coligado Shareholder Group and one of the Plaintiffs in *Ahnefeldt*, contacted NSHEPP's counsel about representing Plaintiffs' claims against defendants. *Id.*, ¶¶ 12-13. As set forth in the Coligado Declaration, Mr. Coligado states that during a February 13, 2020 telephone call with Matthew Tuccillo at Pomerantz, Mr. Tuccillo declined the representation, telling Mr. Coligado, among other things, that: (i) **he *did not see a strong connection between Plaintiffs' claims and the claims in Edwards***; (ii) even if there was a strong connection between the claims, ***he would not add Plaintiffs' claims to Edwards by extending the class period beyond the September 17 end date***; (iii) that ***all the significant losses in value related to his clients occurred before September 17***, and there was little value in extending the class period to encompass the McDermott bankruptcy. *Id.*, ¶ 14.

Mr. Coligado responded that it was not Plaintiffs' intention to be lumped together with *Edwards* because, after reading the Amended Complaint, he too saw no link between the claims there concerning the May 2018 CB&I acquisition and Plaintiffs' claims about the September 2019 announcement of the sale process for Lummus Technology. Because the claims were manifestly different, Mr. Coligado inquired whether Mr. Tuccillo would file a separate action. *Id.*, ¶¶ 15-16.

7

As further set forth in the Coligado Declaration, Mr. Tuccillo rejected that proposal. He stated that Plaintiffs' proposed class period represented a small value drop in McDermott's market capitalization in comparison to the drop in the years prior. Mr. Tuccillo was not interested in trying to pursue Plaintiffs' claims because **he already represented claims covering the substantial majority of the drop in McDermott's market capitalization**. He told Mr. Coligado that his case is worth $2 billion in recovery and **there would not be much left to recover for the group because all the price drop and relevant events causing the major drop transpired prior to the group's purchases of the stock**. Mr. Tuccillo attempted to discourage Plaintiffs from pursuing it further as prosecuting the claims would, in his opinion, be cost prohibitive and not yield much in recovery as compared to the *Edwards* action. *Id.*, ¶ 16. Mr. Coligado confirmed to Mr. Tuccillo that Plaintiffs were nonetheless determined to pursue their claims. *Id.*, ¶ 19.

Plaintiffs later retained counsel who entered an appearance in the Bankruptcy Proceeding on behalf of the Coligado Shareholder Group on February 21, 2020. *See* Baker & Associates' entry of appearance (B-ECF No. 454). Plaintiffs filed an objection to the Disclosure Statement and Chapter 11 Plan (B-ECF No. 528) ("Objection") on March 3, 2020 to protect themselves and other commonly situated shareholders as to whom the Chapter 11 Plan would eliminate their shares of McDermott common stock and release their rights to assert claims against certain non-debtors (including claims arising under the federal securities laws). *Id.*, ¶¶ 45-50, 52-53, 57-60 & nn.8-9. Plaintiffs' counsel appeared at the March 12, 2020 Confirmation Hearing and participated in the cross-examination of witness and closing arguments. *See* Mar. 12, 2020 Hearing

8

Tr. (B-ECF No. 690), at 12:18-20, 18:19-19:5, 39:16-40:11, 62:12-66:15, 98:7-18, 114:17-115:19, 144:7-14, 169:24-171:23.   As a result of their actions, Plaintiffs successfully preserved their rights to pursue the claims asserted in *Ahnefeldt*.   *See* Confirmation Orders (B-ECF Nos. 665 & 684), ¶ 79 ("The Coligado Shareholder Group shall not release any Claims or Causes of Action against any Person or Entity pursuant to any provision of Article VIII of the Plan other the Debtors (as defined in the Plan) and the Reorganized Debtors (as defined in the Plan).").

After carefully screening and selecting securities counsel, Plaintiffs filed the complaint (A-ECF No. 1) ("Complaint") in *Ahnefeldt* on July 17, 2020.[4]  The Complaint asserts claims on behalf of a class consisting of all persons and entities that purchased or otherwise acquired McDermott securities between September 20, 2019 and January 23, 2020.  *See* Compl., ¶ 1.  It alleges that defendants violated 10b-5 by making materially false and misleading statements and/or omissions in connection with the September 20, 2019 press release announcing the plan for the near-term sale of Lummus Technology to strengthen the Company's balance sheet, and in subsequent disclosures stating that the Company was continuing to pursue the previously announced strategic alternatives process for Lummus Technology.  In truth, the public statements were made to conceal the acute liquidity crisis McDermott actually faced, "calm" McDermott's investors and its agitated vendor base, provide the Company time to negotiate and execute upon a prepackaged plan of reorganization, and avoid a freefall Chapter 11 filing.  *Id*., ¶¶ 3, 5, 39, 41-42, 47-54, 64-65, 67, 69-70, 74-75.

---

[4] The attached Civil Cover Sheet (A-ECF No. 1-3) identifies *Edwards* as a related case.

## ARGUMENT

### I. *AHNEFELDT* SHOULD NOT BE CONSOLIDATED WITH *EDWARDS*

#### A. Legal Standard

Rule 42(a) of the Federal Rule of Civil Procedure grants the district courts with substantial discretion to consolidate cases that involve common questions of law or fact. *See* Fed. R. Civ. P. 42(a).  "Consolidation is permitted as a matter of convenience and economy in administration, though not permitted if it would prejudice the rights of the parties."  *Parker v. Hyperdynamics Corp.*, 126 F. Supp. 3d 830, 835 (S.D. Tex. 2015) (internal quotations and citations omitted).  Factors considered by a district court in ruling on a motion to consolidate include: (1) whether the cases are in the same court; (2) common parties; (3) common questions of law or fact; (4) risk of prejudice or confusion versus a risk of inconsistent adjudications; and (5) judicial economy.  *Frazier v. Garrison I.S.D.*, 980 F.2d 1514, 1531 (5th Cir. 1993).  "In securities actions where the complaints are based on *the same public statements and reports* consolidation is appropriate *if there are common questions of law and fact and the defendants will not be prejudiced*."  *Wenderhold v. Cylink Corp.*, 188 F.R.D. 577, 583 (N.D. Cal. 1999) (internal quotations and citation omitted) (emphasis added).  *See also Sayce v. Forescout Techs., Inc.*, 2020 U.S. Dist. LEXIS 129646, at *9-*10 (N.D. Cal. Jul. 22, 2020) ("Since the question of consolidation turns on commonality of law and fact, it is relevant to examine the specific allegations presented in the operative complaints.").

B.      **Analysis**

*Edwards* and *Ahnefeldt* are before different judges in the Southern District of Texas.  Each action is brought by different plaintiffs asserting claims on behalf of investors who purchased or otherwise acquired McDermott securities during different class periods.  *See, e.g., Rizzo v. Wyeth, Inc*., 2010 U.S. Dist. LEXIS 64927, at *4-*5 (S.D. Tex. Jun. 28, 2010) (acknowledging factors weighing against consolidation).

While *Edwards* and *Ahnefeldt* both assert 10b-5 claims, those claims are based on different public statements and reports.  *Edwards* and *Ahnefeldt* thus do not share common questions of fact.  They involve different disclosures, made by defendants during different and non-overlapping time periods, about two entirely different transactions.  The absence of common questions of fact thus weighs heavily against consolidation.  *Neutron Depot, LLC v. Bankrate, Inc.*, 2016 U.S. Dist. LEXIS 84245, at *8 (S.D. Tex. Jun. 29, 2016).

Since *Edwards* and *Ahnefeldt* do not share common questions of fact, there is no risk of inconsistent adjudications.  There is little economy in administration to be obtained by consolidating the cases.  Further, in light of NSHEPP's expressed disinterest in pursuing Plaintiffs' 10b-5 claims, *see* Coligado Decl., ¶ 16,[5] Plaintiffs would undoubtedly be prejudiced if *Edwards* and *Ahnefeldt* are consolidated and NSHEPP is appointed lead plaintiff for their claims.  *See, e.g., In re Cent. European Distrib. Corp.*, 2012 U.S. Dist. LEXIS 160248, at *29 (D.N.J. Nov. 8, 2012) (indication by lead plaintiff

---

[5] *See* Mem. at 4 (acknowledging conflict of interest to the extent that *Edwards* and *Ahnefeldt* actions purport to "implicat[e] the same insurance policies.").

that they will not prosecute the Grodko action claims would prejudice Grodko and Nelis by subjecting them to a lead plaintiff that would neglect their claims).  Thus, application of the *Frazier* factors here weighs strongly against consolidation.

   *Parker v. Hyperdynamics Corp*., *supra*, is instructive.   There, after the lead plaintiff appointment in the first filed action (the "Parker action") to represent 10b-5 claims on behalf of investors that purchased Hyperdynamics stock during one particular class period, related actions were filed on behalf of investors that purchased the stock during a *different* class period and that asserted 10b-5 claims based on *different* public statements concerning a *different* transaction (FCPA violations). *Id*. at 834.  There, like here, the lead plaintiff in the Parker action moved to consolidate the related actions under the originally ordered PSLRA leadership structure.  *Id*.  Unlike here, however, the lead plaintiff simultaneously filed an amended complaint that extended the class period to encompass the investor class in the related actions, added the additional defendants named therein, and included the new FCPA-based allegations. *Id*. at 834-35.[6]

   In denying consolidation the district court noted the absence of any authority to support consolidating the FCPA-based claims with ordinary securities fraud claims.  *Id*.

---

[6] Pomerantz (NSHEPP's counsel here) represented the HDY Investor Group ("HDY") in one of the related actions. Pomerantz, on behalf of HDY, opposed the lead plaintiff's consolidation motion taking positions that are wholly inconsistent with the ones it asserts on behalf of NSHEPP here. *See Parker,* No. 4:12-cv-0999 (S.D. Tex.) ECF No. 65 at 1 ("Cuneo [(the lead plaintiff)] has brought a new case under an old docket number, in a transparent attempt to evade … the [PSLRA]'s lead-plaintiff selection mechanism. The Court should reject this gambit. Cuneo is litigating a two-year-old case, involving unrelated issues that occurred during an entirely distinct class period. *That does not give him license to direct the course of all future litigation that might ever be filed against* [*defendants*].") (emphasis added); *id*. at 3 ("Through … consolidation … Cuneo plainly intends to co-opt the claims of … HDY … – which are unrelated to the claims for which Cuneo was appointed lead plaintiff in the Parker Action. The Court should not reward his gamesmanship."); ECF No. 73 at 1 ("At bottom, Cuneo's Motion … represents nothing more than circumvention of … the PSLRA lead-plaintiff selection mechanism.").

at 837.[7]  It also acknowledged that the *only* notice published for the Parker action was the one provided in connection with the initial class period, and the existence of questions of whether lead plaintiff relied on any of the newly asserted FCPA-based omissions and would vigorously litigate a claim based on those omissions.  *Id.*

NSHEPP's motion similarly fails to cite authority to support the consolidation of the manifestly different claims here.  The only PSLRA notice for the *Edwards* action was published on November 16, 2018 – nearly a year before the beginning of the *Ahnefeldt* class period.  That notice says nothing about the claims asserted in *Ahnefeldt* since it was published well before the public statements and reports giving rise to Plaintiffs' claims were first made.  Serious doubt also exists whether NSHEPP would vigorously litigate the claims in *Ahnefeldt* given the clearly expressed disinterest by NSHEPP's counsel to prosecute those claims.  *See* Coligado Decl., ¶¶ 14, 16.

NSHEPP nonetheless argues that consolidation should be granted because *Edwards* and *Ahnefeldt* both allege 10b-5 claims "by a majority of the same [d]efendants … during overlapping time periods involving functionally the same wrongdoing, *i.e.*, public misstatements and omission concerning McDermott's Lummus technology business segment and McDermott's financial distress and potential bankruptcy."  Mem. at 11.  Significantly, NSHEPP's papers provide *no* support for the argument.  They do not identify any specific allegations from the pleadings in *Edwards* and *Ahnefeldt* to show

---

[7] NSHEPP's citation of *In re Royal Ahold N.V. Sec. & ERISA Litig.*, 219 F.R.D. 343 (D. Md. 2003) is inapposite since the essential claims and facts alleged in *Edwards* and *Ahnefeldt* are not remotely similar.

that the two actions share common questions of fact, let alone overlap in time period. This is fatal to their motion.

NSHEPP attempts to diffuse this disabling deficiency in proof with the misleading claim that "the only new facts alleged in the [*Ahnefeldt*] complaint that were not pled here relate to events that occurred subsequent to filing of the [Amended Complaint] in early October 2019 ...."   Mem. at 12.   NSHEPP also misleadingly asserts that it "expressly sought leave to further amend to allege the additional, more recent factual developments."  *Id*. at 12-13 (citing Opp'n to Mot. to Dismiss (E-ECF No. 145) at 34-35).  Neither explanation is sufficient.

NSHEPP oddly argues that consolidation should be granted because *Edwards* and *Ahnefeldt* "are subject to the PSLRA."  Mem. at 13.   The PSLRA does not require consolidation.  *Cent. European Distrib. Corp*., 2012 U.S. Dist. LEXIS 160248, at *25.  It permits consolidation of actions "on behalf of a class asserting substantially the same claim or claims arising under this chapter ...."   15 U.S.C. § 78u-4(a)(3)(B)(ii).   The PSLRA *requires* that lead plaintiff decisions are not to be made until after ruling on pending motions to consolidate.  *Id*.[8]   The fact that the two actions are subject to the PSLRA, however, is not a reason to consolidate them.

---

[8] NSHEPP cites additional authority as support for the argument that consolidation is warranted where the cases are subject to the PSLRA. *See* Mem. at 13-14 (citing *In re Bank of Am. Corp. Sec., Derivative & ERISA Litig*., 2010 U.S. Dist. LEXIS 377799 (S.D.N.Y. Apr. 9, 2010), *In re CenturyLink Sales Practices & Sec. Litig.,* 2018 U.S. Dist. LEXIS 66926 (D. Md. Apr. 21, 2018), *In re Facebook, Inc., IPO Sec. & Derivative Litig.,* 2013 U.S. Dist. LEXIS 115647 (S.D.N.Y. Aug. 10, 2013)).  None of these cases support that proposition.

Finally, NSHEPP argues that *Ahnefeldt* should be consolidated into *Edwards* and under the control of NSHEPP because Plaintiffs' "took no action prior to July 2020, despite being investors who were notified of the *Edwards* action in November 2018 and the opportunity to seek a lead plaintiff appointment in January 2019." Mem. at 14-15. The statement is objectively false. *See* Coligado Decl., ¶¶ 2, 12-26, 30-32, 34-35. NSHEPP and their counsel are fully aware of the extraordinary actions undertaken by Plaintiffs prior to July 2020 following the discovery of defendants' deception in connection with the announced sale process for Lummus Technology.

NSHEPP's insistence that Plaintiffs "were notified of the *Edwards* action in November 2018 and the opportunity to seek a lead plaintiff appointment in January 2019," Mem. at 14-15, is baffling. Plaintiffs were not notified in November 2018 about claims arising from public statements and reports first made in September 2019 about the Lummus Technology sale process. Thus, "there was no way for [Plaintiffs] to move to be appointed lead plaintiff[s] in [*Edwards*] because [Plaintiffs]' class period fell completely outside that of [*Edwards*]." *In re Leapfrog Enters., Inc. Sec. Litig.*, 2005 U.S. Dist. LEXIS 44899, at *9 n.1 (N.D. Cal. Jul. 5, 2005).

Therefore, consolidation should be denied.

## II.   THE NOTICE AND LEAD PLAINTIFF DEADLINE SHOULD NOT BE VACATED

### A.   Legal Standard

The PSLRA sets forth the procedure for selecting lead plaintiffs in securities class actions. *See* 15 U.S.C. § 78u-4(a)(1). The PSLRA requires a plaintiff to publish "not

later than 20 days after the date on which the complaint is filed … a notice advising members of the purported plaintiff class … of the pendency of the action, the claims asserted therein, and the purported class period."  15 U.S.C. § 78u-4(a)(3)(A)(i).  "[N]ot later than 60 days after the date on which the notice is published, any member of the purported class may move the court to serve as lead plaintiff of the purported class."  15 U.S.C. § 78u-4(a)(3)(A)(ii). "This provision is intended to encourage the most capable representatives of the plaintiff class to participate in class action litigation[,] parties with significant holdings in issuers, whose interests are strongly aligned with the class of shareholders."  *In re Cyberonics Inc. Sec. Litig*., 468 F. Supp. 2d 936, 938 (S.D. Tex. 2006).

Under the PSLRA, if a new or amended complaint is filed, "encompassing the same claims and securities, but somewhat different class periods, courts have generally found that the efficiency cost of republication outweighs the marginal fairness gains of notifying class members of an extended class period."  *Teamsters Local 445 Freight Div. Pension Fund v. Bombardier Inc*., 2005 U.S. Dist. LEXIS 10780, at *6-*7 (S.D.N.Y. Jun. 1, 2005).  However, if a new complaint is filed that includes "entirely new factual and legal allegations against [defendants], as to separate transactions, affecting a new class of plaintiffs, entire classes of potential lead plaintiffs are left out of the notice procedure." *Id*. at *7 (internal quotations and citation omitted).  *See Sayce*, 2020 U.S. Dist. LEXIS 129646, at *16 ("Where changes to a securities class action complaint 'make it likely that individuals who could now be considered potential lead plaintiffs would have disregarded the earlier notice,' courts have ordered lead plaintiff to republish the notice under the

PSLRA.") (quoting *Kaplan v. S.A.C. Capital Advisors, L.P.*, 947 F. Supp. 2d 366, 367 (S.D.N.Y. 2013)); *Vanleeuwen v. Keyuan Petrochemicals, Inc.*, 2013 U.S. Dist. LEXIS 72683, at \*13-\*14 (C.D. Cal. May 9, 2013) (compiling cases) (republication required when "pleading affects a new class of plaintiffs, asserts new legal theories or claims, or is based on new factual allegations.").

"The inquiry into whether republication is required is qualitative, turning on *a comparison of the two complaints* and an assessment of whether … entire classes of potential plaintiffs [were] left out of the notice procedure." *Hachem v. Gen. Elec. Inc.*, 2018 U.S. Dist. LEXIS 62278, at \*4 (Apr. 12, 2018) (internal quotations and citations omitted) (emphasis added). "Where membership of a class is substantially expanded by the filing of a [new] complaint that adds new claims, fairness dictates that those new class members ought to be informed of the existence of pending claims that may affect their rights." *Cyberonics*, 468 F. Supp. 2d at 939 (internal quotations and citation omitted).

### B.   Analysis

Plaintiffs published a notice as required by the PSLRA after filing the Complaint. *See* Pls. Notice (Mem., Ex. 2) (E-ECF No. 148-2).[9]   NSHEPP criticizes the publication of

---

[9] In stark contrast to the *Edwards* Notice (*see*, note 2, *supra*), Plaintiffs' notice describes the claims in *Ahnefeldt* as follows:

> On September 20, 2019, McDermott announced in a press release its recent receipt of unsolicited approaches to acquire Lummus Technology … with a valuation exceeding $2.5 billion.   McDermott told investors that it was "exploring strategic alternatives to unlock the value of Lummus Technology," that the "process of exploring strategic alternatives is part of our ongoing efforts intended to improve McDermott's capital structure," and "we plan to use the proceeds from any transaction involving Lummus Technology to strengthen our balance sheet."   These disclosures received widespread attention and the price for McDermott common stock increased 50% in premarket trading to close on that day at $2.01 per share, up 27.22%.

the notice as redundant and duplicative of the November 2018 notice published to advise purported class members of the lead plaintiff deadline in *Edwards*. *See* Mem. at 16. As demonstrated above, however, NSHEPP' motion fails to undertake any (let alone qualitative) of the pleadings in *Edwards* and *Ahnefeldt*. *See*, § I.B, *supra*. It also fails to explain how the November 2018 notice alerted reasonable investors of their claims relating to the 2019 announcement of the Lummus Technology sale process.

It is nonetheless NSHEPP's position that the Order appointed it as lead plaintiff to oversee *any* and *all* potential [10b-5] claims asserted in any securities class action involving defendants, whether or not the allegations underlying those claims are substantially similar to those in *Edwards*. Despite the fact that the essential claims and underlying allegations in *Edwards* and *Ahnefeldt* are completely different, and it is evident that individuals who could be considered potential lead plaintiffs in *Ahnefeldt* would have disregarded the November 2018 notice because the actionable public statements and reports had not yet been made by defendants, NSHEPP requests that Plaintiffs' notice and lead plaintiff deadline in *Ahnefeldt* be vacated.

As relevant case law makes clear, "[w]here membership of a class is substantially expanded by the filing of an amended complaint that adds new claims, fairness dictates

---

The disclosures were materially misleading. There was not any plan for a near-term sale of Lummus Technology to strengthen McDermott's balance sheet. The disclosures were made as part of a scheme to artificially inflate the market price of McDermott's common stock, calm the market and allow the Company to negotiate a prepackaged Chapter 11 bankruptcy restructuring plan.

On January 21, 2020, the truth emerged when McDermott announced its entry of a Restructuring Support Agreement in connection with a Joint Prepackaged Chapter 11 Plan of Reorganization. After the announcement, trading of McDermott common stock was halted. When it resumed, the price for McDermott common stock plummeted to close at $0.12 per share.

that those new class members ought to be informed of the existence of the pending claims that may affect their rights." *Cyberonics, supra* (internal quotation and citation omitted). *See Oklahoma Law Enforcement Ret. Sys. v. Adeptus Health Inc.*, 2017 U.S. Dist. LEXIS 140268, at *13-*14 (E.D. Tex. Aug. 31, 2017) ("If a new complaint is filed that includes 'entirely new factual and legal allegations against [defendants], as to separate transactions, affecting a new class of Plaintiffs,' then a new notice and an additional sixty-day period is justified.") (quoting *Bombardier*, 2005 U.S. Dist. LEXIS 10780, at *7).  As the Complaint contains entirely new facts to support the securities fraud claims against defendants, Plaintiffs' notice and lead plaintiff deadline should not be vacated. *See Vanleeuwen*, 2013 U.S. Dist. LEXIS 72683, at *16 (Publication of notice required because "[b]y adding a new class, supported by entirely new factual allegations, Plaintiffs dramatically alter[ed] the contours of the lawsuit.") (internal quotations and citation omitted).  NSHEPP's arguments to the contrary should be rejected.

*First*, NSHEPP erroneously contends that the claims in *Edwards* and *Ahnefeldt* are substantially the same.  *See* Mem. at 16-17.  The claims are not remotely the same and NSHEPP has failed to raise any argument in its opening papers addressing the specific allegations from the pleadings in *Edwards* and *Ahnefeldt* to demonstrate otherwise.  It cannot do so for the first time upon reply.  *See Jones v. Cain*, 600 F.3d 527, 541 (5th Cir. 2010) ("Arguments raised for the first time in a reply brief are generally waived.") (citations omitted); *accord* Federal Civil Procedure Before Trial § 12.107 (5th Cir. ed. 2008) ("Reply papers should be limited to matters raised in the opposition papers. It is

improper for the moving party to 'shift gears' and introduce new facts or different legal arguments in the reply brief than presented in the moving papers.").

Contrary to NSHEPP's suggestion, the Complaint is not a "later-filed" pleading "that simply chang[es] the class period or includes an additional defendant or a closely related new claim …." Mem. at 17 (internal quotations omitted). The Complaint asserts claims on behalf of investors who purchased or acquired McDermott common stock or call options during a different class period and relied on different public statements and reports made during a different time periods. Further, the claims involve a different transaction.[10] The differences between *Edwards* and *Ahnefeldt* are substantial and thus require publication of the PSLRA notice. *See, e.g., Kaplan, supra* (republication of PSLRA notice required to reflect new class, class period, and claims); *Cyberonics*, 468 F. Supp. 2d at 940 (republication warranted where membership of a class is substantially expanded by complaint that adds new claims and expands class period). Additionally, Plaintiffs' claims in *Ahnefeldt* "give rise to the possibility that a more appropriate lead plaintiff exists, a party which was not apprised of its inclusion in the lawsuits by the original notice." *Cyberonics, supra*.[11]

---

[10] NSHEPP's citation of authority concerning later-filed complaints with minor changes to overlapping class periods or closely related new claims is inapposite. *See* Mem. at 17. *Compare Leapfrog*, 2005 U.S. Dist. LEXIS 44899, at *8-*10 (distinguishing cases and ruling republication warranted when a new complaint asserts new claims on behalf of new class and alters the contours of the lawsuit).

[11] NSHEPP was appointed lead plaintiff in *Edwards* based on its purchase of 25,052 shares of McDermott common stock and a claimed loss of $318,682. *See*, note 3, *supra*. By comparison, Plaintiffs' aggregate purchases of McDermott common stock during the *Ahnefeldt* class period exceed 215,000 shares and two of the largest *individual* losses in the Plaintiffs' group far exceed NSHEPP's $318,682 loss. By requesting that the Court to consolidate *Ahnefeldt* with *Edwards* and appoint it as lead plaintiff over the class-wide claims in *Ahnefeldt*, NSHEPP attempts to evade the requirements of the PSLRA and improperly prevent any potentially qualified lead plaintiff movant from showing that it (and not NSHEPP) is best suited to

*Second*, NSHEPP makes the incoherent argument that the deadline for Plaintiffs to move for lead plaintiff with respect to the claims in *Ahnefeldt* expired on January 15, 2019.  *See* Mem. at 18.  The lead plaintiff deadline could not possibly have been January 15, 2019.  The class claims asserted in *Ahnefeldt* did not exist at that time.  NSHEPP also falsely contends that Plaintiffs forfeited their right to seek appointment as lead plaintiff in *Ahnefeldt* by not moving on or before the January 15, 2019 deadline, and that absent such a bar date "every PSLRA case with a subsequent development would be usurped by follow-on complaints carefully designed to evade earlier complaints and lead plaintiff orders."  *See* Mem. at 18.  This contention is erroneous.  *See Leapfrog*, *supra* ("[T]here was *no way* for Parnassus to move to be appointed lead plaintiff in Leapfrog because Parnassus' class period *fell completely outside* that of Leapfrog. Accordingly, *the concerns of endless rounds of new lead plaintiff selection* that caused the court *in Hevesi* to decline to revisit the lead plaintiff issue *are not present here*.") (emphasis added).[12]

*Third*, NHSEPP's *ipse dixit* insistence that, pursuant to the Order, the Court vested it with the sole authority to prosecute the claims in *any* and *all* related actions without regard to whether or not they are substantially similar to *Edwards*, *see* Mem. at 19, does not make it so.  The argument is incompatible with the provisions of the PSLRA designed

---

represent the interest of the expanded class. *See Dube v. Signet Jewelers Ltd.*, 2017 U.S. Dist. LEXIS 57624, at*5–*6 (S.D.N.Y. Apr. 14, 2017) (citing 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I)(bb)).

[12] It is also not well taken given the vastly different argument Pomerantz advanced on behalf of HDY in *Parker*. *Id.*, ECF No. 73 at 6-7 ("The PSLRA notice provisions were put in place to prevent professional plaintiffs and *self-serving counsel from hijacking securities actions* …. In direct contravention of the PSLRA and established case law, Cuneo would have this Court approve his appointment based on the Parker Notice without investors of the proposed consolidated Cuneo Class Period ever receiving notice. … Cuneo's ploy to subsume the FCPA Actions represents nothing more than an end-run around the PSLRA notice requirements in a transparent attempt to hijack the FCPA Actions.") (emphasis in original).

to vest plaintiffs with greater control over the litigation of their claims, as opposed to lawyer-driven litigation, and which adopt a presumption that the most adequate plaintiff is the person or group of persons that has the largest financial interests in the relief sought by the class. *See* 15 U.S.C. § 78u-4(a)(3)(A) & (B)(iii). It is also incompatible with reality; no lead plaintiff has been appointed to represent the class-wide claims in *Ahnefeldt*. And, while NSHEPP contends here that it has every incentive to pursue the claims of *Ahnefeldt* class members, *see* Mem. at 19,[13] NSHEPP's counsel stated exactly the opposite to Plaintiffs. *See* Coligado Decl., ¶ 16.

*Last*, as NSHEPP and its counsel are undoubtedly aware, Plaintiffs led the effort to preserve and then prosecute the claims asserted in *Ahnefeldt*. *Id*., ¶¶ 12-26, 33-35. NSHEPP's contention that Plaintiffs did nothing, *see* Mem. at 19-20, is belied by the record in the Bankruptcy Proceeding as well as its communications with NSHEPP's counsel.

NSHEPP's other argument that appears to suggest Plaintiffs' purportedly are inadequate to serve as lead plaintiffs for *Ahnefeldt*, *id*. at 20-21, is, at best, premature.

---

[13] NSHEPP citation of *In re Synergy Pharms. Inc.*, 2019 U.S. Dist. LEXIS 201363 (E.D.N.Y. Nov. 20, 2019), is distinguishable. There, the district court addressed the conflict of interest issue *after* finding that the three related actions (i) arose out of the same subject matter, (ii) involved common questions of law and fact, and (iii) asserted overlapping class periods. *Id*. at *11-*14 & n.6 (citing *Cent. European Distrib. Corp*., *supra*). That is not the case here. Furthermore, objections to the rulings in *Synergy* are *sub judice*.

## CONCLUSION

For the reasons set forth above, Plaintiffs respectfully request that NSHEPP's Motion to Consolidate Cases and to Vacate Additional Notice and Lead Plaintiff Deadline be denied.

Dated: August 18, 2020

Respectfully submitted,

**WOLF HALDENSTEIN ADLER**
  **FREEMAN & HERZ LLP**

*/s/ Malcolm T. Brown*
Malcolm T. Brown
Attorney-in-Charge
NY State Bar No. 2918498
270 Madison Avenue
New York, NY 10016
Telephone: (212) 545-4600
Facsimile: (212) 686-0114
brown@whafh.com

**ATTORNEY-IN-CHARGE FOR**
**PLAINTIFFS**

**Of Counsel:**

Thomas H. Burt
NY State Bar No. 2869550
WOLF HALDENSTEIN ADLER
FREEMAN & HERZ LLP
270 Madison Avenue
New York, NY 10016
Telephone: (212) 545-4600
Facsimile: (212) 686-0114
burt@whafh.com

Marisa C. Livesay
CA State Bar No. 223247
WOLF HALDENSTEIN ADLER
FREEMAN & HERZ LLP
750 B Street, Suite 1820
San Diego, CA 92101
Telephone: (619) 239-4599
Facsimile: (619) 234-4599
livesay@whafh.com

Jean C. Frizzell
State Bar No. 07484650
Federal I.D. 14529
Michael K. Oldham
State Bar No. 00798405
Federal I.D. No. 21486
REYNOLDS FRIZZELL LLP
1100 Louisiana, Suite 3500
Houston, TX 77002
Telephone: (713) 485-7200
Facsimile: (713) 485-7250
jfrizzell@reynoldsfrizzell.com
oldham@reynoldsfrizzell.com

### CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing document was served via

ECF and/or electronic mail on all counsel of record on August 18, 2020.

*/s/ Malcolm T. Brown*
Malcolm T. Brown