UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| MIRIAM EDWARDS, Individually and On Behalf of All Others Similarly Situated, <br><br> Plaintiff, <br><br> v. <br><br> MCDERMOTT INTERNATIONAL, INC., DAVID DICKSON, STUART SPENCE, <br><br> Defendants | **Case No. 4:18-cv-4330-GCH (Consolidated)** <br><br> **CLASS ACTION** |
| JOHN ARDEN AHNEFELDT, ROBERT BROWER, JR. ROBERT BROWER, SR., KHANH L. BUI, JIGNESH CHANDARANA, KRUITIKA CHANDARANA, AMIRA YOUSUF CHOWDHURY, CHRISTOPHER COLIGADO, DANIAL GAD, EDWIN HOWELL, SIOE LIE HOWELL, DARREN HUNTING, ANNE INGLEDEW, SHITAL MEHTA, THOMAS CARL RABIN, ADAM SHULTZ, AMIT SOMANI, JAYAPRAKASH SRINIVASAN, AARTHI SRINIVASAN, CHRISTOPHER SWEDLOW, and ALEXANDRE TAZI, on Behalf of Themselves and All Others Similarly Situated, <br><br> Plaintiffs, <br><br> v. <br><br> DAVID DICKSON, STUART A. SPENCE, and CHRISTOPHER A. KRUMMEL, <br><br> Defendants | **Case No. 4:20-cv-02539-ASH** <br><br> **CLASS ACTION** |

**REPLY MEMORANDUM OF LAW IN SUPPORT OF
MOTION BY §10(B) LEAD PLAINTIFF
NOVA SCOTIA HEALTH EMPLOYEES' PENSION PLAN
TO CONSOLIDATE CASES AND
TO VACATE ADDITIONAL NOTICE AND LEAD PLAINTIFF DEADLINE**

# **TABLE OF CONTENTS**

I. INTRODUCTION ..................................................................................................1

II. ARGUMENT..........................................................................................................2

    A. The Related Action Should be Consolidated Into This Action...............................2

        1. The Standards For Consolidation Are Met..........................................................2

        2. Consolidation Is Not Premature .........................................................................7

    B. *Ahnefeldt*'s PLSRA Deadline Should Be Vacated And Corrective Notice Sent ..................................................................................................................8

    C. Various Communications Do Not Counsel Otherwise ...........................................9

III. CONCLUSION.....................................................................................................10

# **TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*Armbruster v. Cellcyte Genetics Corp.*, No. 08-0047RSL,
   2008 WL 1929903 (W.D. Wash. Apr. 28, 2008) ........................................................................6

*Chun v. Fluor Corporation*, No. 3:18-cv-01338-X,
   2020 WL 2745527 (N.D. Tex. May 26, 2020) ............................................................2, 4, 5, 8

*Hacker v. Peterschmidt*, No. C06-03468,
   2006 WL 2925683 (N.D. Cal. Oct. 12, 2006) ...........................................................................6

*Hotlzscher v. Dynegy, Inc.*, No. CIV.A. H-05-3293,
   2006 WL 626402 (S.D. Tex. Mar. 13, 2006) ............................................................................7

*In re BP p.l.c. Sec. Litig.*,
   758 F. Supp. D 428, 432-433 (S.D. Tex. 2002) .....................................................................6, 7

*In re Cent. European Distrib. Corp.*,
   2012 U.S. Dist. LEXIS 160248 (D.N.J. Nov. 8, 2012) ............................................................10

*In re Central European Distribution Corp. Sec. Litig.*,
   No. Civ 11-6247, 2012 WL 5465799 ........................................................................................7

*Miller v. U.S. Postal Serv.*,
   729 F.2d 1033 (5th Cir. 1984) ...................................................................................................6

*Neutron Depot, LLC v. Bankrate, Inc.*,
   2016 U.S. Dist. LEXIS 84245 (S.D. Tex. Jan. 29, 2016) ..........................................................3

*Parker v. Hyperdynamics Corp.*,
   126 F. Supp. 3d 830 (S.D. Tex. 2015) ...................................................................................4, 7

*Pinkowitz v. Elan Corp.*, No. 02 CIV 4948 (WK),
   2002 WL 1822118 (S.D.N.Y. July 29, 2002) ...........................................................................6

*Wenderhold v. Cylink Corp.*,
   188 F.R.D. 577 (N.D. Cal. 1999) ..............................................................................................3

*Zola v. TD Ameritrade, Inc.*, No. 8:14-CV-288,
   2015 WL 847450 (D. Neb. Feb. 26, 2015) ...............................................................................7

**Statutes**

15 U.S.C. §78u-4(a)(3)(B)(ii) ..........................................................................................................8


## **Rules**

Fed. R. Civ. P. 23 ............................................................................................................................8

Fed. R. Civ. P. 42 ............................................................................................................................6

**I.     INTRODUCTION**

Contrary to the *Ahnefeldt* plaintiffs' hyperbole (E-ECF 151 at 1-2), the §10(b) Lead Plaintiff's Motion to Consolidate (E-ECF 147) is not a "naked ploy," based on a "sweeping claim," to wrongly "usurp" anything.[1]  This Court's June 2019 Lead Plaintiff Order appointed the §10(b) Lead Plaintiff, pursuant to the PSLRA, to serve as "lead plaintiff for ***all claims*** related to Section 10(b) of the Securities Exchange Act" and expressly contemplated that "[a]ny substantially similar securities class actions relating to the allegations in this case…may on motion be similarly consolidated with the *Edwards* action."  E-ECF 84 at 1-2 (emphasis added).  Amidst McDermott's ongoing stock slide during late Q3 2019, the §10(b) Lead Plaintiff twice extended the deadline to amend, over Defendants' objection, to October 3, 2019, when it filed a 262-page amended complaint (E-ECF 105) with substantive allegations concerning McDermott's impending bankruptcy and potential sale of its Lummus Technology Business extending through September 27, 2019, just *days* before (*see, e.g.*, ¶¶320-325).  Clearly, events were still unfolding.

In one week in January 2020, Defendants filed their suggestion of bankruptcy (E-ECF 120) and their motion to dismiss (E-ECF 125).  Facing simultaneous litigation in the bankruptcy court, increased demands on limited insurance, and soon, a global pandemic, §10(b) Lead Plaintiff opted to oppose the motion, both to avoid resetting the clock on dispositive motion practice and to ensure that the §10(b) claims remain on the same procedural track as the parallel §14(a) claims being pursued by the §14(a) Lead Plaintiff.  ***At no point in time did the §10(b) Lead Plaintiff or the §10(b) Lead Counsel, <u>ever</u>, disclaim any pursuit of the <u>§10(b) claims</u> they were Court appointed to oversee.***  The *Ahnefeldt* plaintiffs' contrary suggestion is ***false***, contradicted by the Declaration of §10(b) Lead Counsel, as well as the available documentary evidence.

Instead, the *Ahnefeldt* plaintiffs present nothing more than a run-of-the-mill tag-along securities class action, impermissible under the PSLRA, of the kind that ***rountinely*** gets

---

[1]   For ease of reference, this Reply brief adopts the naming protocol in the *Ahnedfeldt* plaintiffs' Opposition brief at n.1, whereby the *Edwards* docket is cited as "E-ECF," the McDermott bankruptcy docket is cited as "B-ECF," and the *Ahnedfeldt* docket is cited as "A-ECF."  Herein, all Exhibits to the Tuccillo Declaration in support of §10(b) Lead Plaintiff's Motion are referred to as "Consol. Exh. ___," while all exhibits submitted by the *Ahnedfeldt* plaintiffs are referred to as "*Ahnefeldt* Exh. ____."

consolidated into prior-filed actions that are already overseen by Court-appointed lead plaintiffs, even when they plead a claim based on a future event that "simply did not exist" (E-ECF at 3) when the lead plaintiff order entered. That the *Ahnefeldt* plaintiffs raced to the courthouse to file a carefully pled 47-page complaint that prematurely picks up the narrative on September 20, 2019, one week *prior* to its trail off in the §10(b) Lead Plaintiffs' complaint and runs it through to McDermott's bankruptcy first affords them no "control" over the class-wide claims that the §10(b) Lead Plaintiff has already been appointed to lead and, indeed, was pursuing in two courts at the time. To be clear, the *Ahnefeldt* plaintiffs are free to pursue their claims **individually**, as such opt outs are common in securities fraud litigation. However, they are precluded by the PSLRA, applicable precedent, and this Court's Lead Plaintiff Order, from doing so on a class-wide basis.

Thus, consolidation is warranted. Even when faced with far more compelling circumstances by tag-along class action plaintiffs, courts routinely order consolidation and vacate improperly initiated, duplicative PSLRA lead plaintiff processes. *See, e.g.*, *Chun v. Fluor Corporation*, No. 3:18-cv-01338-X, 2020 WL 2745527 (N.D. Tex. May 26, 2020).

## II.   ARGUMENT

### A.   The Related Action Should be Consolidated Into This Action

#### 1.   The Standards For Consolidation Are Met

Both the *Ahnefeldt* plaintiffs and Defendants highlight certain marginal differences in the two actions. *See* E-ECF 151 at 2, 11; E-ECF 152 at 3, 4, 5-6.[2] However, as discussed in §10(b) Lead Plaintiff's Opening Brief, it is **undisputed** that the alleged factual allegations (*e.g.*, McDermott's capital structure / liquidity problems, McDermott's ownership/potential sale of the Lummus Technology Business, rumors of its potential bankruptcy) ***strongly overlap***,[3] that there

---

[2]   Defendants highlight that *Edwards* and *Ahnefeldt* are, for the moment, pending before different judges (E-ECF 151 at 11), notwithstanding that the §10(b) Lead Plaintiff filed a Notice of Related Action. The point is nevertheless of no moment, as this Court's Lead Plaintiff Order expressly contemplates consolidation of "any substantially similar securities class actions relating to the allegations in this case before other judges in this Court." *See* E-ECF 84 at 2.

[3]   The *Ahnefeldt* plaintiffs repeatedly press (E-ECF 151 at 2, 10, 13-14, 19-20) for specific paragraphs evidencing the factual overlap described in the Opening Brief at 11-12, which are facially apparent regarding: McDermott's historical operations, 2017 revenue and earnings, and the "One McDermott Way" (*compare* E-ECF 105 at 57-61 *with* A-ECF 1 at 29-32), public statements about the Four Focus Projects (*compare* E-ECF 105 at 2-4, 10-13, 87-217, 307-

- 2 -

are *multiple common Defendants* (Dickson and Spence), that the factual *time periods* at issue *overlap* (the §10(b) complaint alleges factual developments and partial corrective disclosures through September 27, 2020 – one week into the *Ahnefeldt* class period) while the class periods as currently pled are *adjacent*, and the legal claims (Exchange Act §§10(b) and 20(a) and SEC Rule 10b-5) are *identical*. *See* E-ECF 148 at 11-12. The §10(b) Lead Plaintiff also stated, in writing in its motion to dismiss opposition, an *intent to seek amendment* to include the more recent, non-overlapping developments leading up to McDermott's bankruptcy filing that are alleged in the *Ahnefeldt* complaint, which is merely a *continuation* of the narrative already pled by the §10(b) Lead Plaintiff. *See* E-ECF 145 at 34-35.[4] Thus, for the reasons stated in the Opening Brief, consolidation is warranted. *See* E-ECF 148 at 10-16.[5]

The *Ahnefeldt* plaintiffs' conclusory statements that "there is no risk of inconsistent adjudications" and "little economy in administration" (E-ECF 151 at 11) utterly lacks merit. If

---

319 *with* A-ECF 1 at 62, 85), McDermott's true financial condition and liquidity problems (*compare* E-ECF 105 at 7-8, 16-17, 276-305, 320-325 *with* A-ECF 1 at 2-3, 5, 45-46), the impacts of rumors regarding McDermott's potential bankruptcy (*compare* E-ECF 105 at 14-15, 320-321 *with* A-ECF 1 at 4, 6, 42, 71-72), McDermott's ownership, ability to keep, and potential sale of the Lummus business(*compare* E-ECF 105 at 5-6, 16, 242-275, 322-324 *with* A-ECF 1 at 39-41, 45, 51-55, 66, 72, 74-75), McDermott's stock price movement in late September 2019 (*compare* E-ECF 105 at 320-325 *with* A-ECF 1 at 47), McDermott's seeking a bridge loan in September 2019 (*compare* E-ECF 105 at 16-17, 324-325 *with* A-ECF 1 at 17, 19, 21, 48), Defendants Dickson and Spence and their control over McDermott (*compare* E-ECF 105 at 29-31 *with* A-ECF 1 at 16-19, 22-24), Defendants' scienter as evidenced by motive and opportunity allegations regarding personal financial gain (*compare* E-ECF 105 at 19-21, 369-376 *with* A-ECF 1 at 57, 89-95) and their knowledge/recklessness as signatories and SOX certifiers of public statements, via the core operations doctrine, or due to violations of McDermott's code of ethics (*compare* E-ECF 105 at 388-394 *with* A-ECF 1 at 87-88, 97-99), the efficiency of the market for McDermott stock as evidence of loss causation and a fraud-on-the-market presumption (*compare* E-ECF 105 at 403, 408 *with* A-ECF 1 at 103, 109-110) and the Exchange Act §10(b) and §20(a) claims (*compare* E-ECF 105 at 419-435 *with* A-ECF 1 at 1, 119-137). In addition, as stated in the Opening Brief at 12-13, the §10(b) Lead Plaintiff stated in its motion to dismiss opposition that a future amendment would address, *inter alia*, McDermott's bankruptcy, the SEC investigation, the DOJ Grand Jury, and Defendants Spence's resignation. *Compare* E-ECF 145 at 34-35 *with* A-ECF 1 at 27, 33-38, 62-63, 68, 76, 85).

[4] Contrary to Defendants' opposition, §10(b) Lead Plaintiff did not commit to *only* amending, in the future, to augment the scienter pleading. Its motion to dismiss opposition gave a non-exhaustive list of potential amendments, but any future amendment would be guided by both developments in the factual record and the Court's guidance in its forthcoming Order on the pending, fully-briefed motion to dismiss.

[5] The claim (E-ECF 151 at 2, 10) that complaints must be "based on the *same* public statements and reports" in order for them to be consolidated, overstating a sentence as binding (when it is not) in *Wenderhold v. Cylink Corp.*, 188 F.R.D. 577, 583 (N.D. Cal. 1999). The exaggerated premise is rejected by the body of case law consolidating cases, *e.g.*, with widely differing class periods or claims. The other authority (E-ECF at 11) is distinguishable. In *Neutron Depot, LLC v. Bankrate, Inc.*, 2016 U.S. Dist. LEXIS 84245, at *8 (S.D. Tex. Jan. 29, 2016), a non-securities fraud case, the court rejected plaintiff's motion to consolidate cases against separate defendants who infringed upon plaintiff's trademark in different ways, did not work together, and did not profit from one another's actions.

left unconsolidated, **both** actions will litigate, during a contiguous / slightly overlapping time period, issues such as whether Defendants Dickson and Spence acted with scienter, whether McDermott's stock traded in an efficient market, and whether McDermott's investors should be certified to seek class-wide recovery for their investment losses in the leadup to its bankruptcy. All of these issues are ripe for conflicting rulings (a fact likely not lost on Defendants).

The recent decision on a motion to consolidate in *Chun v. Fluor Corporation*, No. 3:18-cv-01338-X, 2020 WL 2745527 (N.D. Tex. May 26, 2020), where §10(b) Lead Counsel serves in the same capacity, is instructive.[6] There, after appointment by the court, lead plaintiffs filed a consolidated amended complaint alleging Exchange Act §10(b) claims arising from misrepresentations and omissions principally concerning the company's ***bidding and performance*** on ***four fixed-price projects***. *Id.* at *1. While a motion to dismiss was pending, the SEC announced an investigation implicating the company's ***revenue recognition*** on ***sixteen projects*** during a time period that *began well past* the original class period covered by the lead plaintiff order (and hence, represented "new" claims) and *extended well beyond* the end of both the original and first amended/extended class periods.[7] *Id.* A large, institutional investor filed a tag-along class action, with a ***different, later class period*** (not addressed in the original PSLRA notice), alleging §10(b) claims arising from these new factual developments. *Id.* A month later, the court granted defendants' motion to dismiss the lead plaintiffs' complaint, with leave to amend. *Id.* After another month, the lead plaintiffs filed an amended complaint that expanded the class period and subsumed the allegations of the prior-filed tag-along complaint. *Id.* The lead plaintiffs then moved to consolidate and asked that the court vacate the tag-along case's lead plaintiff deadline.

---

[6]  The §10(b) Lead Plaintiff respectfully submits, particularly given the Court's Lead Plaintiff Order appointing it to oversee "**all claims**" related to Exchange Act §10(b), given its prior-stated intent for future amendment to include the additional facts at issue, and given that the *Ahnefeldt* plaintiffs pled **identical** §10(b) claims starting within the ***last week*** of the time period alleged in the §10(b) complaint, that the *Ahnefeldt* plaintiffs' cited authority is inapposite. *See* E-ECF 151 at 11-13 and n.6 citing (*Parker v. Hyperdynamics Corp.*, 126 F. Supp. 3d 830, 834-835 (S.D. Tex. 2015) (consolidation sought for *different* legal claims – FCPA and securities fraud claims)

[7]  Indeed, in the *Chun* litigation, the original complaint and the lead plaintiff process was based on a class period extending from August 14, 2013 through May 3, 2018 (*see* No. 3:18-cv-01338-X, Dkt. No. 1 ¶1), while the first amended complaint dismissed by the court alleged an expanded class period of August 14, 2013 through October 10, 2018 (*id.*, Dkt. No. 47 ¶1). The tag-along action alleged a class period extending all the way through February 14, ***2020***. *See* Dkt. No. 3:20-cv-00518-X, Dkt. No. 1.

*Id.* at *2. The tag-along plaintiff cross-moved to strike the amended pleading and to reopen the lead plaintiff process, because lead plaintiffs ***expanded the class period by 22 months***, ***expanded the factual scope from 4 to 16 projects***, and purportedly ***exceeded the scope of the lead plaintiff order***. *Id.* at *2, *5. Due to statutory timelines, briefing in the tag-along case's duplicative PSLRA lead plaintiff process started. *Id.* at *4. In initial briefs, the tag-along plaintiff claimed a $63 million loss, while a new lead plaintiff movant, with whom the tag-along plaintiff then teamed up, claimed a $130 million loss – ***a $193 million total loss*** – as compared against a $2,000 loss in the expanded period by the lead plaintiffs. *See* No. 3:20-cv-00518-X (N.D. Tex.), Dkt. No. 30 at 1. Yet, even in this context, the *Chun* court observed that: (i) both cases were pending before it and involved a common defendant, (ii) the lead plaintiffs' amendment served to subsume issues of law and fact in the tag-along case, (iii) judicial efficiencies would increase and resources would be conserved by only having to rule on a single class certification motion, and (iv) consolidation avoided risks of prejudice and confusion that could arise from overlapping issues. *Id.* at *4. Thus, the court ***<u>granted</u> the lead plaintiffs' motion to consolidate***, ***reaffirmed their control and oversight over the <u>entire</u> litigation***, denied the tag-along plaintiff's motion to strike lead plaintiffs' amendment expanding the class period (by 22 months) or to reopen the lead plaintiff process, and ***issued an order mooting and halting the duplicative lead plaintiff process*** underway in the tag-along case. *See* 2020 WL 2745527 at *6.

This decision fatally undercuts the oppositions. The *Chun* tag-along plaintiffs, like the *Ahnefeldt* plaintiffs (E-ECF 151 at 2, 3), argued that the claims arose in different class periods, that their claims were not covered by the original PSLRA notice, and that they had a purportedly greater motivation to pursue the claims – arguments rejected by the Court. The Defendants argued that the §10(b) Lead Plaintiff lacks a "monopoly" over the §10(b) claims it was Court appointed to oversee and that it would face no prejudice if the tag-along *Ahnefeldt* case were to proceed in parallel on a class-wide basis. *See* E-ECF 152 at 9-10. Yet, consistent with *Chun*, the Lead Plaintiff Order here appointed §10(b) Lead Plaintiff to oversee "***all claims*** related to §10(b) of the

Exchange Act" (E-ECF 84), including, quite obviously those that are a continuation of the existing allegations arising in the final week of the time period already alleged.

Defendants' argument (E-ECF 152 at 5-10) particularly rings hollow, given their ***own*** prior motion to consolidate the §10(b) (*Edwards*) and the §14(a) (*Mississippi*, No. 4:19-cv-0135) cases here. *See* E-ECF No. 55. They noted that the two cases were filed at different times, involved different time periods, raised different legal claims (§10(b) versus §14(a) of the Exchange Act), arose from different legal theories (one focused solely on the CB&I merger vote, one not), and gave rise to different purported lead plaintiff processes and deadlines. *Id.* at 1-3. Yet, they forcefully argued that under Fed. R. Civ. P. 42(a), "[t]he overlap [between cases] need not be complete – far from it." *See id.* at 4 (quoting, *inter alia*, *Miller v. U.S. Postal Serv.*, 729 F.2d 1033, 1036 (5th Cir. 1984) and *In re BP p.l.c. Sec. Litig.*, 758 F. Supp. D 428, 432-433 (S.D. Tex. 2002) (consolidation warranted even where "there are significant differences among the claims," so long as "there are also substantial commonalities, and the [ ] claims involve 'overlapping [d]efendants and a common core of facts and legal issues'") (quotation omitted)). They added that "courts consolidate even if 'the actions [ ] diverge in a number of ways,' including when '[n]ot every complaint agrees on the precise confines of the class period,'" such that "[a]t the end of the day, what matters is whether the two classes 'alleged substantially overlapping causes of action." *Id.* at 6 (quoting *Pinkowitz v. Elan Corp.*, No. 02 CIV 4948 (WK), 2002 WL 1822118, at *3 (S.D.N.Y. July 29, 2002) and *Hacker v. Peterschmidt*, No. C06-03468, 2006 WL 2925683, at *4 (N.D. Cal. Oct. 12, 2006)). They continued, "These basic consolidation principles are amplified further in the context of securities class actions," as the PSLRA's purpose was to "promote[ ] efficiency, conserve[ ] judicial resources, and foster[ ] uniform decision-making while avoiding inconsistent results." *Id.* at 4 (quoting *Armbruster v. Cellcyte Genetics Corp.*, No. 08-0047RSL, 2008 WL 1929903, at *1 (W.D. Wash. Apr. 28, 2008)). They also argued: "Consolidating the two actions would prevent largely duplicative motions to dismiss, and if the claims survive dismissal, duplicative discovery, motions for summary judgment, and trials – precisely the sort of efficiency Rule 42(a) and the PSLRA seek to accomplish." *Id.* at 7. These arguments apply with equal force

now.[8]  Moreover, as Defendants cited authority states, "The district court may order consolidation even where the parties are opposed to it." *In re Enron Corp. Sec., Deriv. & "ERISA") Litig.*, 2007 WL 446051, at *1 (S.D. Tex. Feb. 7, 2007) (cited in E-ECF 152 at 5).

### 2.    Consolidation Is Not Premature

Defendants claim consolidation is "premature" because there is a fully-briefed motion to dismiss in *Edwards* while *Ahnefeldt* is at an earlier stage *See* E-ECF 152 at 2, 4.  Yet, that will often be the case when tag-along plaintiffs seek improperly to piggy-back a second class action on an earlier-filed one through creative pleading and a duplicative lead plaintiff process.  The PSLRA expressly prohibits such maneuvers.  *See* Opening Br. at 13-14, 19.  Under the PSLRA, there can only be one Court-appointed lead plaintiff, who retains *sole* discretion to decide whether and when to expand the class period.  Upon consolidation, the *Ahnefeldt* action will cease to assert class-wide claims (as versus individual claims, which the *Ahnefeldt* plaintiffs are free to pursue on an opt-out basis like in the newly filed *Kingstown* action Defendant reference in E-ECF 152 at 3 n.1), and any future amendments and dispositive briefing of class-wide claims will occur in *Edwards* under the direction of §10(b) Lead Plaintiff and §10(b) Lead Counsel.

Defendants' claim that consolidation can be revisited at a later stage (*see* E-ECF 152 at 2, 4, 8-9), *e.g.*, after their pending motion to dismiss in *Edwards* is decided,[9] fundamentally ***misreads the PSLRA***, which ***requires*** that any pending motions to consolidate be decided ***before*** any

---

[8]    Defendants' cited cases (E-ECF 152 at 7-8) are distinguishable.  In *Parker v. Hperdynamics Corp.*, 126 F. Supp. 3d 830, 835, 836 (S.D. Tex. 2015), the cases sought to be consolidated raised claims under different federal statutes – Exchange Act §10(b) and the Foreign Corrupt Practices Act.  In *In re Central European Distribution Corp. Sec. Litig.*, No. Civ 11-6247 (JBS-KMW), 2012 WL 5465799, at *0 (D.N.J. Nov. 8, 2012), the existing lead plaintiffs affirmatively "indicated that they will not prosecute the [related action] claims."  Here, while §10(b) Lead Counsel, properly, declined to take on the *Ahnefeldt* plaintiffs' individual breach of duty / unjust enrichment claims, §10(b) they have ***never*** declined to prosecute the class-wide Exchange Act §10(b) claims they were appointed to lead.

[9]    Defendants' cited cases (E-ECF 152 at 9-10) are distinguishable.  In *Hotlzscher v. Dynegy, Inc.*, No. CIV.A. H-05-3293, 2006 WL 626402, at *5 (S.D. Tex. Mar. 13, 2006), the court resolved the pending motion to dismiss by ruling that the plaintiffs ***lacked standing*** to even bring the ERISA claims there at issue, such that the dismissal with prejudice was required.  Here, Defendants did not (and cannot) raise any standing issue in their motion to dismiss in *Edwards*.  In *Zola v. TD Ameritrade, Inc.*, No. 8:14-CV-288, 2015 WL 847450, at *1, *3 (D. Neb. Feb. 26, 2015), the five separate actions concerned allegations of improper routing of customer orders and raised an array of disparate legal claims, including breach of contract, unjust enrichment, breach of duty, common law fraud and misrepresentation, violations of a state consumer protection act, and Exchange Act §10(b) claims.  Here, §10(b) Lead Counsel expressly declined to bring such disparate claims on behalf of the *Ahnefeldt* plaintiffs when asked.

motions seeking appointment as lead plaintiff. *See* 15 U.S.C. §78u-4(a)(3)(B)(ii). Even assuming, *arguendo*, the improper lead plaintiff process in *Ahnefeldt* was allowed to proceed (which it should not), by statute, this motion **must** be decided **before** the Court could even reach the contested lead plaintiff motions that would be filed. Defendants correctly read the PSLRA in February 2019, when they argued, concerning their **own** consolidation motion: "Under the PSLRA, the Court must rule on Defendants' motion to consolidate *before* appointing a lead plaintiff in either the §10(b) or §14(a) Actions." *See* E-ECF 55 (emphasis original). The PSLRA has not been amended since then.

### B. *Ahnefeldt*'s PLSRA Deadline Should Be Vacated And Corrective Notice Sent

The *Ahnefeldt* plaintiffs repeatedly assert that they could not have moved for a lead plaintiff appointment in *Edwards* because the notice did not cover the claims they artfully pled starting in September 2019 – overlapping with the final week of factual allegations in the *Edwards* §10(b) complaint and continuing onward. *See, e.g.*, E-ECF 151 at 15, 22. Yet, that circumstance happens routinely in securities litigation, as illustrated by the *Chun* decision discussed *supra*.[10] That is particularly the case where most investors will be members of both the *Edwards* and the *Ahnefeldt* classes, given their contiguous class periods. Thus, their claim of unfair exclusion from the lead plaintiff process (E-ECF 151 at 3) rings hollow.[11] *See China Agritech*, ("With notice and the opportunity to participate…, there is little reason to allow plaintiffs who passed up those opportunities to enter the fray several years after class proceedings first commenced.")

Moreover, the *Ahnefeldt* plaintiffs are subject to unique defenses rendering them unfit to represent **any** class under Fed. R. Civ. P. 23, including their unwieldy group size and resulting atypicality/adequacy issues. *See* Opening Brief, E-ECF 148 at 5-6, 20-21. They fail to refute these

---

[10]  Moreover, they have *not* established that **no member** of their 21-person group purchased also McDermott stock during the *Edwards* class period that was the subject of its notice and lead plaintiff process. Purchases of McDermott stock during that time period by **any** of the 21 *Ahnefeldt* plaintiffs would have permitted them to seek to be appointed lead. Absent such a proffer, they have failed to refute the argument that they could and should have moved for lead plaintiff appointment by the PSLRA-imposed deadline on January 15, 2019. *See* Opening Brief, E-ECF at 19-21.

[11]  Instead, the *Ahnefeldt* plaintiffs claim that the §10(b) Lead Plaintiff failed to provide evidence of an economic interest in the expanded time period at issue on this Motion. *See* E-ECF 151 at 3. While such proof is unnecessary, for the record, if / when the §10(b) *Edwards* Class Period is expanded to included the class period alleged in the *Ahnefeldt* complaint, the §10(b) Lead Plaintiff's potentially recoverable losses do increase. *See* Tuccillo Decl. ¶33.

arguments, calling them simply "premature." *See* E-ECF 151 at 22. Despite the pages devoted to their actions in McDermott's bankruptcy (E-ECF 151 at 6-7, 8-9, 22; Coligado Decl. E-ECF 151-7 at ¶¶20-24), it is clear that they preserved ***only*** their own ***<u>individual</u>*** rights to pursue claims. *See* Tuccillo Decl. ¶¶25-27; Consol. Exh. E; *Ahnefeldt* Exh. 3).  Their Objection ***failed to reference*** class action securities fraud claims under Exchange Act §10(b) and instead stated that "the Shareholders Group should be allowed to pursue" claims regarding "the Debtor's decision to enter bankruptcy [which] acted to benefit itself, its management, directors and officers, certain insiders, and its creditors at the expense of the shareholders." *See Ahnefeldt* Exh. 3, B-ECF 528 at 15 ¶42, 18 ¶60.  Likewise, the Confirmation Order states ***only*** that the specific 21 members of the *Ahnefeldt* plaintiffs' group are deemed to have opted out of the third-party releases in the Plan and the Confirmation Order.  *See* Consol. Exh. E at 83 ¶79.  It is silent as to putative class members.

By contrast, the §10(b) Lead Plaintiff not only filed a Reservation of Rights expressly referencing class-wide claims, it also obtained robust Confirmation Order provisions that ***expressly*** carves out the ***federal securities law claims*** of the §10(b) Lead Plaintiff, the §14(a) Lead Plaintiff and the ***class members*** at issue in the *Edwards* action and ***expressly imposes significant document retention and discovery obligations*** on the debtors and reorganized debtors, *i.e.*, the bankrupt company that is not even a named party in the *Ahnefeldt* action.  *See* Tuccillo Decl. ¶¶29-32, Consol. Exhs. E at 79-80 ¶¶73-75 F.  Whereas class members are highly vulnerable in the *Ahnefeldt* action, they are fully protected in the *Edwards* action overseen by the §10(b) Lead Plaintiff.

### C. Various Communications Do Not Counsel Otherwise

Defendants express concern that §10(b) Lead Counsel did not seek their pre-filing consent. *See* E-ECF 152 at 2. As discussed in the Tuccillo Decl. ¶7, under LR 7.1(D)(1)-(2), §10(b) Lead Counsel first confirmed that the "respondent," the *Ahnedfeldt* plaintiffs, did not consent to consolidation.  Given both that §10(b) Lead Plaintiff is not a party to the *Ahnedfeldt* action, and as such does not have opposing counsel in it *per se*, and that any further attempt to "try to reach agreements on the relief requested" would have been futile given the *Ahnedfeldt* plaintiffs'

opposition, §10(b) Lead Counsel did not thereafter reach out to Defendants' counsel per Court Procedure 6.C.1., believing any obligations under local rules and practices to have been satisfied.

The *Ahnefeldt* plaintiffs assert that the §10(b) Lead Plaintiff and §10(b) Lead Counsel have expressed "disinterest" or somehow disclaimed pursuit of a portion of the Exchange Act §10(b) claims at issue. *See* E-ECF 151 at 7-8, 11, 13; Coligao Decl., E-ECF 151-7 at ¶¶12-19. This claim is **_categorically false_**, as evidenced by the Tuccillo Decl. ¶¶8-20; Consol. Exhs. A, B. Various of the *Ahnefeldt* plaintiffs contacted no fewer than **ten** attorneys from **_five plaintiff-side law firms_** during February - May 2020 searching for someone to take their case – all declined. *Id.* The case pitch at that time – as memorialized in contemporaneous emails and voicemails, a factual summary prepared by the *Ahnefeldt* plaintiffs, and the *Ahnefeldt* plaintiffs' own filings in the McDermott Bankruptcy – was for an *individual* lawsuit bringing **breach of duty / unjust enrichment claims**. *Id.* ¶¶10, 14-17, 25-27; Consol. Exh. B, C, E; *Ahnefeldt* Opposition Exh. 3. **Nowhere**, in **any** of these materials, do the words "Exchange Act §10(b)" or "class action" appear. *Id.* It was only after the *Ahnefeldt* plaintiffs' current counsel – the 6th law firm they contacted – were retained that the claims transformed into a tag-along class action. This metamorphosis was likely due to the very economic difficulties in pursuing individual claims, which §10(b) Lead Counsel explained to one of the *Ahnefeldt* plaintiffs back in February 2020. *See* Tuccillo Decl. ¶16. Significantly, at no point did §10(b) Lead Counsel commit to any pursuit or non-pursuit of any portion of the §10(b) claims at issue or any extension or non-extension of the Class Period at issue. *See* Tuccillo Decl. ¶16.[12] Thus, §10(b) Lead Counsel expressly disagrees with the assertions made in the *Ahnefeldt* Opposition at 7-8, 11, 13, 22 and the Coligado Decl. ¶¶14, 16, 17. *See* Tuccillo Decl. ¶¶16-17, 19. Defendants' cited authority (E-ECF 151 at 11-12), *In re Cent. European Distrib. Corp.*, 2012 U.S. Dist. LEXIS 160248, at *29 (D.N.J. Nov. 8, 2012), is thus inapposite.

### III.  CONCLUSION

§10(b) Lead Plaintiff respectfully urges the Court to its Motion, in full.

---

[12] It is telling that the *Ahnefeldt* plaintiffs' counsel failed to respond to repeated requests by §10(b) Lead Counsel that they identify the purported basis for their pre-filing claim (by email) that such a position had been taken. *See* Tuccillo Decl. ¶¶8-9, 12.

Dated: August 25, 2020              Respectfully submitted,
                                    **POMERANTZ LLP**

                                    <u>/s/Matthew L. Tuccillo</u>
                                    Matthew L. Tuccillo
                                    (S.D. Tex. Federal Bar # 1467939)
                                    Jeremy A. Lieberman
                                    (S.D. Tex. Federal Bar Number 1466757)
                                    J. Alexander Hood II
                                    (S.D. Tex. Federal Bar Number 3086579)
                                    Jennifer Banner Sobers
                                    (*Admitted Pro Hac Vice*)
                                    600 Third Avenue, 20th Floor
                                    New York, NY 10016
                                    Telephone: (212) 661-1100
                                    Facsimile: (212) 661-8665
                                    Email: jalieberman@pomlaw.com
                                    Email: mltuccillo@pomlaw.com
                                    Email: ahood@pomlaw.com

                                    *Counsel for §10(b) Lead Plaintiff Nova Scotia Health Employees' Pension Plan and Lead Counsel for the §10(b) Class*

                                    **THE BRISCOE LAW FIRM, PLLC**

                                    <u>/s/Willie C. Briscoe</u>
                                    Willie C. Briscoe
                                    Texas Bar No.: 24001788
                                    Southern District No.: 25157
                                    1980 Park Oak Blvd.
                                    Houston, TX  77056
                                    Telephone: 713-752-2600
                                    Facsimile: 832-201-9950
                                    wbriscoe@thebriscoelawfirm.com

                                    *Attorney-In-Charge, Counsel for §10(b) Lead Plaintiff Nova Scotia Health Employees' Pension Plan, and Liaison Counsel for the §10(b) Class*

- 12 -

## CERTIFICATE OF SERVICE

This is to certify that on August 25, 2020, a true and correct copy of the foregoing document was filed on the Court's CM/ECF electronic filing system, and that by virtue of this filing, all attorneys of record will be served electronically with true and correct copies of this filing.

/s/ *Matthew L. Tuccillo*
Matthew L. Tuccillo