# WOLF HALDENSTEIN ADLER FREEMAN & HERZ LLP

### Providing Exemplary Legal Service Since 1888

MALCOLM T. BROWN
DIRECT DIAL: 212-545-4714
FACSIMILE: 212-545-4653
Brown@whafh.com

270 MADISON AVENUE
NEW YORK, NY 10016
212-545-4600

SYMPHONY TOWERS
750 B STREET - SUITE 2770
SAN DIEGO, CA 92101
619-239-4599

111 WEST JACKSON
SUITE 1700
CHICAGO, IL 60604
312-391-5059

May 12, 2021

**VIA ECF**

Honorable George C. Hanks, Jr.
United States District Judge
United States Courthouse
United States District Court
Southern District of Texas
515 Rusk Street, Room 6202
Houston, TX 77002

> Re:  *Edwards v. McDermott, Int'l, Inc., et al.,* No. 4:18-cv-4330
> *Ahnefeldt, et al., v. Dickson, et al.,* No. 4:20-cv-2539

Dear Judge Hanks:

Wolf Haldenstein Adler Freeman & Herz LLP, along with Reynolds Frizzell LLP, are counsel for Plaintiffs in *Ahnefeldt, et al., v. Dickson, et al.*, No. 4:20-cv-2539 ("*Ahnefeldt*").  We regret this intrusion and do not believe that the letter campaign initiated yesterday by counsel for lead plaintiff Nova Scotia Health Employees' Pension Plan ("Nova Scotia") in *Edwards v. McDermott International, Inc., et al.*, 4:18-cv-4330 ("*Edwards*") is timely or appropriate. However, to the extent the Court chooses to consider the letters, we offer the following in response to the May 12, 2021 letter from counsel for lead plaintiff Nova Scotia.

Counsel's March 12 letter points to *Chun v. Fluor Corp.*, No. 3:18-CV-1338-X, 2020 U.S. Dist. LEXIS 91862 (N.D. Tex. May 26, 2020), as somehow dispositive that Nova Scotia should be appointed lead plaintiff with respect to the class-wide claims asserted in *Ahnefeldt* having *never* purchased McDermott International, Inc. ("McDermott") securities during the *Ahnefeldt* class period, or credibly moved for lead plaintiff in that action insofar as it did not suffer any losses in connection with securities it did not purchase.  *Chun* is inapposite.

In *Chun*, the lead plaintiffs filed an amended complaint that incorporated all the allegations of a related securities action, and then moved to consolidate the related action and to vacate the notice and lead plaintiff deadline.  *Id.* at *3-*4.  The plaintiff in the related action subsequently moved to intervene in the *Chun* action and strike lead plaintiffs' amended complaint, and, in the alternative, vacate the lead plaintiff order and restart the lead plaintiff selection process.  *Id.* at *4-*5.  The *Chun* court dismissed as moot lead plaintiffs' motion to vacate and denied the motion of plaintiff in the related action to restart the lead plaintiff selection

Honorable George C. Hanks, Jr.
United States District Judge
United States Courthouse
May 12, 2021
Page 2

process. It ruled that lead plaintiffs' expansion of the class period did not dramatically alter the nature of the lawsuit, and the new facts alleged in the amended complaint constituted merely "a continuation of the conduct" alleged prior to the amendment. *Id.* at *14-*16.

Unlike *Chun*, the class period, claims and issues in *Ahnefeldt* are not incorporated, encompassed or subsumed by any pleading filed in *Edwards* by Nova Scotia. *Ahnefeldt* is the only action to assert claims on behalf of investors that purchased McDermott securities based on allegedly false and misleading statements and/or omissions made during the September 20, 2019 through January 23, 2020 class period. The PSLRA notice published for the *Edwards* action on *November 16, 2018* did not and could not possibly alert reasonable investors of their claims relating to the *September 20, 2019* announcement of the Lummus Technology sale process.

Lead counsel in *Edwards* similarly relied on *Chun* as dispositive in *Sayce v. Fourscout Technologies, Inc.*, No. 20-cv-0076-SI, 2020 U.S. Dist. LEXIS 129646, at *13-*14 (N.D. Cal. July 22, 2020). While the *Sayce* court consolidated the lead and related cases, it rejected the arguments under *Chun*, recognizing that it was "entirely possible that individuals who could now be considered potential lead plaintiffs ... would have disregarded the earlier notice, since the [a]mended [c]omplaint presents new facts and misrepresentations relating to the period ... that arose only after the original complaint was filed." *Id.* at *17. Accordingly, since the losses and misrepresentation alleged in the amended complaint had not occurred at the time the original complaint was filed, or even at the time the lead plaintiff motions were due, the *Sayce* court vacated its prior order appointing Meitav Tachlit as lead plaintiff, and ordered Meitav Tachlit to publish a new PSLRA notice for the consolidated class action. *Id.* at *18.

Counsel's statements regarding the applicability of *Chun* also stand in stark contrast with arguments it has made in this District. In *Parker v. Hyperdynamics Corp.*, No. 4:12-cv-0999 (S.D. Tex.), counsel took a position that is far more consistent with the one asserted by the *Ahnefeldt* Plaintiffs here. There, counsel argued, in relevant part, as follows:

> The PSLRA Notice provisions were put in place to prevent professional plaintiffs and *self-serving counsel from hijacking securities actions* …. Moreover, the primary purpose of the PSLRA notice provision was to permit plaintiffs greater control over the litigation instead of permitting lawyer-driven litigation.

> In direct contravention of the PSLRA and established case law, [lead plaintiff] would have this Court approve his appointment based on the Parker Notice without investors of the proposed consolidated [lead plaintiff] Class Period ever receiving notice. …

> [Lead plaintiff]'s ploy to subsume the FCPA Actions represents nothing more than an end-run around the PSLRA lead plaintiff notice requirements in a transparent attempt to hijack the FCPA Actions. Indeed, an expansion of the original Parker Class Period raises the specter that [lead plaintiff] here might not have the largest financial interest in the relief sought by the class for the proposed *expanded* [lead plaintiff] Class Period. Thus, [lead plaintiff]'s attempt to utilize the Parker Notice for the expanded class period should be rejected.

Honorable George C. Hanks, Jr.
United States District Judge
United States Courthouse
May 12, 2021
Page 3


Reply Memorandum of Law in Further Support of the HDY Investor Group's Motion for Appointment as Lead Plaintiff and in Opposition to Cuneo's Motion for Consolidation, Parker, ECF No. 73 at 6-7 (internal quotations and citations omitted) (emphasis in original).[1]

       We remain available to address any questions the Court may have.

                    Respectfully,

                    Malcolm T. Brown


MTB/mms/810985

---

[1] A copy of the papers are attached hereto.

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF TEXAS

| | |
|---|---|
| CLINTON PARKER, Individually and on Behalf of All Other Persons Similarly Situated, <br><br> Plaintiff, <br><br> vs. <br><br> HYPERDYNAMICS CORPORATION and RAY LEONARD, <br><br> Defendants. | **CLASS ACTION** <br><br> No: 12-cv-00999 <br> Judge Melinda Harmon |
| DENNIS DALE GERAMI, Individually and on Behalf of All Other Persons Similarly Situated, <br><br> Plaintiff, <br><br> vs. <br> HYPERDYNAMICS CORPORATION, RAY LEONARD, PAUL C. REINBOLT, and DAVID WESSON, <br><br> Defendants. | **CLASS ACTION** <br><br> No: 14-cv-00641 <br> Judge Ewing Werlein |
| BENJAMIN STAHELIN, Individually and on Behalf of All Others Persons Similarly Situated <br><br> Plaintiff, <br><br> vs. <br> HYPERDYNAMICS CORPORATION, RAY LEONARD, PAUL C. REINBOLT, and DAVID WESSON, <br><br> Defendants. | **CLASS ACTION** <br><br> No: 14-cv-00649 <br> Judge Ewing Werlein |

## REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF THE HDY INVESTOR GROUP'S MOTION FOR APPOINTMENT AS LEAD PLAINTIFF AND IN OPPOSITION TO CUNEO'S MOTION FOR CONSOLIDATION

{00134986;2 }

**TABLE OF CONTENTS**

PRELIMINARY STATEMENT ..................................................................................... 1

    I.    THE FCPA ACTIONS AND THE PARKER ACTION SHOULD NOT BE
        CONSOLIDATED..................................................................................... 3

    II.   CUNEO'S FAILURE TO SATISFY THE PSLRA NOTICE
        REQUIREMENTS PRECLUDES HIS APPOINTMENT AS LEAD
        PLAINTIFF.............................................................................................. 5

    III.  CUNEO SUFFERS FROM UNIQUE DEFENSES THAT RENDER HIM
        ATYPICAL AND INADEQUATE TO REPRESENT ANY CLASS ...................... 8

    IV.  AGUILAR LACKS STANDING AS A CLASS REPRESENTATIVE
        BECAUSE HE WAS NOT DAMAGED BY THE ALLEGED FRAUD ............... 11

    V.   THE HDY INVESTOR GROUP SHOULD BE APPOINTED LEAD
        PLAINTIFF OF THE FCPA ACTIONS ................................................. 13

CONCLUSION.......................................................................................................... 15

## TABLE OF AUTHORITIES

**Cases**                                                                                                                     **Pages**

*Bang v. Acura Pharms., Inc.*,
    2011 U.S. Dist. LEXIS 2550 (N.D. Ill. Jan. 11, 2011) ............................................................ 11

*Burke v. Ruttenberg*,
    102 F.Supp.2d 1280 (N.D. Ala. 2000) ...................................................................................... 6

*Constance Sczesny Trust v. KPMG LLP*,
    223 F.R.D. 319 (S.D.N.Y. 2004) ............................................................................................ 11

*Dillard v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*,
    961 F.2d 1148 (5th Cir.1992) ................................................................................................... 3

*Dura Pharms. Inc. v. Broudo*,
    544 U.S. 336, 345 (2005)................................................................................................. *passim*

*EEOC v. HBE Corp.*,
    135 F.3d 543 (8th Cir.1998) ..................................................................................................... 4

*Eichenholtz v. Verifone Holdings, Inc.*,
    2008 U.S. Dist. LEXIS 64633 (N.D. Cal. Aug. 22, 2008) ...................................................... 11

*Feder v. Elec. Data Sys. Corp.*,
    429 F.3d 125 (5th Cir. 2005) .................................................................................................. 10

*Grodko v. Cent. European Distribution Corp.*,
    CIV.A. 12-5530 JBS, 2012 WL 6595931 (D.N.J. Dec. 17, 2012) .................................... 10, 11

*Holley v. Kitty Hawk, Inc.*,
    200 F.R.D. 275 (N.D. Tex. 2001) ............................................................................................ 6

*In re BP, PLC Sec. Litig.*,
    758 F. Supp. 2d 428 (S.D. Tex. 2010) ................................................................................. 3, 14

*In re Cavanaugh*,
    306 F.3d 726 (9th Cir. 2002) .................................................................................................... 7

*In re Cendant Corp. Litig.*,
    264 F.3d 201 (3d Cir. 2001) ................................................................................................... 13

*In re Cent. European Distribution Corp. Sec. Litig.*,
    CIV.A. 11-6247 JBS-K, 2012 WL 5465799 (D.N.J. Nov. 8, 2012).................................... 4, 5

*In re Comverse Tech., Inc. Sec. Litig.*,
    No. 06-CV-1825, 2007 U.S. Dist. LEXIS 14878 (E.D.N.Y. Mar. 2, 2007)........................... 11

*In re Cyberonics Inc. Sec. Litig.*,
    468 F. Supp. 2d 936 (S.D. Tex. 2006) ................................................................................. 7, 8

*In re Enron Corp. Sec. Litig.*,
    206 F.R.D. 427 (S.D. Tex. 2002)........................................................................................... 13

*In re IMAX Sec. Litig.*,
272 F.R.D. 138 (S.D.N.Y. 2010) ........................................................................... 10

*In re LeapFrog Enterprises, Inc. Sec. Litig.*,
C-03-05421, 2005 U.S. Dist. LEXIS 44899 (N.D. Cal. July 5, 2005) ..................... 7

*In re Select Comfort Corp. Sec. Litig.*,
No. CV 99-884- DSD (JMM), 2000 U.S. Dist. LEXIS 22697 (D. Minn. Jan. 27, 2000) ...... 7, 8

*In re Telxon Corp. Sec. Litig.*,
67 F. Supp. 2d 803 (N.D. Ohio 1999) ................................................................... 9, 12

*In re Tyco Intl., Ltd. Multidistrict Litig.*,
236 F.R.D. 62 (D.N.H. 2006) ............................................................................... 14

*In re Vonage IPO Sec. Litig.*,
No. 07-177, 2007 U.S. Dist. LEXIS 66258 (D.N.J. Sept. 6, 2007) ........................... 9

*Krim v. pcOrder.com, Inc.*,
A 00 CA 776 SS, 2001 WL 862628 (W.D. Tex. May 14, 2001) ........................... 4, 5

*Miller v. Dyadic Int'l, Inc.*,
No. 07-80948, 2008 U.S. Dist. LEXIS 32271 (S.D. Fla. Apr. 18, 2008) ................ 9, 12

*Nager v. Websecure, Inc.*, No. 97-10662,
1997 U.S. Dist. LEXIS 19601 (D. Mass. Nov. 26, 1997) ........................................ 9

*Ravens v. Iftikar*,
174 F.R.D. 651 (N.D. Cal. 1997) .......................................................................... 14

*Shiring v. Tier Technologies, Inc.*,
244 F.R.D. 307 (E.D. Va. 2007) ............................................................................. 9

*Singer v. Nicor, Inc.*,
No. 02 C 5168, 2002 WL 31356419 (N.D. Ill. Oct. 17, 2002) ............................... 9, 12

*Teamsters Local 445 Freight Div. Pension Fund v. Bombardier*,
2005 U.S. Dist. LEXIS 10780 (S.D.N.Y. June 1, 2005) .......................................... 7

*Tsirekidze v. Syntax-Brillian Corp.*,
2008 U.S. Dist. LEXIS 118562 (D. Ariz. April 7, 2008) ....................................... 11

*Wenderhold v. Cylink Corp.*,
188 F.R.D. 577 (N.D. Cal. 1999) .......................................................................... 14

## **Statutes**

15 U.S.C. § 78u-4(a) ....................................................................................... *passim*

15 U.S.C. § 78u-4(e) ........................................................................................... 3, 12

## **Rules**

Rule 42(a) of the Federal Rules of Civil Procedure ...................................................... 3

The HDY Investor Group respectfully submits this reply memorandum of law in further support of their motion for appointment as Lead Plaintiff and in opposition to Richard T. Cuneo's motion for consolidation and appointment as lead plaintiff.[1]

## PRELIMINARY STATEMENT

Richard T. Cuneo ("Cuneo"), as lead plaintiff of the Parker Action filed over two years ago, attempts to consolidate his case with the FCPA Actions in one master stroke. At bottom, Cuneo's Motion to Consolidate represents nothing more than circumvention of the procedural requirements mandated by the PSLRA lead-plaintiff selection mechanism. Such maneuvering to the detriment of the FCPA Class is not countenanced by the PSLRA and should be rejected here.

The core allegations in the FCPA Actions involve the Company's compliance with the FCPA and anti-money laundering statutes between November 8, 2012 and March 11, 2014. For more than two years—from April 2, 2012, the date the Parker Action was commenced, and May 12, 2014, the day the Cuneo Amended Complaint was filed—the operative complaint in the Parker Action focused exclusively on alleged misstatements regarding the value of certain oil wells owned by the Company, limited to a class period running from February 17, 2011 through February 15, 2012. The Parker Action and FCPA Actions simply do not involve similar classes of investors or arise from similar events, sufficient to warrant consolidation.

Cuneo's attempt to co-opt the FCPA Actions also violates the express notice provisions of the PSLRA, specifically designed to prevent counsel from hijacking securities class actions without apprising potential plaintiffs of their rights. Indeed, the Parker Notice, on which Cuneo relies, failed to effectively alert the investors in the FCPA Class Period of their right to seek

---

[1] Capitalized terms herein have the same meaning as found in the HDY Investor Group's prior memoranda of law (ECF No. 5 & 17, respectively). All emphases are added, and citations and quotations are omitted unless otherwise noted.

appointment as lead plaintiff of the proposed expanded Cuneo Class Period. In fact, purchasers on less than 25% of the days in the proposed expanded Cuneo Class Period were provided with any notice whatsoever. The original class period in the Parker Action was 363 days whereas the proposed expanded Cuneo Class Period is *1,464 days*. On this basis alone, the Court should deny Cuneo's motion.

Should the Court even consider the extended Cuneo Class Period (which encompasses both the Parker and FCPA Class Periods and then some, extending from September 30, 2009 through March 11, 2014), Cuneo will be subjected to numerous unique defenses regarding his typicality and adequacy to represent the extended Cuneo Class (or any class). *First*, Cuneo submitted an inaccurate and facially deficient sworn PSLRA certification, calling into question his credibility and suitability to act as lead plaintiff. *Second*, based on his newly filed "Cumulative Holdings Timeline", Cuneo sold *all* of his Hyperdynamics securities months prior to the corrective disclosures alleged during the FCPA Class Period. Accordingly, because none of his alleged losses were caused by the corrective disclosures alleged during the FCPA Class Period, Cuneo simply does not have standing to pursue claims on behalf of the FCPA Class. *See Dura Pharms. Inc. v. Broudo*, 544 U.S. 336, 345 (2005).[2] *Finally*, as explained in the HDY Investor Group's opposition memorandum ("HDY Investor Group Opp. Br."), Cuneo's trading volume belies any assertion that he would be able to demonstrate the typicality required of a representative of the class. *Id.* at 17–19.[3]

---

[2]    Tellingly, the updated Cuneo trades are included in a self-styled "Cumulative Holdings Timeline", *and not* in a revised or amended certification executed under penalty of perjury.

[3]    As discussed at length in the HDY Investor Opp. Brief, Cuneo's assertions that Defendants' Response somehow be given credence in determining lead plaintiff in this action are misplaced. At this stage in the litigation, Defendants' should not have the ability to hand select the lead plaintiff, especially considering the substantial issues regarding Mr. Cuneo's trading.

At the eleventh hour, Cuneo and his counsel have presented Samuel Aguilar, Jr. ("Aguilar") as an alternative Hyperdynamics investor who apparently expressed interest in serving as an "additional named plaintiff and class representative." *See* Supplemental Declaration of Thomas E. Bilek, filed June 23, 2014, ECF No. 30. However, upon closer inspection of Aguilar's certification (*see* ECF No. 30-1), the purchase price of Aguilar's Hypyerdynamics shares of *$1.38* was below the average daily closing price of *$1.9769* for Hyperdynamics shares during the 90-day period after the end of the FCPA Class Period ("PSLRA Look-Back Price"). *See* 15 U.S.C. § 78u-4(e). Accordingly, Aguilar is unable to demonstrate that he was actually damaged in any way by the fraud alleged in the FCPA Actions, and therefore Aguilar cannot establish "economic loss" under the PSLRA and *Dura*. 544 U.S. at 347 ("'artificially inflated purchase price' is not itself a relevant economic loss").

In contrast, the HDY Investor Group's adequacy, typicality and ability to represent the FCPA Class are undisputed and unchallenged; and its *$106,835* in investment loss is the largest of any movant in the *FCPA Actions*. The HDY Investor Group is therefore the "most adequate plaintiff" under the PSLRA and respectfully requests that the Court grant its Motion. In the alternative, if the Court grants Cuneo's Motion to Consolidate and consolidates the FCPA Actions and the Parker Action into a single action, it should appoint the HDY Investor Group as Co-Lead Plaintiffs and their chosen counsel as Co-Lead Counsel to represent the interests of the FCPA Class in the consolidated action. *See In re BP, PLC Sec. Litig.*, 758 F. Supp. 2d 428, 439 (S.D. Tex. 2010).

## I.   THE FCPA ACTIONS AND THE PARKER ACTION SHOULD NOT BE CONSOLIDATED

Under Rule 42(a) of the Federal Rules of Civil Procedure, the Court has broad discretion to manage cases involving a common question of law or fact, especially in circumstance in which consolidation would promote judicial economy and efficiency. *See, e.g., Dillard v.*

*Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 961 F.2d 1148 (5th Cir.1992). The purpose of consolidation is to avoid the unnecessary costs or delays that would ensue from proceeding separately with claims or issues sharing common aspects of law or fact. *EEOC v. HBE Corp.,* 135 F.3d 543, 550 (8th Cir.1998).  At the same time, common questions of law or fact do not necessitate consolidation: "[t]he mere existence of common issues, however, does not require consolidation . . . Once a common question has been established, the decision to consolidate rests in the sound discretion of the district court." *In re Cent. European Distribution Corp. Sec. Litig.*, CIV.A. 11-6247 JBS-K, 2012 WL 5465799, at *7 (D.N.J. Nov. 8, 2012).  Indeed, "the Court should recognize that consolidation may not be proper when consolidation may be prejudicial to the rights of the parties involved." *Krim v. pcOrder.com, Inc.*, A 00 CA 776 SS, 2001 WL 862628, AT *3 (W.D. Tex. May 14, 2001).

As set forth in HDY Investor Group's Opp. Brief (*see* p. 4–9), the FCPA Actions allege wrongdoing between November 8, 2012 and March 11, 2014 pertaining to the Company's compliance with the FCPA and anti-money laundering statutes.  These new claims differ from the Parker Action, not only in terms of the length and composition of the class period (Parker Class Period alleged between February 17, 2011 and February 15, 2012 versus FCPA Class Period between November 8, 2012 and March 11, 2014), but also with respect to the alleged wrongdoing.  For example, the Parker Complaint alleges that: (a) due to the numerous cost overruns and delays, the Company would be unable to commence drilling on the Baraka-1 well; (b) the Company had far greater exposure to liquidity concerns than it had previously disclosed, and despite the Company's March 2011 common stock offering, Hyperdynamics did not have sufficient funds to be able to drill both the Sabu-1 well and the Baraka-1 well; and (c) based on the foregoing, defendants lacked a reasonable basis for their positive statements about the Company's drilling operations or the prospective value of the Company's oil and gas

concessions. *Id.* at ¶ 12. The FCPA Actions, on the other hand, relate to DOJ and SEC probes into Hyperdynamics' alleged fraud and corruption in obtaining drilling licenses in Guinea, including whether the alleged conduct violated the FCPA and anti-money laundering statutes.

It is beyond reasonable dispute that the Parker Action, as originally alleged, ***never referenced*** violations of the Foreign Corrupt Practices Act and/or potential violations of U.S. anti-money laundering statutes. Rather, the Parker Action focused exclusively on delays and overruns associated with the Sabu-1 and Baraka-1 wells. As such, consolidation of the Parker Action and the FCPA Actions is simply inappropriate. *See Krim v. pcOrder.com, Inc.*, A 00 CA 776 SS, 2001 WL 862628 (W.D. Tex. May 14, 2001) (ruling that consolidation was inappropriate due to "important differences" in the composition of the classes); *In re Cent. European Distribution Corp. Sec. Litig.*, 2012 WL 5465799, at * (deconsolidating two class actions where factual differences rendered consolidation inappropriate).

As such, because the FCPA Actions and the Parker Action are not suitable for consolidation, the Court should deny Cuneo's Motion.

## II.    CUNEO'S FAILURE TO SATISFY THE PSLRA NOTICE REQUIREMENTS PRECLUDES HIS APPOINTMENT AS LEAD PLAINTIFF

As demonstrated in the HDY Investor Group's Opp. Brief (*see* p. 9–13), the Parker Notice, on which Cuneo relies to justify his appointment as lead plaintiff of the proposed consolidated Cuneo Class Period, was wholly deficient under the PSLRA to alert the investors in the FCPA Class Period of their right to seek appointment as lead plaintiff.

The PSLRA requires a plaintiff to publish "not later than 20 days after the date on which the complaint is filed . . . a notice advising members of the purported plaintiff class . . . of the pendency of the action, the claims asserted therein, and ***the purported class period***." 15 U.S.C. § 78u-4(a)(3)(A). This provision is "intended to encourage the most capable representatives of the plaintiff class to participate in class action litigation[,] parties with significant holdings in issuers,

whose interests are more strongly aligned with the class of shareholders." H.R. CONF. REP. No. 104-369, at 32 (1995).

The PSLRA notice provisions "were put in place to prevent professional plaintiffs and *self-serving counsel from hijacking securities actions* and forcing unfair settlements down the throats of defendant companies and shareholders alike." *Burke v. Ruttenberg*, 102 F.Supp.2d 1280, 1313–14 (N.D. Ala. 2000); *see also Holley v. Kitty Hawk, Inc.*, 200 F.R.D. 275, 278 (N.D. Tex. 2001). Moreover, the primary purpose of the PSLRA notice provision was to "to permit plaintiffs greater control over the litigation instead of permitting lawyer-driven litigation." *Kitty Hawk*, 200 F.R.D. at 279

In direct contravention of the PSLRA and established case law, Cuneo would have this Court approve his appointment based on the Parker Notice without investors of the proposed consolidated Cuneo Class Period ever receiving notice. In a desperate attempt to convince the Court that the Parker Notice is sufficient, Cuneo contends in his reply memorandum ("Cuneo Reply Br.", ECF No. 19) that the Parker Notice alerted Hyperdynamics investors to the Company's conduct that is the subject of the FCPA Actions. *Id.* p. 7–9. This contention is baseless. The FCPA Actions relate to alleged conduct that *postdates* the issuance of the Parker Notice by several years. As explained in HDY Investor Group's Opp. Brief (*see* p. 9–13), the Parker Notice, which was issued on April 2, *2012*, focuses exclusively on certain operational challenges at two Hyperdynamics exploration wells. The FCPA Actions, on the other hand, relate to the United States Department of Justice and SEC investigations in connection with alleged violations of the U.S. Foreign Corrupt Practices Act, which the Company disclosed on September 30, 2013 and March 12, 2014. *See id.* Thus, there can be no doubt that the FCPA Actions involve conduct that arose *after* the filing of the Parker Action and close of the Parker Class Period, on behalf of plaintiffs and a class of investors who did *not exist* nor defendants

who had not engaged in the allegedly offensive conduct as of the filing of the Parker Action or the end of the Parker Class Period.[4]

Cuneo's ploy to subsume the FCPA Actions represents nothing more than an end-run around the PSLRA lead plaintiff notice requirements in a transparent attempt to hijack the FCPA Actions. Indeed, an expansion of the original Parker Class Period raises the specter that Cuneo here might not have the largest financial interest in the relief sought by the class for the proposed **expanded** Cuneo Class Period. *See In re Cavanaugh*, 306 F.3d 726, 730 (9th Cir. 2002). Thus, Cuneo's attempt to utilize the Parker Notice for the expanded class period should be rejected. *See Leapfrog*, 2005 U.S. Dist. LEXIS 44899; *Teamsters Local 445 Freight Div. Pension Fund v. Bombardier*, 2005 U.S. Dist. LEXIS 10780, at *8 (S.D.N.Y. June 1, 2005) (requiring new notice to members of enlarged class because it was "entirely possible that other well-qualified lead plaintiffs would have moved [to be appointed lead plaintiff] had they been notified that they were potential class members"); *In re Cyberonics Inc. Sec. Litig.*, 468 F. Supp. 2d 936, 938-40 (S.D. Tex. 2006) (finding notice deficient after concluding that a competing movant "***could be a more appropriate lead plaintiff, holding the largest financial interest in the litigation*** [of the expanded class period]").[5]

---

[4]     Cuneo is unable to distinguish two cases **directly** on point regarding the issue of delinquent notice. *Leapfrog* expanded the class period from six to fifteen months, a 150% increase, much less than the 363 days to 1,464 days increase (of more than 300%) sought by Cuneo. *See In re LeapFrog Enterprises, Inc. Sec. Litig.*, C-03-05421, 2005 U.S. Dist. LEXIS 44899 (N.D. Cal. July 5, 2005). As Cuneo is attempting to do, *Cyberonics* dealt with a class period expansion from several months to several years. *See In re Cyberonics, Inc. Secs. Litig.*, 468 F. Supp. 2d 936, 938 (S.D. Tex. 2006). Both *Leapfrog* and *Cyberonics* dealt with substantially new allegations, akin to those Cuneo is attempting to subsume. The courts in both *Leapfrog* and *Cyberonics* found the original notice deficient.

[5]     Cuneo's attempt to distinguish *Cyberonics* by focusing solely on the factual similarities between the Parker Action and the FCPA Actions misses the mark. *See* Cuneo Reply Br. p. 9. In *Cyberonics*, the court specifically ordered notice republication after concluding that expanding the class period "give[s] rise to the possibility that a more appropriate lead plaintiff exists, a

Finally, courts have dismissed amended complaints in which a lead plaintiff sought to expand the class period without providing adequate notice. In *In re Select Comfort Corp. Sec. Litig.*, No. CV 99-884- DSD (JMM), 2000 U.S. Dist. LEXIS 22697 (D. Minn. Jan. 27, 2000), for example, the initial complaint alleged a class period from January 25, 1999 to June 7, 1999. *Id.* at *24. The amended complaint enlarged the class period to start on December 4, 1998, an expansion of less than two months. *Id.* The court dismissed the amended complaint pursuant to Rule 12(b)(6) and the PSLRA on the *sole basis* that plaintiffs did not properly follow PSLRA procedures for approval of a lead plaintiff. *See Select Comfort*, 2000 U.S. Dist. LEXIS 22697, at *26.

Because Cuneo's reliance on defective notice reflects nothing more than his own self-interested attempt to co-opt the FCPA Actions, and would effectively put the FCPA Actions in jeopardy of dismissal, his attempt should be rejected.

## III. CUNEO SUFFERS FROM UNIQUE DEFENSES THAT RENDER HIM ATYPICAL AND INADEQUATE TO REPRESENT ANY CLASS

Cuneo also suffers from unique defenses that render him atypical and inadequate to represent *any* class, let alone the expanded class he now seeks to represent. As a threshold matter, Cuneo's initial PSLRA certification, filed with his initial Motion for Lead Plaintiff in the Parker Action, is blatantly and obviously inaccurate. Indeed, that certification contains more than 19 pages (800 transactions, including 70 in a single day), with nearly 30 identical trades listed. *See* Second Ford Decl., Ex. C (ECF No. 17-4). This glaring error went undetected for *years* until detected by the HDY Investor Group. These undisputable facts raise serious concerns regarding Cuneo's capacity to serve as adequate representative of the class.

---

party which was not apprised of its inclusion in the lawsuit by the original notice." *Cyberonics*, 468 F. Supp. 2d at 940. The identical situation is now before the Court.

Case 4:12-cv-06309 Document 173 Filed on 05/23/11 in TXSD Page 15 of 23

In particular, this inaccurate sworn testimony will render Cuneo subject to unique defenses later in the litigation and makes him an inadequate lead plaintiff. Indeed, courts have repeatedly rejected proposed lead plaintiffs who submitted incorrect sworn certifications. *See, e.g.*, *In re Vonage IPO Sec. Litig.*, No. 07-177, 2007 U.S. Dist. LEXIS 66258, at *27–28, 30 & n.8 (D.N.J. Sept. 6, 2007) (holding proposed lead plaintiff inadequate, including because of "misinformation" stated in certification); *Nager v. Websecure, Inc.*, No. 97-10662, 1997 U.S. Dist. LEXIS 19601, at *3 n.1 (D. Mass. Nov. 26, 1997) (where lead plaintiff movant reported transaction outside the trading range for a particular day, "[t]he inaccuracy [in the movant's affidavit] may be explainable, but it casts sufficient doubt on [the movant's] adequacy as a representative plaintiff that he should be excluded" from serving as lead plaintiff); *Shiring v. Tier Technologies, Inc.*, 244 F.R.D. 307, 317 (E.D. Va. 2007) (denying class certification where plaintiff's certifications reported incorrect prices and transaction dates, because "Plaintiffs inadvertence or his indifference to the PSLRA's certification requirements demonstrates a lack of diligence and candor that . . . counsel against a finding of adequacy").[6] Whether or not Defendants will ultimately be successful in challenging Cuneo's adequacy and typicality is irrelevant: the presence of the colorable possibility, and not a premature guarantee of its ultimate

---

[6] Furthermore, Cuneo cannot cure this deficiency by simply submitting the amended and supplemented Cumulative Holdings Timeline, because the deadline for moving to be appointed lead plaintiff has passed. *See* 15 U.S.C. § 78u-4(a)(3)(A)(i)(II) ("not later than 60 days after the date on which the notice is published, any member of the purported class may move the court to serve as lead plaintiff . . ."). Allowing amendment to the certification after the expiration of the 60 day deadline would run contrary to the purposes of the statute and well established law. *Miller v. Dyadic Int'l, Inc.*, No. 07-80948, 2008 U.S. Dist. LEXIS 32271, at *15 (S.D. Fla. Apr. 18, 2008) ("[T]o allow supplementation after the expiration of the sixty (60) day period would be inconsistent with both the language and purposes of the PSLRA."); *In re Telxon Corp. Sec. Litig.*, 67 F. Supp. 2d 803, 818 (N.D. Ohio 1999) (the "plain language of the [PSLRA] precludes consideration of a financial loss asserted for the first time in [any pleading] . . . filed after the sixty (60) day window has closed"); *Singer v. Nicor, Inc.*, No. 02 C 5168, 2002 WL 31356419, at *3 (N.D. Ill. Oct. 17, 2002) ("the court will not consider the candidates' amendments of their amount of financial loss made after the [60 day] filing deadline").

success, is the key issue. *See, e.g., Feder v. Elec. Data Sys. Corp.*, 429 F.3d 125, 136 n.7 (5th Cir. 2005) (holding that the mere presence of a challengeable characteristic peculiar to a potential plaintiff was sufficient to disqualify an individual).

Even if this Court were to consider Cuneo's improperly submitted Cumulative Holdings Timeline, it is now evident that Cuneo did not hold **any** Hyperdynamics shares for any of the alleged corrective disclosures of the FCPA Class. *See* Cumulative Holdings Timeline, ECF No. 20-6; *see also* Revised Cuneo Loss Chart, Ex. A, attached to the Declaration of Jeremy A. Lieberman, filed contemporaneously herewith. As such, Cuneo cannot lead the expanded Cuneo Class Period, which would necessarily incorporate the FCPA Actions, for the simple reason that he did not suffer losses related to the corrective disclosures in the FCPA Actions, and therefore lacks Article III standing to pursue those claims.

Specifically, the FCPA Actions allege two corrective disclosures—September 30, 2013 and March 12, 2014—pertaining to the alleged violations of the U.S. Foreign Corrupt Practices Act and/or U.S. anti-money laundering statutes. *See* Gerami Complaint ¶¶ 3, 35. Here, as the Revised Cuneo Loss Chart indicates, Cuneo did not hold **any** Hyperdynamics shares on September 30, 2013 or March 12, 2014. *See* Ex. A. As such, Cuneo is unable to allege **any** loss causation in the FCPA Actions, which undermines any allegation of Article III standing to prosecute the expanded action. *Dura*, 544 U.S. at 345 ("But if, say, the purchaser sells the shares quickly before the relevant truth begins to leak out, the misrepresentation will not have led to any loss"); *In re IMAX Sec. Litig.*, 272 F.R.D. 138, 155 (S.D.N.Y. 2010) (refusing to certify a class where a lead plaintiff "cannot establish loss causation" and therefore lacks standing to bring a claim in its individual capacity); *see also Grodko v. Cent. European Distribution Corp.*, CIV.A. 12-5530 JBS, 2012 WL 6595931, at *5 (D.N.J. Dec. 17, 2012) ("A lead plaintiff whose losses do not relate, either temporally or topically, to the alleged wrongdoing will be subject to unique

defenses regarding loss causation."); *In re Comverse Tech., Inc. Sec. Litig.*, Case No. 06-CV-1825, 2007 U.S. Dist. LEXIS 14878, at *13 (E.D.N.Y. Mar. 2, 2007) ("In short, it is clear that under *Dura* and its progeny, any losses that [movant] may have incurred before Comverse's misconduct was ever disclosed to the public are not recoverable, because those losses cannot be proximately linked to the misconduct at issue in this litigation.").[7]

Finally, as discussed in the HDY Investor Group's Opp. Brief (*see* p. 17–19), Cuneo's high trading volume (*i.e.*, day trading) during the Parker Class Period renders him inadequate to serve as a class representative. *See, e.g., Tsirekidze v. Syntax-Brillian Corp.*, 2008 U.S. Dist. LEXIS 118562, at *17–18 (D. Ariz. April 7, 2008); *Eichenholtz v. Verifone Holdings, Inc.*, 2008 U.S. Dist. LEXIS 64633, at *34–37 (N.D. Cal. Aug. 22, 2008); *Bang v. Acura Pharms., Inc.*, 2011 U.S. Dist. LEXIS 2550, at *16 (N.D. Ill. Jan. 11, 2011).

## IV. AGUILAR LACKS STANDING AS A CLASS REPRESENTATIVE BECAUSE HE WAS NOT DAMAGED BY THE ALLEGED FRAUD

After reviewing the arguments contained in the HDY Investor Opp. Brief, particularly with regard to Cuneo's lack of standing to represent the FCPA Class, Cuneo and his counsel now offer an alternative Hyperdynamics investor as a proposed "additional name plaintiff and class

---

[7]     It is also possible to construe Cuneo's loss causation issue as a typicality problem, instead of a standing and unique defense problem. *See Grodko*, 2012 WL 6595931, at *5, n.8. Typicality of claims exists if "each class member's claim arises from the same course of events, and each class member makes similar legal arguments to prove the defendants' liability, even if some minor variations exist in the factual allegations asserted by different class members." *Constance Sczesny Trust v. KPMG LLP*, 223 F.R.D. 319, 324 (S.D.N.Y. 2004).  The issue is whether Cuneo's claims arise "from the same course of events," *i.e.* the alleged misconduct at the heart of the Parker Action and not the FCPA Actions.  Given Cuneo's failure to demonstrate loss causation for the alleged corrective disclosures in the FCPA Actions, it is highly doubtful that Cuneo could satisfy the typicality prong for class representative status, since Cuneo has alleged that his losses arose strictly from the delays and overruns associated with the Sabu-1 and Baraka-1 wells that were disclosed in the Parker Action, rather than from FCPA allegations that were disclosed after the Cuneo had already divested. *See Grodko*, 2012 WL 6595931, at *5, n.8.

representative." *See* Supplemental Declaration of Thomas E. Bilek, filed June 23, 2014, ECF No. 30. Once again, Cuneo's attempt the circumvent the express mandates of the PSLRA falls short.

As a threshold matter, as explained above (*see supra* n. 6), the deadline for moving to be appointed lead plaintiff has passed. *See* 15 U.S.C. § 78u-4(a)(3)(A)(i)(II) ("not later than 60 days after the date on which the notice is published, any member of the purported class may move the court to serve as lead plaintiff . . ."). Allowing amendment and/or supplementaion to the proposed lead plaintiff certification after the expiration of the 60 day deadline would run contrary to the purposes of the statute and well established law. *Miller v. Dyadic Int'l, Inc.*, 2008 U.S. Dist. LEXIS 32271, at *15; *Telxon Corp.*, 67 F. Supp. 2d at 818; *Singer v. Nicor, Inc.*, 2002 WL 31356419, at *3.

Moreover, Aguilar has failed to demonstrate that he actually suffered economic loss on his Hyperdynamics investment. Under the PSLRA, a plaintiff's damages are limited to the difference between the purchase price of a subject security and the higher of (i) the actual sales price of the subject security (if sold) or (ii) the PSLRA Look-Back Price. *See* 15 U.S.C. § 78u-4(e). By operation of this provision, "if the mean trading price of a security during the 90-day period following the correction is *greater* than the price at which the plaintiff purchased his stock then that plaintiff would recover nothing under the PSLRA's limitation on damages." *In re Mego Fin. Corp. Sec. Litig.,* 213 F.3d 454, 461 (9th Cir. 2000) (emphasis in original). That is the case here. Aguilar states in his certification that he purchased his Hyperdymanics securities on February 17, 2012 for $1.38 (*see* ECF No. 30-1) and that he still holds such stock (*see* ECF No. 30, ¶ 3). The mean trading price during the statutory look-back period is currently $1.9769— approximately $0.60 per share *more* than Aguilar originally paid. *See* Ex. A. As such, these shares are simply not recoverable under the PSLRA and Aguilar has failed to establish

"economic loss" under *Dura*. 544 U.S. at 347 ("'artificially inflated purchase price' is not itself a relevant economic loss").

Because the Aguilar has failed to allege that he was damaged in any way by the alleged fraud, he lacks standing in this action and has otherwise failed to state a claim for relief.

## V. THE HDY INVESTOR GROUP SHOULD BE APPOINTED LEAD PLAINTIFF OF THE FCPA ACTIONS

The HDY Investor Group's Motion should be granted because it has properly followed all steps required under the PSLRA regarding notice and timely submission of accurate certifications demonstrating losses, has shown the most actionable losses of any party before the Court in the FCPA Actions and is both a typical and adequate candidate to represent the Class.

Cuneo's contention that this Court cannot appoint a group of individuals as lead plaintiff is simply wrong. *See* Cuneo Reply Br. p. 15–17. The PSLRA expressly permits this Court to appoint a group of investors as lead plaintiff, and to aggregate the losses sustained by members of appropriate movant groups for purposes of evaluating the competing lead plaintiff motions. *See* 15 U.S.C. §78u-4(a)(3)(B) ("the court shall adopt a presumption that the most adequate plaintiff…is the person **or group of persons** that…has the largest financial interest in the relief sought by the class."). The HDY Investor Group is a proper group. With only three members, the Group is an acceptable size for a lead plaintiff group. *See In re Cendant Corp. Litig.*, 264 F.3d 201, at 267 (3d Cir. 2001).[8]

_____

[8] While the court in *Enron* chose to appoint a single plaintiff, it **specifically** acknowledged the appropriateness of lead plaintiff groups. *See In re Enron Corp. Sec. Litig.* 206 F.R.D. 427 (S.D. Tex. 2002) (explicitly finding that the PSLRA "authorizes the appointment of one Lead Plaintiff **or** [a] small cohesive group" of shareholders). Moreover, the court found that the allegations raised by each of the potential subclasses were intertwined and that it would present no conflict for a single plaintiff to represent the class. Here, the factual allegations are wholly unrelated.

In the alternative, should the Court consolidate the FCPA Actions and the Parker Action into a single action, it should appoint the HDY Investor Group as Co-Lead Plaintiffs and their chosen counsel as Co-Lead Counsel to represent the interests of the FCPA Class in the consolidated action. As confirmed in Cuneo's Cumulative Holdings Timeline, Cuneo does not have Article III standing to pursue the claims alleged in the FCPA Actions. Moreover, even though Aguilar held shares through the FCPA alleged corrective disclosures, those retained shares were purchased below the PSLRA Look-Back Price of $1.9769, and therefore Aguilar did not suffer economic loss under the dictates of the PSLRA.

Thus, the co-lead plaintiff structure would ensure that the litigation is not run by a lead plaintiff with a "limited interest in the litigation [which] renders him incapable of fairly and adequately protecting the interests of the class as a whole", but rather, by plaintiffs who can represent and protect the interests of the entire class. *See In re BP, PLC Sec. Litig.*, 758 F. Supp. 2d 428, 439 (S.D. Tex. 2010) (quoting *Wenderhold v. Cylink Corp.*, 188 F.R.D. 577, 586 (N.D. Cal. 1999); *In re Tyco Intl., Ltd. Multidistrict Litig.*, 236 F.R.D. 62, 71 (D.N.H. 2006) (recognizing that lead plaintiffs who "purchased their stock before the first possible corrective disclosure and held it until after the final possible corrective disclosure ... have good reason to argue for every disclosure that the evidence in the case" but lead plaintiffs who sold before all corrective disclosures were made "lack similar incentives to argue for corrective disclosures that may have occurred either before they purchased their stock or after they sold it[.]"); *Ravens v. Iftikar*, 174 F.R.D. 651, 672 (N.D. Cal. 1997) (where a complaint alleges "numerous corrective disclosures," there may be a conflict between the interests of plaintiffs who sold in the midst of those disclosures and those who held throughout the entire class period).

## CONCLUSION

For the reasons stated herein, the HDY Investor Group respectfully requests that its

Motion be granted in its entirety and that Cuneo's Motion be denied.

Dated: June 23, 2014                                    Respectfully submitted,

**POMERANTZ LLP**

*/s/   Jeremy A. Lieberman*
Jeremy A. Lieberman
Francis P. McConville
600 Third Avenue, 20th Floor
New York, New York 10016
Telephone: 212-661-1100
Facsimile:  212-661-8665

**POMERANTZ LLP**
Patrick V. Dahlstrom
10 South LaSalle Street, Suite 3505
Chicago, IL 60603
Telephone: 312-377-1181
Facsimile:  312-377-1184

**BLOCK & LEVITON LLP**
Jason M. Leviton
Steven P. Harte
155 Federal Street
Suite 400
Boston, MA 02110
Tel: (617) 398-5600
Fax: (617) 507-6020

*Proposed Co-Lead Counsel for the Class*

**ABRAHAM WATKINS, NICHOLS,
SORRELS, AGOSTO & FRIEND**

Sammy Ford IV State Bar No. 24061331
Federal Bar No. 950682 800 Commerce
Street Houston, Texas 77002 Telephone:
(713) 222-7211 Facsimile: (713) 225-0827

*Proposed Liaison Counsel for the Class*