United States District Court
Southern District of Texas
**ENTERED**
November 04, 2021
Nathan Ochsner, Clerk

**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

| | |
|---|---|
| MIRIAM EDWARDS, ET AL., § § Plaintiffs. § § VS. § MCDERMOTT INTERNATIONAL, § INC., ET AL., § § Defendants. § | CIVIL ACTION NO. 4:18-cv-04330 |

## ORDER AND OPINION

In this securities fraud case, the parties have filed lengthy letters detailing their respective positions concerning five outstanding discovery disputes. *See* Dkts. 210, 212. The parties have also filed shorter letters responding to the other side's arguments. *See* Dkts. 214, 215. To further aid my consideration of the issues, I held an extensive oral hearing on November 1, 2021. After considering the written and oral arguments from the parties, I issue the following rulings:

**A. STAY OF THE NEW §10(b) CLAIMS**

The Private Securities Litigation Reform Act of 1995 ("PSLRA") contains an automatic discovery stay. It provides as follows:

> In any private action arising under this [chapter], all discovery and other proceedings shall be stayed during the pendency of any motion to dismiss, unless the court finds upon the motion of any party that particularized discovery is necessary to preserve evidence or to prevent undue prejudice to that party.

15 U.S.C. § 78u–4(b)(3)(B). "The legislative history of the PSLRA indicates that Congress enacted the discovery stay to prevent plaintiffs from filing securities class actions with the intent of using the discovery process to force a coercive settlement." *In re LaBranche Sec. Litig.*, 333 F. Supp. 2d 178, 181 (S.D.N.Y. 2004). *See also In re WorldCom, Inc. Sec. Litig.*, 234 F. Supp. 2d 301, 305 (S.D.N.Y. 2002) (noting the purpose of the PSLRA discovery stay is to prevent plaintiffs from filing

a complaint to initiate a "fishing expedition" in search of sustainable claims). Only when "particularized discovery is necessary to preserve evidence or to prevent undue prejudice" may discovery proceed before a decision is issued on a motion to dismiss. 15 U.S.C. § 78u–4(b)(3)(B). "The party seeking expedited discovery bears the burden of demonstrating that the PSLRA's mandatory stay should be lifted." *Davis v. Duncan Energy Partners L.P.*, 801 F. Supp. 2d 589, 592 (S.D. Tex. 2011).

In accordance with the terms of the PSLRA's discovery stay, no discovery took place while this Court considered Defendants' motions to dismiss the claims brought under §§ 10(b) and 14(a) of the Securities Exchange Act of 1934. When those motions were denied earlier this year, discovery began. From reviewing the parties' submissions, it is clear that the parties have already expended much time and energy working through various discovery-related issues.

A few weeks ago, the § 10(b) Plaintiffs requested the opportunity to file a supplemental complaint that concerns alleged misstatements beginning September 20, 2019. The Supplemental Complaint also seeks to extend the alleged § 10(b) class period from December 18, 2017—September 17, 2019 (as originally proposed by Plaintiffs) to December 18, 2017—January 23, 2020. By separate order, I have granted Plaintiffs leave to file the Supplemental Complaint. *See* Dkt. 216. Defendants have indicated their intention to file a motion to dismiss the Supplemental Complaint, and I have put into place a schedule to govern the briefing on that motion to dismiss. *See id.*

Now, Defendants seek the enforce the PSLRA's discovery stay for the new § 10(b) claims asserted in the Supplemental Complaint. As noted, the PSLRA discovery stay is mandatory unless Plaintiffs demonstrate that specific discovery is needed to preserve evidence or to prevent undue prejudice. *See* 15 U.S.C. § 78u–4(b)(3)(B). In my view, Plaintiffs have failed to meet their burden. Although Plaintiffs claim that the proposed class faces "real prejudice" as a result of wasting insurance if this action is "even partly stalled," that argument can be made in every pending securities fraud case. Dkt. 215 at 1. There is nothing particularly unique

about this case that suggests to me that lifting the PSLRA discovery stay is appropriate.

Accordingly, I hold that the PSLRA discovery stay applies to the supplemental claims added to the § 10(b) action and the time period they cover: September 20, 2019—January 23, 2020. Discovery may proceed on the original §10(b) claims that have already survived a motion to dismiss.

**B.     RELEVANT TIME FRAME FOR DOCUMENT PRODUCTION**

The next issue I need to tackle is the proper time period for Defendants' document collection and production efforts. Plaintiffs have served document requests, seeking documents created from January 1, 2017 through June 30, 2020, the date McDermott exited its bankruptcy proceedings. Defendants maintain that the proposed time span is too broad, suggesting that I impose a July 1, 2017 through September 18, 2019 search period. The parties explain their respective reasoning in great detail in their written submissions. There is no need for me to rehash those arguments again here. Suffice it to say that reasonable minds can disagree.

Although the scope of discovery is broad, it is not unlimited. *See Crosby v. La. Health Serv. & Indem. Co.*, 647 F.3d 258, 262 (5th Cir. 2011). Federal Rule of Civil Procedure 26(b)(1) specifies that discovery must be "proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit." FED. R. CIV. P. 26(b)(1). Determining the appropriate time period for discovery requests is more of an art than a science, requiring district judges to use their experience and judgment to arrive at what they consider an appropriate time range. As I noted at the oral hearing, it is my view that any date ranges I put in place are always subject to be expanded at a later date, based on how the discovery process unfolds.

After carefully considering the Rule 26(b)(1) factors, I have determined that the appropriate starting date for the document production is March 15, 2017. Given the PSLRA discovery stay in effect for the new § 10(b) claims, the ending date for the document production is, for the time being, September 18, 2019, the day after the class period set forth in the Complaints that survived motions to dismiss. I will revisit the appropriate ending date after a ruling is issued on Defendants' motion to dismiss the new § 10(b) claims.

### C.  DOCUMENT CUSTODIANS

The parties agree that email searches will need to be conducted on a certain number of custodians. The dispute centers on how many custodian's email accounts will be searched. Plaintiffs request that 72 so-called "Tier 1 custodians" be searched. Defendants counter that it would be more appropriate to select 40 custodians.

I am well aware of the costs associated with email pulls. I am also mindful of how important email searches can be to unlocking the truth in securities fraud cases. Unfortunately, there is no definitive right or wrong answer when it comes to the proper number of custodians to be selected in every securities fraud case. A myriad of factors impact the analysis, including the size of the company, the number of business units involved, and the scope of the alleged fraud. In my mind, it is simply too difficult at the outset of a case to make a definitive assessment on the number of custodians that should be searched. Any number I select might turn out, once discovery advances, to be too expansive or too limiting. All I can do is pick a number of custodians that I firmly believe gives Plaintiffs the opportunity to conduct meaningful, in-depth discovery given the size and scope of the case, and, at the same time, recognizes the inherent expenses associated with wide-scale email searches. For this case, I will initially give Plaintiffs the opportunity to select 50 custodians whose email accounts they want searched. I am always willing to revisit the issue if, once the email discovery commences, it becomes readily apparent that additional custodians possess information critical to the issues at

stake in this litigation. The parties should promptly confer on the appropriate search terms to be utilized for the 50 custodians selected by Plaintiffs. In the event the parties cannot come to an agreement on a set of search terms, I am available to assist the parties in this effort.

There is one additional issue I want to address concerning the search for electronically stored information. Plaintiffs ask me to order Defendants to conduct custodial interviews aimed at determining the existence, status, and contents of various document repositories, and produce a report to Plaintiffs identifying "their size and scope, and when they can be collected and ready to search." Dkt. 212 at 6. I am reluctant to do so. I simply do not think that district court judges should micro-manage the parties' internal review procedures. As Defendants noted at oral argument, Sedona Principle 6 instructs that "[r]esponding parties are best situated to evaluate the procedures, methodologies, and technologies appropriate for preserving and producing their own electronically stored information." *The Sedona Principles, Third Edition: Best Practices, Recommendations & Principles for Addressing Electronic Document Production*, 19 SEDONA CONF. J. 1, 118 (2018).[1] The commentary to Principle 6 further explains:

> [A]s a general matter, neither a requesting party nor the court should prescribe or detail the steps that a responding party must take to meet its discovery obligations, and there should be no discovery on discovery, absent an agreement between the parties, or specific, tangible, evidence-based indicia (versus general allegations of deficiencies or mere "speculation") of a material failure by the responding party to meet its obligations.

*Id*. at 123.

All that said, I want the parties to work together in a cooperative fashion to conduct the needed discovery, which all parties recognize will be time consuming

---

[1] Created by a leading group of judges, lawyers, and academics, the Sedona Principles are recognized as a foundational guide for courts and lawyers confronting the challenges of e-discovery.

and expansive. As I stated at the oral hearing, I am available to help the parties navigate the choppy discovery waters if need be, although I certainly do not relish the opportunity to do so. Please promptly let me know of any discovery disputes by a joint, two-page letter, and I assure you that we will get to the bottom of all discovery-related issues sooner rather than later.

D. **CONFIDENTIAL WITNESSES/FORMER EMPLOYEES**

Plaintiffs' § 10(b) Complaint includes statements by 24 confidential witnesses ("CWs"), five of whom are also former employees ("FEs") identified in the § 14(a) Complaint. Defendants' interrogatories ask Plaintiffs to disclose the identities of the CWs/FEs. Defendants have also requested production of all documents provided by the CWs/FEs to Plaintiffs' counsel. Relying on the work-product privilege, Plaintiffs refuse to comply with both requests.

In resolving this discovery fight, I first note that the predominant view of district courts across this great nation is that the names of CWs/FEs referenced in a complaint are not protected work product. *See, e.g.*, *In re Bofi Holding, Inc. Sec. Litig.*, No. 15-CV-2324-GPC-KSC, 2021 WL 3700749, at *5 (S.D. Cal. July 27, 2021); *Schueneman v. Arena Pharm., Inc.*, No. 10CV1959-CAB (BLM), 2017 WL 3118738, at *6–7 (S.D. Cal. July 21, 2017); *Fort Worth Emps.' Ret. Fund v. J.P. Morgan Chase & Co.*, No. 09 CIV. 3701 JPO JCF, 2013 WL 1896934, at *1 (S.D.N.Y. May 7, 2013); *Plumbers & Pipefitters Local Union No. 630 Pension-Annuity Tr. Fund v. Arbitron, Inc.*, 278 F.R.D. 335, 339–44 (S.D.N.Y. 2011). In this case, the names of those CWs/FEs identified in the Complaints do not "reveal any more of the mental impressions, conclusions, opinions and legal theories of Plaintiffs' attorneys than Plaintiffs' attorneys have already chosen to reveal in the Complaint." *Hubbard v. Bankatlantic Bancorp, Inc.*, No. 07-61542-CIV, 2009 WL 3856458, at *3 (S.D. Fla. Nov. 17, 2009). Requiring Plaintiffs to identify the names of individuals whose statements they "found significant enough to include in their Complaint . . . . is the very essence of the discovery process." *In re Amgen Inc. Sec. Litig.*, No. CV072536PSGPLAX, 2013 WL 12139088, at *3 (C.D. Cal. Dec. 2, 2013).

Because the names of those individuals identified in the Complaints as confidential witnesses are not entitled to any work-product protection, Plaintiff must fully respond to Interrogatory No. 6 by November 12, 2021.[2]

I now turn to Defendants' request that Plaintiffs produce all documents the CWs/FEs have provided to Plaintiffs' counsel. In resolving this issue, I must first carefully define the contours of the work-product privilege. "[T]he work product doctrine insulates a lawyer's research, analysis of legal theories, mental impressions, notes, and memoranda of witnesses' statements from an opposing counsel's inquiries." *Dunn v. State Farm Fire & Cas. Co.*, 927 F.2d 869, 875 (5th Cir. 1991). Importantly, the work-product doctrine does not protect from disclosure documents that a third-party witness or former company employees voluntarily hands over to Plaintiffs' counsel during the course of litigation. Simply put, there is nothing about those documents—many of which were probably Defendants' business records—that reflects the mental processes of Plaintiffs' counsel. If the work-product doctrine did apply in such a situation, Plaintiffs could insulate from production any and all documents it obtained from any witnesses or sources in a case. That would, to say the very least, be an odd result. Not surprisingly, Plaintiffs cannot cite a single case adopting the construction of the work-product privilege it advocates here. As such, I order Plaintiffs to produce documents received from non-parties by November 12, 2021.

E. **CLASS CERTIFICATION DISCOVERY**

Finally, Defendants raise two issues concerning discovery that they allegedly need to address Plaintiffs' class certification motions.

---

[2] Interrogatory No. 6 ask Plaintiffs to "[i]dentify Plaintiffs' Confidential Witnesses [or Former Employees], including full name, last known phone number, job title(s) at McDermott or CB&I, duties at McDermott or CB&I, name of immediate supervisor(s) at McDermott or CB&I, last known business address, last known home address (if applicable), last known business, profession or occupation, last known job title, duties and name of immediate supervisor." Dkt. 210 at 8 n.4.

7

**CB&I Trading Records:** First, Defendants have requested Plaintiffs' trading records for CB&I stock. The § 14(a) Plaintiffs have indicated that they have no such documents. The § 10(b) Plaintiffs, on the other hand, have objected to the production of such records, arguing that information concerning CB&I trades is wholly irrelevant to the class certification issue. Defendants strongly disagree, claiming that CB&I trades are highly relevant to the class certification inquiry:

> Plaintiff's CB&I trades are relevant to issues like whether the § 10(b) Lead Plaintiff faces unique defenses that make it unsuitable to represent the class, and the calculation of the putative § 10(b) class's alleged damages. The CB&I–McDermott combination was an all-stock transaction. Whether and how much of the § 10(b) Lead Plaintiff's McDermott stock was acquired in exchange for CB&I stock as a result of the combination factors into the computation of alleged damages, as Defendants are entitled to offset any alleged McDermott damages against any gains Lead Plaintiffs received by exchanging CB&I stock for McDermott stock in the combination.

Dkt. 210 at 9–10.

As the parties are well aware, Rule 26(b)(1) allows parties to "obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case." FED. R. CIV. P. 26(b)(1). The scope of discovery is broad, and district courts are given wide latitude in determining what discovery is permissible in a given case. *See JP Morgan Chase Bank, N.A. v. DataTreasury Corp.*, 936 F.3d 251, 255 (5th Cir. 2019). Keeping in mind this liberal discovery standard, as well as the relative ease in which the trading records can be obtained, I see no reason to preclude this line of inquiry at this stage. The § 10(b) Plaintiffs must produce their CB&I trading records by November 12, 2021.

**Agreements Between Plaintiffs' Counsel:** Second, Defendants seek "all documents concerning any arrangements, agreements, or understandings (whether oral or written) involving any of the firms representing investors in connection with this Action." Dkt. 210 at 10. It is Defendants' stance that they "are entitled to conduct discovery into the arrangements between and among proposed

class counsel to test the adequacy of proposed class counsel at the class certification stage." *Id.* I disagree. Separate law firms have been appointed as lead counsel to pursue § 10(b) and § 14(a) claims on behalf of a purported class. Lead counsel is obligated to work for the class's benefit. That can include, in certain limited circumstances, enlisting other law firms to assist them in the prosecution of claims. Although I generally have found that the involvement of multiple law firms often unnecessarily inflates attorney's fees, it is not my role at the class certification stage to delve into the relationship between lead counsel and other firms they have enlisted to work on the case.[3] At the class certification stage, the focus is on whether the Rule 23 prerequisites have been satisfied. In conducting this inquiry, the Fifth Circuit has held that "the zeal and competence of the representatives' counsel" are relevant to determining whether the adequacy prong has been met. *Berger v. Compaq Comput. Corp.*, 257 F.3d 475, 479 (5th Cir. 2001) (cleaned up). I do not, however, believe that the discovery of fee arrangements between lead counsel and other firms has any bearing on whether lead counsel is qualified, experienced, and able to actively pursue the litigation. Because I conclude that fee agreements between Plaintiffs' counsel are not relevant to the issue of class certification, I deny Defendants' request to obtain such documentation.

    SIGNED this 4th day of November 2021.

                               ANDREW M. EDISON
                           UNITED STATES MAGISTRATE JUDGE

---

[3] If this case eventually settles or Plaintiffs obtain a favorable jury verdict, there will be plenty of time to address the appropriateness of attorney's fees sought by Plaintiffs.