# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF TEXAS
# HOUSTON DIVISION

| | |
|---|---|
| MIRIAM EDWARDS, ET AL., § | |
| § | |
| Plaintiffs. § | |
| § | |
| VS. § | CIVIL ACTION NO. 4:18-cv-04330 |
| § | |
| MCDERMOTT INTERNATIONAL, § | |
| INC., ET AL., § | |
| § | |
| Defendants. § | |

## DISCOVERY ORDER AND OPINION

This order addresses a number of discovery disputes the parties have outlined in a December 8, 2021 letter to the Court. *See* Dkt. 223. The parties presented oral arguments on December 14 and 17 by Zoom. I will address the pending issues in the same order as raised by the parties in their letter.

**(1) McDermott and CB&I Valuations, including Cash Flow Analysis and Merger Premiums (Request No. 24 (both)):**

Request No. 24 asks for "[a]ll Documents and Communications concerning the valuation of CB&I or McDermott, including any market or discounted cash flow analysis, and any Merger premium or contemplated Merger premium valuation." Defendants object for a laundry list of reasons, including that the request is overbroad, unduly burdensome, disproportionate to the needs of the case, vague, and ambiguous. I don't buy the objections Defendants are selling. This request is narrowly tailored to uncover relevant information concerning the valuation of CB&I and McDermott. As such, Defendants' objections to Request for Production No. 24 are overruled. Responsive documents must be produced.

**(2) Calendars or Diaries, Electronic or Otherwise, for the Individual Defendants (Request No. 40 (both)):**

Request No. 40 seeks "[a]ll calendars or diaries, electronic or otherwise, for or maintained on behalf of the [sic] Dickson, Spence, and Mullin." Defendants

lodge several objections, but note that they "will produce non-privileged, responsive calendars and diary entries relevant to the claims in this case during the Relevant Timeframe that Defendants locate . . . using appropriate document custodians and search terms for ESI." At oral argument, it became clear that all Plaintiffs are asking is for Defendants to additionally review the hard-copy version of the calendars and diaries for three individuals—Dickson, Spence, and Mullin—and produce the relevant portions. Given that there are only three custodians involved, this request is reasonable and fair. Accordingly, Defendants must review the hard-copy versions and produce the relevant portions.

**(3) Amounts Remaining on Insurance Policies (Requests Nos. 45 (§10(b)) and 54 (§14(a)):**

Defendants have produced the insurance policies that may be used to satisfy all or part of a possible settlement or judgment in this matter. The policy limits are well-known to the parties. Seeking additional information they believe will help guide their litigation strategy, Plaintiffs want Defendants to produce documents that show "how much of the policy limits remain" on the respective insurance policies after deducting defense costs. Defendants object, arguing that such information is not relevant to any claim or defense in the case. I agree. Although I fully understand why Plaintiffs would be interested in finding out how much money is left on the policies (if there are minimal funds available, it behooves Plaintiffs to reduce their settlement demands and seek an early mediation; if the policies have not been substantially eroded, Plaintiffs are arguably encouraged to continue to forge ahead with the discovery process), Plaintiffs do not get such documentation simply because they want it. The Federal Rules of Civil Procedure provide that "[p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case." FED. R. CIV. P. 26(b)(1). Because Plaintiffs have not demonstrated how the remaining policy limits are relevant to any claim or defense in the case, they are not entitled to such information. *See Hof v. LaPorte*, No. 19-10696, 2020 WL

2

5647041, at *1–2 (E.D La. Sept. 22, 2020) (finding "no legal authority or policy reason supporting disclosure of defense costs").

**(4) Documents Showing Available Assets of Individual Defendants (Requests Nos. 46 (§10(b)) and 55 (§14(a)):**

Next, Plaintiffs request documentation showing the assets of the Individual Defendants available to satisfy a hypothetical judgment obtained by the Plaintiffs. Plaintiffs contend they need such information to help inform their litigation strategy. To borrow an expression made famous by basketball star Dikembe Mutombo: "No, no, no." It should surprise no one that Plaintiffs are generally not entitled to force individual defendants who have yet to be found civilly liable to open up their personal financial information for review. Such matters are not relevant to any claim or defense in the case and cannot lead to the discovery of admissible evidence. If Plaintiffs obtain a judgment, they can utilize appropriate post-judgment discovery to obtain information concerning the Individual Defendants' assets available to satisfy a judgment. Until then, the Individual Defendants' financial information will remain locked behind closed doors.

**(5) Defendants' ESI Policies and Litigation Holds (Requests Nos. 47 (§10(b)) and 48 (§14(a))):**

Plaintiffs ask for the production of "[d]ocuments sufficient to show McDermott's policies, procedures, and practices for the destruction, retention, or preservation of documents, files, ESI, and other Electronic Media." Defendants have offered to produce documents sufficient to show McDermott's ESI policies and procedures in effect from March 15, 2017 through September 19, 2019, but balk at anything beyond that. Plaintiffs argue that this narrow of a timeframe is insufficient "because McDermott subsequently declared bankruptcy and emerged as a privately-held company – whose pre-existing ESI policies may no longer be applicable." Dkt. 229 at 3. Accordingly, Plaintiffs contend that "Defendants should provide documentation sufficient to show that they satisfied their bankruptcy-court-ordered obligations to preserve documents and ESI relevant or potentially

relevant to the Securities Actions." *Id.* (quotation omitted). Defendants argue Plaintiffs' ESI request is "discovery on discovery," which is proscribed under the Sedona Principles, absent "specific, tangible, evidence-based indicia (versus general allegations of deficiencies or mere 'speculation') of a material failure by the responding party to meet its [discovery] obligations." *Slocum v. Int'l Paper Co.*, No. CV 16-12563, 2019 WL 8918747, at *3 (E.D. La. Mar. 15, 2019) (quoting *The Sedona Principles, Third Edition: Best Practices, Recommendations & Principles for Addressing Electronic Document Production*, 19 SEDONA CONF. J. 1, 123 (2018)). Although I generally oppose so-called "discovery on discovery," I am of the view that discovery of ESI retention and disposition policies is fair game, especially when, as here, the burden on Defendants to produce such policies is minimal. This is a view shared by the majority of courts across the country that have considered the issue. *See Burd v. Ford Motor Co.*, No. 3:13-CV-20976, 2015 WL 4137915, at *9 (S.D.W. Va. July 8, 2015) ("[D]iscovery of document retention and disposition policies is not contingent upon a claim of spoliation or proof of discovery abuses."); *Newman v. Borders,* 257 F.R.D. 1, 3 (D.D.C. 2009) ("That a party's document retention policies, including its policies as to electronically stored information, may be a fit subject of discovery cannot be gainsaid.") Accordingly, Defendants are ordered to produce documents sufficient to show McDermott's ESI policies, without such production being limited to a certain time frame.

At oral argument, Plaintiffs also claimed that they should be entitled to obtain copies of litigation hold letters issued by Defendants. Defendants argue such information is not discoverable because the litigation hold instructions/notices are privileged. I side with the Defendants on this issue. As a routine matter, litigation hold letters are considered privileged communications and are, thus, not discoverable. *See Adkisson v. Jacobs Eng'g Group, Inc.*, No. 3:13-CV-505-TAV-HBG, 2021 WL 149841, at *8 (E.D. Tenn. Jan. 15, 2021); *Thomas v. Cricket Wireless, LLC*, No. 19CV07270WHAAGT, 2020 WL 7344742,

4

at *2 (N.D. Cal. Dec. 14, 2020); *Neighborhood Assistance Corp. of Am. v. United States Dep't of Hous. & Urban Dev.*, 19 F. Supp. 3d 1, 22 (D.D.C. 2013). I see no reason to stray from this general rule in this case.

**(6) Documents Concerning the Court-Upheld Three-Prong §10(b) Fraud (Requests Nos. 49–51 (§10(b))):**

Next, the §10(b) Plaintiffs request "[a]ll Documents and Communications concerning" the CB&I/Focus Project Fraud, the Technology Business Fraud, and the Capital Structure/Liquidity Fraud, as alleged in the §10(b) Plaintiffs' live pleading. Defendants object on the ground that these requests are overly broad. I agree. Although the scope of discovery is admittedly wide, a blanket request for all documents and communications relating to the alleged fraud is, in my view, improper. Given the expansive scope of the alleged fraud, these requests could conceivably cover millions of pages. Plaintiffs must particularize to some degree the specific documents desired. To be fair, I think Plaintiffs' Requests for Production do a good job, for the most part, of targeting specific documents to be produced. But these particular discovery requests do not pass the smell test. Defendants' objections are sustained.

**(7) Documents Concerning All False and Misleading Statements in the §14(a) and §10(b) Complaints (Request Nos. 50 [§14(a)] and 52 [§10(b)]):**

The parties summarize this discovery dispute as follows:

> The parties disagree whether Defendants must produce all Documents and Communications, including drafts, concerning every document containing the alleged false and misleading statements or omissions identified in the §14(a) and §10(b) Complaints, or whether Defendants must produce only those Documents and Communications that concern the particular alleged false and misleading statements (as opposed to other unrelated portions of the documents in which those statements appear).

Dkt. 223 at 2.

This is a tough one. I sympathize with both sides. Plaintiffs seek documents which they believe are relevant or likely to lead to the discovery of admissible

5

evidence. Defendants, on the other hand, complain about the breadth of this request, as it will undoubtedly require the production of an immense amount of paper (or electronic data). Keeping in mind that the Federal Rules of Civil Procedure were devised to provide for liberal pretrial discovery, I am going to allow Plaintiffs the discovery they seek and not limit the production to only those portions of the documents containing the alleged false or misleading statements. All in all, I think Plaintiffs are entitled to understand and appreciate the context of the draft documents, and it is arguably easier for Defendants to produce such documentation (although, admittedly, vast) as opposed to having to carefully review each line of each draft document to determine if it might have discoverable information.

**(8) Documents Supporting the Denials in Defendants' §14(a) and §10(b) Answers (Requests Nos. 51 [§14(a)] and 60 [§10(b)]):**

We worked this one out at the oral hearing on December 17. Defendants' objections to these requests are overruled. Defendants will produce all documents and communications supporting their denials in their answers. To clarify, these requests do not call for the production of various communications between Defendants' lawyers concerning Defendants' answers.

**(9) Memorializing meet and confer outcomes:**

As I explained at the oral hearing, I strongly encourage the parties to work together in a cooperative fashion to resolve any future discovery disputes. I do not think the parties need to routinely engage in lengthy letter writing campaigns, but both parties are entitled to receive from the other side, on a timely basis, a response to inquiries concerning outstanding discovery issues. If the parties reach an impasse, I am ready, willing, and able to jump in and help resolve the particular issues in dispute. In an effort to provide an available forum to quickly resolve discovery disputes, I will hold discovery status conferences at 8:00 a.m. CST by Zoom on the following Monday mornings in the new year: January 10, 2022; January 24, 2022; February 7, 2022; February 21, 2022; and March 7, 2022. Please

file a joint letter by 5:00 p.m. CST the Friday before each status conference identifying the discovery disputes that need to be addressed. If no status conference is needed, please let my case manager know by 5:00 p.m. CST the Friday before the scheduled conference, and we will cancel the proceedings.

Happy holidays!

SIGNED this 22nd day of December 2021.

_____
ANDREW M. EDISON
UNITED STATES MAGISTRATE JUDGE