UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| MIRIAM EDWARDS, *et al.*, § § § § § § § § § § § | |
| Plaintiffs. | |
| VS. | CIVIL ACTION NO. 4:18-cv-04330 |
| MCDERMOTT INTERNATIONAL, INC., *et al.*, | |
| Defendants. | |

## MEMORANDUM AND RECOMMENDATION

Pending before me is Defendants' Motion to Dismiss Plaintiff's § 10(b) Supplemental Class Action Complaint ("Motion to Dismiss"). Dkt. 222. After carefully reviewing the Supplemental Class Action Complaint, the excellent briefing submitted by both sides, and the applicable law, I recommend that the Motion to Dismiss be **GRANTED**.

## BACKGROUND

This is a securities class action lawsuit brought on behalf of purchasers of the common stock of McDermott International, Inc. ("McDermott") against McDermott and two of its former top executives, President and Chief Executive Officer David Dickson ("Dickson") and Executive Vice President and Chief Financial Officer Stuart Spence ("Spence").

In the Corrected Class Action Complaint, Lead Plaintiff Nova Scotia Health Employees' Pension Plan ("Nova Scotia") brings claims under §§ 10(b) and 20(a) of the Securities Exchange Act of 1934, and Rule 10b-5 promulgated thereunder.[1] The crux of the Corrected Class Action Complaint is that Defendants made misrepresentations and omissions regarding the true risks and costs of McDermott's May 2018 merger with Chicago Bridge & Iron Company, N.V. The

---

[1] There is a separate group of plaintiffs asserting claims under § 14(a). Those claims are not at issue in the pending Motion to Dismiss.

Corrected Class Action Complaint's proposed class consists of those persons and entities who purchased or otherwise acquired McDermott common stock between December 18, 2017 and September 17, 2019.

Defendants moved to dismiss the Corrected Class Action Complaint. In the spring of 2021, United States District Judge George C. Hanks, Jr. denied the motion to dismiss and ordered that discovery proceed. *See Edwards v. McDermott Int'l, Inc.*, No. 4:18-CV-4330, 2021 WL 1421609, at *10 (S.D. Tex. Apr. 13, 2021).

Last fall, Novia Scotia sought leave to file a Supplement to its Corrected Class Action Complaint ("Supplement"). Over vigorous opposition, I granted Novia Scotia leave to file the Supplement. I also set a briefing schedule for Defendants' anticipated motion to dismiss the Supplement.

In short, the 30-page Supplement carries forward the allegations of securities fraud from September 17, 2019, through McDermott's bankruptcy filing on January 23, 2020. In doing so, the Supplement adds roughly 20 allegedly false and misleading statements made by Defendants, ranging in time from late September 2019 through January 23, 2020. The Supplement also offers a new theory of liability, arguing that Defendants had a duty to disclose that it was planning for a potential bankruptcy filing. Section V of the Supplement, titled "Additional Partial Corrective Disclosures," pleads November 4–5 of 2019 and January 21–23 of 2020 events and stock drops as partially corrective of alleged misstatements previously pleaded in the Corrected Class Action Complaint.[2] Finally, the Supplement seeks to expand the class definition to cover the time period from September 18, 2019 through January 23, 2020.

As expected, Defendants have moved to dismiss the Supplement, raising a number of distinct arguments. First, Defendants contend that the Supplement fails to allege any actionable false or misleading statement. Second, Defendants argue that there is no legal duty to disclose bankruptcy planning, and creating such a

---

[2] As Defendants readily acknowledged at oral argument, they have not moved to dismiss these corrective disclosures from the case.

duty would lead to disastrous policy consequences. Third, Defendants insist that the alleged misrepresentations are nothing more than non-actionable puffery, statements of opinion, or protected forward-looking statements. Fourth, Defendants aver that the Supplement fails to establish the requisite inference of scienter required under the Private Securities Litigation Reform Act ("PSLRA").

## LEGAL STANDARD

Federal Rule of Civil Procedure 12(b)(6) authorizes dismissal of a complaint when the plaintiff has failed to state a claim upon which relief can be granted. "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.*

Section 10(b) of the Securities Exchange Act of 1934 (the "Exchange Act") makes it unlawful to "use or employ, in connection with the purchase or sale of any security . . . any manipulative or deceptive device or contrivance in contravention of such rules and regulations as the [Securities and Exchange] Commission may prescribe." 15 U.S.C. § 78j(b). Rule 10b–5 implements § 10(b) by forbidding, among other things, the making of any "untrue statement of material fact" or the omission of any material fact "necessary in order to make the statements made . . . not misleading." 17 C.F.R § 240.10b–5(b). "A § 10b–5 claim is subject to both Federal Rule of Civil Procedure 9(b)'s requirement that fraud be pled 'with particularity' and . . . the requirements of the [PSLRA]." *Abrams v. Baker Hughes Inc.*, 292 F.3d 424, 430 (5th Cir. 2002).

Rule 9(b) requires parties claiming fraud to "state with particularity the circumstances constituting fraud." FED. R. CIV. P. 9(b). The allegations must

include "the particulars of time, place, and contents of the false representations, as well as the identity of the person making the misrepresentation and what he obtained thereby." *Benchmark Elecs., Inc. v. J.M. Huber Corp.*, 343 F.3d 719, 724 (5th Cir. 2003) (quotation omitted).

Enacted by Congress in 1995, the PSLRA has "twin goals: to curb frivolous, lawyer-driven litigation, while preserving investors' ability to recover on meritorious claims." *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007). To accomplish this goal, the PSLRA contains "[e]xacting pleading requirements." *Id.* at 313. Under the PSLRA's heightened pleading requirements, a plaintiff seeking to properly state a Section 10(b) and Rule 10b–5 claim must allege "(1) a material misrepresentation or omission by the defendant; (2) scienter; (3) a connection between the misrepresentation or omission and the purchase or sale of a security; (4) reliance upon the misrepresentation or omission; (5) economic loss; and (6) loss causation." *Halliburton Co. v. Erica P. John Fund, Inc.*, 573 U.S. 258, 267 (2014) (quotation omitted).

The scienter, or state-of-mind element of a § 10(b) and Rule 10b–5 claim, is a "mental state embracing intent to deceive, manipulate, or defraud." *Ernst & Ernst v. Hochfelder*, 425 U.S. 185, 193 n.12 (1976). To allege scienter under the PSLRA, "the complaint shall, with respect to each act or omission alleged to violate this chapter, state with particularity facts giving rise to a strong inference that the defendant acted with the required state of mind." 15 U.S.C. § 78u–4(b)(2).

Section 20(a) of the Exchange Act provides for joint and several liability for "controlling persons" who are found to have induced violations of the Exchange Act. 15 U.S.C. § 78t(a). "To impute liability to [Dickson] and [Spence]—the alleged 'control persons' of [McDermott] under § 20(a) of the Securities Exchange Act—the investors ha[ve] to show a 'primary violation' under § 10(b): If the § 10(b) claim is inadequate, then so is the § 20(a) claim." *Mun. Emps.' Ret. Sys. of Mich. v. Pier 1 Imps., Inc.*, 935 F.3d 424, 429 (5th Cir. 2019).

4

## OBJECTIONS TO EXHIBITS 4–6 AND 8–9 ATTACHED TO THE MOTION TO DISMISS

As a preliminary matter, I need to address Nova Scotia's objection to various news articles attached to the Motion to Dismiss as Exhibits 4–6 and 8–9. Nova Scotia objects to these exhibits on the grounds that they are not attached to or incorporated in the Supplement. Nova Scotia is correct. This is not a close call.

In considering a Rule 12(b)(6) motion, a district court may consider: (1) the pleadings and any attachment to the pleadings; (2) documents incorporated into the complaint by reference; and (3) documents that a defendant attaches to its motion to dismiss if those documents are referenced in the plaintiff's complaint and are central to the plaintiff's claim. *See Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498–99 (5th Cir. 2000). Because the news articles at issue clearly do not fall with any of these well-defined exceptions, I will strike Exhibits 4–6 and 8–9 from consideration.

## ANALYSIS

As noted, to state a claim for a violation of Section 10(b) and Rule 10b–5, a plaintiff must first plead a material misrepresentation or omission. For the reasons set forth below, Nova Scotia has failed to allege any actionable misrepresentation or omission by Defendants.

**A.   LEGAL FRAMEWORK FOR PLEADING A MATERIAL MISREPRESENTATION OR OMISSION**

Under the PSLRA, securities fraud plaintiffs must "identify the particular statement they contend is false and misleading and the reason why that statement is false or misleading. Attempting to overwhelm the court with conclusory, garrulous and esoteric allegations simply does not get the job done." *In re Capstead Mortg. Corp. Sec. Litig.*, 258 F. Supp. 2d 533, 560–61 (N.D. Tex. 2003). A statement is misleading "if it would give a reasonable investor the impression of a state of affairs that differs in a material way from the one that actually exists." *Retail Wholesale & Dep't Store Union Loc. 338 Ret. Fund v. Hewlett-Packard Co.*, 845 F.3d 1268, 1275 (9th Cir. 2017) (quotation omitted).

5

District courts have found that "corporate cheerleading" in the form of "generalized positive statements about a company's progress" is not a basis for liability under federal securities law. *Nathenson v. Zonagen Inc.*, 267 F.3d 400, 419 (5th Cir. 2001). This is because "no reasonable investor would consider such statements material and . . . investors and analysts are too sophisticated to rely on vague expressions of optimism rather than specific facts." *In re BP p.l.c. Sec. Litig.*, 843 F. Supp. 2d 712, 748 (S.D. Tex. 2012). "Statements that are predictive in nature are actionable only if they were false when made." *Shushany v. Allwaste, Inc.*, 992 F.2d 517, 524 (5th Cir.1993).

To be actionable, a misrepresentation of a fact, or an omission of a fact, must also be material. *See Basic Inc. v. Levinson*, 485 U.S. 224, 238 (1988) ("It is not enough that a statement is false or incomplete, if the misrepresented fact is otherwise insignificant."). "A statement or omitted fact is 'material' if there is a substantial likelihood that a reasonable investor would consider the information important in making a decision to invest." *R & W Tech. Servs. Ltd. v. Commodity Futures Trading Comm'n*, 205 F.3d 165, 169 (5th Cir. 2000).

**B.   THE SUPPLEMENT FAILS TO ALLEGE A FALSE OR MISLEADING STATEMENT**

By my count, the Supplement identifies approximately 20 statements that it contends are materially false or misleading. A close look at those statements, however, fails to reveal any statement made by Defendants that was factually untrue or misleading at the time it was made.

As described in great detail in the Corrected Class Action Complaint, McDermott faced significant financial challenges in the fall of 2019. On September 18, 2019, the company's stock price plummeted 49 percent in morning trading after *The Wall Street Journal* reported that McDermott had "engaged turnaround consulting firm AlixPartners LLP to advise on efforts to improve cash flow and stem a recent spate of net losses." Dkt. 105 at 216. Later that same day, McDermott confirmed the hiring of the turnaround firm, stating that the company was "taking

6

positive and proactive measures . . . intended to improve its capital structure and the long-term health of its balance sheet." *Id.*

According to the Supplement, Defendants falsely convinced analysts and investors that McDermott could overcome its liquidity problems by obtaining short-term financing and then, later on, selling its Lummus Technology business. "Unbeknownst to investors," the Supplement alleges, "the operational issues, project delays, cost overruns, and cash drains of [various projects] were insurmountable absent a bankruptcy reorganization." Dkt. 220 at 5. "Defendants' statements were merely a scheme to maintain artificial inflation in McDermott's stock price while providing time to develop and execute a prepackaged Chapter 11 restructuring plan that wiped out common stockholders." *Id.* at 6. The Supplement also notes that McDermott issued a press release announcing that the company had filed a prepackaged bankruptcy on January 21, 2020. *See id.* at 21.

Although the Supplement is well-written and certainly conveys its thematic message that Defendants reportedly knew that bankruptcy was a foregone conclusion, Nova Scotia cannot point to a single statement in which Defendants affirmatively denied the possibility that it would file for bankruptcy protection. At this preliminary pleading stage, it is my job to look at each challenged statement, one by one, to determine if it contains a false statement of fact. I have done that. The statements Nova Scotia challenge merely identify strategic alternatives McDermott pursued in an effort to address its serious liquidity concerns. The statements do not promise that McDermott would never file a bankruptcy proceeding. *See, e.g*, Dkt. 220 at 8 (alleging McDermott "expects to utilize the amounts under the Agreement [with secured lenders] to finance working capital and support the issuance of required performance guarantees on new projects" (emphasis omitted)); *id.* ("McDermott continues to pursue the previously announced strategic alternatives process for Lummus Technology and the sale process for the remaining portion of the pipe fabrication business." (emphasis omitted); *id.* at 11 ("Our recently announced $1.7 billion financing agreement with

7

our lenders signals their confidence in our underlying business. We continue working with them to achieve a long-term balance sheet solution as we remain focused on delivering value for our customers, employees, subcontractors, and suppliers." (emphasis omitted)); *id.* ("We continue to pursue the previously announced strategic alternative process for our Lummus Technology business and the sale process for the remaining portion of our pipe fabrication business." (emphasis omitted)); *id.* at 12 ("Tranche B funding is expected to allow McDermott to continue collaborative discussion regarding a long-term balance sheet solution" (emphasis omitted)).

The above-referenced statements are a mere sampling of the statements challenged by Nova Scotia in the Supplement. Attached as Exhibit A to Defendants' Motion to Dismiss is an extremely helpful Appendix, listing, in one convenient place, each allegedly fraudulent statement made by Defendants.[3] *See* Dkt. 222-1. Although Defendants repeatedly described their efforts to ameliorate McDermott's liquidity problems, they never once promised investors that a bankruptcy filing was off the table. The reality for any company is that a bankruptcy filing always remains a possibility in the event its efforts to cure a severe liquidity crisis do not bear fruit. Indeed, McDermott expressly stated in its Form 10-Q for its third quarter (ending September 30, 2019) that the company "may be compelled to seek an in-court solution, potentially in the form of a pre-packaged or pre-arranged filing under Chapter 11 of the Bankruptcy Code if we are unable to successfully negotiate a timely out-of-court restructuring agreement with our creditors." Dkt. 222-5 at 64.

---

[3] As an aside, Nova Scotia objects to Appendix A on the ground that it seeks "to rewrite the Supplement's statements and raise argument beyond the brief page limits." Dkt. 230 at 22 n.3. I overrule Nova Scotia's objections. Because Appendix A merely identifies the challenged statements **verbatim** in one easily accessible chart, I view Appendix A as a helpful guide to the Court, not a devious attempt to avoid page limitations. *See Mahoney v. Found. Med., Inc.*, 342 F. Supp. 3d 206, 212 (D. Mass. 2018) (rejecting attempt to exclude a chart identifying misstatements and omissions alleged in a securities fraud complaint because such information is "helpful to the Court" and not "argumentative in nature").

In short, the Supplement fails to identify a materially false or misleading statement.[4] Because I have concluded that the Supplement does not allege an actionable misrepresentation, I must now determine whether the Supplement alleges an actionable omission.

## C. THE SUPPLEMENT FAILS TO ALLEGE AN ACTIONABLE OMISSION

"[I]t bears emphasis that § 10(b) and Rule 10b-5(b) do not create an affirmative duty to disclose any and all material information." *Matrixx Initiatives, Inc. v. Siracusano*, 563 U.S. 27, 44 (2011). *See also Basic*, 485 U.S. at 239 n.17 ("Silence, absent a duty to disclose, is not misleading under Rule 10b-5."). "[M]erely because a reasonable investor might really like to know [a] fact" does not mean that a corporation has a legal duty to disclose that fact. *Berger v. Beletic*, 248 F. Supp. 2d 597, 603 (N.D. Tex. 2003). "Disclosure is required under [§ 10(b) and Rule 10b-5(b)] only when necessary 'to make . . . statements made, in the light of the circumstances under which they were made, not misleading.'" *Matrixx*, 563 U.S. at 44–45 (quoting Rule 10b-5). "Even with respect to information that a reasonable investor might consider material, companies can control what they have to disclose under these provisions by controlling what they say to the market." *Id*. at 45.

Nova Scotia contends that once Defendants chose to speak about their efforts to combat McDermott's liquidity issues, they had an obligation to disclose the fact that they were considering the possibility of filing for bankruptcy. *See* Dkt. 220 at 12 (McDermott "failed to disclose . . . that a prepackaged bankruptcy was forthcoming and that McDermott's lenders would not permit access to third tranche funding outside of a bankruptcy proceeding"); *id*. at 13 (McDermott "failed to disclose that [it] was nearing an imminent prepackaged bankruptcy that would wipe out its common stockholders"). This type of failure-to-disclose-bankruptcy-

---

[4] Because the alleged misstatements set forth in the Supplement are not, in fact, misstatements at all, I need not address whether the challenged statements: (i) are forward-looking statements protected by the PSLRA's safe-harbor provision; or (ii) constitute nonactionable puffery.

planning claim has been considered and rejected by district courts on both sides of the Mississippi River. *See Espinoza v. Whiting*, 8 F. Supp. 3d 1142, 1154 (E.D. Mo. 2014) (rejecting claim that a company had an obligation to disclose a material risk of bankruptcy given its poor financial condition), *aff'd sub nom. Podraza v. Whiting*, 790 F.3d 828 (8th Cir. 2015); *McNulty v. Kanode*, No. A-13-CV-026-LY, 2013 WL 12077503, at *12 (W.D. Tex. Nov. 6, 2013) (explaining "even if [the company] had in fact hired bankruptcy counsel and was seriously considering filing for bankruptcy, Defendants would not have been required to disclose this plan to investors" absent a duty to disclose); *Hutchinson v. Perez*, No. 12 Civ. 1073(HB), 2012 WL 5451258, at *5 (S.D.N.Y. Nov. 8, 2012) (statement that company had "no intention" of filing for bankruptcy was not misleading even while option was under consideration); *Beleson v. Schwartz*, 599 F. Supp. 2d 519, 527 (S.D.N.Y. Feb. 24, 2009) (companies need not disclose contingency planning merely because contingency ultimately materializes), *aff'd*, 419 F. App'x 38 (2d Cir. 2011); *In re Tower Auto. Sec. Litig.*, 483 F. Supp. 2d 327, 348 (S.D.N.Y. 2007) (company's "failure to disclose its bankruptcy planning did not make its other disclosures"—such as a statement that it was pursuing "options for easing [its] liquidity problems"—misleading).

The reason district courts almost universally reject the notion that a public company must disclose when it is contemplating bankruptcy proceedings is grounded in "public policy justifications for allowing a company operating near insolvency to make careful deliberations about its future, free from any obligation to disclose potential bankruptcy." *Beleson*, 599 F. Supp. 2d at 527. The *Beleson* court further explained:

> Any standard mandating disclosure of contingent bankruptcy planning would put an unacceptable burden on corporations and their officers. Such a standard might amount to a self-fulfilling prophecy, ensuring that all companies that begin contingent preparations for bankruptcy would inevitably go bankrupt because, upon disclosure of the plans, investors would immediately lose confidence in the company and close the capital markets. In some cases, a rule requiring

>disclosure of bankruptcy plans might prematurely foreclose other options the company may be contemplating that could restore its financial viability and thus avert bankruptcy. Such a standard would also raise substantial practical challenges in defining the proper moment during the continuum of contingency planning at which the obligation to disclose would take effect.

*Id.*

In a footnote, Nova Scotia cites several cases for the proposition that a failure to disclose an imminent bankruptcy is a material omission. *See EnSource Invs. LLC v. Tatham*, No. 3:17-CV-00079, 2017 WL 10648061 (S.D. Cal. Mar. 9, 2017); *Anderson v. McGrath*, No. CV-11-01175-PHX-DGC, 2012 WL 5381406 (D. Ariz. Nov. 1, 2012); *In re MoneyGram Int'l, Inc. Sec. Litig.*, 626 F. Supp. 2d 947 (D. Minn. 2009); *In re McLeodUSA Sec. Litig.*, No. C02-0001, 2003 U.S. Dist. LEXIS 27915 (N.D. Iowa Aug. 7, 2003); *Arnlund v. Smith*, 210 F. Supp. 2d 755 (E.D. Va. 2002); *Salkind v. Wang*, No. CIV.A. 93-10912-WGY, 1995 WL 170122 (D. Mass. Mar. 30, 1995). But, as pointed out by Defendants, those cases are inapposite. Each of those cases involved "defendants affirmatively paint[ing] a rosy, misleading picture of a company's financial status and then [failing to] disclose underlying liquidity problems." Dkt. 222 at 22. By contrast, McDermott expressly acknowledged its fragile liquidity position and outlined various steps—from bridge loan financing in the short-term to a possible sale of Lummus Technology at a future date—the company considered in an effort to escape from under crippling debt. Viewed in light of all the information available at the time, it is hard to argue with a straight face that a reasonable investor would be surprised to learn that McDermott faced the real possibility of seeking bankruptcy protection. This is particularly true given the specific disclosure in McDermott's quarterly federal securities filings, discussed above, that the company "may be compelled to seek an in-court solution, potentially in the form of a pre-packaged or pre-arranged filing under Chapter 11 of the Bankruptcy Code." Dkt. 222-5 at 64. Even Nova Scotia, in this very case, recognized in a filing with the Court on September 18, 2019, that

"McDermott fil[ing] for bankruptcy protection" was a "strong possibility." Dkt. 95 at 4.

With its back against the wall, Nova Scotia contends that even though McDermott allegedly knew as early as September 2019 that bankruptcy was its "only option" and a "foregone conclusion," McDermott failed to publicly disclose such information. Dkt. 230 at 25–27. In making this argument, Nova Scotia relies heavily on statements made by McDermott's Chief Transformation Officer, John Castellano, during bankruptcy proceedings on March 12, 2020, to the effect that once the company obtained bridge financing in the fall of 2019, "there really weren't any other options at all, other than restructuring." Dkt. 240-2 at 128. In Nova Scotia's mind, this statement is an express admission that McDermott knew early on that it had no alternative other than to seek Chapter 11 protection. But this view is too simplistic, as it assumes that the term "restructuring" is synonymous with filing for bankruptcy. This certainly is not the case, as restructuring often occurs out of court by, for example, stretching out the maturity date of obligations, partial forgiveness of principal and accrued interest, changing covenants in debt instruments, or a combination of these and other changes. *See In re Solutia, Inc.*, No. 03-17949 PCB, 2007 WL 1302609, at *4 (Bankr. S.D.N.Y. May 1, 2007) (recognizing the difference between out-of-court restructuring efforts and filing for bankruptcy). Defendants maintain that McDermott's public filings, as well as the entirety of Castellano's bankruptcy testimony, expressly recognize that McDermott actively sought out-of-court restructuring before it finally concluded, as a last resort, that it had no alternative but to file for bankruptcy protection. *See* Dkt. 240-2 at 134 (Castellano specifically denying that bankruptcy was a "fait accompli" as of October 21, 2019, and testifying that "we knew a reorganization of some form or fashion was necessary"). After carefully reviewing the documents referenced in the Supplement, which clearly indicate that McDermott analyzed both in-court and out-of-court options to address its capital structure, I am unwilling to jump to the

12

conclusion that Defendants knew all along that bankruptcy was the only real alternative to its business problems.

All told, I refuse to fault Defendants for failing to disclose that McDermott was considering bankruptcy. In reaching this conclusion, I follow the reasoning of the overwhelming majority of federal courts which have held that a company's "failure to disclose its bankruptcy planning [does] not make its other disclosures misleading." *In re Tower Auto. Sec. Litig.*, 483 F. Supp. 2d at 348. Accordingly, Nova Scotia has failed to allege an actionable omission.

***

In short, the Supplement has failed to identify a misleading statement or material omission actionable under § 10(b) and Rule 10b-5(b). I thus recommend that the Supplement's new § 10(b) and Rule 10b-5(b) claims be dismissed. Nova Scotia's § 20(a) claim against Dickson and Spence likewise fails, as it is predicated on a successful § 10(b) claim. *See Emps.' Ret. Sys. v. Whole Foods Mkt., Inc.*, 905 F.3d 892, 905 (5th Cir. 2018). Because I have concluded that Nova Scotia has failed to identify a misleading statement or omission, I need not address whether the Supplement's federal securities claims should also be dismissed for the failure to allege scienter. *See Labs.' Loc. #231 Pension Fund v. PharMerica Corp.*, No. 3:18-CV-109-RGJ, 2019 WL 4645583, at *13 (W.D. Ky. Sept. 24, 2019).

**CONCLUSION**

For the reasons explained above, I recommend that Defendants' Motion to Dismiss Plaintiff's § 10(b) Supplemental Class Action Complaint (Dkt. 222) be **GRANTED**. The claims arising out of the alleged additional materially false and misleading statements and omissions set forth in ¶¶ 6–15 of the Supplement should be dismissed. At the same time, this recommendation is not intended to impact the additional partial corrective disclosures set forth in ¶¶ 16–24 of the Supplement, or the extension of the class period to January 23, 2020 as described in ¶ 4 of the Supplement.

The Clerk shall provide copies of this Memorandum and Recommendation to the respective parties who have 14 days from receipt to file written objections pursuant to Federal Rule of Civil Procedure 72(b) and General Order 2002–13. Failure to file written objections within the time period mentioned shall bar an aggrieved party from attacking the factual findings and legal conclusions on appeal.

Signed this 30th day of August 2022.

ANDREW M. EDISON
UNITED STATES MAGISTRATE JUDGE