UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| MIRIAM EDWARDS, Individually and on Behalf of All Others Similarly Situated, | § § § § | |
| Plaintiff, | § § | |
| v. | § § | Civil Action No. 4:18-cv-04330 |
| McDERMOTT INTERNATIONAL, INC., DAVID DICKSON, and STUART SPENCE, | § § § § § | |
| Defendants. | § § | |

**DEFENDANTS' SUR-REPLY TO § 10(b) LEAD PLAINTIFF'S REPLY
IN FURTHER SUPPORT OF THE MOTION FOR CLASS
CERTIFICATION AND APPOINTMENT OF § 10(b)
<u>CLASS REPRESENTATIVES AND § 10(b) CLASS COUNSEL</u>**

McDermott International, Inc. ("McDermott"), David Dickson, and Stuart Spence (collectively "Defendants") file this Sur-Reply to § 10(b) Lead Plaintiff's Reply in Further Support of its Motion for Class Certification and Appointment of § 10(b) Class Representatives and § 10(b) Class Counsel [ECF 342] ("Reply"). Pursuant to the Court's instructions, Defendants limit this Sur-Reply to the price impact issue.

The price impact questions in this case concern whether the last five alleged corrective disclosures were corrective of an earlier alleged misrepresentation and thereby demonstrate price impact. *See* ECF 318 (Defendants' Opposition) at 21-25. As detailed in Defendants' Opposition, an analysis of these alleged corrective disclosures reveals various "mismatch[es] between the contents of the misrepresentation[s] and the corrective disclosure[s]." *Goldman Sachs Grp., Inc. v. Ark. Tchr. Ret. Sys.*, 141 S. Ct. 1951, 1961 (2021). Specifically, those alleged corrective disclosures concern negative news developments that McDermott never stated would not occur and sharply contrast with the alleged misrepresentations in their level of specificity. *See* ECF 318 at 23-25. That decouples those last five alleged corrective disclosures from the alleged misrepresentations and renders them unfit to be part of any class claims. *See id.*

**I.   Under *Goldman*, this Court must assess at the class-certification stage whether each alleged corrective disclosure revealed the truth behind an alleged misrepresentation.**

Plaintiff's Reply mounts only a halting defense of the last five alleged corrective disclosures. It starts off with the vague claim that "[t]hese arguments are inappropriately presented now." ECF 342 at 28. If Plaintiff is suggesting that courts cannot evaluate correctiveness at class certification, that is flatly wrong. Although the propriety of

assessing correctiveness at class certification may have been debatable up until a few years ago, the Supreme Court definitively settled that question in *Goldman*. That decision carefully explains how correctiveness lies at the core of the price impact inquiry and accordingly must be assessed at the class certification stage:

> [T]hat final inference—that the back-end price drop equals front-end inflation—starts to break down when there is a mismatch between the contents of the misrepresentation and the corrective disclosure. That may occur when the earlier misrepresentation is generic (*e.g.*, "we have faith in our business model") and the later corrective disclosure is specific (*e.g.*, "our fourth quarter earnings did not meet expectations"). Under those circumstances, it is less likely that the specific disclosure actually corrected the generic misrepresentation, which means that there is less reason to infer front-end price inflation—that is, price impact—from the back-end price drop.

*Goldman*, 141 S. Ct. at 1961. The Court further made clear that courts must assess correctiveness "regardless [of] whether that [inquiry] overlaps with materiality or any other merits issue." *Id.*[1]

Both before and after *Goldman*, courts have assessed the correctiveness of alleged corrective disclosures at the class certification stage and excluded any that did not pass price-impact muster on that or other grounds. *See, e.g.*, *Ferris v. Wynn Resorts Ltd.*, 2023 WL 2337364, at *11 (D. Nev. Mar. 1, 2023) ("[T]he plaintiffs do not explain how that announcement revealed that any of the defendants' prior statements were false or

---

[1] *Ludlow v. BP, P.L.C.*, 800 F.3d 674 (5th Cir. 2015), did not hold otherwise. That case did not concern price impact at all. Instead, it focused on *Comcast*'s requirement that a damages model be consistent with the plaintiff's liability theory and capable of classwide measurement. *Id.* at 685-89 (discussing *Comcast Corp. v. Behrend*, 569 U.S. 27 (2013)). The court held that for those purposes, it need not address whether the allegedly corrective events underlying the damages model were in fact tied to the alleged misrepresentations. *Id.* But, critically, it never opined on whether correctiveness mattered *for price impact*. And even if it had, the Supreme Court settled that issue once and for all in *Goldman*.

2

misleading. . . . Merely because the announcement that the committee dismissed the first law firm was potentially negative information coming out in the days surrounding the other revelations does not make it a corrective disclosure. The plaintiff class therefore may not proceed on this allegation as a corrective disclosure."); *In re Chicago Bridge & Iron Co. N.V. Sec. Litig.*, 2019 WL 5287980, at *39 (S.D.N.Y. Oct. 18, 2019) ("Reviewing this alleged corrective disclosure for 'newness,' I find that there was no new information provided by this alleged corrective disclosure. . . . Accordingly, because there was no new information released to the market in the February 4 call, this cannot serve as a corrective disclosure."), *report and recommendation adopted in part*, 2020 WL 1329354 (S.D.N.Y. Mar. 23, 2020); *In re Intuitive Surgical Sec. Litig.*, 2016 WL 7425926, at *14-17 (N.D. Cal. Dec. 22, 2016) (excluding two of five alleged corrective disclosures due to a lack of correctiveness and/or because there was no statistically significant price reaction). The Court should do the same and ensure that Plaintiff's last five alleged corrective disclosures pass the correctiveness threshold before allowing them to proceed as part of the case.

II. **Plaintiff's partial defense of its last five alleged corrective disclosures falls far short of demonstrating their correctiveness.**

As for the actual correctiveness inquiry, Plaintiff engages only with one of the five alleged corrective disclosures that Defendants challenge, thereby leaving essentially unanswered Defendants' demonstration that the other four corrective disclosures did not correct any alleged misrepresentation. *Compare* ECF 318 at 21-25 (Defendants chronicling the correctiveness deficiencies with each of the last five alleged corrective disclosures) *with* ECF 342 at 29 (Plaintiff answering Defendants' charges only for the November 4,

3

2019 disclosure of an SEC investigation). The chart below illustrates the resulting status of Plaintiff's eight alleged corrective disclosures:

|   | **Alleged Corrective Disclosure** | **Defendants' Opposition** | **Plaintiff's Reply** |
|---|---|---|---|
| 1 | October 30, 2018 disclosure of changed Focus Project estimates, increased Merger goodwill of $782 million, and intent to sell its tank storage and U.S. pipe fabrication businesses | Not challenged on correctiveness grounds | n/a |
| 2 | February 13, 2019 disclosure of $168 million in changed Q4 2018 estimates for one of the Focus Projects, the Cameron LNG Project | Not challenged on correctiveness grounds | n/a |
| 3 | July 29, 2019 disclosure of $205 million in cash used by operating activities in Q2 2019, net loss of $146 million, and lowered guidance | Not challenged on correctiveness grounds | n/a |
| 4 | September 18-19, 2019 reports of hiring a turnaround firm and a potential sale of McDermott's Lummus technology business | Not corrective | Unaddressed |
| 5 | September 24, 2019 reports of seeking a $1.7 billion bridge loan | Not corrective | Unaddressed |
| 6 | September 27, 2019 reports of a challenging credit situation relating to obtaining a bridge loan | Not corrective | Unaddressed |
| 7 | November 4, 2019 disclosure of an SEC investigation relating to the Cameron LNG Project | Not corrective | Some response |
| 8 | January 21, 2020 bankruptcy filing | Not corrective | Unaddressed |

Even as to that one alleged corrective disclosure, Plaintiff does not explain why the November 4, 2019 announcement of an SEC investigation merits a departure from the rule that "generally, commencement of government investigations on suspected fraud do not, standing alone, amount to a corrective disclosure." *Pub. Emps.' Ret. Sys. of Miss., P.R. Tchrs. Ret. Sys. v. Amedisys, Inc.*, 769 F.3d 313, 323 (5th Cir. 2014). To be sure, Plaintiff cites a few cases in which an announcement of a governmental investigation constituted a corrective disclosure in certain particular circumstances, but that is entirely consistent with the *general* rule as Defendants have described it. *See, e.g.*, *In re Dell Inc. Sec. Litig.*, 591 F. Supp. 2d 877, 909-10 (W.D. Tex. 2008) (holding that if unaccompanied by "a revelation of prior fraud or misrepresentations," "the disclosure of an investigation . . . [does not] constitute a corrective disclosure"); *In re Bristol Myers Squibb Co. Sec. Litig.*, 586 F. Supp. 2d 148, 165 (S.D.N.Y. 2008) (explaining that the announcement of a governmental investigation could be a corrective disclosure if it was the "'tip of the iceberg'—the first in a series of revelations which would ultimately expose the Company's entire fraudulent scheme"). Conspicuously absent from the Reply, however, is any indication of why this particular announcement of a governmental investigation should trigger a similar exception to the general rule.

Plaintiff also tries to salvage this alleged corrective disclosure by claiming that part of the accompanying stock drop was due to McDermott's CFO resigning the next day. *See* ECF 342 at 29. But that has nothing to do with whether the separate announcement of the SEC investigation was a corrective disclosure. In other words, even if the CFO's resignation could constitute a corrective disclosure, the announcement of the SEC

5

investigation still could not.

In any event, the CFO's resignation fails on correctiveness grounds for the same reasons that plague many of Plaintiff's other alleged corrective disclosures. That resignation simply did not "reveal some then-undisclosed fact with regard to the specific misrepresentations alleged in the complaint." *In re Omnicom Grp., Inc. Sec. Litig.*, 597 F.3d 501, 511 (2d Cir. 2010); *see also Heck v. Orion Group Holdings, Inc.*, 468 F. Supp. 3d 828, 861-62 (S.D. Tex. 2020) ("announcement of [the CFO's] resignation" was not a corrective disclosure because there was no "connect[ion]" between it and "any of the alleged misrepresentations"); *In re Odyssey Healthcare, Inc. Sec. Litig.*, 424 F. Supp. 2d 880, 887-88 (N.D. Tex. 2005) (resignation of company's president and CEO in light of "operational challenges" "lack[ed] the requisite specificity to be taken as corrective of any more specific alleged misstatements").

Plaintiff's chief authority, *Amedisys*, is not to the contrary. Indeed, it recognized that "the announcement of the resignations of Amedisys's [COO and CIO] 'to pursue other interests' also does not in and of itself constitute a corrective disclosure" because "nothing in the resignation announcement alone reveals the truth behind earlier misstatements." 769 F.3d at 322-23. The court then held that those resignations combined with a number of other disclosures to "collectively constitute and culminate in a corrective disclosure that adequately pleads loss causation." *Id.* at 324. But that holding does Plaintiff little good here, where the issue instead is whether this particular resignation constitutes a corrective disclosure for purposes of price impact. On that point, *Amedisys* strongly supports Defendants' view that the resignation "does not in and of itself constitute a corrective

6

disclosure." *Id.* at 322.

On the remaining four alleged corrective disclosures, Plaintiff offers only a strawman version of Defendants' conception of correctiveness—claiming that Defendants "argue that correctives must be a *mirror image* of misstatements," ECF 342 at 30—and then attaches a chart that includes various snippets from the alleged corrective disclosures and alleged misrepresentations. ECF 342-12. Neither moves the needle.

On the former, that simply is not and never has been Defendants' position. Defendants instead have grounded their view of correctiveness on concrete principles from the case law. *See* ECF 318 at 24 (citing *Omnicom*, 597 F.3d at 511, for the proposition that a corrective disclosure must "reveal some then-undisclosed fact with regard to the specific misrepresentations alleged in the complaint"); *id.* (citing *Goldman*'s teachings on specificity mismatch); *id.* at 25 (citing *Amedisys*, 769 F.3d at 323, and other cases for the principle that "generally, commencement of government investigations on suspected fraud do not, standing alone, amount to a corrective disclosure"). On the latter, the chart, ECF 342-12—which confusingly includes the first three alleged corrective disclosures that Defendants are not challenging—is a non-sequitur, as it does not answer any of the specific correctiveness deficiencies that Defendants identified in their Opposition.

\* \* \*

In sum, because none of the last five alleged corrective disclosures is actually corrective of any alleged misrepresentation, they do not demonstrate price impact and should be excluded from any class claims.

7

Respectfully submitted,

BAKER BOTTS L.L.P.

By: */s/ David D. Sterling*
    David D. Sterling
      *Attorney-In-Charge*
    State Bar No. 19170000
    Federal I.D. No. 07079
    Amy Pharr Hefley
    State Bar No. 24046046
    J. Mark Little
    State Bar No. 24078869
    Federal I.D. No. 1487508
    Anthony J. Lucisano
    State Bar No. 24102118
    Federal I.D. No. 3369146
    Elizabeth Furlow Malpass
    State Bar. No. 24109899
    Federal I.D. No. 3402815
    910 Louisiana Street
    Houston, Texas 77002
    Telephone: (713) 229-1234
    Fax: (713) 229-1522
    david.sterling@bakerbotts.com
    amy.hefley@bakerbotts.com
    mark.little@bakerbotts.com
    anthony.lucisano@bakerbotts.com
    elizabeth.malpass@bakerbotts.com

***Attorneys for Defendants***

SIDLEY AUSTIN LLP
Angela C. Zambrano
State Bar No. 24003157
Mason Parham
State Bar No. 24088182
Fabricio Archanjo
State Bar No. 24110983
2021 McKinney Ave., Suite 2000
Dallas, TX 75201
Telephone: (214) 981-3300
Fax: (214) 981-3400
angela.zambrano@sidley.com
mparham@sidley.com
farchanjo@sidley.com

**Attorneys for Defendant Stuart Spence**

### CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing document was served via email on all counsel of record on this 4th day of May, 2023.

*/s/ Amy Pharr Hefley*
Amy Pharr Hefley