**BAKER BOTTS** LLP

910 LOUISIANA
HOUSTON, TEXAS
77002-4995

TEL +1 713.229.1234
FAX +1 713.229.1522
BakerBotts.com

AUSTIN
BRUSSELS
DALLAS
DUBAI
**HOUSTON**
LONDON

NEW YORK
PALO ALTO
RIYADH
SAN FRANCISCO
SINGAPORE
WASHINGTON

June 2, 2023

**Via ECF**

Hon. Andrew M. Edison
Southern District of Texas
601 Rosenberg, Seventh Floor
Galveston, TX 77550

David D. Sterling
TEL: 713.229.1946
FAX: 713.229.7946
david.sterling@bakerbotts.com

      Re:    Cause No. 4:18-cv-04330; *Miriam Edwards v. McDermott International, Inc., et al.*, in the United States District Court for the Southern District of Texas, Houston Division

Dear Judge Edison:

      Defendants submit this letter in accordance with the Court's request at the May 24, 2023 hearing for supplemental briefs on whether the April 14, 2021 memorandum opinion and order denying Defendants' motion to dismiss (the "Order") ties the Court's hands, precluding it from denying class certification on the ground that Plaintiffs lack standing since their claims are derivative in nature, not direct.

      The Order denying Defendants' motion to dismiss was explicitly premised on the extremely pro-plaintiff standard of review that governs such challenges:

> A complaint can be dismissed under Rule 12(b)(6) if its well-pleaded factual allegations, *when taken as true and viewed in the light most favorable to the plaintiff*, do not state a claim that is plausible on its face. … Motions to dismiss under Rule 12(b)(6) are viewed with disfavor and are rarely granted.

ECF 167 at 11-12 (emphasis added) (citations omitted). The Order fully embraced that standard of review in its analysis of the direct/derivative question and answered it only at the highest level of generality:

> Mississippi has pled that it "and other members of the proposed Class were denied the opportunity to make an informed decision when voting on the Merger" because Defendants made "false and misleading statements of material fact" that were designed to "encourage the Class to vote in favor of the Merger." *Mills* and the Supreme Court's other cases discussing Section 14(a) allow Mississippi to plead a direct claim, and it has done so.

*Id.* at 14 (citations omitted). Those brief observations are the sum total of the Order's direct/derivative analysis as it concerns the Plaintiffs' claims, but they sufficed to decide the issue for purposes of the motion-to-dismiss stage.

      Although Defendants respectfully disagree with the Order's conclusion, their disagreement principally concerns the translation of broad legal principles to this specific factual context.

**BAKER BOTTS** LLP

Hon. Andrew M. Edison - 2 - June 2, 2023

Defendants largely agree with the Order's rendition of the legal landscape, for example, as it is undeniable that the Supreme Court has recognized the possibility of direct Section 14(a) claims. Similarly, Defendants do not dispute that Plaintiffs made some broad statements in their Complaint that focused on the harm to their voting rights, which could be the hook for a direct claim under Section 14(a). Given this agreement and the recognition of the pro-plaintiff standard of review that governs motions to dismiss, Defendants understand the Order's conclusion and certainly do not seek to attack it now.

Instead, Defendants' point is that the direct/derivative question may come out differently now that the pro-plaintiff standard of review no longer applies and Plaintiffs have provided more details on their theory of damages. On the former, Judge Ellison has explained how the vastly different standard of review can yield a different conclusion at the class certification stage:

> [Plaintiffs] note that the Court rejected Defendants' argument at the motion to dismiss stage. But a motion to dismiss must be decided on the allegations in the pleadings, while at class certification the Court must look beyond the pleadings to determine whether a preponderance of the evidence indicates that common questions of fact or law will predominate over individualized questions during the course of the litigation. This more searching standard indicates that Defendants have raised a valid objection to Plaintiffs' invocation of the fraud-on-the-market presumption.

*In re BP p.l.c. Sec. Litig.*, No. 10-MD-2185, 2013 WL 6388408, at *14 (S.D. Tex. Dec. 6, 2013) (citations omitted). The same is true here. It is one thing to consider the allegations in a complaint in the light most favorable to the plaintiff and then conclude that the allegations suffice to plead a direct claim for purposes of a motion to dismiss. It is quite another to conduct the "rigorous analysis"—including "prob[ing] behind the pleadings," *Comcast Corp. v. Behrend*, 569 U.S. 27, 33 (2013)—required at class certification and then hold that the plaintiff in fact is pursuing a direct claim.

And that is only half the argument. In addition to the more searching standard of review, the Court now has the benefit of Plaintiffs' showing their cards on their actual theory of harm. At the motion-to-dismiss stage, the Court could focus merely on the voter-suffrage allegation that Plaintiffs "were denied the opportunity to make an informed decision when voting on the Merger" and conclude that it sufficed to plead a direct claim. ECF 167 at 14. But now that Plaintiffs have laid out their theory of harm in an attempt to satisfy their damages-methodology obligations under *Comcast*, the Court must squarely confront—for the first time—whether that stock-drop theory of harm is direct or derivative.[1] That presents a claim for "damages suffered by the corporation,"

---

[1] To be sure, the Court confronted a preliminary version of this theory in the Order for loss causation purposes:

> Mississippi has pled facts sufficient to establish that the merger between McDermott and CB&I, and the misleading proxy materials that facilitated it, led to drastic drops in McDermott's stock price as the truth about the Focus Projects became known. These allegations are sufficient to plead loss causation.

**BAKER BOTTS** LLP

Hon. Andrew M. Edison            - 3 -            June 2, 2023

which is a "classical derivative" harm. *Rudolph v. Cummins*, 2007 WL 1189632, at *2 (S.D. Tex. Apr. 19, 2007) (citing *J.I. Case Co. v. Borak*, 377 U.S. 426, 431 (1964)); *see also Borak*, 377 U.S. at 432 (recognizing, in the case that created the § 14(a) private right of action, "[t]he injury which a stockholder suffers from corporate action pursuant to a deceptive proxy solicitation ordinarily flows from the damage done the corporation, rather than from the damage inflicted directly upon the stockholder"); *Kelley v. Rambus, Inc.*, 2008 WL 5170598, at *3 n.5 (N.D. Cal. Dec. 9, 2008) (concluding that "[t]o maintain a direct [§ 14(a)] claim, a stockholder must allege that he suffered an injury separate and distinct from any harm suffered by the corporation"), *aff'd*, 384 F. App'x 570 (9th Cir. 2010).

Thus, the question is no longer whether Plaintiffs' allegations could somehow be read to state a direct theory of harm focusing on voter suffrage, but rather now entails a specific inquiry into whether Plaintiffs' newly detailed stock-drop theory of harm derived from Dr. Hartzmark's proposed damages methodology is direct or derivative. That is a question the Court has not previously grappled with—under any standard of review, much less the more rigorous one that applies to class certification.

Nor, to be clear, is there anything untoward or unusual about revisiting an issue at a later stage in a case when a different standard of review applies and new relevant considerations have come to light.[2] That applies all the more strongly where, as here, standing is at issue since "[a] federal court has a continuing obligation to assure itself of its own jurisdiction." *Daves v. Dallas Cnty.*, 22 F.4th 522, 531 (5th Cir. 2022) (internal quotation marks omitted). And to the extent there was any remaining doubt, the Fifth Circuit recently made clear that standing is squarely before the Court at class certification. *See Angell v. GEICO Advantage Ins. Co.*, 67 F.4th 727, 733 (5th Cir. 2023) ("We begin by addressing Plaintiffs' standing because resolving that issue is an inherent prerequisite to the class certification inquiry.") (internal quotation marks omitted).

                                                                                          Respectfully,

                                                                                          David D. Sterling

---

ECF 167 at 15 (citations omitted). But that distinct section of the Order did not opine on whether those allegations—as opposed to the separate voter-suffrage allegations—asserted direct or derivative harm.

[2] Indeed, even absent any changed circumstances—with the standard of review or otherwise—a ruling on a motion to dismiss is an interlocutory order that may be revised at any time before final judgment. *See United States v. Palmer*, 122 F.3d 215, 220 (5th Cir. 1997) ("[I]n civil cases a district court is not precluded by the law-of-the-case doctrine from reconsidering previous rulings on interlocutory orders such as summary judgment motions, as those rulings are not immutable and lack res judicata effect."); *Guerrero v. Mambo Seafood*, 2021 WL 4483509, at *2 (S.D. Tex. Sept. 3, 2021) (Edison, J.) (rejecting law-of-the-case argument regarding an earlier interlocutory ruling), *R&R adopted*, 2021 WL 4481091 (S.D. Tex. Sept. 30, 2021) (Hanks, J.); *JRG Cap. Invs. I, LLC v. Doppelt*, 2012 WL 2529256, at *4 (S.D. Tex. June 28, 2012) (Ellison, J.) (same); *Suzlon Wind Energy Corp. v. Shippers Stevedoring Co.*, 662 F. Supp. 2d 623, 641-42 (S.D. Tex. 2009) (Rosenthal, J.) (same).