| WOLF POPPER LLP | BERNSTEIN LITOWITZ BERGER & GROSSMANN LLP |
|---|---|

June 2, 2023

**VIA ECF**
Honorable United States Magistrate Judge Andrew Edison
United States Courthouse
601 Rosenberg, Seventh Floor
Galveston, TX 77550

      Re:    *Edwards v. McDermott International, Inc.*, No. 4:18-cv-4330 (S.D. Tex.)

Dear Judge Edison,

      We write on behalf of the proposed 14(a) Class Representatives in response to Your Honor's May 24, 2023 request for supplemental briefing on whether Judge Hanks' holding that Plaintiff has brought a direct Section 14(a) claim is law of the case and was correctly decided. *See* May 24, 2023 Hearing Tr. at 251:16-25. The answer is clear: the District Court's holding that Plaintiffs' claim is direct is indeed law of the case and none of the narrow exceptions to that doctrine permit this Court to overturn that correct legal determination.

**I.    Judge Hanks Previously Decided the Same Legal Issue**

      At the motion to dismiss stage, Defendants advanced the legal argument that the Complaint alleged a derivative claim and, thus, Plaintiff lacked standing. The Parties submitted 26 pages of detailed briefing on this legal issue. After considering this extensive briefing, Judge Hanks held unequivocally that "*Mills* and the Supreme Court's other cases discussing Section 14(a) allow Mississippi to plead a direct claim, and it has done so." ECF 167 at 14.

      The Complaint has not changed since this ruling, and neither have Defendants' arguments. Defendants' four pages of briefing in opposition to class certification are an identical subset of their 20 pages of motion to dismiss argument. *See* Appendix A (comparing motion to dismiss and class certification briefing). The standing argument and the caselaw are the same. *Id.*

      Defendants now raise these carbon-copy arguments to request a "do over" on a "de novo" standard at class certification. Defendants are wrong that a court's "rigorous analysis" of Rule 23's class certification elements somehow calls for a new, stricter analysis of the Court's legal determination that Plaintiff brought a direct claim. *See* ECF No. 124 at 4-5 & n.4. While standing may be a "gating issue," that issue has been fully addressed and is now law of the case, as explained below. As the court held in *Bank of America* when "defendants [sought] to reargue the Court's prior conclusion that direct Section 14(a) claims may be brought against the defendants," "class certification 'is emphatically not an opportunity for a second round of review, at a higher standard no less, of the substantive merits of plaintiffs' underlying claims.'" *In re Bank of Am. Corp. Sec., Derivative, & Emp. Ret. Income Sec. Act (ERISA) Litig.*, 281 F.R.D. 134, 140-41 (S.D.N.Y. 2012).

      None of the cases cited by Defendants in their opposition brief address a scenario where a court revisited a prior standing determination at class certification; rather, those cases make clear that "[s]tanding is a preliminary matter to be evaluated upon the allegations of the complaint" – which, again, has already been done here. *Gabrielsen v. BancTexas Grp., Inc.*, 675 F. Supp. 367, 369 (N.D. Tex. 1987) (standing addressed for first time in opposition to class certification); *see*

Hon. Andrew M. Edison
Page 2

also *Bertulli v. Indep. Ass'n of Cont'l Pilots*, 242 F.3d 290 (5th Cir. 2001) (same); *Lewis v. Knutson*, 699 F.2d 230 (5th Cir. 1983) (standing addressed at motion to dismiss stage).

## II. The District Court's Holding That Plaintiffs' Claims Are Direct, And Rejecting Defendants' Concomitant Standing Challenges, Is Law Of The Case

"The law-of-the-case doctrine posits that when a court decides upon a rule of law, that decision should continue to govern the same issues in subsequent stages in the same case." *Guerrero v. Mambo Seafood*, 2021 WL 4483509, at *2 (S.D. Tex. Sept. 3, 2021) (Edison, M.J.).[1]

A court would consider upending the law of the case only if "(1) the evidence on a subsequent trial was substantially different, (2) controlling legal authority has since made a contrary decision of the law applicable to such issues, or (3) the earlier decision was clearly erroneous and would cause manifest injustice." *McKay v. Novartis Pharm. Corp.*, 751 F.3d 694, 703 (5th Cir. 2014); *In re Ford Motor Co.*, 591 F.3d 406, 411-12 (5th Cir. 2009). None of these extraordinary circumstances are present here. Further, to our knowledge, no court has ever held that class certification provides a general exception to the law of the case doctrine.

### A. The District Court's Decision Was Not "Clearly Erroneous"

Defendants do not argue that the District Court's legal conclusion that Plaintiffs' claims are direct (and that Defendants' standing challenge therefore failed) "was clearly erroneous and would [cause] manifest injustice." *McKay*, 751 F.3d at 703. Indeed, Defendants never sought reconsideration or interlocutory appeal of the District Court's opinion.

In any event, even if Defendants had properly argued that the District Court's decision was "manifestly erroneous," the argument would fail. "To be clearly erroneous," a decision must be "more than just maybe or probably wrong; it must be dead wrong." *Hopwood v. State of Texas*, 236 F.3d 256, 272-73 (5th Cir. 2000). Far from being "dead wrong," Judge Hanks' holding was absolutely correct. The test to determine when a claim is direct or derivative is governed by the law of the state of incorporation. *See 7547 Corp. v. Parker & Parsley Dev. Partners, L.P.*, 38 F.3d 211, 221 (5th Cir. 1994). McDermott is incorporated in Panama, and Panamanian courts rely on Delaware state law in matters of corporate law. ECF No. 124 at 20-21, n.7; ECF No. 142 at 21, n.7. The controlling test under Delaware law asks: "(1) who suffered the alleged harm (the corporation or the suing stockholders, individually); and (2) who would receive the benefit of any recovery or other remedy (the corporation or the stockholders, individually)?" *Tooley v. Donaldson, Lufkin, & Jenrette, Inc.*, 845 A.2d 1031, 1033 (Del. 2004); *see* ECF 142 at 21-25.[2]

As this Court noted at the hearing, "if that's the test, this is easy, right?" May 24 Tr. at 198. The analysis is indeed straightforward. First, individual class members "suffered the alleged harm" when Defendants deprived them of the right to make a fully informed voting decision by issuing misstatements and omissions in the proxy solicitations. *See Bank of Am.*, 757 F. Supp. 2d at 292 (S.D.N.Y. 2010) ("[I]n light of ... *Borak* and *Mills*, a shareholder who alleges a deceptive or

---

[1] Magistrate judges typically decline to reverse rulings by the district court. *See PCM Leasing, Inc. v. BelGioioso Cheese, Inc.*, 2019 WL 4567576, at *3 (N.D. Ill. July 11, 2019) ("a magistrate judge has no authority to reverse the decision of a district court"); *Rubinstein v. Adm'rs of Tulane*, 58 F. Supp. 2d 702, 706-07 (E.D. La. 1998) (same).

[2] Defendants have previously argued that federal common law's "nature-of-the-injury test" should govern whether the claim is direct vs. derivative. Even if this assertion is true, the nature of the alleged injury (namely, voting rights impairment stemming from false and misleading proxy solicitation statements), shows that the claim is direct.

Hon. Andrew M. Edison
Page 3

misleading proxy solicitation is entitled to bring both direct and derivative suits. The former action protects the shareholders' interest in fair corporate suffrage."). Second, these class members – ***not*** McDermott – "would receive the benefit of the recovery" here. As explained at the hearing, Plaintiffs' proposed damages methodology would calculate the varying out-of-pocket damages that are specific to each McDermott shareholder as of the Record Date, based in part on the disposition of each Class Member's shares relative to the price decreases following the corrective disclosures. These damages would ***not*** flow to McDermott or current shareholders; they would be paid to historical shareholders as of the Record Date who held their shares at least through the first corrective disclosure. That is a quintessential direct claim.

By contrast, in a derivative case, the recovery goes to the corporation, and "all current shareholders would participate in the recovery" to the corporate entity "even if they were not shareholders during the relevant time period, and injured former shareholders would not necessarily participate in the recovery at all" – a scenario that bears no resemblance to this case. *Northstar Fin. Advisors Inc. v. Schwab Invs.*, 779 F.3d 1036, 1060 (9th Cir. 2015).[3]

### B. Controlling Legal Authority Remains the Same

Defendants do not contend that the "controlling legal authority" has changed. Defendants cite the same cases in their class certification opposition that Judge Hanks considered at the motion to dismiss stage. For example, at the hearing, Defendants repeatedly emphasized that *Borak* "is exactly our case" (May 24 Tr. at 13), but they ignore that in *Borak* the Supreme Court held that "we believe that a right of action exists as to both derivative and direct causes." 377 U.S. at 431. Notably, the most recent Section 14(a) decision explained that: (1) *Borak* held that the private right of action under Section 14(a) was principally designed to authorize ***direct*** claims and (2) where, as here, the injury is one to shareholders' voting rights, the claim is unquestionably direct. *Lee v. Fisher*, 2023 WL 3749317, at *6, *9-13 (9th Cir. June 1, 2023) (*en banc*) ("a claim that "shareholders were deprived of the right to a fully informed vote ... is a direct claim"). The single "new" case cited by Defendants, *In re Romeo Power Inc. Sec. Litig.*, is obviously not controlling and, tellingly, is a motion to dismiss opinion that relies on the *Tooley* test noted above. 2022 WL 1806303, at *5-6 (S.D.N.Y. June 2, 2022). Further, in *Romeo* the complaint undisputedly alleged an "overpayment" claim and plaintiffs "provided no explanation" of what purportedly made the claim direct as opposed to derivative. *Id.* at *5-6.

### C. The Evidence Has Not "Substantially Changed"

The only new evidence relevant to class certification consists of Dr. Hartzmark's common methodology to calculate damages. As Dr. Hartzmark testified, this methodology fits Judge Hanks' opinion sustaining direct claims "like a glove" because it measures damages according to the same loss causation theory that the District Court endorsed. *E.g.*, May 24 Tr. at 32:9-34:15. Dr. Hartzmark's damages methodology is also entirely consistent with a direct claim under *Tooley* because it measures individual damages to historical stockholders, not the company, based on their personal transactions in McDermott stock.

---

[3] In any event, McDermott is now a private company with no public stock outstanding. Continued ownership of stock is required to assert a derivative claim.

Hon. Andrew M. Edison
Page 4

| */s/ Chet Waldman* | */s/ Lauren Ormsbee* |
|:---:|:---:|
| Chet Waldman | Lauren Ormsbee |
| *Lead Counsel for the §14(a) Lead Plaintiff* | *Additional Counsel for the §14(a) Lead Plaintiff* |

cc: All Counsel of Record

**APPENDIX A**

| **Rejected Arguments from Defendants' Opening Motion to Dismiss Brief (ECF No. 124 at 18-26, Jan. 30, 2020)** | **Rejected Arguments from Defendants' Reply In Further Support of its Motion to Dismiss (ECF No. 149 at 1-12, July 30, 2020)** | **Identical, Repeated Arguments from Defendants' Opposition to Class Certification (ECF No. 311 at 4-7, Dec. 15, 2022)** |
|---|---|---|
| Defendants argued that "[a]llegations tied to a 'declining stock price' fall within a category of injury that is a 'purely derivative harm.'"<br><br>*Id.* at 20-22, 25-26, citing:<br><br>• *J.I. Case v. Borak*, 377 U.S. 426, 432 (1964);<br><br>• *Freedman v. magicJack Vocaltec Ltd.*, 2018 WL 6110996, at *6 (S.D. Fla. Nov. 21, 2018), appeal docketed, No. 18-154303 (11th Cir. Dec. 21, 2018);<br><br>• *Anastasio v. Internap Network Servs. Corp.*, 2010 WL 11459838, at *13 (N.D. Ga. Sept. 15, 2010));<br><br>• *Kelley v. Rambus, Inc.*, 2008 WL 5170598, at *3 n.5 (N.D. Cal. Dec. 9, 2008); and<br><br>• *Rudolph v. Cummins*, 2007 WL 1189632, at *2 (S.D. Tex. Apr. 19, 2007). | Defendants argued that § 14(a) claims "based on the theory that a misleading proxy caused the shareholders . . . to vote for something that injured the corporation and caused its stock price to drop" are "'ordinarily' derivative."<br><br>*Id.* at 4-6, citing:<br><br>• *J.I. Case v. Borak*, 377 U.S. 426, 432 (1964);<br><br>• *Freedman v. magicJack Vocaltec Ltd.*, 963 F.3d 1125, 1137 (11th Cir. 2020);<br><br>• *Anastasio v. Internap Network Servs. Corp.*, 2010 WL 11459838, at *13 (N.D. Ga. Sept. 15, 2010); and<br><br>• *Rudolph v. Cummins*, 2007 WL 1189632, at *2 (S.D. Tex. Apr. 19, 2007). | Defendants again argue that "a Section 14(a) claim seeking to recover damages for a stock-drop loss attributable to one company overpaying for another is a quintessential derivative claim."<br><br>*Id.* at 5-7, citing:<br><br>• *J.I. Case v. Borak*, 377 U.S. 426, 432 (1964);<br><br>• *Freedman v. magicJack Vocaltec Ltd.*, 963 F.3d 1125, 1137-38 (11th Cir. 2020);<br><br>• *Anastasio v. Internap Network Servs. Corp.*, 2010 WL 11459838, at *13 (N.D. Ga. Sept. 15, 2010);<br><br>• *Kelley v. Rambus, Inc.*, 2008 WL 5170598, at *3 n.5 (N.D. Cal. Dec. 9, 2008); and<br><br>• *Rudolph v. Cummins*, 2007 WL 1189632, at *2 (S.D. Tex. Apr. 19, 2007). |

| **Rejected Arguments from Defendants' Opening Motion to Dismiss Brief (ECF No. 124 at 18-26, Jan. 30, 2020)** | **Rejected Arguments from Defendants' Reply In Further Support of its Motion to Dismiss (ECF No. 149 at 1-12, July 30, 2020)** | **Identical, Repeated Arguments from Defendants' Opposition to Class Certification (ECF No. 311 at 4-7, Dec. 15, 2022)** |
|---|---|---|
| Defendants argued that Plaintiffs "fail[] to satisfy the Rule 23.1 demand requirement." *Id.* at 22. | Defendants argued that "Plaintiff failed to make the demand required of a derivative claim under Rule 23.1 and Panamanian law." *Id.* at 1. | Defendants again argue that Plaintiff has "no standing to assert a derivative claim (because it has made no attempt to comply with Rule 23.1)." *Id.* at 7. |
| Defendants argued that "[e]ven if the [Complaint] were to plead a direct claim, it would fail for lack of loss causation," and "Plaintiff cannot try to paper over that defect by pointing to the stock-decline-based economic harm associated with the [Complaint's] derivative claim (i.e., an injury suffered by McDermott and only indirectly by its shareholders)." *Id.* at 24-25 (citing *Calamore v. Juniper Networks Inc.*, 364 F. App'x 370, 372 (9th Cir. 2010)). | Defendants argued that "voter-suffrage impairment—while a direct harm for purposes of the standing inquiry—is not an independently viable theory under the PSLRA's loss-causation requirement" and "Plaintiff cannot bootstrap its derivative, economic losses onto that direct theory in hopes of salvaging the problems fatal to each." *Id.* at 9, 11 (citing *Calamore v. Juniper Networks Inc.*, 364 F. App'x 370, 372 (9th Cir. 2010)). | Defendants again argue there is a purported "disconnect" between Plaintiff's "stock-drop-loss theory" endorsed by the Court in its Opinion Denying Defendants' Motion to Dismiss and the alleged "voter-suffrage injury." *Id.* at 5-6 (citing *Calamore v. Juniper Networks Inc.*, 364 F. App'x 370, 372 (9th Cir. 2010)). |