UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| MIRIAM EDWARDS, Individually and On Behalf of All Others Similarly Situated,<br><br>     Plaintiff,<br>  v.<br><br>MCDERMOTT INTERNATIONAL, INC., DAVID DICKSON, and STUART SPENCE,<br><br>     Defendants. | Case No.: 4:18-cv-04330 |

**14(A) PLAINTIFFS' OBJECTIONS TO THE MAGISTRATE JUDGE'S SEPTEMBER 11, 2023 MEMORANDUM AND RECOMMENDATION**

**TABLE OF CONTENTS**

**Page**

TABLE OF AUTHORITIES ................................................................................... iii

GLOSSARY ....................................................................................................... vii

INTRODUCTION ................................................................................................. 1

I.    This Court Properly Rejected Defendants' Standing Argument, Holding
      That 14(a) Plaintiffs Brought Direct Claims Based on the Decline in the
      Value of Class Members' Personally-Held Shares ................................... 2

      A.    This Court Sustained 14(a) Plaintiffs' Theory of Liability and
            Damages ......................................................................................... 2

      B.    14(a) Plaintiffs Moved to Certify a Class That Matched Their
            Sustained Claims ........................................................................... 3

      C.    The MR Agreed That the Class Motion Aligned with 14(a)
            Plaintiffs' Theory of Liability and Damages, but Recommended
            Reversal .......................................................................................... 5

II.   The Recommendation That This Court Reverse Is Erroneous, and Would
      Result in Manifest Injustice ..................................................................... 5

III.  14(a) Plaintiffs' Claims and Damages Methodologies Are Direct Under
      Applicable Law, And Thus, 14(a) Plaintiffs Have Standing .................... 7

      A.    This Court's MTD Order Correctly Held That 14(a) Plaintiffs
            Brought a Direct Claim and Damages Theory, and They Have
            Standing ......................................................................................... 7

      B.    Delaware's Tooley Test Compels the Conclusion That 14(a)
            Plaintiffs' Claims and Potential Damages Remedies Are Direct ........ 8

            1.    Prong 1: Who Suffered the Alleged Harm? ......................... 9

            2.    Prong 2: Who Would Receive the Benefit of any Recovery or
                  Other Remedy? .................................................................. 10

      C.    The MR's Misapplication of Delaware Law to the 14(a) Claims Is
            Erroneous, and Would Have Vast Negative Ramifications if
            Adopted ......................................................................................... 13

i

IV.   This Court Must Reject the Sole Rule 23 Concern Raised in the MR ................... 18

    A.   The MR Agreed That 14(a) Plaintiffs' Damages Methodology
       Matches the Sustained Theory of Liability in Satisfaction of
       Comcast, But Recommended Reversal of the Law of the Case to
       Create a Mismatch ..................................................................................... 18

    B.   The MR's Determination That No Direct Remedy Can Be
       Calculated For Shareholders of an Acquiring Company Is Wrong ........... 20

V.   This Court Should Sustain 14(a) Plaintiffs' Objections and Certify the Class ...... 24

CONCLUSION ............................................................................................................. 25

# TABLE OF AUTHORITIES

**CASES**                                                                                          **Page(s)**

*7547 Corp. v. Parker & Parsley Dev. Partners, L.P.*,
  38 F.3d 211 (5th Cir. 1994) ....................................................................... 17

*In re AKD Invs., LLC*,
  No. 22-cv-619, 2022 WL 20539569 (E.D. La. Aug. 25, 2022) .................................... 6

*In re Alta Mesa Resources, Inc. Sec. Litig.*,
  No. 19-cv-00957 (S.D. Tex. July 30, 2021) ........................................................ 20, 23

*In re Bank of Am. Corp. Secs. Litig.*,
  281 F.R.D. 134 (S.D.N.Y. 2012) ............................................................. 8, 15, 20, 22

*In re Bank of Amer. Corp. Sec., Derivative & ERISA Litig.*,
  757 F. Supp. 2d 260 (S.D.N.Y. 2010) ...................................................... 13, 15, 16, 20

*In re Beef Indus. Antitrust Litig.*,
  600 F.2d 1148 (5th Cir. 1979) ..................................................................... 5

*Brookfield Asset Mgmt., Inc. v. Rosson*,
  261 A.3d 1251 (Del. 2021) ...................................................................... 9, 15

*Chavez v. Plan Benefit Servs., Inc.*,
  77 F.4th 370 (5th Cir. 2023) ..................................................................... 25

*Christianson v. Colt Indus. Operating Corp.*,
  486 U.S. 800 (1988) ............................................................................. 6

*City P'ship Co. v. Jones Intercable, Inc.*,
  213 F.R.D. 576 (D. Colo. 2002) ................................................................. 16

*Comcast Corp. v. Behrend*,
  569 U.S. 27 (2013) ......................................................................... 18, 20, 23, 24

*Delman v. GigAcquisitions3, LLC*,
  288 A.3d 692 (Del. Ch. 2023) .............................................................. 11, 12, 20, 23

*Dieterich v. Harrer*,
  857 A.2d 1017 (Del. Ch. 2004) ................................................................... 10

*Edwards v. McDermott Int'l, Inc.*,
  No. 18-cv-04330, 2023 WL 5916598 (S.D. Tex. Sept. 11, 2023) ........................ *passim*

*Edwards v. McDermott Int'l, Inc.*,
    No. 18-cv-4330, 2021 WL 1421603 (S.D. Tex. Apr. 13, 2021)..........................*passim*

*Enzo Biochem, Inc. v. Harbert Discovery Fund, L.P.*,
    No. 20-cv-9992, 2021 U.S. Dist. LEXIS 236060 (S.D.N.Y. Dec. 9,
    2021) ................................................................................................................ 10

*In re EQT Corp. Sec. Litig.*,
    No. 19-cv-00754, 2022 WL 3293518 (W.D. Pa. Aug. 11, 2022)........................ 20, 23

*Erica P. John Fund, Inc. v. Halliburton Co.*,
    563 U.S. 804 (2011) ........................................................................................ 18

*Finke v. Vanderkelen*,
    No. 345621, 2020 WL 2601196 (Mich. Ct. App. May 21, 2020) .............................. 10

*Greener v. Cadle Co.*,
    298 B.R. 82 (N.D. Tex. 2003) ........................................................................... 6

*Hardy Rawls Enters. L.L.C. v. Cage (In re Moye)*,
    437 Fed. Appx. 338 (5th Cir. 2011)................................................................... 7

*In re Heckmann Corp. Sec. Litig.*,
    No. 10-cv-378, 2013 WL 2456104 (D. Del. June 6, 2013) ......................................... 20

*Hopwood v. State of Texas*,
    236 F.3d 256 (5th Cir. 2000) ........................................................................... 6

*J.I. Case Co. v. Borak*,
    377 U.S. 426 (1964)...................................................................................... 16, 19, 24

*In re J.P. Morgan Chase & Co. S'holder Litig.*,
    906 A.2d 766 (Del. 2006) ................................................................................ 9, 17

*Kolwe v. Civil & Structural Eng'rs, Inc.*,
    858 Fed. Appx. 129 (5th Cir. 2021)................................................................... 1

*Kuhns v. Ledger*,
    202 F. Supp. 3d 433 (S.D.N.Y. 2016)................................................................ 10

*Lee v. Fisher*,
    70 F.4th 1129 (9th Cir. 2023) .......................................................................... 10

*Loritz v. Exide Techs.*,
    No. 13-cv-02607, 2015 WL 6790247 (C.D. Cal. July 21, 2015) ............................ 25

iv

*Ludlow v. BP, P.L.C.*,
578 U.S. 959 (2016) ................................................................................ 18

*Ludlow v. BP, P.L.C.*,
800 F.3d 674 (5th Cir. 2015) ................................................................ 18

*Maryland Cas. Co. v. Acceptance Indem. Ins. Co.*,
No. 08-cv-697, 2009 WL 10669796 (W.D. Tex. Dec. 16, 2009) .................. 5

*Messenger v. Anderson*,
225 U.S. 436 (1912) ................................................................................ 6

*Mills v. Elec. Auto-Lite Co.*,
396 U.S. 375 (1970) ......................................................................*passim*

*In re MultiPlan Corp. S'holders Litig.*,
268 A.3d 784 (Del. Ch. 2022) .................................................... 12, 20, 23

*Northstar Fin. Advisors, Inc. v. Schwab Invs.*,
779 F.3d 1036 (9th Cir. 2015) .............................................................. 15

*Obeid on behalf of Gemini Real Est. Advisors LLC v. La Mack*,
No. 14-cv-6498, 2017 WL 1215753 (S.D.N.Y. Mar. 31, 2017) .................. 10

*In re Orchard Enters., Inc. S'holder Litig.*,
88 A.3d 1 (Del. Ch. 2014) ..................................................................... 19

*Ret. Fund v. J.P. Morgan Chase & Co.*,
301 F.R.D. 116 (S.D.N.Y. 2014) ............................................................ 25

*Rougier v. Applied Optoelectronics, Inc.*,
No. 17-cv-02399, 2019 WL 6111303 (S.D. Tex. Nov. 13, 2019) .............. 18

*Rudolph v. Cummins*,
No. 06-cv-2671, 2007 WL 1189632 (S.D. Tex. Apr. 19, 2007) ................... 8

*Smith v. Waste Mgmt.*,
407 F.3d 381 (5th Cir. 2005) .......................................................... 13, 14

*Thornton v. Bernard Techs, Inc.*,
No. 962-VCN, 2009 Del. Ch. LEXIS 29 (Del. Ch. Feb. 20, 2009) ............ 15

*Tooley v. Donaldson, Lufkin & Jenrette, Inc.*,
845 A.2d 1031 (Del. 2004) ..............................................................*passim*

*Travelers Indem. Co. v. Northrop Grumman Corp.*,
No. 16-cv-8778, 2022 WL 4448502 (S.D.N.Y. Sep. 23, 2022) ................................... 7

*TSC Indus., Inc. v. Northway, Inc.*,
426 U.S. 438 (1976) .............................................................................. 18, 24

*In re Tyson Foods, Inc.*,
919 A.2d 563 (Del. Ch. 2007) .................................................................... 9

*United States v. Carr*,
557 F.3d 93 (2d Cir. 2009) ......................................................................... 7

*Yamamoto v. Omiya*,
564 F.2d 1319 (9th Cir. 1977) .................................................................. 16

*Zarnow v. City of Wichita Falls*,
614 F.3d 161 (5th Cir. 2010) ..................................................................... 6

## Statutes & Other Authorities

15 U.S.C. §78j(B) ....................................................................................... 21

28 U.S.C. §636(b)(1)(C) ............................................................................... 1

17 CFR §240.14a-9(a) ................................................................................ 21

Fed. R. Civ. P. 23 ............................................................................. *passim*

Fed. R. Civ. P. 72(b)(3) ............................................................................... 1

**GLOSSARY**

| Term | Definition |
|---|---|
| 14(a) Action | The 14(a) claims in the consolidated litigation styled *Edwards v. McDermott International, Inc.*, No. 18-cv-04330 (S.D. Tex.). |
| 14(a) Class | All persons and entities that were McDermott shareholders (including beneficial owners) as of April 4, 2018, the record date for McDermott International, Inc. ("McDermott") shareholders to be eligible to vote on the Merger of McDermott and CB&I, and who were damaged thereby, excluding Defendants, the officers and directors of McDermott and Chicago Bridge & Iron Company N.V. at relevant times, members of their immediate families and their legal representatives, heirs, successors, or assigns, and any entity in which Defendants have or had a controlling interest. *See* Proposed Order, ECF No. 303-1. |
| 14(a) Class Members | Members of the 14(a) Class. |
| 14(a) Lead Plaintiff or "Mississippi PERS" | The Public Employees' Retirement System of Mississippi. |
| 14(a) Plaintiffs | The 14(a) Lead Plaintiff and the Additional 14(a) Class Representatives, collectively. For consistency, 14(a) Plaintiffs is used throughout this Objection, even for pre-Class Motion events. |
| Additional 14(a) Class Representatives or "Teamsters" | Teamsters Local 813 Insurance Trust Fund, Local 813 Pension Trust Fund, and Local 1034 Pension Trust Fund, collectively. Teamsters were named as Additional 14(a) Class Representatives on October 28, 2022 (ECF No. 303). |
| Class Mot. or Class Motion | 14(a) Plaintiffs' Amended Class Certification Brief (ECF No. 303). The Class Motion was first filed on September 29, 2021 (ECF No. 194), amended to include the Additional 14(a) Class Representatives on June 13, 2022 (ECF No. 263), and withdrawn and re-filed at the Court's request on October 28, 2022 (ECF No. 303). |
| Class Opp. | Defendants' 14(a) Class Certification Opposition Brief (ECF No. 311). |
| Class Reply | 14(a) Plaintiffs' Class Certification Reply Brief (ECF No. 329). |
| Comp. or Complaint | 14(a) Plaintiffs' Amended Class Action Complaint (ECF No. 98). |

| Term | Definition |
|------|-----------|
| Defendants | • McDermott International, Inc.;<br><br>• David Dickson (McDermott's former President and Chief Executive Officer);<br><br>• Stuart Spence (McDermott's former Chief Financial Officer);<br><br>• Chicago Bridge & Iron Company, N.V. ("CB&I"); and<br><br>• Patrick K. Mullen (CB&I's former President and Chief Executive Officer). |
| Hartzmark | Expert Report of Michael L. Hartzmark, Ph.D. (ECF No. 303-7). |
| Hartzmark Reply | Reply Report of Michael L. Hartzmark, Ph.D. (ECF No. 329-3). |
| Hearing Tx. | Transcript of the 14(a) class certification hearing on May 24, 2023 before Magistrate Judge Edison (ECF No. 367). |
| Merger | McDermott's acquisition of CB&I. |
| Merger Date | The closing date for the Merger (May 10, 2018). |
| MR or "Recommendation" | Memorandum and Recommendation to Deny 14(a) Plaintiffs' Class Motion (ECF No. 387). *Edwards v. McDermott Int'l, Inc.*, No. 18-cv-04330, 2023 WL 5916598 (S.D. Tex. Sept. 11, 2023). References herein are to the Westlaw citation. |
| MTD | Defendants' Motion to Dismiss 14(a) Complaint (ECF No. 124). |
| MTD Opp. | 14(a) Lead Plaintiff's Opposition to Defendants' Motion to Dismiss (ECF No. 142). |
| MTD Order | Opinion and Order Denying Defendants' Motion to Dismiss (ECF No. 167). *Edwards v. McDermott Int'l, Inc.*, No. 18-cv-4330, 2021 WL 1421603 (S.D. Tex. Apr. 13, 2021). References herein are to the Westlaw citation. |
| Record Date | April 4, 2018, the date set by McDermott that defined those eligible to vote on the Merger: "Each company's shareholders of record at the close of business on April 4, 2018 are entitled to vote at their respective meetings and will receive the joint proxy statement/prospectus, which will be mailed to shareholders." |
| Suppl. Class Reply | 14(a) Plaintiffs' Supplemental Class Certification Reply addressing "law of the case" doctrine and standing (ECF No. 370). |

## INTRODUCTION

This Court previously held that 14(a) claims based on misleading merger proxy solicitations are direct claims, and that the Complaint properly alleged loss causation and damages. MTD Order, 2021 WL 1421603, at *6.[1] On September 11, 2023, Magistrate Judge Edison issued the MR recommending that this Court deny the 14(a) Class Motion. Without any change in the controlling law, facts, or theory of the case, the MR determined that the 14(a) claim was actually derivative, loss causation was not adequately alleged, and this Court should reverse its prior holding and deny certification. The MR is wrong.

The MR's recommendation that this Court upend the law of the case contradicts fundamental tenets of prevailing law, and relies upon Delaware law that has been overruled on the key point at issue. Moreover, if endorsed by this Court, the MR would essentially preclude direct actions under Section 14(a) based on the decline of stock prices, and its flawed logic on what constitutes a derivative harm could extend to almost any other securities claim on behalf of a company's shareholders.

A review of the MR is subject to a *de novo* review, *see Kolwe v. Civil & Structural Eng'rs, Inc.*, 858 Fed. Appx. 129, 130 (5th Cir. 2021), and this Court "may accept, reject, or modify, in whole or in part" the MR. 28 U.S.C. §636(b)(1)(C); Fed. R. Civ. P. 72(b)(3). 14(a) Plaintiffs respectfully ask this Court to sustain this Objection, reject the MR, and grant the Class Motion in its entirety.

---

[1] Unless otherwise indicated, all capitalized terms are defined in the Glossary, all emphasis is added, and all citations and quotations are omitted.

I. **This Court Properly Rejected Defendants' Standing Argument, Holding That 14(a) Plaintiffs Brought Direct Claims Based on the Decline in the Value of Class Members' Personally-Held Shares**

A. *This Court Sustained 14(a) Plaintiffs' Theory of Liability and Damages*

This 14(a) Action concerns the Merger between CB&I and McDermott. Each company's shareholders voted on the Merger pursuant to a Joint Proxy Statement/Prospectus. Comp. ¶2. The 14(a) Class is limited to "All persons and entities that were McDermott shareholders (including beneficial owners) as of April 4, 2018, the record date for McDermott shareholders to be eligible to vote on the Merger of McDermott and CB&I, and who were damaged thereby." ECF No. 303-1 (proposed order certifying 14(a) Class). Only those McDermott shareholders as of April 4, 2018, who also continued to hold shares through the first corrective disclosure, would be 14(a) Class Members.

Nearly four years ago, Defendants moved to dismiss the Complaint, claiming that 14(a) Plaintiffs lacked standing to bring this case because the Complaint asserted a derivative claim and damages theory, contending that loss causation could not be shown "by pointing to the stock-decline-based harm associated with the [Complaint's] derivative claim." MTD 18-26. 14(a) Plaintiffs responded that they pled direct claims based on prevailing Delaware and federal law because "Plaintiff and the Class of McDermott shareholders were entitled to vote on the Merger and were harmed when their shareholder voting rights—not the Company's—were impaired. This also harmed shareholders' economic interests" as manifested in the decline of the price of their personally-held shares. MTD Opp. 21-25. Altogether, the parties submitted 26 pages of detailed briefing on this legal issue alone. *See* Suppl. Class Reply 1, Appendix A.

On April 13, 2021, this Court held that "*Mills* and the Supreme Court's other cases discussing Section 14(a) *allow Mississippi to plead a direct claim*, *and it has done so*." MTD Order, 2021 WL 1421603, at *6. This Court also rejected Defendants' argument that the decline in the price of McDermott stock following disclosure of the truth could not support a direct claim, holding that 14(a) Plaintiffs "pled facts sufficient to establish that the merger between McDermott and CB&I, and the misleading proxy materials that facilitated it, *led to drastic drops in McDermott's stock price as the truth about the Focus Projects became known*," which are "*sufficient to plead loss causation*" for the direct claim. *Id.*

If Defendants believed that the MTD Order was decided in error, they could have moved to reconsider or sought leave for an interlocutory appeal. They did neither.

Thus, over the next two and a half years, 14(a) Plaintiffs relied on the law of the case as they diligently prosecuted claims on behalf of the 14(a) Class. 14(a) Plaintiffs and their counsel invested enormous resources litigating this case through the production, receipt, and review of over 400,000 documents, class certification briefing, depositions and argument, while relying on this Court's proper legal determination of standing.

**B.      *14(a) Plaintiffs Moved to Certify a Class That Matched Their Sustained Claims***

14(a) Plaintiffs moved for class certification based on the theory of liability and damages that the Court had sustained. The Class Motion was supported by an expert report from economist Dr. Michael Hartzmark, who presented a "commonly-accepted" damages methodology that aligned precisely with the theory that the Court had sustained. That

methodology would "measure the difference between (a) the per share artificial inflation at the time of the Merger due to the false and misleading Proxy Solicitations; and (b) the per share artificial inflation when the Class member disposed of her McDermott shares." Class Mot. 19-22; Class Reply 6-8; Hartzmark ¶¶52-53; Hartzmark Reply ¶¶3-7. Dr. Hartzmark also "describe[d] additional methods for calculating damages under Section 14(a) that are also plainly subject to a common methodology that could be applied to each class member," including rescissory damages. Class Mot. 20; *see also* Hartzmark ¶52, n.46. By providing commonly-calculated damages methodologies "consistent" with the sustained theory of liability, 14(a) Plaintiffs satisfied Rule 23's requirements.[2] *Infra* at Section IV.

Defendants opposed 14(a) Plaintiffs' Class Motion, reviving their already-rejected argument that 14(a) Plaintiffs asserted a derivative claim and therefore lacked standing, claiming, wrongly, that the standing issue differed from the MTD because 14(a) Plaintiffs' claim and damages theory had changed since the MTD Order. Class Opp. 2, 4-9.

This claim did not change—14(a) Plaintiffs simply proceeded on the loss causation and damages theory that they originally pled and the Court sustained. Defendants just wanted a second bite at the apple without facing the higher pleading burden of showing that the MTD Order was in error (which it was not). Indeed, Defendants' four pages of relevant briefing in their Class Opposition are an identical subset of their 20 pages of motion to dismiss argument. *See* Suppl. Class Reply at Appendix A (comparing briefing).

---

[2] Calculation of damages is resolved at the appropriate procedural stage following fact discovery. Class Mot. 20 n.4; Class Reply 13-17; Hartzmark ¶¶55-56; Hartzmark Reply ¶¶15-16, 38.

### C. *The MR Agreed That the Class Motion Aligned with 14(a) Plaintiffs' Theory of Liability and Damages, but Recommended Reversal*

On September 11, 2023, the MR rejected Defendants' claim that 14(a) Plaintiffs' damages theory had changed, finding that Defendants' argument "overlooks the fact that 'Plaintiffs have ***always*** asserted damages based on the decline in the stock price,' ***a theory this Court upheld in denying Defendants' Motion to Dismiss***." MR, 2023 WL 5916598, at *8, *10. The MR acknowledged that "***the current law of the case compels a finding that the proposed class's damages model 'measure[s] only those damages attributable to [its] theory [of liability]*.'"** *Id.* at *8. Nevertheless, the MR then "***recommend[ed] the Court change the law of the case***," reverse itself and hold that "Plaintiff's theory of liability may be direct, but its damages claim is derivative." *Id.* at *9. The MR presented no legitimate reason to upend law of the case (Section II), its analysis is erroneous (Section III, Section IV), and this Court should sustain the Objections and certify the Class (Section V).

## II. The Recommendation That This Court Reverse Is Erroneous, and Would Result in Manifest Injustice

"The question of standing is a preliminary one, to be answered from examination of the allegations of the complaint." *In re Beef Indus. Antitrust Litig.*, 600 F.2d 1148, 1168 (5th Cir. 1979). That is what this Court did in its MTD Order, and its holding was one made as a matter of law. 14(a) Plaintiffs relied on this threshold legal holding, prosecuting claims on behalf of the 14(a) Class for two and a half years. The MR's rejection of this Court's decision on standing is only appropriate if this Court's prior decision was "dead wrong." *See Maryland Cas. Co. v. Acceptance Indem. Ins. Co.*, 2009 WL 10669796, at *2 (W.D. Tex. Dec. 16, 2009) (declining to revisit law of the case without evidence that prior decision

was legally erroneous or otherwise improper, and stating that to be "clearly erroneous," a decision must be "more than just maybe or probably wrong; it must be dead wrong") (citing *Hopwood v. State of Texas*, 236 F.3d 256, 272-73 (5th Cir. 2000)).

While a district court is not barred from reconsidering its own prior rulings, *Zarnow v. City of Wichita Falls*, 614 F.3d 161, 171 (5th Cir. 2010), the "law of the case" doctrine "expresses the practice of courts generally to refuse to reopen what has been decided." *Messenger v. Anderson*, 225 U.S. 436, 444 (1912). Where factual circumstances and controlling law remain unchanged (as they are here), courts should reverse their own threshold legal findings only where the Court's earlier decision was ***clearly erroneous and would cause manifest injustice***. *See In re AKD Invs., LLC*, 2022 WL 20539569, at *3-4 (E.D. La. Aug. 25, 2022) (finding that law of the case doctrine is "subject to a few exceptions" and stating the "clearly erroneous" test). Adherence to the law of the case doctrine promotes finality and efficiency. *See Christianson v. Colt Indus. Operating Corp.*, 486 U.S. 800 (1988). While a "court has the power to revisit prior decisions of its own . . . as a rule courts should be loathe to do so in the absence of extraordinary circumstances such as where the initial decision was clearly erroneous and would work a manifest injustice." *Greener v. Cadle Co.*, 298 B.R. 82, 94-95 (N.D. Tex. 2003).

Contrary to the MR's conclusion that this test is limited to decisions made by MDL transfer courts (MR, 2023 WL 5916598, at *4), the test is not so limited, as demonstrated

by the authority cited above.[3] The MR's attempt to reverse the law of the case on "any reason [the Court] deems sufficient" (*id.*) turns the entire doctrine on its head.

The MTD Order was neither "clearly erroneous" nor "dead wrong." It was based on Supreme Court precedent, fully aligned with Delaware law, and was correct. By contrast, adopting the MR is what would cause manifest injustice to the McDermott shareholders whose voting rights were violated years ago. *See United States v. Carr*, 557 F.3d 93, 102 (2d Cir. 2009) (relitigating clear legal findings "would extend an already protracted litigation and run counter to the purpose of the law of the case"—"to achieve 'fairness to the parties, judicial economy, and the societal interest in finality.'"); *Travelers Indem. Co. v. Northrop Grumman Corp.*, 2022 WL 4448502, at *4 (S.D.N.Y. Sep. 23, 2022) (same).[4]

## III. 14(a) Plaintiffs' Claims and Damages Methodologies Are Direct Under Applicable Law, And Thus, 14(a) Plaintiffs Have Standing

The MR determined that the 14(a) claim was derivative and this Court should reverse its prior holding that the 14(a) claim was direct. The MR is wrong.

### A. This Court's MTD Order Correctly Held That 14(a) Plaintiffs Brought a Direct Claim and Damages Theory, and They Have Standing

The issue of whether the 14(a) claim alleged in this Action is direct or derivative was squarely considered by this Court. *Supra* at 2, 4 (citing 26 pages of underlying

---

[3] *See also, e.g.*, *Hardy Rawls Enters. L.L.C. v. Cage (In re Moye)*, 437 Fed. Appx. 338, 341 (5th Cir. 2011) ("Under the law-of-the-case doctrine, a court follows its prior final decisions in the case as the law of that case, except for a few narrow exceptions.").

[4] This Court should disregard the MR's outcome-oriented remark that 14(a) Plaintiffs should not have standing because of the pressure on Defendants to settle. MR, 2023 WL 5916598, at *4. Defendants have expressed no interest in settlement, and pressure to settle sustained, meritorious claims in no way supports reversal of well-reasoned legal holdings.

briefing). This Court agreed that 14(a) Plaintiffs had pled a direct 14(a) claim, citing two

Supreme Court cases, as well as a case from this District that similarly held that where the

"allegation indicates that the shareholders' voting rights have been impaired," and the 14(a)

claim "suggests that the shareholders have been damaged[,] the claim is direct." MTD

Order, 2021 WL 1421603, at *6 (citing *Rudolph v. Cummins*, 2007 WL 1189632, at *2

(S.D. Tex. Apr. 19, 2007)). There is no error in the Court's analysis, and the MR's

recommendation that "the Court change the law of the case" should be rejected because it

does not even attempt to establish that this Court's MTD Order was clearly erroneous.[5]

### B.  *Delaware's* Tooley *Test Compels the Conclusion That 14(a) Plaintiffs' Claims and Potential Damages Remedies Are Direct*

Should the Court wish to entertain a "do over" and revisit whether the 14(a) claim

is direct or derivative under relevant Delaware law (which the MR determined applied here,

MR, 2023 WL 5916598, at *5-6), the outcome established in the MTD Order should not

change. The 14(a) claims are direct.

The Delaware Supreme Court recently reaffirmed the test it established in *Tooley v.*

*Donaldson, Lufkin & Jenrette, Inc.*, 845 A.2d 1031 (Del. 2004), and confirmed the direct

nature of claims based on duty of disclosure violations, like the 14(a) claim here:

> In *Tooley*, this Court undertook to create a simple test of straightforward
> application to distinguish direct claims from derivative claims. Under the
> *Tooley* test, the determination of whether a stockholder's claim is direct or
> derivative must turn ***solely*** on the following questions: (1) who suffered the

---

[5] The MR also ignores that "class certification is emphatically not an opportunity for a second round of review, at a higher standard, no less, of the substantive merits of plaintiff's underlying claims." *In re Bank of Am. Corp. Secs. Litig.*, 281 F.R.D. 134, 140 (S.D.N.Y. 2012) ("*BOA II*") (rejecting an identical attempt by defendants seeking to revive already decided direct/derivative 14(a) arguments in response to plaintiffs' class certification motion).

alleged harm (the corporation or the stockholders, individually); and (2) who would receive the benefit of any recovery or other remedy (the corporation or the stockholders, individually)?

*Brookfield Asset Mgmt., Inc. v. Rosson*, 261 A.3d 1251, 1263 (Del. 2021). The Delaware Supreme Court further explained how *Tooley* expressly rejected "both the concept of 'special injury' and the concept that a claim is necessarily derivative ***if it affects all stockholders equally***." *Id.* at 1264. The MR's conclusion that the 14(a) claim is derivative if "stock drops affected all shareholders equally" is, therefore, fatally flawed because it rests on overruled Delaware law rather than following *Tooley* and *Brookfield*. *See infra* at Section III.C. A faithful application of the *Tooley* test compels the same conclusion previously reached by this Court: 14(a) Plaintiffs' claims are direct.

### 1.     Prong 1: Who Suffered the Alleged Harm?

The MR correctly concluded that 14(a) Plaintiffs stated a direct ***harm*** by alleging that McDermott shareholders were deprived of the right to a fully informed vote:

> Th[e Delaware Supreme] Court has recognized, as did the Court of Chancery, that ***where it is claimed that a duty of disclosure violation impaired the stockholders' right to cast an informed vote, that claim is direct***." *In re J.P. Morgan Chase & Co. S'holder Litig.*, 906 A.2d 766, 772 (Del. 2006) (emphasis added). That definitive statement seems to begin and end the "direct vs. derivative" inquiry.

MR, 2023 WL 5916598, at *6. This finding accords with a long line of Delaware and federal cases. *See, e.g., In re Tyson Foods, Inc.*, 919 A.2d 563, 601 (Del. Ch. 2007) ("Where a shareholder has been denied one of the most critical rights he or she possesses—the right to a fully informed vote—***the harm suffered is almost always an individual, not corporate,***

9

*harm*.").[6]

The Ninth Circuit's recent *en banc* opinion in *Lee v. Fisher* is particularly on point. 70 F.4th 1129, 1146-47, 1149 (9th Cir. 2023) ("*[U]nder Delaware law, a §14(a) action is direct, not derivative*."). In *Lee*, the Ninth Circuit went so far as to opine that a "right to an informed vote" claim under 14(a) could *never* be brought derivatively because the corporation does not vote on the transaction: "Because the shareholders, not the corporation itself, vote to approve corporate transactions, this rule implies that the corporation lacks standing to sue under §14(a) for a misleading proxy statement it has issued to its own shareholders. *If a corporation cannot bring such a §14(a) claim, then a shareholder cannot 'enforce a right that the corporation or association may properly assert but has failed to enforce,' as required by Rule 23.1 for all derivative actions brought in federal court*." *Id.* at 1149. The alleged harm is clearly a harm to McDermott's shareholders individually.

### 2.   <u>Prong 2: Who Would Receive the Benefit of any Recovery or Other Remedy?</u>

The MR does not meaningfully address *Tooley*'s second question: who receives the benefit of the recovery? If the MR's analysis that the 14(a) claim was derivative were correct, the benefit of recovery would have to flow to McDermott. In other words, despite

---

[6] *Enzo Biochem, Inc. v. Harbert Discovery Fund, L.P.*, 2021 U.S. Dist. LEXIS 236060, at *26 (S.D.N.Y. Dec. 9, 2021) (same); *Dieterich v. Harrer*, 857 A.2d 1017, 1029 (Del. Ch. 2004) (same); *Obeid on behalf of Gemini Real Est. Advisors LLC v. La Mack*, 2017 WL 1215753, at *6 (S.D.N.Y. Mar. 31, 2017) (same); *Kuhns v. Ledger*, 202 F. Supp. 3d 433, 443 (S.D.N.Y. 2016) (same applying Florida law, relying on Delaware case law); *Finke v. Vanderkelen*, 2020 WL 2601196 at *7 (Mich. Ct. App. May 21, 2020) (same applying Michigan law, relying on Delaware case law).

the fact that McDermott issued a misleading proxy that disenfranchised shareholders of their voting rights, the recovery for this wrong would go to McDermott and not the individual stockholders. That makes no sense, it has no basis in the law, and it contradicts 14(a) Plaintiffs' claim and proposed damages methodology.

14(a) Plaintiffs' proposed damages methodology would compensate the 14(a) Class of historical McDermott shareholders as of the Record Date for the stock price decline linked to the proxy misrepresentations. That clearly renders this a direct action under the second prong of *Tooley*. Following judgment, each potential 14(a) Class Member would submit a claim form to receive compensation based on their own specific investing circumstances, such as the number of shares they held on the Record Date and any sales that were made after the disclosures. *E.g*., Hearing Tx. 31:15-32:8, 50:22-51:22. They were the investors misled by Defendants and they would receive the recovery secured—not McDermott. This leaves no doubt that under *Tooley* the claim is direct.

Two recent Delaware Chancery opinions provide additional detail on the distinction between a derivative and a direct remedy when the value of public stockholders' securities is at issue. In *Delman v. GigAcquisitions3, LLC*, shareholders of an acquiring SPAC company alleged direct breach of loyalty claims based on their deprivation "of a meaningful vote on the merger" with damages based on the "loss of value [of] public stockholders' funds . . . which do not belong to the Company." 288 A.3d 692, 710 (Del. Ch. 2023). There, like here, defendants "characterize[d] th[e] case as an 'overpayment' action challenging a 'bad deal,'" and asked the court to find the claims to be derivative. *Id.* at 709. Applying *Tooley*, the court found that the first prong was plainly direct because

11

"public stockholders suffered the harm pleaded in the Complaint" when "defendants disloyally failed to provide stockholders with the information necessary to decide whether to redeem and how to vote." *Id.* Turning to the second prong, the *Delman* court concluded both that "the recovery would accrue only to stockholders who suffered a harm to their redemption rights" and that there would be no "double recovery" if a derivative claim were brought because "in an overpayment case, damages would be based on the difference between the amount the [acquiring company] paid for the target and the target's true value at the time of the merger (i.e., if it had been valued correctly)." *Id.* at 710; *see also In re MultiPlan Corp. S'holders Litig.*, 268 A.3d 784, 804-05, n.118 (Del. Ch. 2022).[7] Here, the benefit of recovery is also direct.

Contrary to what Defendants contend, nowhere do the 14(a) Plaintiffs bring a claim on behalf of McDermott seeking to recover any amount it "overpaid" in the merger—rather, they are seeking damages to be paid to stockholders for the decline in the value of their own shares. *See* Class Reply 3-4. This is not coextensive with any "overpayment" by McDermott. For example, following the Merger, McDermott announced negative charges of $744 million related to the legacy CB&I Focus Projects in its third quarter 2018 results. Comp. ¶209. The Company reported that there was essentially no harm to it, stating that "[t]hese changes in estimates ***did not have a significant direct impact on our net income***

---

[7] Because *Delman* and *Multiplan* involved SPAC transactions, damages sought were based on the value of plaintiffs' right to recover based on the stock's redemption price, rather than the right to recover based on the difference in the price of stock on the Merger Date and the price of stock sold. The cases are nonetheless informative here because the direct claim and direct damages theory are both based on the value of personally-held stock.

for the three or nine months ended September 30, 2018." Comp. ¶213. In contrast, 14(a) Plaintiffs experienced an immediate and direct negative impact on the price of their McDermott stock, which fell $5.14 per share, nearly 40%, on this news. Comp. ¶229. This disparity is but one illustration of the fact that damages to the Company's balance sheet by way of "overpayment" are not the same as, and are not coextensive with, the damages that the shareholders suffered when the stock declined on this partial revelation of the truth. *In re Bank of Amer. Corp. Sec., Derivative & ERISA Litig.*, 757 F. Supp. 2d 260, 291-93 (S.D.N.Y. 2010) ("*BOA I*") (holding "[p]laintiffs could show a diminution in the value of the shares that they held which was not due to an injury inflicted upon [the corporation]" because a "corporation's shares also may decrease once a corrective disclosure issues . . . [and] [t]hat decrease is not necessarily co-extensive with injury to the corporation").

### C.   *The MR's Misapplication of Delaware Law to the 14(a) Claims Is Erroneous, and Would Have Vast Negative Ramifications if Adopted*

At the heart of the MR's analysis is the unsupported premise that declines in stock price resulting from proxy disclosure violations are "derivative damages" that flow to the corporation. That premise is wrong.

*First*, relying on *Smith v. Waste Management*, the MR incorrectly finds that a claim cannot be direct if "the stock price drops affected all shareholders equally," because that is somehow tantamount to an injury to the corporation. *See* MR, 2023 WL 5916598, at *7 ("a drop in Plaintiff's shares' price is 'an injury suffered by all [McDermott] shareholders in proportion to their pro rata share ownership'" (quoting *Smith v. Waste Mgmt.*, 407 F.3d 381, 385 (5th Cir. 2005)). This is incorrect for two reasons. First, *Smith* is inapposite, and

13

did not create a rule that Section 14(a) claims involving stock price declines are derivative. Second, the MR inaccurately relied on dictum from *Smith* for a proposition that Delaware law had expressly overruled.

*Smith* did not concern a Section 14(a) claim. In *Smith*, the plaintiff brought claims for "fraud and negligent misrepresentation" and alleged that the corporation's misrepresentations caused him not to sell his shares for a profit; there was no proxy statement or request for shareholder action at issue. 407 F.3d at 383. This is important because the injury in *Smith* was ***not*** an injury to the right to a fully informed vote, which— as explained above—is a ***direct*** harm to the shareholder. Accordingly, *Smith* did not create any rule that a Section 14(a) claim for the violation of the right to cast a fully informed vote is derivative if damages are based on a stock price decline. *Smith* in fact affirmed that Delaware law controls this analysis; Delaware law, in turn, consistently holds that claims for the violation of the right to cast a fully informed vote are direct. Notably, Defendants never cited to *Smith* as relevant authority to support their derivative/standing arguments in either their motion to dismiss or class briefing—demonstrating that they understood it was not relevant, let alone controlling.

Moreover, the MR inaccurately relies on *Smith* for the proposition that a harm that is common to all shareholders must be derivative. But *Smith* does not stand for this across-the-board proposition, nor could it: ***Tooley, which Smith agrees controls here, had specifically overruled this concept****. See Tooley*, 845 A.2d at 1037 (explaining that the argument that a suit must be derivative "if the injury falls equally on all stockholders" is both "confusing and inaccurate"). As the Delaware Supreme Court recently confirmed,

14

*Tooley* expressly overruled "both the concept of 'special injury' and the concept that a claim is necessarily derivative if it affects all stockholders equally." *Brookfield*, 261 A.3d at 1264; *see also Northstar Fin. Advisors, Inc. v. Schwab Invs.*, 779 F.3d 1036, 1058 (9th Cir. 2015) (noting that in *Tooley* "the Supreme Court of Delaware **rejected**, as 'confusing,' the concept 'that an action cannot be direct if all stockholders are equally affected or unless the stockholder's injury is separate and distinct from that suffered by other stockholders'").

Furthermore, the Supreme Court discussed possible monetary relief available from proxy disclosures, stating that a shareholder may recover based on the "reduction of the earnings or earnings potential of their holdings" as a result of a merger. *Mills v. Elec. Auto-Lite Co.*, 396 U.S. 375, 388-89 (1970). If a change in earnings potential harms the shareholder directly, then obviously the decline in share price of common stock is also a direct harm.[8]

**Second**, the Southern District of New York in the *BOA* case twice found that nearly identical 14(a) claims were direct,[9] yet the MR discounts this entirely, noting that *BOA* "stands as the non-answer to the standing question in this case" because the *BOA* court

---

[8] The MR's reliance on *Thornton v. Bernard Techs, Inc.* is misplaced as the court there found the state law disclosure claims to be direct in nature. 2009 Del. Ch. LEXIS 29, at *11 (Del. Ch. Feb. 20, 2009). Moreover, the MR's disregard for *Northstar* for being a suit "under Massachusetts law" was incorrect. MR, 2023 WL 5916598, at *8. *See Northstar*, 779 F.3d at 1058 (standard for bringing "a direct action under Massachusetts/***Delaware*** law")

[9] *BOA I*, 757 F. Supp. 2d at 291-92 (sustaining both direct and derivative 14(a) claims, finding it "important to distinguish the injury to shareholders *qua* shareholders from any injury to the corporation" because "[i]f a harm were suffered by the shareholders as shareholders, then the same harm would not be a harm inflicted on the corporation" and "[a] single act could, of course, inflict separate injury on both the corporation and the shareholder"); *BOA II*, 281 F.R.D. 134, 141-42 (S.D.N.Y. 2012) (certifying class of 14(a) claims, rejecting re-litigation of derivative argument).

"allow[ed] both direct and derivative §14(a) claims to proceed based on the conclusory assertion that a decrease [in the acquiring company's shares] is not necessarily co-extensive with injury to the corporation." MR, 2023 WL 5916598, at *8. The MR has an inexplicably suspicious view of the *BOA* opinions, criticizing the fact that the court there "refused to certify . . . the ***exact*** question in this case" to the Delaware Supreme Court, even though the MR does not suggest that the Court do so here. *Id*. However, as the *BOA* court explained, certification to the Delaware Supreme Court was unnecessary "because there is a possibility that both the shareholders and the corporation were separately injured." *BOA I*, 757 F. Supp. 2d at 292. There is nothing odd or incorrect about that. *See Yamamoto v. Omiya*, 564 F.2d 1319, 1326 (9th Cir. 1977) ("We therefore hold that in light of the teachings of *Borak* and *Mills*, a shareholder who alleges a deceptive or misleading proxy solicitation is entitled to bring both direct and derivative suits. The former action protects the shareholders' interest in fair corporate suffrage."); *City P'ship Co. v. Jones Intercable, Inc.*, 213 F.R.D. 576, 589 (D. Colo. 2002) (same). Under the MR's incorrect theory of the law, every stock decline would also injure the company. This would in principle render all indisputably direct claims, such as those under Section 10(b) of the Exchange Act and Section 11 of the Securities Act, somehow derivative. This would be an absurd result.

**Third**, the MR accuses 14(a) Plaintiffs of restricting the Class definition to fashion a direct claim "with a disclosure coating." MR, 2023 WL 5916598, at *9. It is the plain language of §14(a), and not 14(a) Plaintiffs, that "restricts" the Class to McDermott beneficial shareholders as of the Record Date. Only those shareholders can be included in the 14(a) Class, and the claims ***must*** be tied to a proxy disclosure misrepresentation. *See*

*7547 Corp. v. Parker & Parsley Dev. Partners, L.P.*, 38 F.3d 211, 230 (5th Cir. 1994). Post-Merger purchasers of McDermott stock are barred from the Class; 14(a) Plaintiffs had no discretion to include or exclude them.

**Fourth**, the MR improperly relies on the outcome in *In re J.P. Morgan Chase & Co. S'holder Litig. v. Morrison*, 906 A.2d 766 (Del. 2006), which is easily distinguished. MR, 2023 WL 5916598, at *6-7. While in *J.P. Morgan*, the Supreme Court of Delaware recognized "that **where it is claimed that a duty of disclosure violation impaired the stockholders' right to cast an informed vote, that claim is direct**" and "that a duty of disclosure violation may entitle the injured party to compensatory damages in appropriate circumstances," the court found the plaintiffs' damages claim was derivative since it asserted the exact harm the corporation suffered. 906 A.2d at 772. Specifically, the plaintiffs there did ***not*** allege a drop in stock price when the truth was revealed; instead, they sought to recover the amount that J.P. Morgan Chase overpaid for Bank One. *Id.* at 769 (plaintiffs alleged that "the board of JPMC caused JPMC to overpay for Bank One to the extent of the 14% exchange ratio premium" and "the shareholder class was entitled to recover money damages equal to the dollar value of that premium"). That is absolutely not the case here. Overpayment claim damages may be derivative, but as 14(a) Plaintiffs have consistently argued (MTD Opp. 24; Class Reply 3-4), and the MR agrees, "Plaintiffs have **always asserted damages based on the decline in the stock price**" (MR, 2023 WL 5916598, at *8), and do not and have never alleged an overpayment claim.

**Finally**, the MR never actually explains how this Court's analysis in the MTD was erroneous. As discussed in Section II, a magistrate judge should not recommend reversal

of law of the case without showing clear error or changed circumstances. The MR does neither. Merely deciding that the Magistrate Judge would have evaluated the arguments differently from the District Court is no cause to upend such consequential law of the case.

## IV.     This Court Must Reject the Sole Rule 23 Concern Raised in the MR

The MR concluded that 14(a) Plaintiffs' damages methodology does not satisfy *Comcast* because it is supposedly derivative in nature. As explained below, the MR's conclusion on this point is wrong.

### A.     *The MR Agreed That 14(a) Plaintiffs' Damages Methodology Matches the Sustained Theory of Liability in Satisfaction of* Comcast, *But Recommended Reversal of the Law of the Case to Create a Mismatch*

To satisfy Rule 23(b)(3)'s predominance element, courts require only that plaintiffs provide a damages methodology that is "consistent" with their sustained theory of liability. *Comcast Corp. v. Behrend*, 569 U.S. 27, 35, 37 (2013); *Ludlow v. BP, P.L.C.*, 800 F.3d 674, 687 (5th Cir. 2015), *cert. denied* 578 U.S. 959 (2016) (holding *Comcast* only requires that "each plaintiff's theory of damages remains tied to a theory of liability common to all plaintiffs"); *Rougier v. Applied Optoelectronics, Inc.*, 2019 WL 6111303, at *18 (S.D. Tex. Nov. 13, 2019) (plaintiffs' damages model was "consistent" with the alleged theory of liability and satisfied *Comcast*). The Supreme Court has directed that whether the plaintiff will ultimately succeed at proving damages is not to be considered at this stage. *Erica P. John Fund, Inc. v. Halliburton Co.*, 563 U.S. 804, 815 (2011).

The calculation of damages for violations of Section 14(a) is flexible because Section 14(a) has no statutory damages formula; the Supreme Court has repeatedly recognized Rule 14a-9's "broad remedial" and "prophylactic" purposes. *See, e.g.*, *TSC*

*Indus., Inc. v. Northway, Inc.*, 426 U.S. 438, 448 (1976); *see also Mills*, 396 U.S. at 386 (courts should "provide such remedies as are necessary to make effective the congressional purpose" of Section 14(a); "[i]n selecting a remedy the lower courts should exercise the 'sound discretion which guides the determination of courts of equity'"); *J.I. Case Co. v. Borak*, 377 U.S. 426, 433, 435 (1964) ("[I]t is the duty of the courts to be alert to provide such remedies as are necessary to make effective the congressional purpose . . . . [F]ederal courts have the power to grant all necessary remedial relief" under Section 14(a), and "[w]hatever remedy is necessary must await the trial on the merits.").

In their Class Motion, 14(a) Plaintiffs provided not one, but two potential methodologies to be used in the calculation of damages tied to the direct theory of liability and loss causation sustained in the MTD Order. Class Reply 5-13; Hartzmark ¶¶47-70, n.46; Hartzmark Reply ¶¶5-7, n.26. Dr. Hartzmark presented a primary methodology that "measures damages based on the actual decline of McDermott's share price when the truth emerged" (*e.g.*, Class Reply 13)—the exact theory of liability and damages sustained in the MTD Order, 2021 WL 1421603, at *6. Secondarily, Dr. Hartzmark opined that a "similarly derived calculation of rescissory damages could also be appropriate at the merits stage." Class Reply 9, n.4 (citing the Class Motion and Hartzmark reports).[10]

---

[10] Rescissory damages are "the monetary equivalent of rescission." *See In re Orchard Enters., Inc. S'holder Litig.*, 88 A.3d 1, 38 (Del. Ch. 2014). The U.S. Supreme Court has held that Section 14(a) "authorizes a federal cause of action for rescission or damages to a corporate stockholder with respect to a consummated merger which was authorized pursuant to the use of a proxy statement alleged to contain false and misleading statements violative of s 14(a) of the Act." *Borak*, 377 U.S. at 428.

The MR admitted there was no inconsistency or mismatch because the Complaint "**always** asserted damages based on the decline in the stock price" and this was **entirely consistent with the theory of damages "this Court upheld" in the MTD Order**. MR, 2023 WL 5916598, at \*9. That should have been the end of the analysis. 14(a) Plaintiffs satisfied *Comcast* by presenting a damages theory that aligned with their Class-wide theory of liability. This Court should reject the MR and certify the Class on this basis alone.

B. ***The MR's Determination That No Direct Remedy Can Be Calculated For Shareholders of an Acquiring Company Is Wrong***

Despite the clear outcome of the *Comcast* analysis, the MR "respectfully disagree[d]" with this Court's MTD Order, and recommended reversing the law of the case and adopting an ***entirely novel and legally unsupported theory*** that the stockholders of an ***acquiring*** company (here, McDermott) could never assert a direct 14(a) claim based on the decline in the value of their shares. MR, 2023 WL 5916598, at \*10-11. This was error.

The MR's purported *Comcast* analysis and conclusion that a direct 14(a) claim could ***only*** be asserted by shareholders in an ***acquired*** company is contrary to prevailing 14(a) law,[11] lacks legal or economic support, and provides no "extraordinary

---

[11] 14(a) Plaintiffs' Class Reply cited cases sustaining and certifying 14(a) claims on behalf of acquiring company shareholders, including but not limited to: *BOA I*, 757 F. Supp. 2d at 291-293, 302-303, 307 (sustaining 14(a) claims); *BOA II*, 281 F.R.D. at 140-142, 148-150 (certifying direct 14(a) claims); *In re Heckmann Corp. Sec. Litig.*, 2013 WL 2456104 (D. Del. June 6, 2013); *In re EQT Corp. Sec. Litig.*, 2022 WL 3293518 (W.D. Pa. Aug. 11, 2022); *In re Alta Mesa Resources, Inc. Sec. Litig.*, No. 4:19-cv-00957 (S.D. Tex. July 30, 2021). *See also Delman*, 288 A.3d at 709-10 (sustaining direct breach of loyalty claims brought by shareholders of acquiring company who were deprived "of a meaningful vote on the merger" with damages based on "loss of value [of] public stockholders' funds" that is incurred directly by the stockholder); *MultiPlan*, 268 A.3d at 804-05, n.118 (same).

20

circumstances" to justify reversal of the law of the case. A distinction between an acquiring company and an acquired company is irrelevant. The MR ignored the fact that under *Tooley*, the direct vs. derivative analysis "must be based ***solely*** on the [two] questions" described above, which do ***not*** include whether the plaintiffs are shareholders of an acquired or acquiring company. *Tooley*, 845 A.2d at 1035. The MR also inaccurately distinguished Plaintiffs' cases that successfully brought and certified direct 14(a) claims on behalf of acquiring company shareholders, while failing to cite even one case or bit of expert testimony in support of its conclusion that such shareholders cannot bring such claims. MR, 2023 WL 5916598, at \*10-11. The MR is wrong.

*First*, the MR faulted 14(a) Plaintiffs' damages methodology for being "divorced from any transaction price" from which to measure damages, and wrongly concluded that because 10(b) damages calculations normally involve an open market transaction price, so must 14(a). MR, 2023 WL 5916598, at \*10. The text of Section 10(b) unequivocally requires a transaction—it prohibits manipulative and deceptive practices "in connection with ***the purchase or sale*** of any security registered." 15 U.S.C. §78j(B). The text of Section 14(a) does not: "No solicitation subject to this regulation shall be made by means of any proxy statement . . . containing any statement which, at the time and in the light of the circumstances under which it is made, is false or misleading with respect to any material fact . . . ." 17 CFR §240.14a-9(a). Thus, while a transaction is required under 10(b), it is ***not*** under 14(a). Consequently, it is not surprising that the class definition in *AOL Time Warner* includes a transaction requirement, given that the class included, *inter alia*, claims

under Section 10(b). Nor does *Tooley* require a "transaction price" for a claim to be direct; again, the presence or absence of a transaction price is irrelevant under the pertinent test.

In any event, the MR ignored that there is a transaction price here common to each 14(a) Class Member: namely, the price of the newly combined McDermott/CB&I stock on the Merger Date (May 10, 2018). On that date, a transaction occurred, and it was reflected in the price of the stock: "the original McDermott entity was combined with CB&I wherein McDermott was economically speaking transformed into a new McDermott entity," a new CUSIP number was assigned to McDermott common stock, and the new McDermott was "recognized in the market post-Merger as a new combined entity." Hartzmark Reply ¶4, n.7. As Dr. Hartzmark testified: the methodology "measures the direct harm to Class members based on the economic losses incurred on each share of stock of the new entity based on ***the level of inflation per share on the Merger Date*** relative to the lower level of inflation per share when disposing of that stock at a later date; and after at least one of the alleged partial corrective disclosures." *Id*. at ¶7; Hearing Tx. at 28:9-29:6, 31:5-31:14.

***Second***, the MR conceded that the *BOA II* court certified the ***exact*** class membership sought here: "a §14(a) class of shareholders of an acquiring company" alleging a remedy based on a damages theory identical to the one here. MR, 2023 WL 5916598, at *8, *10. Yet the MR rejected the well-reasoned opinions in *BOA* because the case settled before summary judgment or trial. *Id.* If securities law jurisprudence was only reliable after a case proceeded through summary judgment or trial, caselaw would be limited to several dozen cases nationwide over the past few decades. The MR cites no

authority of any kind in support of its new, judicially created, limitation that shareholders of an acquiring company do not have standing to assert a direct 14(a) claim.[12]

**Third**, the MR incorrectly interpreted *BOA*'s allowance of both direct and derivative claims as some sort of provisional determination that one theory would ultimately fail. MR, 2023 WL 5916598, at *8, *10 (remarking that the *BOA* court "punt[ed]" the issue by certifying both a direct and derivative class). Not so. As in *BOA* and scores of other cases, direct and derivative claims and remedies proceed in tandem via two separate actions that were coordinated. In *Mills*, the U.S. Supreme Court expressly stated that 14(a) could simultaneously give rise to direct and derivative claims. 396 U.S. at 389. And, Delaware courts recently described exactly how direct and derivative claims could proceed together with separate and distinct damages remedies, the former based on stock price valuation that would go directly to stockholders and the latter based on overpayment valuation that would go to the corporation. *Delman*, 288 A.3d at 710; *Multiplan*, 268 A.3d at 804-05. And in any event, there is no tandem derivative action here, so the point is moot.

---

[12] The MR's nullification of the weight of similar 14(a) claims is also unjustified. MR, 2023 WL 5916598, at *11. For example, in *Alta Mesa*, a 14(a) class this Court certified, the remedy for deprivation of an informed vote, similar to that in *Delman* and *Multiplan*, was based on a set redemption stock price of $10, not a valuation of the target. *Alta Mesa*, No. 4:19-cv-00957, ECF No. 188-1 at ¶152. There is no meaningful distinction between a stock price decline analysis based on a set redemption stock price or a set price at the date the merger. And the fact that in *EQT*, "the nature of the plaintiffs' claims does not appear to have been challenged" (MR, 2023 WL 5916598, at *11) does not detract from the fact that a direct 14(a) claim comprised of shareholders of the acquiring company satisfied *Comcast* and was certified. *EQT*, 2022 WL 3293518, at *26-29. The likely reason that plaintiffs' claims and certification were not challenged in that case was because plaintiffs clearly had the winning argument.

*Fourth*, the MR ignored that 14(a) Plaintiffs also provided a damages methodology based on rescissory damages that requires no "transaction" price, but measures the stock price of McDermott prior to the Merger announcement, less the stock price at disposition. Hartzmark ¶52; Hartzmark Reply ¶22. In light of the flexibility of 14(a) damages remedies, this Court could alternatively endorse this direct remedy in certifying the Class in compliance with the Supreme Court's directives in *Borak*, *Mills*, and *Northway* to fulfill the "broad remedial" purpose of the statute. *Supra* at 18-19.

The MR's unprecedented recommendation to create a legal divide between acquiring and acquired company shareholders, and barring any direct 14(a) claims by acquiring company shareholders deprived of an informed merger vote, is erroneous and should not be adopted.

## V.     This Court Should Sustain 14(a) Plaintiffs' Objections and Certify the Class

14(a) Plaintiffs brought a claim asserting a direct theory of liability and damages, their proposed damages methodology satisfies *Comcast*, and there is no good cause for this Court to revisit the law of the case set forth in the MTD Order. Accordingly, this Court should decide class certification on the voluminous record involving briefs, expert reports, and oral argument and testimony, without remanding to Judge Edison, which would only cause further unnecessary delay in a case that should be heading to resolution in 2024.

That said, even if this Court concludes that neither of 14(a) Plaintiffs' two damages methodologies satisfies *Comcast*, that does not rob them of standing, and the remedy is not to deny certification of the entire Class. Even the MR agrees that 14(a) Plaintiffs' theory of liability is based on a direct harm, *i.e.*, the infringement of their right to cast a fully

24

informed vote. MR, 2023 WL 5916598, at *6. Given that the harm here is direct, concrete and redressable, 14(a) Plaintiffs have Article III standing to pursue that liability theory on behalf of the Class. *See Chavez v. Plan Benefit Servs., Inc*., 77 F.4th 370, 379 (5th Cir. 2023). Even if this Court finds that the proffered damages methodologies cannot be pursued because they are derivative in nature, which they are not, the remedy is ***not*** to dismiss the case for lack of standing. If "the proposed class meets the predominance requirement for liability purposes, but not for ascertaining classwide damages," the Court should certify a liability class and deny certification as to damages without prejudice to allowing the plaintiff to submit a new damages methodology that satisfies Rule 23. *Fort Worth Emps.' Ret. Fund v. J.P. Morgan Chase & Co*., 301 F.R.D. 116, 142 (S.D.N.Y. 2014); *Loritz v. Exide Techs*., 2015 WL 6790247, at *22-23 (C.D. Cal. July 21, 2015).

## CONCLUSION

For the reasons cited herein, and in 14(a) Plaintiffs' Class Motion, Class Reply, and accompanying exhibits, 14(a) Plaintiffs respectfully request that this Court enter an order (i) sustaining these Objections and rejecting the MR, and further (ii) certifying the Action as a class action pursuant to Rules 23(a) and 23(b)(3); (iii) appointing 14(a) Plaintiffs as Class Representatives; and (iv) appointing Wolf Popper LLP and Bernstein Litowitz Berger & Grossmann LLP as Co-Class Counsel.

Dated: September 25, 2023

**WOLF POPPER LLP**

By: */s/ Chet B. Waldman*

Chet B. Waldman (admitted *pro hac vice*)
Robert C. Finkel (admitted *pro hac vice*)
Matthew Insley-Pruitt (admitted *pro hac vice*)
Philip M. Black (admitted *pro hac vice*)
845 Third Avenue, 12th Floor
New York, New York 10022
(212) 759-4600
cwaldman@wolfpopper.com
rfinkel@wolfpopper.com
minsley-pruitt@wolfpopper.com
pblack@wolfpopper.com

Jeffrey W. Chambers
913 Dunleigh Meadows Lane
Houston, TX 77055
(713) 438-5244
jchambers@wolfpopper.com

*Lead Counsel for the 14(a) Plaintiffs
and the Proposed Class*

**BERNSTEIN LITOWITZ BERGER
   & GROSSMANN LLP**

John Rizio-Hamilton (admitted *pro hac vice*)
Lauren A. Ormsbee (admitted *pro hac vice*)
Veronica V. Montenegro  (admitted *pro hac vice*)
Jonathan G. D'Errico (admitted *pro hac vice*)
1251 Avenue of the Americas, 44th Floor
New York, NY 10020
(212) 554-1400
johnr@blbglaw.com
lauren@blbglaw.com
veronica.montenegro@blbglaw.com
jonathan.derrico@blbglaw.com

*Additional Counsel for the 14(a) Lead
Plaintiff and Proposed Class Counsel*