# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF TEXAS
### HOUSTON DIVISION

| | |
|---|---|
| MIRIAM EDWARDS, Individually and On Behalf of All Others Similarly Situated, | Case No.: 4:18-cv-04330 |
| Plaintiff, | **(Consolidated)** |
| v. | |
| MCDERMOTT INTERNATIONAL, INC., DAVID DICKSON, and STUART SPENCE, | |
| Defendants. | |

**THE SECTION 14(a) LEAD PLAINTIFF'S RENEWED MOTION FOR CLASS CERTIFICATION, APPOINTMENT OF CLASS REPRESENTATIVES, AND APPOINTMENT OF CLASS COUNSEL**

## <u>TABLE OF CONTENTS</u>

**Page(s)**

I.      INTRODUCTION ...................................................................................... 1

II.     NATURE OF THE PROCEEDINGS ..................................................... 3

III.    STAGE OF THE PROCEEDINGS ......................................................... 7

IV.    STATEMENT OF THE ISSUES ............................................................ 8

V.     ARGUMENT ............................................................................................ 8

        A.     The Action Satisfies the Requirements of Rule 23(a) ................................. 9

                 1.     Numerosity, Commonality and Typicality Are Established .............. 9

                 2.     Adequacy Is Established ................................................................. 11

        B.     The Action Satisfies the Requirements of Rule 23(b)(3) ........................... 16

                 1.     Predominance Is Established ........................................................... 17

                       a.     Defendants Have Conceded Commonality of Falsity, Materiality and Reliance Elements ....................................... 17

                       b.     Damages Are Measurable Using a Common Methodology Consistent with Plaintiffs' Sustained Theory of Liability .... 19

                 2.     Superiority Is Established and the Class Is Ascertainable .............. 23

        C.     The Court Should Approve Appointment of Co-Class Counsel ................. 25

VI.    CONCLUSION ....................................................................................... 25

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*A.A. v. Phillips*,
No. 21-30580, 2023 WL 334010 (5th Cir. Jan. 20, 2023) ............................................ 24

*Alaska Elec. Pension Fund v. Flowserve Corp.*,
572 F.3d 221 (5th Cir. 2009) ...................................................................................... 9

*Amchem Prods., Inc. v. Windsor*,
521 U.S. 591 (1997) ..................................................................................................... 17

*Amgen Inc. v. Connecticut Ret. Plans & Trust Funds*,
568 U.S. 455 (2013) .............................................................................................. 1, 9, 18

*In re Anadarko Petroleum Corp. Secs. Litig.*,
Civil Action No 4:20-cv-00576, 2022 WL 4544235 (S.D. Tex. Sept. 28, 2022) ........ 20

*In re Bank of Am. Sec., Deriv. & "ERISA" Litig.*,
281 F.R.D. 134 (S.D.N.Y. 2012) ................................................................................. 18

*Basic Inc. v. Levinson*,
485 U.S. 224 (1988) ..................................................................................................... 18

*Browning Debenture Holders' Comm. v. DASA Corp.*,
524 F.2d 811 (2d Cir. 1975) ........................................................................................ 18

*Buettgen v. Harless*,
Civil Action Nos. 3:09–CV–791–K, 2011 WL 1938130
(N.D. Tex. May 19, 2011) ............................................................................................ 12

*In re CenturyLink Sales Pracs. & Sec. Litig.*,
337 F.R.D. 193 (D. Minn. 2020) ................................................................................. 22

*Chavez v. Plan Benefit Servs., Inc.*,
77 F.4th 370 (5th Cir. 2023) ....................................................................................... 14

*City P'ship Co. v. Jones Intercable, Inc.*,
213 F.R.D. 576 (D. Colo. 2002) .............................................................................. 3, 16

*In re Cobalt Int'l Energy, Inc. Sec. Litig.*,
Civil Action No. H–14–3428, 2017 WL 2608243 (S.D. Tex. June 15, 2017)............. 11

*Comcast Corp. v. Behrend*,
569 U.S. 27 (2013) ................................................................................................ 2, 7, 19

*In re DaimlerChrysler AG Sec. Litig.*,
216 F.R.D. 291 (D. Del. 2003) .................................................................................... 19

*In re DaimlerChrysler AG Sec. Litig.*,
  294 F. Supp. 2d 616 (D. Del. 2003) .............................................................................. 20

*In re Deepwater Horizon*,
  739 F.3d 790 (5th Cir. 2014) ...................................................................................... 9, 12

*In re Dynegy, Inc. Sec. Litig.*,
  226 F.R.D. 263 (S.D. Tex. 2005) ............................................................................... 10, 11

*In re Elec. Data Sys. Corp. Sec. Litig.* ("*EDS*"),
  226 F.R.D. 559 (E.D. Tex. 2005) ......................................................................... 17, 23, 24

*Edwards v. McDermott Int'l, Inc.*,
  Civil Action No. 4:18-CV-4330, 2021 WL 1421603
  (S.D. Tex. Apr. 13, 2021) ....................................................................................... 4, 5, 6, 20

*In re Enron Corp. Sec., Deriv. & "ERISA" Litig.* ("*Enron I*"),
  529 F. Supp. 2d 644 (S.D. Tex. 2006).................................................................... 1, 8, 9, 17

*Erica P. John Fund, Inc. v. Halliburton Co.* (*Halliburton I*),
  563 U.S.804 (2011) ..................................................................................................... 17, 18

*In re EQT Corp. Sec. Litig.*,
  2:19-cv-00754-RJC, 2022 WL 3293518 (W.D. Pa. Aug. 11, 2022)............................ 18

*Halliburton Co. v. Erica P. John Fund, Inc.* ("*Halliburton II*"),
  573 U.S. 258 (2014) ......................................................................................................... 17

*In re Heckmann Corp. Sec. Litig.*,
  C.A. No. 10–378–LPS–MPT, 2013 WL 2456104 (D. Del. June 6, 2013 .............. 18, 22

*J. I. Case Co. v. Borak*,
  377 U.S. 426 (1964) ......................................................................................................... 16

*KB Partners I, L.P. v. Barbier*,
  No. A–11–CA–1034–SS, 2013 WL 2443217 (W.D. Tex. June 4, 2013) .................... 10

*Koppel v. 4987 Corp.*,
  191 F.R.D. 360 (S.D.N.Y. 2000).................................................................................... 19

*Lane v. Page,*
  272 F.R.D. 558 (D.N.M 2011) ....................................................................................... 18

*Lane v. Page*,
  727 F. Supp. 2d 1214 (D.N.M. 2010).............................................................................. 20

*Lehocky v. Tidel Techs., Inc.*,
  220 F.R.D. 491 (S.D. Tex. 2004) ..................................................................... 10, 11, 12, 13

*Ludlow v. BP, P.L.C.*,
  800 F.3d 674 (5th Cir. 2015), *cert. denied* 578 U.S. 959 (2016) ........................... 19, 20

*Mills v. Elec. Auto-Lite Co.*,
  396 U.S. 375 (1970) ........................................................................... 2, 3, 18

*Prause v. TechnipFMC, PLC*,
  Civil Action No. 4:17-CV-2368, 2020 WL 3549686
  (S.D. Tex. Mar. 9, 2020)........................................................... 12, 23, 24

*Pub. Employees Ret. Sys. of Miss. v. TreeHouse Foods, Inc.*,
  No. 16-cv-10632, 2020 WL 919249 (N.D. Ill. Feb. 26, 2020) .................... 13

*In re Reliant Energy ERISA Litig.*,
  No. Civ.A. H–02–2051, 2005 WL 2000707 (S.D. Tex. Aug. 18, 2005) ...... 10

*In re Reliant Sec. Litig.*,
  MASTER FILE NO. H–02–1810, 2005 WL 8152605 (S.D. Tex. Feb. 18, 2005) ......... 9

*Rougier v. Applied Optoelectronics, Inc.*,
  Civil Action No. 4:17-cv-02399, 2019 WL 6111303
  (S.D. Tex. Nov. 13, 2019) ................................................................. passim

*Sandberg v. Va. Bankshares, Inc.*,
  891 F.2d 1112 (4th Cir. 1989) ................................................................. 20

*Schleicher v. Wendt*,
  618 F.3d 679 (7th Cir. 2010) ................................................................... 22

*In re Signet Jewelers Ltd. Sec. Litig.*,
  No. 16 Civ. 6728 (CM) (RWL), 2019 WL 3001084
  (S.D.N.Y. July 10, 2019) .................................................................. 13, 22

*Thole v. U.S. Bank N.A*,
  140 S. Ct. 1615 (2020).............................................................................. 14

*Torres v. S.G.E. Mgmt., L.L.C.*,
  838 F.3d 629 (5th Cir. 2016) ................................................................. 9, 17

*In re Willis Towers Watson PLC Proxy Litig.*,
  Case No. 1:17-cv-1338 (AJT/JFA), 2020 WL 5361582
  (E.D. Va. Sept. 4, 2020) .............................................................. 9, 18, 20

**Other Authorities**

SEC Final Rule, Release No. 33-11131,
  2022 WL 16834029 (Nov. 2, 2022) .......................................................... 14

**Rules**

Fed. R. Civ. P. 23(a)(1) .................................................................................. 9

Fed. R. Civ. P. 23(a)(2) ................................................................................ 10

Fed. R. Civ. P. 23(a)(4) ................................................................................ 25

Rule 23(a)(4)..................................................................................... 11, 13

iv

Rule 23(b) ................................................................................................. 16

Rule 23(b)(3) ........................................................................................ 16, 17

## I.       INTRODUCTION

Lead Plaintiff in this securities action, the Public Employees' Retirement System of Mississippi ("14(a) Lead Plaintiff" or "MissPERS"), respectfully submits this memorandum of law in support of its renewed motion for class certification pursuant to Federal Rules of Civil Procedure 23(a) and (b)(3) (the "Renewed 14(a) Class Motion"). This motion seeks: (i) certification of a class defined as all persons and entities that were McDermott shareholders (including beneficial owners) as of April 4, 2018 (the record date for McDermott shareholders to be eligible to vote on the merger of McDermott and CB&I (the "Merger")), and who were damaged thereby (the "Class")[1]; (ii) the appointment of 14(a) Lead Plaintiff and Teamsters Local 813 Insurance Trust Fund, Local 813 Pension Trust Fund, and Local 1034 Pension Trust Fund (the "Teamsters Funds", together with 14(a) Lead Plaintiff, the "14(a) Plaintiffs") as "Class Representatives"; and (iii) the appointment of Wolf Popper LLP ("Wolf Popper") and Bernstein Litowitz Berger & Grossmann LLP ("Bernstein Litowitz") as Class Counsel.

The Supreme Court has affirmed the importance of class actions as integral to enforcing the federal securities laws, *see Amgen Inc. v. Connecticut Ret. Plans & Trust Funds*, 568 U.S. 455, 476-78 (2013), as have courts in this District, *see In re Enron Corp. Sec., Deriv. & "ERISA" Litig. ("Enron I")*, 529 F. Supp. 2d 644, 670 (S.D. Tex. 2006).

---

[1] Capitalized terms have the same meaning as in the Amended Class Action Complaint (the "Complaint") (Dkt. 98). References to "¶_" are to paragraphs in the Complaint. Unless otherwise indicated, all emphasis is added and all internal quotations and citations are omitted. Excluded from the Class are Defendants herein, the officers and directors of McDermott and CB&I at relevant times, members of their immediate families and their legal representatives, heirs, successors, or assigns, and any entity in which Defendants have or had a controlling interest.

Courts have also repeatedly held that 14(a) securities actions such as this one are ideally suited for class certification. *See Mills v. Elec. Auto-Lite Co.*, 396 U.S. 375, 383 (1970).

This case is no exception, and readily satisfies Rule 23(a) and Rule 23(b)'s requirements.  Notably, Defendants have not contested the Rule 23(a) requirements of numerosity, commonality, typicality, and superiority.  Nor have they contested the element of adequacy with respect to the Teamsters Funds and Class Counsel.

Defendants previously contested only a limited number of elements. As an initial matter, Defendants' assertions that (1) the 14(a) Plaintiffs asserted a derivative claim and therefore lacked standing, and that (2) 14(a) Plaintiffs' common damages methodology could not satisfy Rule 23(b)(3) or the requirements set forth in *Comcast Corp. v. Behrend*, 569 U.S. 27 (2013), have been rejected by this Court.  *See* Dkts. 410, 438.

Aside from those two failed arguments, Defendants primarily argued that MissPERS does not satisfy Rule 23(a)'s adequacy element because the pension fund lent out all of its McDermott shares on the Record Date through a "securities lending" program managed by its custodial bank, could not exercise its power to vote on those shares, and therefore lacked standing to assert a 14(a) claim. This argument fails for multiple reasons. ***First***, Defendants do not challenge the adequacy or standing of the Teamsters Funds; consequently, any such challenges to MissPERS are no bar to class certification. ***Second***, MissPERS indeed has standing to assert 14(a) claims because it suffered an injury in fact stemming from an infringement of its voting rights. As explained below, at the time that Defendants were issuing materially misleading proxy solicitations, MissPERS had the right to recall its lent shares and to vote those shares. The decision whether to recall and vote the

shares *is itself a voting decision.* Defendants' repeated false statements in the Proxy and Proxy Solicitations between December 17, 2017 and April 4, 2018 impaired MissPERS' right to make that voting decision on the basis of complete and accurate information. Not only did MissPERS suffer an injury—which is enough to confer standing—it also suffered economic loss when the true facts about the Focus Projects emerged, further cementing its standing. *Third*, the law is clear that, because reliance is not an element of Section 14, "whether any particular member of the class relied on the proxy information; voted for or against the challenged transaction; *or voted at all in connection with the challenged transaction* . . . does not raise a unique defense that disqualifies them from acting as class representatives." *City P'ship Co. v. Jones Intercable, Inc.*, 213 F.R.D. 576, 587 (D. Colo. 2002) (citing, *e.g.*, *Mills*, 396 U.S. 375), *report and recommendation adopted*, 213 F.R.D. 576, 577 (D. Colo. 2002). No court has ever concluded that participation in a securities lending program strips investors of their rights and remedies under the securities laws.

Defendants also previously argued that the Class was not ascertainable because other Class Members, like MissPERS, likely engaged in securities lending—just as they do in almost all publicly-traded companies. This does not prevent certification because, even if the Court believed that identification of those engaged in securities lending was relevant, such information can be determined based on a simple review of investment documents. That is all that is required in the Fifth Circuit.

14(a) Plaintiffs respectfully request that the Court grant the 14(a) Class Motion.

## II.   NATURE OF THE PROCEEDINGS

This Action asserts claims under Sections 14(a) and 20(a) of the Exchange Act

arising from misrepresentations and omissions in the Proxy and Proxy Solicitations that Defendants—McDermott, CB&I, David Dickson, Stuart Spence, and Patrick Mullen—made to McDermott's shareholders in order to solicit their approval of the Merger. This Court previously held that 14(a) Lead Plaintiff adequately pled direct securities claims based on actionable misrepresentations and omissions that misled McDermott's shareholders and deprived them of an informed vote. *See Edwards v. McDermott Int'l, Inc.*, 2021 WL 1421603, at *3 (S.D. Tex. Apr. 13, 2021) (the "14(a) MTD Opinion").

To solicit McDermott shareholders' approval of the Merger, Defendants made misrepresentations concerning McDermott's due diligence regarding CB&I's Focus Projects and its valuation of the expected costs of the Focus Projects. These statements were the primary focus of analysts and shareholders from the moment the Merger was announced. For example, the first question from an analyst on the December 18, 2017 joint conference call discussing the newly-announced Merger inquired into the level of due diligence around the transaction and the Focus Projects specifically. ¶77. In response, Dickson assured shareholders that McDermott had "***worked extensively with CB&I on due diligence***," and Spence stated that the due diligence on the Focus Projects was "***significant***." ¶¶76, 78. In response to a question about how McDermott had "priced in the potential risk" on the Focus Projects, Dickson said that the Focus Projects were "fairly well-progressed, so that takes out a lot of the risk that you would expect at the start-up." ¶139. On January 24, 2018, Defendants issued the materially false and misleading Proxy, and then continued to make additional misstatements regarding the strength of their due diligence even in the face of mounting costs through and even after the Record Date. *See,*

4

*e.g.*, ¶¶101-03, 164-65, 174-75, 189, 192.[2]

Following Defendants' allegedly false and misleading Proxy Solicitations, on May 2, 2018, McDermott shareholders approved the Merger and authorized a 3-to-1 reverse stock split of McDermott common stock. On the May 10, 2018 Merger Date, McDermott was transformed into a new company, now "offering customers a vertically integrated service platform" with a materially altered size, business, customers, and geographical focus. *See* Dkt. 329-3, at 4, n.7 & Appendix C.

In truth, unknown to McDermott shareholders at the time, the Merger was "a disaster for McDermott." 14(a) MTD Opinion, 2021 WL 1421603, at *3. Following the Merger, a series of public disclosures revealed that the Focus Projects were devastating, which was or would have been readily evident and knowable from adequate due diligence by McDermott. Five months after the Merger, on October 30, 2018, McDermott disclosed a ***$744 million charge related to three of the Focus Projects***—Calpine, Freeport, and Cameron—meaning that McDermott had acknowledged $965 million in charges included as adjustments to the fair values as of the Merger Date (together with an earlier $221 million change in value to the Focus Projects taken in July 2018), totaling almost 40% of the value of McDermott securities used to acquire CB&I. ¶¶15, 209-13.

This announcement caused McDermott's stock price to plunge an astounding 40% in one day, falling $5.14 per share to close at $7.73 per share on October 31, 2018. ¶¶16,

---

[2] The Proxy Solicitation materials incorporated the statements made over the four months between the announcement of the Merger in December 2017 and the definitive final Proxy in March 2018, including the first Proxy statement filed on January 24, 2018 and three later amendments on March 2, March 23 and March 27, which was declared effective on March 29, 2018. ¶¶136, 157-58.

229. On February 13, 2019, McDermott disclosed an additional $168 million charge related to the Cameron project as of the Merger Date. ¶¶18, 234, 236-37. Following this news about further charges at Cameron, McDermott's share price fell 26%, or $2.48 per share, to close at $6.82 per share on February 13, 2019. ¶235. On July 29, 2019, McDermott announced further losses at the Focus Projects, followed by the announcement of a net loss of $146 million on July 29, 2019. ¶¶18, 242-46. During trading the next day, July 30, 2019, McDermott's stock dropped 35.3%, or $3.56 per share, to close at $6.52 per share. ¶247.

"The Focus Projects ultimately sank McDermott." 14(a) MTD Opinion, 2021 WL 1421603, at *4. After several disclosures of bad news related to the Focus Projects and McDermott's retention of a restructuring firm—each of which was followed by a sharp decline in the price of the common stock—McDermott entered bankruptcy proceedings in January 2020. In an announcement on its website, McDermott tied the bankruptcy to the Focus Projects, noting: "[T]he 'focus projects' (Freeport and Cameron LNG) have significantly strained McDermott's finances, and have made it difficult to maintain a timely balance between cash received from customers and cash spent on projects." 14(a) MTD Opinion, 2021 WL 1421603, at *4.

As this Court held, these facts demonstrated a viable theory of loss causation, as 14(a) Lead Plaintiff "pled facts sufficient to establish that the merger between McDermott and CB&I, and the misleading proxy materials that facilitated it, *led to drastic drops in McDermott's stock price as the truth about the Focus Projects became known*," which are "*sufficient to plead loss causation*" for the direct claim. *Id*. at *6.

6

### III.   STAGE OF THE PROCEEDINGS

On March 31, 2021, the Court denied Defendants' motion to dismiss the Complaint (Dkt. 162) and issued the 14(a) MTD Opinion. On September 29, 2021, 14(a) Lead Plaintiff filed its motion to certify the 14(a) Class. (Dkt. 194), later amending the motion to add the Teamsters Funds as additional Class Representatives. (Dkt. 263). On October 28, 2022, 14(a) Plaintiffs refiled the class motion at the request of Magistrate Judge Edison (Dkt. 303) ("First 14(a) Class Motion"). Defendants opposed the First 14(a) Class Motion on December 15, 2022 (Dkt. 311) ("First 14(a) Class Opposition"), and the 14(a) Plaintiffs filed a reply brief on March 3, 2023 (Dkt. 329) ("First 14(a) Class Reply"). On May 24, 2023, there was a full-day hearing on the First 14(a) Class Motion (Dkt. 367) ("14(a) Class Hearing"), and limited supplemental briefing was filed on June 2, 2023 (Dkts. 369-70).

In their First 14(a) Class Opposition, Defendants did not contest that the 14(a) Plaintiffs satisfy Rule 23's elements of numerosity, commonality, typicality, and superiority, and that the Teamsters Funds and proposed Class Counsel are adequate to represent the Class. Rather, they raised four challenges: (1) 14(a) Plaintiffs' sustained direct claims were actually derivative and therefore Plaintiffs lacked standing (First 14(a) Class Opposition at 4-8); (2) because Plaintiffs' claims were supposedly derivative, their proposed damages methodology did not satisfy *Comcast Corp.*, 569 U.S. 27, thereby defeating predominance (*id.* at 9-20); (3) MissPERS was not an adequate Class Representative because it had lent all its McDermott shares as of the Record Date and therefore lacked standing to bring 14(a) claims (*id.* at 20-22); and (4) the 14(a) Class was not ascertainable due to potential securities lending by Class Members (*id.* at 22-25).

7

On September 11, 2023, Magistrate Judge Edison issued a Memorandum and Recommendation recommending that this Court deny the First 14(a) Class Motion on the grounds of standing and *Comcast*/Rule 23(b)(3) predominance. Dkt. 387 ("M&R"). 14(a) Plaintiffs filed Objections to the M&R on September 25, 2023. Dkt. 403. Four days later, this Court agreed with 14(a) Plaintiffs, rejected the M&R in its entirety, and denied the First 14(a) Class Motion without prejudice, ordering 14(a) Plaintiffs to "reassert" their motion "with briefing that focuses solely on the numerosity, commonality, typicality, and adequacy requirements of Federal Rule of Civil Procedure 23(a) and the predominance and superiority requirements of Federal Rule of Civil Procedure 23(b)(3)." Dkts. 410, 438 (denying Defendants' motion "object[ing] to [Dkt. 410]").

14(a) Plaintiffs hereby file this Renewed 14(a) Class Motion.

## IV.   STATEMENT OF THE ISSUES

1.   Whether this Action should be certified as a class action pursuant to Rules 23(a) and 23(b)(3) of the Federal Rules of Civil Procedure.

2.   Whether 14(a) Plaintiffs should be appointed as Class Representatives in the certified class action pursuant to Rule 23(a).

3.   Whether Wolf Popper and Bernstein Litowitz should be appointed as Co-Class Counsel pursuant to Rule 23(g).

## V.   ARGUMENT

Courts recognize that "Rule 23 is a remedial rule which should be construed liberally to permit class actions, especially in the context of securities fraud suits, where the class action device can prove effective in deterring illegal activity." *Enron I*, 529 F. Supp. 2d at 670. "[W]hen a court is in doubt as to whether or not to certify a class action, the court should err in favor of allowing the class to go forward." *In re Reliant Sec. Litig.*,

2005 WL 8152605, at *3 (S.D. Tex. Feb. 18, 2005); *see also In re Willis Towers Watson PLC Proxy Litig.,* 2020 WL 5361582, at *11 (E.D. Va. Sept. 4, 2020) ("proceeding as a class action in this [Section 14(a)] action, as in public traded securities claims generally, is the superior mechanism").

A proposed class must satisfy the four prerequisites of Rule 23(a) as well as one of the three provisions of Rule 23(b). *See Torres v. S.G.E. Mgmt., L.L.C.*, 838 F.3d 629, 635 (5th Cir. 2016) (*en banc*). As the Supreme Court has explained, "Rule 23 grants courts no license to engage in free-ranging merits inquiries at the certification stage. Merits questions may be considered . . . only to the extent[] that they are relevant to determining whether the Rule 23 prerequisites for class certification are satisfied." *See Amgen*, 568 U.S. at 464-66; *see also Alaska Elec. Pension Fund v. Flowserve Corp.*, 572 F.3d 221, 229 (5th Cir. 2009). Class certification is not a "dress rehearsal for the merits." *In re Deepwater Horizon*, 739 F.3d 790, 811 (5th Cir. 2014).

### A.      The Action Satisfies the Requirements of Rule 23(a)

#### 1.      Numerosity, Commonality and Typicality Are Established

Rule 23(a)(1) tests whether a class is "so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1). Numerosity is "generally assumed . . . in class action suits involving nationally traded securities." *In re Enron Corp.*, 529 F. Supp. 2d at 672. Here, the proposed Class easily satisfies the numerosity requirement. As of the April 4, 2018 record date, approximately 286 million shares of McDermott common stock (pre-Merger) were outstanding. ¶259; *see* Expert Report of Michael L. Hartzmark, Ph.D., dated September 29, 2021 ("Hartzmark Rpt.") (attached as Ex. 5 to the Decl. of Matthew Insley-

Pruitt and Lauren A. Ormsbee in Support of The Section 14(a) Lead Plaintiff's Renewed Motion for Class Certification, Appointment of Class Representatives, and Appointment of Class Counsel ("Joint Declaration" dated November 6, 2023)) ¶¶ 34-35 (discussing market capitalization). Defendants did not previously contest numerosity.

Rule 23(a)(2) is satisfied when "there are questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2). "The test for commonality is not demanding and is met where there is at least one issue, the resolution of which will affect all or a significant number of the putative class members." *In re Reliant Energy ERISA Litig.*, 2005 WL 2000707, at *2 (S.D. Tex. Aug. 18, 2005); *see also Lehocky v. Tidel Techs., Inc.*, 220 F.R.D. 491, 499 (S.D. Tex. 2004) ("The threshold of 'commonality' is not high.").

Here, Defendants made uniform misrepresentations and omissions to the Class. Common questions include: whether Defendants' statements or omissions violated Section 14(a) of the Exchange Act and were material and misleading; and whether the Class Members sustained damages as a result of the alleged misconduct, and, if so, the proper method for calculating damages. In cases alleging false and misleading statements, like here, "the presence of false statements and/or omissions of material fact in the registration statement . . . satisfy Rule 23(a)(2)'s commonality requirement." *In re Dynegy, Inc. Sec. Litig.,* 226 F.R.D. 263, 276 (S.D. Tex. 2005); *see also Rougier v. Applied Optoelectronics, Inc.*, 2019 WL 6111303, at *6 (S.D. Tex. Nov. 13, 2019); *KB Partners I, L.P. v. Barbier*, 2013 WL 2443217, at *11 (W.D. Tex. June 4, 2013) (commonality established because "every class member's allegations of securities fraud arise from the same basic set of facts"). Defendants did not previously contest commonality.

10

The test for typicality is not "demanding." *Lehocky*, 220 F.R.D. at 500. Typicality "exists when the representative plaintiff's claims arise out of the same event or course of conduct as the other class members' claims, and all claims are based on the same legal theories." *Optoelectronics*, 2019 WL 6111303, at *6. Typicality is readily established here because the claims of the 14(a) Plaintiffs and the Class arise from the same misstatements and omissions in the Proxy and Proxy Solicitations, and the injury suffered by 14(a) Plaintiffs is also the same as the injury suffered by all other Class Members, *i.e.*, being a McDermott shareholder, including beneficial owners, as of April 4, 2018 and suffering losses when the truth emerged and the value of McDermott securities declined. This alignment of factual allegations, as well as legal and remedial theories, establishes typicality under Rule 23(a)(3). *See, e.g.*, *Optoelectronics*, 2019 WL 6111303, at *6 (typicality established where plaintiffs' and class members' "claims arise from the same events and are based on the same legal theories," including "the exact same misrepresentations, omissions, and course of conduct by [defendants]"); *In re Cobalt Int'l Energy, Inc. Sec. Litig.*, 2017 WL 2608243, at *2-3 (S.D. Tex. June 15, 2017); *Dynegy*, 226 F.R.D. at 287-88. Defendants did not previously contest typicality.

## 2.      Adequacy Is Established

Rule 23(a)(4) requires that "the class representatives . . . fairly and adequately protect the interests of the class." Under Rule 23(a)(4), the Court's inquiry considers:

> (1) the zeal and competence of the representatives' counsel; (2) the willingness and ability of the representatives to take an active role in and control the litigation and to protect the interests of absentees; and (3) the risk of conflicts of interest between the named plaintiffs and the class they seek to represent.

*Prause v. TechnipFMC, PLC*, 2020 WL 3549686, at *4 (S.D. Tex. Mar. 9, 2020). Only "fundamental" conflicts can defeat adequacy—"one[s] going to the specific issues in controversy." *Deepwater Horizon*, 739 F.3d at 813 n.99. "Differences between the named plaintiffs and class members render the named plaintiffs inadequate representatives only if those differences create conflicts between the named plaintiffs' interests and the class members' interest." *Buettgen v. Harless*, 2011 WL 1938130, at *5 (N.D. Tex. May 19, 2011). Here, "Plaintiffs and the Class Members have the same interest in recovering for any loss caused by the alleged misrepresentation and omissions" and therefore satisfy Rule 23(a)(4). *Optoelectronics*, 2019 WL 6111303, at *7.

*First*, Wolf Popper and Bernstein Litowitz (the proposed Class Representatives' counsel) are highly qualified and are zealously prosecuting this Action on behalf of the Class. *See* Joint Decl., ¶14. Defendants did not previously contest counsels' adequacy.

*Second*, 14(a) Plaintiffs are adequate Class representatives because they understand their roles and obligations as representatives of the Class. Since the Court appointed it Lead Plaintiff on June 4, 2019, MissPERS has diligently protected absent Class Members' interests to ensure and oversee diligent prosecution of the 14(a) claims. Declaration of Ta'Shia Gordon ("Gordon Declaration"), ¶¶4-7 (attached as Ex. 1 to Joint Declaration); *see Lehocky*, 220 F.R.D. at 502-03 (adequacy established where plaintiffs were committed to the action, reviewed court papers, and understood the complaint's allegations). MissPERS will continue to participate in and supervise the litigation. *See* Gordon Decl., ¶¶6-7. Many courts have recognized 14(a) Lead Plaintiff's adequacy to serve as a lead plaintiff in securities class actions. *See, e.g.*, *Pub. Employees Ret. Sys. of Miss. v.*

12

*TreeHouse Foods, Inc.*, 2020 WL 919249 (N.D. Ill. Feb. 26, 2020); *In re Signet Jewelers Ltd. Sec. Litig.*, 2019 WL 3001084 (S.D.N.Y. July 10, 2019).

Likewise, the Teamsters Funds have reviewed and adopted the operative pleading and all allegations therein as their own; responded to discovery requests, presented a witness for deposition, and have taken all necessary steps to fulfill their fiduciary obligations as additional Class representatives. Defendants take no issue with either of the 14(a) Plaintiffs' zealous advocacy.

**Third**, no conflict of interest exists nor has one been identified by Defendants. 14(a) Plaintiffs' interests are directly aligned with the interests of other Class members because the claims alleged in the Complaint are based upon the same economic injuries caused by the same course of events, and 14(a) Plaintiffs seek to maximize the recovery for the Class prosecuting the Section 14(a) claim. Such alignment of interests satisfies Rule 23(a)(4). *See Optoelectronics*, 2019 WL 6111303, at *7; *Lehocky*, 220 F.R.D. at 502-03.

Defendants did not previously contest the Teamsters Funds' adequacy at all. However, they argued that MissPERS is inadequate because it lacked standing to assert a Section 14(a) claim. Defendants argue that (1) MissPERS lent all of its McDermott shares on April 4, 2018 through a securities lending agreement managed by its custodial bank, Bank of New York Mellon, and (2) because MissPERS did not recall its shares on loan as of the Record Date, it could no longer vote on the Merger and effectively "forfeited" the right to vote its shares in exchange for revenues from lending. *See* First 14(a) Class Opposition at 20-22.

This argument fails for several reasons. **First**, this argument does not apply to the

13

Teamsters Funds because they did not engage in securities lending.

**Second**, Defendants are wrong about MissPERS' standing. MissPERS unequivocally has standing to assert this Section 14(a) claim because it suffered an injury in fact that was caused by Defendants: its voting rights were infringed—exactly the harm that Section 14(a) seeks to guard against—and it suffered economic loss as a result. *See Chavez v. Plan Benefit Servs., Inc*., 77 F.4th 370, 379 (5th Cir. 2023); *Thole v. U.S. Bank N.A*, 140 S. Ct. 1615, 1618 (2020)*.* The record is uncontested that MissPERS had and maintained the right to recall its lent shares and exercise its entitlement to vote any or all of those lent shares.[3] During the time that MissPERS had the right to recall its shares and vote them, Defendants made multiple misrepresentations in the Proxy and Proxy Solicitations, which violated Section 14(a). These misrepresentations deprived MissPERS of the ability to make an informed voting decision, including the decision of whether to recall its lent shares and vote them. This is an injury in fact under Section 14(a).

Indeed, this is entirely consistent with recent guidance issued by the SEC, which confirmed that shareholders who engage in securities lending are still "entitled" to vote their shares, even though they would have to recall them from loan to do so. *See generally* SEC Final Rule, Release No. 33-11131, 2022 WL 16834029 (Nov. 2, 2022). This guidance

---

[3] *See, e.g.*, Supp. DFA Decl. ¶6 (Joint Decl. Ex. 8) ("[I]f the shares were successfully recalled prior to the record date, such shares would normally appear in [DFA's] proxy voting system as shares for which Dimensional could instruct a vote."); Dkt. 311-4 at 26, 28, 30 (BNY "Securities Finance" presentation noting that a "Client" who lends securities is a "Beneficial Owner" who "retains the benefits of ownership" and "can recall the security at anytime [sic]" and "for any reason"); Joint Decl. Ex. 9 at 54:13-5 (MissPERS CIO testified that lent shares "can always be recalled at a moment's notice and those shares can be voted").

pertains specifically to the disclosure of proxy voting activities, and states, "*a fund would be entitled to vote on a matter if its portfolio securities are on loan as of the record date for the meeting … [b]ecause the reporting fund could recall and vote these loaned securities*." *Id.* at *4; *see also id.* at *66 ("Voting power means the ability . . . to vote a security or direct the voting of a security, including the ability to determine *whether to vote a security or to recall a loaned security*.").

MissPERS was entitled to truthful statements by Defendants in the final March 27, 2017 Proxy, and the numerous other Proxy Solicitations made between December 17, 2017 and the Record Date, in making its determination (through its investment manager) whether to recall any lent shares to vote. Again, the decision whether to recall shares is itself a voting decision, and MissPERS' right to make the decision with accurate information was infringed.

The injury is far from abstract: as a direct result of Defendants' misstatements and omissions, MissPERS suffered economic loss when the value of its McDermott shares declined significantly as the truth about the Focus Projects was revealed.

*Third*, the law is clear that a beneficial shareholder need not actually exercise its right to vote to have standing to assert a Section 14(a) claim. Thus, whether MissPERS' investment manager actually recalled and voted MissPERS' shares in the Merger has no bearing on MissPERS' adequacy. Indeed, because reliance is not an element of Section 14(a), "whether any particular member of the class relied on the proxy information; voted for or against the challenged transaction; or voted at all in connection with the challenged transaction . . . does not raise a unique defense that disqualifies them from acting as class

15

representatives." *Jones Intercable, Inc.*, 213 F.R.D. at 587. Moreover, the Proxy itself did not carve out those who participate in securities lending from those targeted by Defendants' representations, identifying those "entitled to vote" as all shareholders whose shares "were held by a bank, broker, trust company or other nominee (that is, in street name)" on April 4, 2018, a group that clearly includes 14(a) Lead Plaintiff. *See* March 27, 2018 Proxy Statement at vii (Joint Decl. Ex. 10).

At bottom, Defendants' argument is unprecedented. Although securities lending has existed for decades, no court has ever concluded that a lead plaintiff's or class members' participation in a securities lending program stripped them of the protection of §14(a) or any other claim. Importantly, MissPERS retained its beneficial ownership of the shares on loan without break, satisfying the Class definition of all "McDermott shareholders (including beneficial owners) as of April 4, 2018."

Section 14(a) was enacted to protect the entire class of stockholders at the time of the Proxy issuance. *J. I. Case Co. v. Borak*, 377 U.S. 426, 431 (1964). 14(a) Lead Plaintiff's participation in a securities lending program does not impact its standing or adequacy to proceed as a Class Representative.

## B.     The Action Satisfies the Requirements of Rule 23(b)(3)

In addition to meeting Rule 23(a)'s prerequisites, a purported class action must satisfy at least one of the subsections of Rule 23(b). 14(a) Plaintiffs seek class certification under Rule 23(b)(3), which requires that "the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the

16

controversy." *Cobalt*, 2017 WL 2608243, at \*2. Rule 23(b)(3)'s "predominance" and "superiority" requirements are easily satisfied here, and the Class is ascertainable.

           **1.**      **Predominance Is Established**

              **a.**      **Defendants Have Conceded Commonality of Falsity, Materiality and Reliance Elements**

The predominance requirement "tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation." *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 623 (1997). "Predominance does *not* require all questions of law or fact to be common, but only that common questions predominate over individual questions." *In re Elec. Data Sys. Corp. Sec. Litig.* ("*EDS*"), 226 F.R.D. 559, 570 (E.D. Tex. 2005). "Where a common nucleus of operative fact exists, the predominance factor is met." *Enron I*, 529 F. Supp. 2d at 678. "That the defendant might attempt to pick off the occasional class member here or there through individualized rebuttal does *not* cause individual questions to predominate." *Halliburton Co. v. Erica P. John Fund, Inc.* ("*Halliburton II*"), 573 U.S. 258, 276 (2014). As the Fifth Circuit has emphasized, "[w]hen one or more of the central issues in the action are common to the class and can be said to predominate, the action may be considered proper under Rule 23(b)(3)." *Torres,* 838 F.3d at 645 n.74.

Here, 14(a) Plaintiffs' burden to establish predominance as to their §14(a) claim is extremely limited. Determining whether common questions predominate over individual questions "begins, of course, with the elements of the underlying cause of action." *Erica P. John Fund, Inc. v. Halliburton Co.* (*Halliburton I*), 563 U.S. 804, 809 (2011). As noted above, Section 14(a) does not require 14(a) Plaintiffs to plead or prove reliance, so inquiries

into whether Class Members are entitled to the presumption of reliance afforded by *Basic Inc. v. Levinson*, 485 U.S. 224, 246 (1988), and its progeny, are irrelevant here. *See Mills*, 396 U.S. at 383; *Browning Debenture Holders' Comm. v. DASA Corp.*, 524 F.2d 811, 815 (2d Cir. 1975) ("[T]he broad, prophylactic purposes of [§] 14(a) would be frustrated if plaintiffs were required to prove . . . reliance."); *In re Heckmann Corp. Sec. Litig.*, 2013 WL 2456104, at *10 (D. Del. June 6, 2013) (certifying Section 10(b) and 14(a) claims, noting that "[u]nlike a claim for a violation under §10(b), to recover damages under §14(a) of the Securities Exchange Act, plaintiff need not prove reliance because it is not an element of the claim").[4]

The remaining elements of 14(a) Plaintiffs' claim—materiality, falsity, and loss causation—all present paradigmatic common questions that predominate. The Supreme Court has held that materiality and loss causation are common issues in a securities action, and thus proof of those elements is not a prerequisite to certification of the Class. *See Amgen*, 568 U.S. at 459-61 (materiality); *Halliburton I*, 563 U.S. at 807 (loss causation). Therefore, given the straightforward legal nature of a Section 14(a) claim, courts across the country routinely hold that class certification is appropriate. *See, e.g.*, *In re EQT Corp. Sec. Litig.*, 2022 WL 3293518, at *10 (W.D. Pa. Aug. 11, 2022) (certifying § 14(a) class of shareholders in acquiring company); *Willis Towers Watson*, 2020 WL 5361582, at *11; *Lane v. Page,* 272 F.R.D. 558, 580 (D.N.M 2011) (finding predominance established based

---

[4] *See also Willis Towers Watson*, 2020 WL 5361582, at *10 (noting "presumption of reliance . . . not applicable to §14(a) claims" and certifying class); *In re Bank of Am. Sec., Deriv. & "ERISA" Litig.*, 281 F.R.D. 134, 140-42 (S.D.N.Y. 2012) (rejecting defendants' argument that § 14(a) claim required plaintiffs to show reliance and certifying class).

on the omission of material facts "in connection with the . . . Merger"); *In re DaimlerChrysler AG Sec. Litig.*, 216 F.R.D. 291, 296 & n.2, 300 (D. Del. 2003) (certifying §14(a) class); *Koppel v. 4987 Corp.*, 191 F.R.D. 360, 366 & n.9 (S.D.N.Y. 2000) (same).

### b.  Damages Are Measurable Using a Common Methodology Consistent with Plaintiffs' Sustained Theory of Liability

To the extent relevant to certification of the Class, economic loss for each Class Member is also subject to common proof that predominates over any individual issues. As set forth below, common issues regarding damages will predominate because the methodology by which damages will be measured is common to all Class Members, is widely accepted, and relates directly to 14(a) Plaintiffs' class-wide theory of liability and damages based on the decline in McDermott's stock price following corrective disclosures. *Comcast* requires only that Plaintiffs provide a damages methodology that is "consistent" with their theory of liability. 569 U.S. 27 at 35, 37 (rejecting damages model that focused on market distortions that no longer "remained in the case"); *Ludlow v. BP, P.L.C.*, 800 F.3d 674, 687 (5th Cir. 2015), *cert. denied* 578 U.S. 959 (2016) (holding *Comcast* only requires, "[a]s a conceptual matter," that "each plaintiff's theory of damages remains tied to a theory of liability common to all plaintiffs"). *Comcast* does not require that damages be calculated with "certainty," only that plaintiffs show the "***ability***" to calculate (but not the actual calculation of) class-wide damages. *See Ludlow*, 800 F.3d at 683, 685, 689; *Optoelectronics*, 2019 WL 6111303, at *18 (rejecting *Comcast* arguments, finding plaintiffs' damages model "consistent" with their theory of liability).

This Court previously held that 14(a) Lead Plaintiff "has pled facts sufficient to

establish that the merger between McDermott and CB&I, and the misleading proxy materials that facilitated it, ***led to drastic drops in McDermott's stock price as the truth about the Focus Projects became known***." 14(a) MTD Opinion, 2021 WL 1421603, at *6. A commonly-accepted measure of damages used in Section 14(a) claims is often referred to as "'out-of-pocket' loss" or "stock price inflation" damages.[5] This is "the standard measure of damages for … Section 14(a) claims" and is "measured by the difference between the fair value of all that the [shareholder] received and the fair value of what he would have received had there been no fraudulent conduct." *In re DaimlerChrysler AG Sec. Litig.*, 294 F. Supp. 2d 616, 626 (D. Del. 2003); *see also Willis Towers Watson*, 2020 WL 5361582, at *11 (certifying 14(a) class using out-of-pocket damages methodology); *Sandberg v. Va. Bankshares, Inc.*, 891 F.2d 1112, 1123 (4th Cir. 1989) (Section 14(a) damages are the difference between the merger price and the value of the stock at the merger date, as determined by expert testimony); *Lane v. Page*, 727 F. Supp. 2d 1214, 1232 (D.N.M. 2010) (same).

Calculating class-wide damages in this Action will be subject to a common methodology. 14(a) Plaintiffs' expert, Dr. Michael Hartzmark, has detailed a methodology through which each Class Member's damages may be calculated based on the diminution in the value of McDermott shares as of the Merger Date, as measured by the stock price declines following the alleged corrective disclosures. Hartzmark Rpt. ¶¶52-53. ("[D]amages would be based on a common formula whereby a Class member's number of

---

[5] These methodologies are referred to interchangeably. *Ludlow*, 800 F.3d at 688; *In re Anadarko Petroleum Corp. Secs. Litig.*, 2022 WL 4544235, at *7 (S.D. Tex. Sept. 28, 2022).

damaged shares (the damaged shares are represented as 'S') would be multiplied by the difference in artificial inflation between the Merger and the date of disposition, which is equal to: S x (M – D)."). Each 14(a) Class Member's Class damages can be later calculated through an event study methodology that first determines the inflation in McDermott common stock based on the alleged corrective disclosures, and then estimates the share price inflation on each day during the period of May 10, 2018 (the Merger Date) through the announcement of McDermott's bankruptcy on January 21, 2020. *Id.* ¶¶54-69.[6] Damages for an individual Class Member can then be computed formulaically based upon information collected in the claims process (i.e., proof that the Class Member held McDermott shares as of April 4, 2018 (the Record Date) and May 10, 2018 (the Merger Date), and any subsequent post-Merger Date transaction history for the Class Members' McDermott common stock). *Id.* ¶70.[7]

Because this damages theory is based on the economic loss as measured by the decline in the value of McDermott's stock price when the misrepresented facts emerged or materialized, it is applicable on a class-wide basis, tied directly to the theory of liability, and further demonstrates predominance. *See Schleicher v. Wendt*, 618 F.3d 679, 682 (7th

---

[6] Dr. Hartzmark also describes additional methods for calculating damages under Section 14(a), specifically the similarly derived calculation of rescissory damages, that are also plainly subject to a common methodology that could be applied to each Class Member. Hartzmark Rpt., ¶52 n. 46; Hartzmark Reply Report (Joint Decl. Ex. 7), ¶22 n.26. At the appropriate stage of this litigation, following discovery, the parties will submit expert reports on loss causation and the calculation of damages; the trier of fact will be the ultimate arbiter of the appropriate measure of damages.

[7] *See also* Joint Declaration, Ex. 6. (Demonstrative Slides presented to the Court at the 14(a) Class Hearing), at 2-12. Dr. Hartzmark explained the methodology by reviewing these slides during the 14(a) Class Hearing. *See* 14(a) Class Hearing at 24:14-38:17.

Cir. 2010) ("Because each investor's loss usually can be established mechanically, common questions predominate and class certification is routine."). The question is not whether the theory of damages or methodology is correct, or what the exact amount of damages is; rather, the sole inquiry is whether 14(a) Plaintiffs have proposed a sound methodology that is consistent with the sustained theory of liability. *See Optoelectronics*, 2019 WL 6111303, at *17-18.

14(a) Plaintiffs have clearly done so here. *See Heckmann*, 2013 WL 2456104, at *14 ("[P]laintiff's damage theory is consistent with Section 14(a) precedent because it is based on the diminution in the value of their shares caused by the false and misleading statements in the Proxy."). Indeed, courts across the country and within this District have widely held that the precise method for calculating damages described by Dr. Hartzmark— namely, an event study methodology that calculates damages based on stock price declines following corrective disclosures—easily satisfies *Comcast*. *See In re CenturyLink Sales Pracs. & Sec. Litig.*, 337 F.R.D. 193, 212 (D. Minn. 2020) ("Plaintiffs propose a commonly accepted damages model for securities fraud that is consistent with their theory of liability and calculates damages on a classwide basis. Plaintiffs rely on Hartzmark's out-of-pocket or event study damages model."); *Optoelectronics*, 2019 WL 6111303 at *15 (finding that Dr. Hartzmark's "damages model uses empirical methods to calculate Class Members' out-of-pocket losses incurred as a result of Defendants' fraud" and satisfies *Comcast*); *In re Signet*, 2019 WL 3001084 at *20 (same).

Defendants previously argued that Dr. Hartzmark's report revealed that the 14(a) Plaintiffs alleged derivative claims. First 14(a) Class Opp. at 11. They also argued that

there is no common methodology that could properly measure loss causation based on "drastic drops in McDermott's stock price as the truth about the Focus Projects became known" because that theory could not apply to a class of holders of the acquiring company in a merger. *Id.* at 11-16. Both of those arguments were addressed in the M&R (Dkt. 387 at 16-20), and were then rejected by this Court. Dkts. 410, 438. Defendants' remaining premature loss causation arguments, if reasserted, only prove that the methodology can be commonly applied. *See* Ex. 6 at 17-27; 14(a) Class Hearing at 38:18-59:4.

## 2.   Superiority Is Established and the Class Is Ascertainable

In determining whether a plaintiff establishes superiority under Rule 23(b)(3), courts evaluate: "(A) the class members' interest in individually controlling their separate actions, (B) the extent and nature of existing litigation by class members concerning the same claims, (C) the desirability of concentrating the litigation in the particular forum, and (D) the likely difficulties of managing a class action." *EDS*, 226 F.R.D. at 570. "Typically, class actions are appropriate vehicles for adjudicating securities fraud cases because they avoid the time and expense of requiring all class members to litigate individually." *Optoelectronics*, 2019 WL 6111303, at *19. Defendants previously did not contest superiority, and the Court should find this element easily satisfied.

***First***, the thousands of Class Members do not have an incentive to invest their individual resources to initiate and prosecute their own claims against Defendants. *See, e.g.*, *Prause*, 2020 WL 3549686, at *7; *Optoelectronics*, 2019 WL 6111303, at *19. This is especially true here, "since this is a sophisticated action involving extensive discovery that would be impractical for any one individual to control." *EDS*, 226 F.R.D. at 570-71.

**Second**, no other individual actions assert claims under Section 14(a). *See Prause*, 2020 WL 3549686, at *7. **Third**, "given the number of plaintiffs with small claims, concentrating the litigation in this Court promotes judicial efficiency and economy, as well as uniformity of decisions." *Id.* **Finally**, there are no foreseeable management difficulties that will preclude this Action from being maintained as a class action. *See EDS*, 226 F.R.D. at 571.

Related to Rule 23(b)(3), courts have considered an "ascertainability" requirement. The Fifth Circuit recently confirmed the relatively low burden that must be met: "[t]o be ascertainable, the class must be susceptible to a precise definition to properly identify those entitled to relief, those bound by the judgment, and those entitled to notice. The district court need not know the identity of each class member before certification, but it needs to be able to identify class members at some stage of the proceeding." *A.A. v. Phillips*, 2023 WL 334010, at *2 n.12 (5th Cir. Jan. 20, 2023) (unpublished *per curiam*). Contrary to Defendants' anticipated arguments, shareholders like MissPERS who engaged in securities lending are members of the Class. Thus, there is no need to segregate loaned shares from non-loaned shares. Indeed, such an argument is entirely unsupported, and a similar argument concerning short selling has already been rejected, with a court in this district finding that short-selling (a by-product of securities lending) "involves no unexpected phenomenon but just the commonplace series of events that occur in nearly every [relevant transaction] and its aftermath." *Reliant*, 2005 WL 8152605, at *9. Moreover, if required, ascertaining the identity of Class Members who engaged in lending is achievable by reviewing investment documentation, of the kind provided by MissPERS' custodial bank. *See* Ex. B to Decl. of John Fox (attached as Ex. 5 to the Declaration of Amy Hefley) (Dkt.

311-6). Furthermore, any judgment or settlement will require a claims process, where a claims administrator can assess whether the documentation submitted by Class Members demonstrates their Class membership and entitlement to compensation. Far from being an unknowable fact, determining whether shares were on loan was done by MissPERS in this case by simple reference to documents maintained by its custodial bank. While unnecessary for all of the reasons stated above, the same could be determined for any Class Member who engaged in a securities lending program through reference to the documents maintained by securities lending agents.

### C.    The Court Should Approve Appointment of Co-Class Counsel

The Court should appoint Wolf Popper and Bernstein Litowitz as Co-Class Counsel because they will fairly and adequately represent the Class. *See* Fed. R. Civ. P. 23(a)(4), (g)(1). Wolf Popper and Bernstein Litowitz are well-qualified to prosecute this Action on behalf of 14(a) Lead Plaintiff, the Teamsters Funds, and the Class, as demonstrated by their extensive experience in prosecuting and resolving complex securities class actions in courts throughout the United States. *See* Joint Decl., ¶¶5-6; Exs. 2-3 (Firm Resumes). These firms have also demonstrated their willingness to commit substantial time and resources representing the Class. *Id.* ¶8. Defendants have not previously contested counsel's adequacy, and 14(a) Plaintiffs' selected counsel should be appointed as Co-Class Counsel.

## VI.    CONCLUSION

For the foregoing reasons, this Court should (i) certify the Action as a class action pursuant to Rules 23(a) and 23(b)(3); (ii) appoint 14(a) Plaintiffs as Class Representatives; and (iii) appoint Wolf Popper and Bernstein Litowitz as Co-Class Counsel.

Dated: November 6, 2023                      **WOLF POPPER LLP**


                                             By: */s/ Chet B. Waldman*

                                                 Chet B. Waldman
                                                 (*admitted pro hac vice*)
                                                 Robert C. Finkel
                                                 (*admitted pro hac vice*)
                                                 Matthew Insley-Pruitt
                                                 (*admitted pro hac vice*)
                                                 845 Third Avenue, 12th Floor
                                                 New York, New York 10022
                                                 (212) 759-4600
                                                 cwaldman@wolfpopper.com
                                                 rfinkel@wolfpopper.com
                                                 minsley-pruitt@wolfpopper.com

                                                 Jeffrey W. Chambers
                                                 913 Dunleigh Meadows Lane
                                                 Houston, TX 77055
                                                 (713) 438-5244
                                                 jchambers@wolfpopper.com

                                                 ***Lead Counsel and Proposed Co-Class Counsel for the 14(a) Lead Plaintiff, the Teamsters Funds, and the Class***


                                             **BERNSTEIN LITOWITZ BERGER & GROSSMANN LLP**

                                                 John Rizio-Hamilton
                                                 (*admitted pro hac vice*)
                                                 Lauren Amy Ormsbee
                                                 (*admitted pro hac vice*)
                                                 Veronica V. Montenegro
                                                 (*admitted pro hac vice*)
                                                 Jonathan G. D'Errico
                                                 (*admitted pro hac vice*)
                                                 1251 Avenue of the Americas,
                                                 44th Floor

26

New York, NY 10020
(212) 554-1400
johnr@blbglaw.com
lauren@blbglaw.com
veronica.montegero@blbglaw.com
Jonathan.derrico@blbglaw.com

***Additional Counsel for the 14(a)
Lead Plaintiff and Proposed Co-
Class Counsel for the Class***

## <u>CERTIFICATION OF CONFERENCE</u>

Pursuant to Local Rule 7.1(d)(1) and this Court's Court Procedure 6(C)(2), §14(a) Plaintiffs' counsel conferred with Defendants' counsel and the parties cannot agree about the disposition of this motion.