**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | | |
|---|---|---|
| MIRIAM EDWARDS, Individually and on Behalf of All Others Similarly Situated, | § § § | |
| Plaintiff, | § § | |
| v. | § § | Civil Action No. 4:18-cv-04330 |
| McDERMOTT INTERNATIONAL, INC., DAVID DICKSON, and STUART SPENCE, | § § § § § | |
| Defendants. | § § | |

**DEFENDANTS' OBJECTIONS TO**
**MEMORANDUM AND RECOMMENDATION**
**REGARDING § 10(b) PLAINTIFF'S MOTION FOR CLASS**
**CERTIFICATION AND APPOINTMENT OF § 10(b) CLASS**
**REPRESENTATIVES AND § 10(b) CLASS COUNSEL**

McDermott International, Inc. ("McDermott"), David Dickson, and Stuart Spence (collectively "Defendants") file these Objections to Magistrate Judge Edison's Memorandum and Recommendation ("M&R") (Dkt. 508), which recommends that § 10(b) Plaintiff's Motion for Class Certification and Appointment of § 10(b) Class Representatives and § 10(b) Class Counsel be denied without prejudice to refiling.

## STATEMENT OF NATURE AND STAGE OF PROCEEDINGS

This is a putative class action under §§ 10(b) and 20(a) of the Securities Exchange Act of 1934 and SEC Rule 10b-5 on behalf of all persons and entities who purchased or otherwise acquired McDermott common stock between December 18, 2017 and January 23, 2020, both dates inclusive. Judge Edison issued the M&R, which concluded that Lead Plaintiff Nova Scotia Health Employees' Pension Plan's ("Plaintiff") motion for class certification should be denied without prejudice but went on to hold that class certification nevertheless would be proper if the class were divided into two subclasses and the class period ended on November 5, 2019. M&R 41-42.

## STATEMENT OF THE ISSUE

Whether the M&R erred by recommending that a class could be properly certified if the class were divided into two subclasses.

## INTRODUCTION AND SUMMARY OF THE ARGUMENT

Plaintiff alleges that McDermott, its CEO David Dickson, and its CFO Stuart Spence knew that Chicago Bridge & Iron Company ("CB&I") was fatally hobbled by massive, undisclosed cost overruns on four "Focus Projects" but proceeded to merge McDermott with CB&I anyway (the "Merger"). Plaintiff claims that Defendants continued

1

to conceal the calamitous reality of the Focus Projects after the Merger. Plaintiff moved to certify a class to recover for shareholders' alleged injuries.

Judge Edison denied the motion without prejudice, but he went on to chart a course for Plaintiff to reach its desired result. Specifically, the M&R endorses the granting of a future motion to certify a class consisting of two subclasses—one of those who purchased McDermott stock on the open market, and the other of those who acquired their McDermott stock by exchanging their CB&I stock through the Merger (the "CB&I Exchangers").

Defendants do not object to the M&R's conclusion that a class of McDermott shareholders could be certified, but the M&R's holding that the CB&I Exchangers could be part of a class or subclass was error. The CB&I Exchangers cannot be included in any certified class because they lack any damages and cannot satisfy the injury-in-fact requirement of standing. This subset of the putative class *benefitted* from the Merger. Under Plaintiff's theory of the case, the CB&I Exchangers traded artificially inflated shares of CB&I for less inflated shares in the new McDermott entity. They *reduced* their artificial inflation through that exchange and thereby *benefitted* from the Merger and Defendants' alleged misstatements leading up to it.

Moreover, it is an undeniable fact that CB&I faced almost certain bankruptcy if the Merger were not approved, as disclosed in the joint proxy for the Merger. But because the Merger closed, the CB&I Exchangers received McDermott stock in exchange for their CB&I shares—shares that would have become worthless had a bankruptcy ensued instead of the Merger.

Because the CB&I Exchangers lack the injury-in-fact necessary for standing, they

cannot be included in any class or subclass. The Court should reject this erroneous aspect of the M&R.

## STANDARD OF REVIEW AND LEGAL STANDARD

A magistrate judge's memorandum and recommendation is subject to *de novo* review for "those portions of the report ... to which objection is made." 28 U.S.C. § 636(b)(1); *Guenther v. BP Ret. Accumulation Plan*, 2021 WL 1215851, at *1 (S.D. Tex. Mar. 31, 2021) (Hanks, J.) (applying this standard to review of recommendation on class certification). This Court "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1).

## ARGUMENT

The putative class members fall into two groups: (1) those who purchased McDermott stock on the open market, and (2) those who received shares of the new McDermott entity by converting their CB&I shares following the Merger. This latter group, the CB&I Exchangers, has a fatal standing problem because they cannot satisfy the damages element of their claims and thus lack the injury-in-fact necessary to establish standing. As such, they cannot be included in any class or subclass. Judge Edison erred in concluding otherwise.

To state a claim under § 10(b) and Rule 10b-5, Plaintiff must plead: (1) a material misrepresentation or omission; (2) a defendant acting with scienter concerning the fraud; (3) a connection between the misrepresentation or omission and the purchase or sale of a security; (4) reliance; (5) damages; and (6) loss causation. *Stoneridge Inv. Partners, LLC v. Scientific-Atlanta, Inc.*, 552 U.S. 148, 157 (2008). The damages element is mandatory.

3

Indeed, there is "no support in the case law for presuming economic injury for purposes of class certification in Rule 10b-5 claims absent indication that each plaintiff has suffered an economic loss." *Newton v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 259 F.3d 154, 180 (3d Cir. 2001). "The usual measure of damages for securities fraud claims under Rule 10b-5 is out-of-pocket loss; that is, the difference between the value of what the plaintiff gave up and the value of what the plaintiff received." *Ambassador Hotel Co., Ltd. v. Wei-Chuan Inv.*, 189 F.3d 1017, 1030 (9th Cir. 1999).

The out-of-pocket loss equation makes sense—at least at the class-certification stage—for the McDermott shareholders since they claim to have been harmed by the CB&I-focused alleged misrepresentations. But it leaves the CB&I Exchangers with no alleged damages. Rather than purchase McDermott stock with cash, they exchanged their CB&I stock for McDermott stock. That creates a damages problem because they actually *benefitted* from that exchange.

Here's how: Plaintiff's theory of the case is that CB&I stock—not McDermott stock—was artificially inflated before the Merger and conversion date. Dkt. 318-2, Allen Rpt. ¶¶ 28-30. Indeed, Plaintiff's own expert conceded that there was no basis for believing that McDermott's stock was inflated prior to the announcement of the Merger:

> Q: Did you have any knowledge, belief, thought process, expectation that McDermott's stock was inflated prior to the announcement of the merger?
>
> A: No.

Dkt. 412, Hr'g Tr. 107-08. Defendants' expert agreed: "[B]efore the merger is announced … plaintiffs are claiming that there were problems at CB&I. They have not alleged any

4

problems at McDermott before the merger is announced." *Id.* at 160. That makes sense because the alleged misrepresentations concerned undisclosed problems at CB&I. M&R 2 (citing Dkt. 105, Compl. at ECF pp. 5, 34, 198); Dkt. 412, Hr'g Tr. 161 (Defendants' expert: "the three threads of the alleged fraud" "all involve problems at CB&I"). Then, through the Merger and conversion, CB&I's artificial inflation was diluted across the new McDermott entity. Dkt. 318-2, Allen Rpt. ¶¶ 28-30.

For example, suppose that immediately after the Merger, there were $5 per share of inflation in McDermott stock and 180 million McDermott shares, for a total of $900 million of inflation ($5 per share x 180 million shares). Dkt. 318-2, Allen Rpt. ¶ 29. "According to Plaintiff's theory, since the cause of the inflation is all due to issues at CB&I, before the Merger [is announced], the $900 million of inflation would have all been concentrated in CB&I and shared among all CB&I shareholders," but "after the Merger, the $900 million of inflation gets diluted and shared across both CB&I and pre-Merger McDermott shareholders." *Id.* "In particular, since after the Merger, CB&I shareholders owned only 47% of the combined company and McDermott shareholders owned 53%, CB&I shareholders retained only 47% of the $900 million of inflation, or $423 million, and transferred 53% of the inflation, or $477 million, to pre-Merger McDermott shareholders." *Id.* The following chart illustrates this example and shows how CB&I shareholders accordingly benefitted:

5



*Id.*[1]

CB&I's shareholders thus gained from the conversion under Plaintiff's theory because they exchanged purportedly more inflated shares of CB&I for less inflated shares of the new McDermott entity. *Id.* To put it in the parlance of the traditional out-of-pocket damages measure, the CB&I Exchangers gave up shares in CB&I, which were allegedly significantly inflated because of the undisclosed losses in CB&I's Focus Projects, and received shares of McDermott, which were untainted by any undisclosed problems before the Merger. *Id.* In that manner, the CB&I Exchangers *reduced* their artificial inflation through the Merger and conversion.

Judge Edison recognized the fundamental conflict between CB&I and McDermott shareholders—which is why he recommended subclasses—but he missed the key

---

[1] For clarification, "pre-Merger" refers to the time before the Merger was announced. Dkt. 412, Hr'g Tr. 165-66.

uncontested points that (a) McDermott stock had no inflation before the Merger announcement, and (b) while CB&I stock's inflation was then, to some degree, incorporated into McDermott stock, McDermott stock's inflation could not have exceeded CB&I stock's inflation. Judge Edison instead found that "Plaintiff has alleged that McDermott stock was inflated as a result of Defendants' misrepresentations when Plaintiff *acquired* it." M&R 15 (emphasis added). The M&R goes on to explain that "[i]f CB&I's stock was inflated *less* than McDermott's stock, Plaintiff may indeed have been injured." *Id.* at 15-16. Perhaps, but that is a big "if." Judge Edison appears to be suggesting that McDermott stock could have become inflated after the Merger was announced (everyone agrees the McDermott stock had no inflation pre-announcement), but before closing. But even if some inflation leaked into McDermott stock during that period, it would not have become *more* inflated than the CB&I stock that was the inflation's source. *See* Dkt. 105, Compl. ¶ 5 ("While the deal may have been prudent for CB&I, to stave off bankruptcy, the same was not true for McDermott[.]").

In other words, since the inflation came from CB&I, the amount of inflation that could have become embedded in McDermott shares necessarily could not exceed the amount of inflation at the source—*i.e.*, in the CB&I shares. Plaintiff's own expert conceded this point at the hearing:

> Q. But mathematically, you can² have a situation where more than the inflation of Company A [*i.e.*, the originally inflated stock] is then

---

² Defendants believe the transcript should read, "But mathematically, you ***can't*** have a situation … ," but the potential transcription error is immaterial because Plaintiff's expert made clear in his answers that it would *not* be the case that more than the inflation of Company A is embedded in Company B.

7

>> embedded in Company B [*i.e.*, the originally uninflated stock], correct? That's just simple math and logic, right?
>
> A. There's possibilities; **but under, I think, your simple example, it wouldn't be the case**.
>
> Q. It would not?
>
> A. Yeah.

Dkt. 412, Hr'g Tr. 110 (emphasis added). There simply is no world—and certainly none that Plaintiff has shown—in which the CB&I Exchangers were harmed from their exchange of inflated CB&I stock for stock in the new McDermott entity.

To be clear, this result—the *exclusion* of exchangers that traded their allegedly artificially inflated stock in an acquired company for stock in a post-merger entity—is the norm. In fact, to the best of Defendants' knowledge, this would be the *first case anywhere* where shareholders of the target company were allowed to participate in a § 10(b) class when the alleged fraud stemmed solely from alleged misrepresentations regarding the health of the target company. *See In re Bank of Am. Corp. Sec., Deriv., & Emp. Ret. Income Sec. Act (ERISA) Litig.*, 281 F.R.D. 134, 137 (S.D.N.Y. 2012) (where alleged misstatements related to Bank of America's acquisition of Merrill Lynch, plaintiffs' proposed class "exclud[ed] shares of BoA common stock acquired by exchanging stock of Merrill for BoA stock through the merger"); *In re Heckmann Corp. Sec. Litig.*, Dkt. 185 at 2, No. 1:10-cv-00378-LPS-MPT (D. Del.) (where alleged misstatements related to Heckmann's acquisition of China Water, plaintiff's proposed class "exclude[ed] shares of Heckmann common stock acquired by exchanging stock of China Water for Heckmann stock through the merger"); *cf. In re McKesson HBOC, Inc. Sec. Litig.*, 97 F. Supp. 2d 993,

8

998 (N.D. Cal. 1999) (where acquired company was allegedly fraudulently overvalued, acquired-company shareholders would have obtained shares in merger "at a discount because of that fraud"). The M&R's recommendation marks a break from this caselaw.

Even putting aside the allegations of fraud and artificial inflation, Plaintiff's own Complaint admits that CB&I entered the Merger "to stave off bankruptcy." Dkt. 105, Compl. ¶ 5; *see also id.* ¶ 74 ("According to CW2, CB&I's former Financial Operations Controller who was responsible for the financial reporting of CB&I for all oil and gas projects in the Americas until departing the company in November 2017, CB&I was 'basically bankrupt' by the end of 2017."). The joint proxy for the Merger was equally clear: "CB&I would have no choice but to seek bankruptcy protection if it did not enter into either an agreement with respect to the Technology Sale or the transaction with McDermott." Dkt. 318-5, 3/23/18 MDR 2d Am. Proxy at 66. The Merger and conversion thereby provided CB&I shareholders a lifeline that, at the very least, was better than bankruptcy and the concomitant elimination of their equity interests. Dkt. 318-2, Allen Rpt. ¶ 27. Accordingly, the CB&I Exchangers came out ahead on—and certainly were no worse off because of—the conversion of their CB&I shares to McDermott shares. *Id.* ¶ 31.

That lack of damages defeats the CB&I Exchangers' securities fraud claims on the merits, but it is a standing deficiency as well, because it means that the CB&I Exchangers suffered no "injury in fact." *Earl v. Boeing Co.*, 53 F.4th 897, 901 (5th Cir. 2022). *Boeing* is instructive on this point. In that case, the Fifth Circuit held that plaintiffs had no standing to bring a class action fraud claim where they "offered no plausible theory of economic harm." *Id.* at 903. The Court analyzed plaintiffs' "overcharge-by-fraud theory," in which

9

plaintiffs claimed that they paid inflated prices for plane tickets because, "if the public had known about defendants' fraudulent scheme [to hide the safety risk of flying on MAX 8 planes], demand for tickets on routes flying the MAX 8 would have dropped, so the airlines would have been forced to lower fares and plaintiffs would have paid less for their tickets." *Id.* at 902. The Fifth Circuit weighed the theory against more plausible inferences to the contrary—including that if the defendants' fraud had been known, two prominent airlines "would have offered *zero* MAX 8 flights until the defect could be fixed," which would have, if anything, *increased* ticket fares. *Id.* at 903. Because "the plaintiffs in [the] suit ha[d] not plausibly alleged that they're any worse off financially" as a result of the defendants' conduct, there was no injury-in-fact, and plaintiffs had no standing to sue. *Id.*

This case presents a different variation of that same standing problem. Unlike in *Boeing*, here there is no class-wide standing barrier that would prevent *any* plaintiff from bringing claims. Rather, the standing defect at issue is unique to the CB&I Exchangers. Those putative class members, a subset of the whole putative class, find themselves in the same position as the *Boeing* plaintiffs and lack standing because they cannot "plausibly allege[] that they're any worse off financially." *Id.* This fatal lack of damages and standing precludes the CB&I Exchangers from being part of any certified class. *See Bertulli v. Indep. Ass'n of Cont'l Pilots*, 242 F.3d 290, 294 (5th Cir. 2001) ("Standing is an inherent prerequisite to the class certification inquiry.").

## CONCLUSION

For these reasons, the Court should reject the M&R's recommendation that the CB&I Exchangers may be included in a class or subclass.

Respectfully submitted,

BAKER BOTTS L.L.P.

By: */s/ David D. Sterling*
    David D. Sterling
      *Attorney-In-Charge*
    State Bar No. 19170000
    Federal I.D. No. 07079
    Amy Pharr Hefley
    State Bar No. 24046046
    J. Mark Little
    State Bar No. 24078869
    Federal I.D. No. 1487508
    Anthony J. Lucisano
    State Bar No. 24102118
    Federal I.D. No. 3369146
    Elizabeth Furlow Malpass
    State Bar. No. 24109899
    Federal I.D. No. 3402815
    910 Louisiana Street
    Houston, Texas 77002
    Telephone: (713) 229-1234
    Fax: (713) 229-1522
    david.sterling@bakerbotts.com
    amy.hefley@bakerbotts.com
    mark.little@bakerbotts.com
    anthony.lucisano@bakerbotts.com
    elizabeth.malpass@bakerbotts.com

***Attorneys for Defendants***

SIDLEY AUSTIN LLP
Angela C. Zambrano
State Bar No. 24003157
Mason Parham
State Bar No. 24088182
Fabricio Archanjo
State Bar No. 24110983
2021 McKinney Ave., Suite 2000
Dallas, TX 75201
Telephone: (214) 981-3300
Fax: (214) 981-3400
angela.zambrano@sidley.com
mparham@sidley.com
farchanjo@sidley.com

*Attorneys for Defendant Stuart Spence*

### CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing document was served via electronic filing on all counsel of record on this 14th day of March, 2024.

*/s/ Amy Pharr Hefley*
Amy Pharr Hefley