United States District Court
Southern District of Texas

**ENTERED**

May 18, 2026

Nathan Ochsner, Clerk

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | |
|---|---|
| MIRIAM EDWARDS, *et al.,* § | |
| § | |
| Plaintiffs. § | |
| § | |
| V. § | CIVIL ACTION NO. 4:18-cv-04330 |
| § | |
| MCDERMOTT INTERNATIONAL, § | |
| INC., *et al.,* § | |
| § | |
| Defendants. § | |

## OPINION AND ORDER APPOINTING LEAD PLAINTIFF AND APPROVING LEAD COUNSEL[1]

Pending before me are competing motions for appointment of lead plaintiff and approval of lead counsel for the § 10(b) MDR Subclass. *See* Dkts. 656, 658, 661, 687. The subclass is defined as "all persons and entities . . . who purchased or otherwise acquired common stock of McDermott International, Inc. (NYSE: MDR) between December 18, 2017, and January 23, 2020, both dates inclusive ('10(b) Class Period'), seeking to pursue remedies against McDermott and certain of its officers and/or directors named as Defendants for violations of the federal securities laws under Exchange Act §§ 10(b) and 20(a) and SEC Rule 10b-5." *Edwards v. McDermott Int'l, Inc,* No. 4:18-cv-04330, 2024 WL 3085177, at *2 (S.D. Tex. June 21, 2024), *aff'd sub nom. Nova Scotia Health Emps.' Pension Plan v. McDermott Int'l, Inc.*, No. 24-20326, 2025 WL 2814735 (5th Cir. Oct. 3, 2025). The City of Pontiac Reestablished General Employees' Retirement System ("Pontiac"); the Coligado Shareholder Group, collectively, and alternatively,

---

[1] "Motions for appointment of plaintiff and approval of lead counsel are nondispositive matters properly addressed by a magistrate judge in an Order and Opinion, rather than a Memorandum and Recommendation." *Plymouth Cnty. Ret. Sys. v. Apache Corp.*, 556 F. Supp. 3d 712, 720 n.5 (S.D. Tex. 2021) (collecting cases).

Christopher Coligado, individually; and Majid Alghaslan are vying to be appointed lead plaintiff in this securities class action litigation.

After reviewing the briefing, the applicable law, and considering the arguments of counsel, I appoint Christopher Coligado as lead plaintiff and approve his selection of Wolf Haldenstein Adler Freeman & Herz LLP as lead counsel and Reynolds Frizzell LLP as liaison counsel of the § 10(b) MDR Subclass.

## BACKGROUND

This securities class action was filed on November 15, 2018, against McDermott and certain of its executives for alleged violations of §§ 10(b) and 20(a) of the Exchange Act. After the filing of competing lead plaintiff motions, all applicants other than the Nova Scotia Health Employees' Pension Plan ("NSHEPP") withdrew their motions or filed notices of non-opposition to the appointment of NSHEPP as lead plaintiff for the putative § 10(b) class. *See* Dkts. 25, 45, 47, 65, 81. On June 4, 2019, Judge Alfred H. Bennett appointed NSHEPP as lead plaintiff for all claims related to §§ 10(b) and 20(a) of the Exchange Act. *See* Dkt. 84. On September 6, 2019, this case was reassigned to the docket of Judge George C. Hanks, Jr. *See* Dkt. 94.

On October 4, 2019, NSHEPP filed an amended class action complaint on behalf all persons and entities that purchased or otherwise acquired the common stock of McDermott between December 18, 2017 and September 17, 2019, both dates inclusive. *See* Dkt. 105. The Amended Complaint alleged, among other things, that Defendants made false or misleading statements of material fact in connection with McDermott's 2018 merger with Chicago Bridge & Iron Company, N.V. ("CB&I").

On July 17, 2020, the Coligado Group filed a separate putative class action asserting §§ 10(b) and 20(a) claims against McDermott officers. *See Ahnefeldt v. Dickson*, No. 4:20-cv-02539 (S.D. Tex.). The Coligado Group alleged different purported misstatements from a later, non-overlapping class period, running from September 20, 2019 to January 23, 2020. The Coligado Group, Alghaslan, and

NSHEPP, among others, moved for lead plaintiff appointment in *Ahnefeldt*. *See Ahnefeldt* Dkts. 21, 23, 25. On March 31, 2021, Judge Hanks granted NSHEPP's motion to consolidate *Ahnefeldt* with *Edwards*. *See* Dkt. 164. On September 29, 2021, Judge Hanks appointed NSHEPP lead plaintiff "[t]o the extent that the consolidation with the *Edwards* lawsuit has not mooted" the *Ahnefeldt* lead plaintiff motions. *Ahnefeldt* Dkt. 49.

On September 29, 2021, NSHEPP filed a motion to (1) expand the putative class period to encompass the class period in the now-consolidated *Ahnefeldt* case, (2) add Pontiac as an additional, non-lead, named plaintiff and proposed class representative, and (3) add Pontiac's counsel Robbins Geller as additional, non-lead plaintiffs' counsel. *See* Dkts. 189–90. The same day, NSHEPP also filed a motion for class certification. *See* Dkts. 191–92.

On October 19, 2021, this case was referred to me for all pretrial purposes. *See* Dkt. 204. On November 2, 2021, I permitted NSHEPP to supplement its complaint to expand the putative class period to encompass the *Ahnefeldt* class period, but I denied NSHEPP's request to add Pontiac and Robbins Geller to the suit. *See* Dkt. 216.

On October 28, 2022, at the court's request, NSHEPP refiled its motion for class certification. *See* Dkts. 305–06. On February 29, 2024, I recommended that class certification be denied without prejudice to the refiling of a motion to certify two separate subclasses. *See* Dkt. 508 at 41. I made this recommendation after it came to light that NSHEPP was a CB&I shareholder that only acquired McDermott stock as result of the merger and thus has a fundamental conflict with purchasers of McDermott stock. *See id.* at 23–26. Judge Hanks adopted my February 29, 2024 memorandum and recommendation on March 23, 2024. *See* Dkt. 526.

On April 24, 2024, at my request, Judge Hanks withdrew his March 23, 2024 order adopting and remanded the motion for class certification for reconsideration. *See* Dkt. 544. That same day, I issued an amended memorandum and recommendation, recommending that the motion for class certification be

granted in part because NSHEPP has standing to pursue its claims on behalf of a representative class of CB&I shareholders that acquired McDermott stock in the Merger. *See* Dkt. 546 at 11–14, 26. I also recommended that the parties who timely moved for lead plaintiff in this action be permitted to move for lead plaintiff of the § 10(b) MDR Subclass.

On May 21, 2024, the Coligado Group requested that it also be permitted to move for lead plaintiff of the § 10(b) MDR Subclass. *See* Dkt. 555. On June 21, 2024, Judge Hanks adopted my April 24, 2024 memorandum and recommendation, and expanded the group permitted to move for lead plaintiff of the § 10(b) MDR Subclass to include the parties that moved for appointment as lead plaintiff in *Ahnefeldt*. *See* Dkt. 579. NHSEPP and Defendants cross-appealed the court's decision on class certification. On October 3, 2025, the Fifth Circuit affirmed the court's decision. Judgment issued as mandate on December 10, 2025. *See* Dkt. 641.

The candidates for lead plaintiff of the § 10(b) MDR Subclass submitted their briefing in January 2026. Given the unique procedural posture of this case, I permitted Defendants and NSHEPP to offer their thoughts as well. I held a hearing on the lead plaintiff submissions on April 27, 2026. Following that hearing, I gave the Coligado Group an opportunity to inform the court if it would like to move, in the alternative, for Christopher Coligado to be appointed individually as lead plaintiff. On May 12, 2026, the Coligado Group notified the court of its intention to move, in the alternative, for Christopher Coligado to be considered individually as lead plaintiff. *See* Dkt. 687.

## DISCUSSION

### A.   APPOINTMENT OF LEAD PLAINTIFF

#### 1.   *The Lead Plaintiff Process*

Enacted roughly 30 years ago, the Private Securities Litigation Reform Act ("PSLRA") provides the procedure for selecting a lead plaintiff in a securities class action lawsuit. *See* 15 U.S.C. § 78u-4(a)(3)(B). "[O]ne goal of the PSLRA is to have

the plaintiff class represented by a member with a substantial financial interest in the recovery as incentive to monitor the litigation to prevent its being 'lawyer-driven.'" *In re Waste Mgmt., Inc. Sec. Litig.*, 128 F. Supp. 2d 401, 411–12 (S.D. Tex. 2000); *see also Berger v. Compaq Comput. Corp.*, 279 F.3d 313, 313 (5th Cir. 2002) ("[T]he lead plaintiff should be an investor capable of understanding and controlling the litigation.").

Under the PSLRA, the lead plaintiff is to be the "most capable of adequately representing the interests of class members." 15 U.S.C. § 78u-4(a)(3)(B)(i). There is a rebuttable presumption that that the most adequate plaintiff is the person or group of persons that: (1) filed a complaint or timely moved to be appointed lead plaintiff; (2) "has the largest financial interest in the relief sought by the class"; and (3) "otherwise, satisfies the requirements of Rule 23 of the Federal Rules of Civil Procedure." *Id.* § 78u–4(a)(3)(B)(iii)(I); *see also Berger v. Compaq Comput. Corp.*, 257 F.3d 475, 478 n.1 (5th Cir. 2001) (describing the PSLRA's process for selecting the most adequate plaintiff). This presumption may be overcome only by proof that the presumptive lead plaintiff will not fairly and adequately protect the class's interests or will be subject to unique defenses that will render it incapable of adequately representing the class. *See* 15 U.S.C. § 78u–4(a)(3)(B)(iii)(II).

Although "the PSLRA does not specify how a court should decide which plaintiff has the 'largest financial interest' in the relief sought," district courts in the Fifth Circuit often consider four factors to determine which plaintiff has the largest financial interest. *Welch v. Meaux*, No. CV 19-1260, 2020 WL 4758269, at *3 (W.D. La. Aug. 17, 2020). Those factors are: "(1) the number of shares purchased; (2) the number of net shares purchased; (3) the total net funds expended by the plaintiffs during the class period; and (4) the approximate losses suffered by the plaintiffs." *In re Enron Corp. Sec. Litig.*, 206 F.R.D. 427, 440 (S.D. Tex. 2002). "Courts consistently consider the fourth factor—the approximate losses suffered—as most determinative in identifying the plaintiff with the largest

financial loss." *Strong v. AthroCare Corp.*, No. A-08-CA-574, 2008 WL 11334942, at *5 (W.D. Tex. Dec. 10, 2008).

There are two methods for calculating losses: first in, first out ("FIFO") and last in, first out ("LIFO"). FIFO is a method of accounting "where stocks which were acquired first are assumed to be sold first for the purpose of loss calculations." *Kaplan v. Gelfond*, 240 F.R.D. 88, 94 n.7 (S.D.N.Y. 2007). Under LIFO, "stocks which were acquired most recently are assumed to be sold first." *Id.* "The LIFO method is often used by district courts trying to determine losses when deciding who to appoint as lead plaintiff." *Plymouth Cnty. Ret. Sys.*, 566 F. Supp. 3d at 717.

### 2.    *The Coligado Group Has the Largest Financial Interest*

In their opening briefs in moving for appointment as lead plaintiff of the § 10(b) MDR Subclass, the Coligado Group claimed to have suffered $1,860,605.94 in losses (Dkt. 659-3 at 2); Alghaslan claimed to have suffered $1,764,737.76 in losses (Dkt. 661 at 3); and Pontiac claimed to have suffered $419,089 in losses (Dkt. 656 at 3). As an individual, Christopher Coligado lost approximately $586,833.30, which is more than Pontiac. *See* Dkt. 669 at 7. Thus, it seems straightforward that the Coligado Group has the largest financial interest. Alas, Alghaslan changed his loss calculations in his opposition briefing, insisting for the first time in nearly six years that it is *he* who has the largest financial interest. And to make this claim, Alghaslan was all too eager to minimize the losses of the rest of the class that he seeks to lead.

When the Coligado Group moved, nearly six years ago, to be appointed lead plaintiff in *Ahnfeldt*, it claimed $10,724.54 *more* in losses. *See Ahnfeldt* Dkt. 22 at 11 (claiming $1,871,300.48 in losses).[2] Alghaslan, however, claimed the exact same losses on January 16, 2026, as he did on September 16, 2020. *Compare* Dkt. 661 at 3, *with Ahnfeldt* Dkt. 23 at 7. Yet, on February 6, 2026, in opposition to the other

---

[2] In its reply brief, the Coligado Group claimed that "[d]ue to minor administrative errors," the losses it claimed in its opening brief were "understated by $13,534.00." Dkt. 672 at 9 n.6. "Even without the correction, the Coligado Shareholder Group has the largest loss of any movant." *Id.*

lead plaintiff motions, Alghaslan claimed for the first time to have suffered *greater* losses than the Coligado Group.

Perhaps more troubling is that Alghaslan's new loss calculations *halve* his fellow movants' losses. *See* Dkt. 669 at 7. For his new loss calculations, Alghaslan cites *Dura Pharmaceuticals, Inc. v. Broudo*, 544 U.S. 336 (2005), in which the United States Supreme Court held "that private securities fraud actions are not intended 'to provide investors with broad insurance against market losses, but to protect them against those economic losses that misrepresentations actually cause." Dkt. 669 at 9 n.7 (quoting *Dura*, 544 U.S. at 345). In other words, Aghaslan jumps ahead to loss causation in his lead plaintiff briefing and does so at the expense of his fellow class members. Alghaslan's "newfound insistence on a loss-calculation method [he] did not use or discuss in [his] original filings [that span a nearly six-year period] discredits [his] position."[3] *Robison v. Digital Turbine, Inc.*, No. 1:22-cv-00550, 2022 WL 17881476, at *6 (W.D. Tex. Dec. 19, 2022). In fact, I consider Alghaslan's willingness to greatly minimize the losses of class members who purchased earlier than him in the class period to be a disqualifying conflict of interest that renders him an inadequate lead plaintiff. *See, e.g., Pelletier v. Endo Int'l PLC*, No. 17-cv-5114, 2021 WL 398495, at *12 (E.D. Pa. Feb. 4, 2021) ("Park, a post-disclosure stockholder, may not be an adequate representative for all of the pre-disclosure stockholders, many of whom would have been injured by misrepresentations made over a year before Park acquired any Endo shares."). Accordingly, I will not consider Alghaslan as a potential lead plaintiff.

---

[3] Alghaslan claims that his new loss calculations "differ from those in the lead plaintiff briefing in *Ahnefeldt* because this case alleges a longer class period and additional corrective disclosures." Dkt. 669 at 7 n.4. True, but that does not explain why his new loss calculations differ from those in his opening brief filed only 21 days prior in *this* litigation. Alghaslan's new loss calculations appear "to be a transparent attempt to manipulate the size of [his] losses based on information available to [him] at the time of [his] original lead plaintiff motion" for the § 10(b) MDR Subclass. *Sallustro v. CannaVest Corp.*, 93 F. Supp. 3d 265, 276 (S.D.N.Y. 2015).

The Coligado Group has the largest financial interest and is presumptively entitled to lead-plaintiff status, assuming it meets the requirements of Rule 23.

### 3.    *The Coligado Group Is Too Large to Be Lead Plaintiff*

Under Rule 23(a), the party seeking certification must demonstrate that:

> (1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class.

Fed. R. Civ. P. 23(a). "In a PSLRA motion to appoint lead plaintiff, the court considers only whether the proposed plaintiff has made a 'preliminary showing' that two of Rule 23's requirements—typicality and adequacy—are satisfied." *Kakkar v. Bellicum Pharms., Inc.*, No. 4:18-cv-00338, 2019 WL 1367653, at *2 (S.D. Tex. Mar. 29, 2019) (cleaned up).

> Although the inquiry at this stage of the litigation in selecting the Lead Plaintiff is not as searching as the one triggered by a subsequent motion for class certification, the proposed Lead Plaintiff must make at least a preliminary showing that it has claims that are typical of those of the putative class and has the capacity to provide adequate representation for those class members.

*Enron*, 206 F.R.D. at 441. The "test for typicality is not demanding. It focuses on the similarity between the named plaintiffs' legal and remedial theories and the theories of those whom they purport to represent." *Mullen v. Treasure Chest Casino, LLC*, 186 F.3d 620, 625 (5th Cir. 1999) (quotation omitted). "The adequacy inquiry serves to uncover conflicts of interest between named parties and the class they seek to represent." *In re Deepwater Horizon*, 785 F.3d 1003, 1015 (5th Cir. 2015) (cleaned up).

The primary challenge that Alghaslan and Pontiac lodge against the Coligado Group is that it is too large to be an adequate lead plaintiff. I agree, which is why I began the hearing on these motions by stating that I was "unwilling to appoint such a large group." Dkt. 683 at 4. Indeed, the Fifth Circuit has found it "notable that the Securities and Exchange Commission has taken the position that

a group of investors appointed to serve as lead plaintiffs ordinarily should comprise *no more than three to five persons.*" *Berger*, 257 F.3d at 478 n.2 (emphasis added).

To be clear, I do not believe that the Coligado Group was assembled by litigation counsel to aggregate enough losses to be lead plaintiff. To the contrary, the Coligado Group formed on its own before selecting securities litigation counsel through a group decision-making structure. *See* Dkt. 659-4 at 3–5. Thus, most of the concerns that caution against appointing a group are not applicable to the Coligado Group. Even so, 17 lead plaintiffs is too many. Moreover, while the Coligado Group may not have been cobbled together by counsel, they still do not have "a pre-litigation relationship based on more than their losing investment." *In re Landry's Seafood Rest., Inc.*, No. CIV.A. H-99-1948, 2000 WL 33999467, at *5 (S.D. Tex. Mar. 30, 2000). I will not set a record in the modern securities era for the most lead plaintiffs to be appointed to a subclass. *See* Dkt. 667 at 12 n.6 ("While two decisions since 2012 appointed groups exceeding the SEC's presumptive limit, neither even began to approach the Coligado Shareholder Group's headcount."). I will, however, consider Christopher Coligado as a potential lead plaintiff.[4] *See Evangelista v. Late Stage Asset Mgmt., LLC*, 784 F. Supp. 3d 542, 552 (E.D.N.Y.

---

[4] In its opposition briefing, Pontiac offers case law holding that a judge does not abuse his discretion in refusing "to pick apart the proposed group to find the most adequate individual or individuals from within." Dkt. 667 at 14 (quoting *Ross v. Abercrombie & Fitch Co.*, 2007 WL 895073, at *4 (S.D. Ohio Mar. 22, 2007)). The important word here is "discretion." The PSLRA commits the decision of who to appoint lead plaintiff to the court's discretion. *See* 15 U.S.C. § 78u-4(a)(3)(B)(i) (the court "shall appoint as lead plaintiff the member or members of the purported plaintiff class that *the court* determines to be most capable of adequately representing the interests of class members" (emphasis added)). Inasmuch as a judge does not abuse his discretion in refusing to consider a proposed group as anything other than a whole, he also does not abuse his discretion in considering an individual member of a proposed group. *See Evangelista*, 784 F. Supp. 3d at 552 (collecting cases); *accord Yousefi v. Lockheed Martin Corp.*, 70 F. Supp. 2d 1061, 1069 (C.D. Cal. 1999) ("If the Court denies a motion to name lead plaintiffs, does the [PSLRA] compel it to designate a lead plaintiff, or should it wait for another class member to file a motion for the designation of lead plaintiff? The Court finds that the [PSLRA] advocates the former approach.").

2025) (following "the longstanding practice . . . of considering the largest shareholder of a rejected group as if he had moved to be appointed as lead plaintiff alone" (quotation omitted)).

### 4. *Christopher Coligado Is a Typical and Adequate Lead Plaintiff*

As noted before, Christopher Coligado, on his own, claims greater losses than Pontiac. Thus, having determined that Alghaslan is an inadequate lead plaintiff with a disqualifying conflict of interest, and the Coligado Group is too large to be a lead plaintiff, I will consider whether Christopher Coligado—as the movant with the next largest financial interest—is a typical and adequate lead plaintiff.[5]

"Typicality is achieved where the named plaintiffs' claims arise from the same event or course of conduct that gives rise to claims of other class members and the claims are based on the same legal theory." *Enron*, 206 F.R.D. at 441 (quotation omitted). The claims of the class representative need not be identical to the claims of the class to satisfy typicality. The typicality requirement is satisfied so long as "claims arise from a similar course of conduct and share the same legal theory," even when there are "factual differences." *Stirman v. Exxon Corp.*, 280 F.3d 554, 562 (5th Cir. 2002) (quotation omitted).

Here, if successful in proving its injury and losses resulting from Defendants' allegedly false and misleading statements and omissions, Christopher Coligado

---

[5] The Coligado Group's motion for Christopher Coligado to be considered individually, in the alternative, came after the lead plaintiff briefing was complete. Even so, no party is prejudiced by my considering Christopher Coligado individually now. Pontiac and Alghaslan had an opportunity to attack each member of the Coligado Group individually. Pontiac launched specific attacks against Daniel Gad and Jayaprakash and Aarthi Srinivasan. *See* Dkt. 667 at 14, 20. For his part, Alghaslan argued that Gad, Amit Somani, and Jignesh and Krutika Chandarana were all "susceptible to unique defenses." Dkt. 669 at 16. Thus, Pontiac and Alghaslan had ample opportunity to attack Christopher Coligado's typicality and adequacy as an individual. That they did not advance any arguments against Christopher Coligado individually—despite attacking other members of the Coligado Group individually—further supports that Christopher Coligado is the best choice to be lead plaintiff of the § 10(b) MDR Subclass.

will necessarily prove the conduct underlying the claims of all members of the § 10(b) MDR Subclass and establish the elements of those claims. Like all members of the § 10(b) MDR Subclass, Christopher Coligado suffered damages from his purchases of McDermott securities at artificially inflated prices based on Defendants' false and/or misleading statements in violation of the federal securities laws and, as such, his "legal and remedial theories have the same essential characteristics as the class claims." *Cambria Cnty. Emps. Ret. Sys. v. Venator Materials PLC*, No. H-19-3464, 2019 WL 5328877, at *3 (S.D. Tex. Oct. 21, 2019). Accordingly, Christopher Coligado's claims are typical of those of other § 10(b) MDR Subclass members.

Christopher Coligado similarly satisfies the adequacy requirement, which "serves to uncover conflicts of interest between the named plaintiffs and the class they seek to represent." *Enron*, 206 F.R.D. at 441 (quotation omitted). Representation is adequate when counsel for the class is qualified and competent, and the interests of the representative are not antagonistic to the interests of absent class members. *See Parker v. Hyperdynamics Corp.*, No. 4:12-cv-999, 2013 WL 623164, at *3 (S.D. Tex. Feb. 19, 2013) (adequacy is shown by "[1] the zeal and competence of the representatives' counsel and [2] the willingness and ability of the representatives to take an active role in and control the litigation and to protect the interests of absentees.") (quotation omitted)).

No member of the putative § 10(b) MDR Subclass has established that Christopher Coligado has any conflicts of interest or is subject to any unique defenses, nor is the court aware of any. *See Mullen v. Treasure Chest Casino, LLC*, 186 F.3d 620, 625–26 (5th Cir. 1999) ("Differences between named plaintiffs and class members render the named plaintiffs inadequate representatives only if those differences create conflicts between the named plaintiffs' interests and the class members' interests."). Christopher Coligado's interests are clearly aligned with the interests of the § 10(b) MDR Subclass, and there is no evidence of any antagonism. Christopher Coligado is a well-educated professional who made significant

investments in McDermott and was damaged in connection with Defendants' alleged violations of the federal securities laws. As an investor with a substantial financial interest in prosecuting this action, Christopher Coligado—through his leadership of the Coligado Shareholder Group—has made significant efforts to ensure adequate representation for the § 10(b) MDR Subclass. Thus, Christopher Coligado is both a typical and adequate lead plaintiff.

**B.    APPOINTMENT OF LEAD COUNSEL**

The PSLRA provides that "[t]he most adequate plaintiff shall, subject to the approval of the court, select and retain counsel to represent the class." 15 U.S.C. §78u-4(a)(3)(B)(v). "While the appointment of counsel is made subject to the approval of the court, the [PSLRA] clearly leaves the choice of class counsel in the hands of the lead plaintiff." *In re Cavanaugh*, 306 F.3d 726, 734 (9th Cir. 2002). A district court should defer to the lead plaintiff's choice of counsel unless it is necessary to "protect the interests of the [plaintiff] class." *In re Waste Mgmt., Inc. Sec. Litig.*, 128 F. Supp. 2d at 411.

Here, Christopher Coligado has selected Wolf Haldenstein Adler Freeman & Herz LLP as lead counsel and Reynolds Frizzell LLP as liaison counsel of the § 10(b) MDR Subclass. These law firms have substantial experience in securities class action lawsuits and possess the resources necessary to pursue this action. It is not my role to conduct a nationwide search to determine the best lawyer or law firm to represent the class. I am satisfied that Christopher Coligado has made a reasonable choice of counsel, and I will not disturb his selection.

**CONCLUSION**

For the reasons stated above, Christopher Coligado is appointed lead plaintiff of the § 10(b) MDR Subclass, and Christopher Coligado's selection of Wolf Haldenstein Adler Freeman & Herz LLP as lead counsel and Reynolds Frizzell LLP as liaison counsel of the § 10(b) MDR Subclass is approved. The parties are ordered to confer and provide my case manager, Ruben Castro, a proposed schedule

addressing deadlines for an amended complaint and motion to dismiss briefing, if any, and the motion to certify the § 10(b) MDR Subclass by Friday, May 22, 2026.

SIGNED this _18TH_ day of May 2026.

ANDREW M. EDISON
UNITED STATES MAGISTRATE JUDGE

13