**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

|  |  |
|---|---|
| MIRIAM EDWARDS, Individually and on Behalf of All Other Similarly Situated <br><br> Plaintiffs, <br><br> v. <br><br> MCDERMOTT INTERNATIONAL, INC., DAVID DICKSON, and STUART SPENCE, <br><br> Defendants. | Civil Action No. 4:18-cv-04330 <br><br> **CLASS ACTION** <br><br> Judge George C. Hanks, Jr. <br> Magistrate Judge Andrew M. Edison |

**MAJID ALGHASLAN'S MOTION FOR RECONSIDERATION OF**
**THE COURT'S OPINION AND ORDER APPOINTING LEAD PLAINTIFF**
**AND APPROVING LEAD COUNSEL (DKT. NO. 689)**

## I.    INTRODUCTION

Movant Majid Alghaslan ("Mr. Alghaslan") respectfully requests that the Court reconsider a narrow but material aspect of its May 18, 2026 Opinion and Order (Dkt. No. 689): the finding that Mr. Alghaslan has a "disqualifying conflict of interest" based on his presentation of a Dura-based loss-calculation methodology in his opposition brief. *See id*. at 7.

Mr. Alghaslan brings this motion to respectfully bring to the Court's attention Mr. Alghaslan's October 7, 2020 opposition to competing lead plaintiff motions (*Ahnefeldt* Dkt. No. 33 in which Mr. Alghaslan presented the very same Dura-based loss methodology in his original filings that the Court characterized as "newfound." Dkt. No. 689 at 7.[1]

This prior calculation also bears on the Court's footnote 3. In that footnote, the Court appears to have read a footnote in Mr. Alghaslan's opposition brief as explanation for why his calculation changed between his January 2026 opening brief and his February 2026 opposition. In actuality, Mr. Alghaslan's footnote was attempting to explain his *Dura* figures in the 2026 lead plaintiff round differed from his *Dura* figures in the 2020 lead plaintiff round.

Mr. Alghaslan asks that the Court reconsider the disqualifying-conflict finding, which no party raised in briefing or at oral argument, in light of this additional record evidence. To the extent the Court maintains concerns about the propriety of a *Dura* analysis at the lead plaintiff stage, Mr. Alghaslan respectfully requests that the Court address whether a consistent, years-long approach to presenting loss calculation—identically across two rounds of briefing spanning six years—can constitute the kind of "disqualifying conflict of interest" that permanently renders a movant inadequate under the PSLRA.

---

[1] In a record of this scope over eight years and hundreds of docket entries, it is entirely understandable that a single opposition brief filed in the since-consolidated *Ahnefeldt* action over five years ago might not have been top of mind

II.   **ARGUMENT**

**A.   Far from "Newfound," Mr. Alghaslan Had First Raised the *Dura* Method in 2020.**

The Court's conflict-of-interest finding against Mr. Alghaslan hinges on the premise that his *Dura*-based loss calculation was a new tactic deployed for the first time in his February 6, 2026 opposition brief. The Court stated that Mr. Alghaslan "claimed the exact same losses on January 16, 2026, as he did on September 16, 2020," yet "on February 6, 2026, in opposition to the other lead plaintiff motions, Alghaslan claimed for the first time to have suffered greater losses than the Coligado Group." Dkt. No. 689 at 6–7. The Court further characterized this as a "newfound insistence on a loss-calculation method [he] did not use or discuss in [his] original filings." *Id.* at 7 (quoting *Robison v. Digital Turbine, Inc.*, No. 1:22-cv-00550-DAE, 2022 WL 17881476, at *6 (W.D. Tex. Dec. 19, 2022)).

The record in this consolidated action shows otherwise. On October 7, 2020, Mr. Alghaslan filed his opposition to competing lead plaintiff motions in *Ahnefeldt v. Dickson*, No. 4:20-cv-02539 (S.D. Tex.), the case subsequently consolidated into this action by Judge Hanks's March 31, 2021 order. *See* Dkt. No. 164. In that opposition, Mr. Alghaslan:

- Expressly cited *Dura* for the proposition that "private securities fraud actions are not intended 'to provide investors with broad insurance against market losses, but to protect them against economic losses that misrepresentations actually cause.'" *Ahnefeldt* Dkt. No. 33 at 4 n.5 (quoting *Dura Pharms., Inc. v. Broudo*, 544 U.S. 336, 345 (2005)).

- Cited *Marcus v. J.C. Penney Co., Inc.*, No. 6:13-CV-736, 2014 WL 11394911 at *3 (E.D. Tex. Feb. 28, 2014), for the proposition that "[c]ourts have also considered the Dura Method when calculating the largest financial interest." *Ahnefeldt* Dkt. No. 33 at 2.

2

- Presented a comprehensive loss chart that included a column labeled "Dura Losses (LIFO)" calculating *Dura* losses for every movant—himself, the Coligado Group, and each of its individual members. *Id.* at 3–4.

These are the same citations, the same methodology, and the same column-by-column presentation that Mr. Alghaslan offered in his February 2026 opposition in this case. *Compare Ahnefeldt* Dkt. No. 33 at 2–4, *with* Dkt. No. 669 at 7. The only difference is that the specific *Dura* loss figures changed—because the class period in this case (December 18, 2017 through January 23, 2020) is longer than the class period in *Ahnefeldt* (September 20, 2019 through January 23, 2020) and includes additional corrective disclosures. That is not a change in methodology; it is the same methodology applied with different inputs.

The *Ahnefeldt* filings are part of the record in this consolidated action. The Court's own Opinion cites the *Ahnefeldt* docket six times, including "*Ahnfeldt* Dkt. 22 at 11" and "*Ahnfeldt* Dkt. 23 at 7" to compare the movants' 2020 loss claims to their 2026 loss claims. Dkt. No. 689 at 6. If the *Ahnefeldt* record is properly considered for what each movant *claimed* in 2020, it should also be considered for what each movant *presented* in 2020—including Mr. Alghaslan's presentation of the *Dura* methodology.

Moreover, Mr. Alghaslan's approach has been consistent across both rounds of briefing. In both 2020 and 2026, he led with the standard LIFO approximate-loss figure in his opening brief and then presented the *Dura* analysis in his opposition brief to ensure that the Court had available all the figures Texas courts have considered at the lead plaintiff stage. *Compare Ahnefeldt* Dkt. No. 23 at 7 (opening brief: approximate losses only), *with Ahnefeldt* Dkt. No. 33 at 3–4 (opposition: *Dura* column added); *compare* Dkt. No. 661 at 3 (opening brief: approximate losses only), *with* Dkt. No. 669 at 7 (opposition: *Dura* column added). This is not manipulation—it is a consistent

3

two-step advocacy approach deployed identically across six years of litigation.

### B.  The Court's Footnote 3 Misreads Mr. Alghaslan's Footnote 4.

The Court's Opinion states in footnote 3:

> Alghaslan claims that his new loss calculations "differ from those in the lead plaintiff briefing in Ahnefeldt because this case alleges a longer class period and additional corrective disclosures." Dkt. 669 at 7 n.4. True, but that does not explain why his new loss calculations differ from those in his opening brief filed only 21 days prior in this litigation.

Dkt. No. 689 at 7 n.3.

Mr. Alghaslan respectfully submits that the Court's response addresses a question that Mr. Alghaslan's footnote was not asking or answering. The footnote drew an express textual contrast between two points of comparison: "the lead plaintiff briefing in Ahnefeldt" and "this case." Dkt. No. 669 at 7 n.4 (emphasis added). That language identifies the 2020 round and the 2026 round as the two objects being compared. The footnote was explaining why the *Dura* figures Mr. Alghaslan presented in 2026 differed from the *Dura* figures he presented in 2020—and the answer is straightforward: the class period in this case is over two years longer and includes additional corrective disclosures, which necessarily changes the Dura calculation.

The Court read the footnote as an attempt to explain why Mr. Alghaslan's numbers changed between his January 16, 2026 opening brief and his February 6, 2026 opposition—"his opening brief filed only 21 days prior." Dkt. No. 689 at 7 n.3. But the footnote was not making that comparison. The explanation for the 21-day gap is the same explanation visible on the face of the *Ahnefeldt* record: Mr. Alghaslan has consistently presented standard LIFO approximate losses in opening briefs and reserved the *Dura* analysis for opposition briefing—the procedural posture where competing movants' loss claims are known and a comparative analysis is appropriate. He followed that pattern in 2020, and again in 2026. The 21-day gap reflects a consistent briefing structure, not a change of position.

Based on this reading of the footnote, the Court concluded that Mr. Alghaslan's recalculation was "a transparent attempt to manipulate the size of [his] losses based on information available to [him] at the time of [his] original lead plaintiff motion," citing *Sallustro v. CannaVest Corp.*, 93 F. Supp. 3d 265, 276 (S.D.N.Y. 2015). Dkt. No. 689 at 7 n.3. But *Sallustro* involved a movant who changed loss figures in a manner designed to inflate its own standing. Here, Mr. Alghaslan's *Dura* analysis actually reduced his own claimed losses—from $1,764,737.76 to $1,315,440—while also reducing the Coligado Group's losses. A movant who applies a methodology that lowers his own claimed loss is not "manipulat[ing] the size of [his] losses" in the way *Sallustro* contemplates. Rather, Mr. Alghaslan was simply providing the Court with a complete picture of all the ways financial losses have been calculated and considered at the lead plaintiff stage by Texas courts, as he had done in 2020.

This point is reinforced by comparing it to the Coligado Group's revision of its losses. In its reply brief, the Coligado Group revised its claimed losses upward — from $1,860,605.94 to $1,874,139.94 — attributing the $13,534 increase to "minor administrative errors." Dkt. No. 672 at 9 n.6. The Court accepted this explanation without comment. *See* Dkt. No. 689 at 6 n.2. The Court's differing treatment of the two revisions is understandable if Mr. Alghaslan's revision appeared to deploy a never-before-seen methodology for strategic advantage. But once the record shows that the additional methodology has been consistently presented since 2020 — and that its application here *lowered* Mr. Alghaslan's own claimed loss — the basis for distinguishing the two falls away. Neither administratively increasing a loss number nor providing an additional method for calculating losses between briefing rounds gives rise to a conflict.

### C. *Robison v. Digital Turbine* Is Inapplicable Where the Additional Methodology Was Presented in Prior Briefing.

The Court cited *Robison v. Digital Turbine, Inc.*, No. 1:22-CV-00550-DAE, 2022 WL

17881476, at *6 (W.D. Tex. Dec. 19, 2022), for the proposition that a "newfound insistence on a loss-calculation method [he] did not use or discuss in [his] original filings" discredits a movant's position. Dkt. No. 689 at 7. That principle is sound in circumstances where the methodology is genuinely new. But its application here depends on a factual premise—that Mr. Alghaslan had never before raised the *Dura* methodology—that the record does not support.

In *Robison*, the movant who changed its loss calculation had genuinely never raised the alternative methodology in any prior filing. The court there found that the movant's "newfound insistence on a loss-calculation method it did not use or discuss in its original filing blurs the fine line between zealous advocacy and gamesmanship." *Id*. The critical factual predicate was novelty—the methodology appeared for the first time in the movant's opposition.

That predicate is absent here. Mr. Alghaslan presented the *Dura* methodology—with the identical citation to *Marcus v. J.C. Penney* and the identical quotation from *Dura*—in his opposition brief during the lead plaintiff process in a now-consolidated litigation, over five years before the 2026 lead plaintiff briefing. *See Ahnefeldt* Dkt. No. 33 at 2–4. Every movant in the current lead plaintiff contest had access to that briefing. The Coligado Group was the lead movant in *Ahnefeldt*. Christopher Coligado's own loss chart was the one Mr. Alghaslan was responding to in 2020 when he first presented a *Dura* column. No movant can claim surprise.

Where a movant has consistently raised the same methodologies across two rounds of briefing spanning six years, the characterization of one particular methodology as a "newfound insistence" is not supported by the record. *Robison*'s reasoning—however sound as applied to a genuinely novel recalculation—does not extend to a methodology with a documented five-year pedigree in the same litigation.

### D.  The Court Should Reconsider the Conflict Finding on the Corrected Record.

The Court found that "Alghaslan's willingness to greatly minimize the losses of class

6

members who purchased earlier than him in the class period" constituted "a disqualifying conflict of interest." Dkt. No. 689 at 7. In support, the Court cited *Pelletier v. Endo Int'l PLC*, No. 17-cv-5114, 2021 WL 398495, at *12 (E.D. Pa. Feb. 4, 2021), in which a post-disclosure stockholder was found to be an inadequate representative for pre-disclosure stockholders.

*Pelletier* is distinguishable. The inadequacy finding in that case was based on the movant's structural position as a post-disclosure purchaser whose claims were fundamentally different from those of pre-disclosure purchasers—not on the movant's choice of presenting loss-calculation methodologies in briefing. Mr. Alghaslan has not proposed to abandon or decline to prosecute any class member's claims. Indeed, the success of his claims depends on the success of class members' claims who purchased McDermott stock before he did. And he offered a well-established damages framework to provide the Court with a complete view of comparative losses—the same framework he offered in 2020, and the same framework this Court itself discussed in its Opinion when surveying loss-calculation methods. *See* Dkt. No. 689 at 5–6.

Mr. Alghaslan recognizes the Court's broad discretion in appointing a lead plaintiff under the PSLRA. He only asks that the Court, on a corrected factual record, reconsider whether presenting an additional loss-calculation methodology in 2026 after similarly presenting it in 2020 constitutes the kind of disqualifying conflict that permanently bars a movant from consideration—or whether it is, instead, the type of consistent, good-faith advocacy that the PSLRA contemplates from an engaged lead plaintiff candidate.

### III.    CONCLUSION

For the foregoing reasons, Mr. Alghaslan respectfully requests that the Court reconsider its finding that he has a disqualifying conflict of interest. The factual premise of that finding—that his *Dura* methodology was "newfound" and deployed for the first time in February 2026—is

contradicted by the consolidated record, which shows that he presented that methodology in October 2020. His footnote explaining why the specific *Dura* figures differed across the two rounds of litigation was misread as addressing a different question. And the cases the Court relied upon for the manipulation and conflict findings are inapplicable to a movant who has consistently presented the same methodologies across two rounds of briefing spanning six years.

To the extent the Court maintains concerns about the *Dura* methodology at the lead plaintiff stage, Mr. Alghaslan respectfully asks the Court to address whether a consistent, years-long approach to presenting loss calculations can constitute the kind of "disqualifying conflict of interest" that renders a movant permanently inadequate under the PSLRA.

Dated: May 26, 2026

Respectfully submitted,

By: */s/ Ivy T. Ngo*
Ivy T. Ngo (*pro hac vice*)
Velvel (Devin) Freedman (*pro hac vice*)
**FREEDMAN NORMAND FRIEDLAND LLP**
1815 Purdy Ave.
Miami Beach, Florida 33139
Tel: (786) 924-2900
ingo@fnf.law
vel@fnf.law

*Counsel for Movant Majid Alghaslan*

Brian J. Schall (*pro hac vice* forthcoming)
**THE SCHALL LAW FIRM**
2049 Century Park East, Suite 2460
Los Angeles, CA 90067
Tel: (310) 301-3335
Fax: (310) 388-0192
brian@schallfirm.com

*Additional Counsel for Movant Majid Alghaslan*

8

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that a true and correct copy of the foregoing document was served via ECF and/or electronic mail on all counsel of record on May 26, 2026.

*/s/ Ivy T. Ngo*
Ivy T. Ngo
