**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | |
|---|---|
| MIRIAM EDWARDS, Individually and on Behalf of All Other Similarly Situated<br><br>Plaintiffs,<br><br>v.<br><br>MCDERMOTT INTERNATIONAL, INC., DAVID DICKSON, and STUART SPENCE,<br><br>Defendants. | Civil Action No. 4:18-cv-04330<br><br>**CLASS ACTION**<br><br>Judge George C. Hanks, Jr.<br>Magistrate Judge Andrew M. Edison |

**MAJID ALGHASLAN'S OBJECTION TO THE MAGISTRATE JUDGE'S**
**MAY 29, 2026 AMENDED OPINION AND ORDER APPOINTING**
**LEAD PLAINTIFF AND APPROVING LEAD COUNSEL [DKT. 696]**

## I.  INTRODUCTION

Pursuant to Federal Rule of Civil Procedure ("Rule") 72(a) and 28 U.S.C. § 636(b)(1)(A), putative Class member Majid Alghaslan ("Mr. Alghaslan") respectfully objects to the Magistrate Judge's May 29, 2026 Amended Opinion and Order (Dkt. 696) (the "Amended Order") appointing Christopher Coligado ("Mr. Coligado") as Lead Plaintiff of the § 10(b) MDR Subclass.[1]

Mr. Alghaslan should have been appointed as lead counsel because, as the Magistrate Judge found, Mr. Alghaslan "technically has the largest financial loss after the Coligado Group collectively." Dkt. 696 at 9 n.7. Despite that concession, the Amended Order impermissibly broke up the Coligado Group and appointed one of its members—with roughly one-third of Mr.

---

[1] The Amended Order recognizes that it is a nondispositive ruling. Dkt. 696 at 1 n.2 (citing *Plymouth Cnty. Ret. Sys. v. Apache Corp.*, 556 F. Supp. 3d 712, 720 n.5 (S.D. Tex. 2021)).

Alghaslan's loss—on the rationale that *if* the Class Period is someday truncated to November 5, 2019, Mr. Alghaslan may cease to be a Class member, so the Court "simply cannot risk further delay." Dkt. 696 at 9 n.7. The rationale is contrary to law, and the Court's selection of a lead plaintiff who did not initially move for lead was error.

This Objection rests on discrete legal errors—the category reviewed without deference even under Rule 72(a)—and shows that, once they are corrected, the PSLRA's mandatory framework dictates a different result. Movant does not ask the Court to reweigh the record or to substitute its judgment for the Magistrate Judge's on a discretionary call. The Amended Order itself supplies the dispositive concession that Mr. Alghaslan has the largest financial loss.

Three points require reversal. First, excluding the concededly largest individual movant because of a speculative, future Class Period truncation—and to avoid possible delay—rebuts the PSLRA presumption on grounds the statute does not authorize, particularly where the same contingency applies to the movant the Court appointed. Second,  after rejecting other possibilities, the PSLRA's two-step framework required appointing Mr. Alghaslan as the next-largest individual interest by the Amended Order's own figures. Third, the Amended Order appointed Mr. Coligado through a procedure that did not provide competing movants an opportunity to be heard on his individual candidacy and inverted the statutory burden of proof.

## II.    RELEVANT BACKGROUND

Three movants timely sought appointment as Lead Plaintiff of the § 10(b) MDR Subclass: Mr. Alghaslan, the Coligado Group, and the City of Pontiac Reestablished General Employees' Retirement System ("Pontiac"). See Dkt. 696 at 2. The Subclass Period is December 18, 2017 through January 23, 2020—which the Court certified and the Fifth Circuit affirmed. Dkt. 696 at 1–2 (citing *Edwards v. McDermott Int'l, Inc.*, No. 4:18-CV-04330, 2024 WL 3085177 (S.D. Tex.

June 21, 2024), *aff'd sub nom. Nova Scotia Health Emps.' Pension Plan v. McDermott Int'l, Inc.*, No. 24-20326, 2025 WL 2814735 (5th Cir. Oct. 3, 2025)). Mr. Alghaslan first purchased McDermott stock within that operative period, on November 12, 2019. Dkt. 696 at 9 n.7.

Following the April 27, 2026 hearing, the Magistrate Judge invited the Coligado Group to state whether it wished to move in the alternative for Mr. Coligado to be considered individually; it filed a one-paragraph notice to that effect on May 12, 2026. Dkt. 687; Dkt. 696 at 4, 9 n.8. On May 18, 2026, the Magistrate Judge issued an Opinion and Order appointing Mr. Coligado and excluding Mr. Alghaslan for a "disqualifying conflict of interest." Dkt. 689. Mr. Alghaslan moved for reconsideration of that conflict finding on May 26, 2026 (Dkt. 691), and the Magistrate Judge orally granted the motion at a May 28, 2026 hearing. Dkt. 696 at 1 n.1.

The May 29, 2026 Amended Order is the result. It (i) finds the Coligado Group has the largest financial interest but declines to appoint it because 17 members are too many; (ii) declines to consider Mr. Alghaslan—though acknowledging he has "the largest financial loss after the Coligado Group collectively"—on the ground that a future truncation of the class period to November 5, 2019 might remove him from the Subclass and risk delay (Dkt. 696 at 9 n.7); and (iii) appoints Mr. Coligado individually, approving Wolf Haldenstein Adler Freeman & Herz LLP as lead counsel and Reynolds Frizzell LLP as liaison counsel. Dkt. 696 at 2, 6–12. The relevant figures, all drawn from the Amended Order, are:

| Movant | Approx. Loss (LIFO) | Disposition in Amended Order |
|---|---|---|
| Coligado Shareholder Group (17 members) | $1,860,605.94 | Largest interest; not appointed (Group too large) |
| Majid Alghaslan (individual) | $1,764,737.76 | Largest individual interest after the Coligado Group; not considered |
| Christopher Coligado (individual) | $586,833.30 | Appointed Lead Plaintiff |
| City of Pontiac (REGERS) | $419,089.00 | Not appointed |

3

*See* Dkt. 696 at 6, 9 n.7.

## III.   STANDARD OF REVIEW

The Amended Order is a ruling on a nondispositive matter. Dkt. 696 at 1 n.2. Under Rule 72(a) and 28 U.S.C. § 636(b)(1)(A), a court must "modify or set aside any part of the order that is clearly erroneous or is contrary to law." The two prongs carry different degrees of deference. Factual findings are reviewed for clear error and stand unless a court is left with the definite and firm conviction that a mistake has been made. The "contrary to law" prong, by contrast, reaches legal conclusions—the application or misapplication of the governing statute, rule, and precedent—and those conclusions receive no deference; a court decides them independently.

The grounds for this Objection each turn on a legal error, not on how the record was weighed. Part A presents a pure question of law: whether the PSLRA permits a court to rebut the most-adequate-plaintiff presumption based on a speculative future event and a concern about delay—a rationale that, on the record, is not even unique to Mr. Alghaslan. Part B follows mechanically from the PSLRA's text once the Part A error is corrected, on figures the Amended Order itself recites. And Part C concerns the PSLRA's allocation of the burden of proof and the parties' right to be heard. Each is reviewed without deference.

## IV.   ARGUMENT

### A.   The Exclusion of Mr. Alghaslan Based on a Hypothetical Future Class-Period Truncation Is Contrary to Law.

The Amended Order sets aside the concededly largest individual movant on a single stated rationale: that *if* the Class Period is someday truncated to November 5, 2019, Mr. Alghaslan—whose first purchase was November 12, 2019—"would no longer be a class member," so the Court "simply cannot risk further delay." Dkt. 696 at 9 n.7. Whether the PSLRA permits a court to override its presumptive lead plaintiff on that basis is a pure question of law reviewed without

4

deference.[2] The PSLRA does not.

Under the operative Subclass definition—December 18, 2017 through January 23, 2020, which the Court certified and the Fifth Circuit affirmed—Mr. Alghaslan is a Class Member. Dkt. 696 at 1–2; *Nova Scotia*, 2025 WL 2814735. The November 5, 2019 truncation is a contingency that has not occurred and that no court has ordered; the Amended Order frames it only as something that "may" happen. Dkt. 696 at 9 n.7. The PSLRA presumption favoring the largest-interest movant "may be rebutted only upon proof" of inadequacy or a unique defense. 15 U.S.C. § 78u-4(a)(3)(B)(iii)(II). A hypothetical future event is not proof. There is a "marked difference between affirmatively demonstrating that [the movant] is not an adequate representative . . . and simply claiming that [he] might be subject to such arguments in the future." *Town of Davie Police Pension Plan v. Pier 1 Imports, Inc.*, No. 3:15-CV-3415-D, 2016 WL 1625774, at *5 (N.D. Tex. Apr. 25, 2016) (quoting *Gluck v. CellStar Corp.*, 976 F. Supp. 542, 547 (N.D. Tex. 1997)); accord *Mullins v. AZZ, Inc.*, No. 4:18-CV-025-Y, 2018 WL 7504312, at *2 (N.D. Tex. Aug. 9, 2018) ("[c]onclusory assertions and mere speculation will not suffice"). Courts reject the "speculative and hypothetical" objection that a lead plaintiff "might be subject to a later attack." *Glauser v. EVCI Ctr. Colls. Holding Corp.*, 236 F.R.D. 184, 189 (S.D.N.Y. 2006). The truncation rationale is the paradigm of the speculation that the PSLRA forbids as a basis for rebuttal.

The contingency is not a "unique defense" either. A truncation to November 5, 2019 would affect every Subclass member who first purchased after that date—not Mr. Alghaslan alone—and a concern common to a swath of the Subclass is not "unique" within the meaning of § 78u-4(a)(3)(B)(iii)(II). If anything, the contingency cuts the other way: as a late-2019 purchaser who

---

[2] The Amended Order continues to describe Mr. Alghaslan as "an inadequate lead plaintiff with a disqualifying conflict of interest." Dkt. 696 at 9. To the extent the exclusion of Mr. Alghaslan rests on that withdrawn finding, it cannot stand; to the extent it rests on the footnote 7 rationale addressed below, that rationale is independently contrary to law.

held through January 23, 2020, Mr. Alghaslan is well positioned to litigate market efficiency after September 19, 2019 and the correctiveness of the final corrective disclosures—the issues the Fifth Circuit identified as central to this case. *Nova Scotia*, 2025 WL 2814735, at *3.

Moreover, the contingency the Court treated as disqualifying for Mr. Alghaslan applies with equal force to the movant it appointed. Mr. Coligado's own sworn Schedule A shows that 116,857 of his 398,740 shares—approximately 29%—were purchased *after* November 5, 2019 (on November 7, November 19, and December 23, 2019). Dkt. 659-2 at 4–5.[3] If the Class Period were truncated to November 5, 2019, those purchases would fall outside it, materially reducing the very $586,833.30 loss figure on which the Amended Order relied to rank Mr. Coligado ahead of Pontiac. The Court thus invoked a contingency to eliminate Mr. Alghaslan while ignoring its parallel—and self-undermining—effect on its chosen plaintiff. A rationale that cannot be applied evenhandedly is not a principled basis to displace the largest-interest movant; it is the arbitrary line-drawing the PSLRA's mandatory presumption was designed to prevent.

Avoiding potential delay is likewise not a permissible ground to bypass the presumptive most adequate plaintiff. The PSLRA directs that a court "shall" appoint the presumptive lead plaintiff who satisfies Rule 23, only enumerating two rebuttal grounds—inadequacy and unique defenses—neither of which is litigation convenience. 15 U.S.C. § 78u-4(a)(3)(B)(i), (iii). Substituting a movant with roughly one-third of Mr. Alghaslan's loss to avoid the risk of having to "repeat this whole process" (Dkt. 696 at 9 n.7) inverts the PSLRA's deliberate preference for the investor with the largest stake in the recovery.

---

[3] Mr. Coligado's sworn Schedule A reflects 398,740 shares purchased between September 20 and December 23, 2019 and 398,740 shares sold in their entirety on January 23, 2020. Dkt. 659-2 at 4–5. Of those purchases, 116,857 shares—approximately 29%—were bought after November 5, 2019 (on November 7, November 19, and December 23, 2019).

6

**B.**     **With the Coligado Group Rejected and the Conflict Finding Withdrawn, the PSLRA Requires Appointing Mr. Alghaslan.**

This ground asks the Court to reweigh nothing; it follows from the statutory text and the Amended Order's own findings. The Court identifies the movant with the largest financial interest and, if that movant satisfies Rule 23, "the Court must appoint that plaintiff as lead plaintiff." *Parker v. Hyperdynamics Corp.*, No. 4:12-cv-999, 2013 WL 623164, at *2 (S.D. Tex. Feb. 19, 2013). The fourth factor—approximate loss—is "the most determinative." *Plymouth Cnty. Ret. Sys. v. Apache Corp.*, 566 F. Supp. 3d 712, 717 (S.D. Tex. 2021).

The Amended Order rejected the Coligado Group as too large (Dkt. 696 at 7–9) and, on reconsideration, withdrew the sole stated basis for finding Mr. Alghaslan inadequate (*id.* at 1 n.1). With the Coligado Group out, the next-largest interest is Mr. Alghaslan's—as the Amended Order itself concedes, he "technically has the largest financial loss after the Coligado Group collectively." *Id.* at 9 n.7. His $1,764,737.76 loss is roughly three times Mr. Coligado's $586,833.30. *Id.* at 6. These are the Court's own opening-brief LIFO figures; applying them requires no recalculation and no resort to the loss methodology the Amended Order declined to consider. Once the Part A error is corrected, Mr. Alghaslan is the presumptive most adequate plaintiff and must be appointed. Installing a movant with a fraction of his interest is the opposite of what the PSLRA commands where a qualified candidate with the largest loss is available and willing to serve. *See Plymouth Cnty.*, 566 F. Supp. 3d at 719–20.

**C.**     **The Appointment of Mr. Coligado Inverted the Statutory Burden and Prevented Competing Movants from Having an Opportunity to Be Heard.**

The appointment of Mr. Coligado individually rests on two legal errors, not on any contested weighing of facts. The first is the prevention of an opportunity to be heard. The request to consider Mr. Coligado individually came only after briefing closed—by a one-paragraph notice filed May 12, 2026 (Dkt. 687)—and the Amended Order acknowledges it "came after the lead

plaintiff briefing was complete." Dkt. 696 at 9 n.8. No party was invited to file an opposition directed to Mr. Coligado as an individual movant analyzing his individual financial interest, typicality, or adequacy. Thus, no party could even raise questions such as: why did Mr. Coligado not move for lead plaintiff the first time around, when Nova Scotia Health Employees' Pension Plan ("NSHEPP") was initially appointed? Why, after moving with the other 16 putative Subclass members in his group twice, did he not decide to move by himself until the Court asked about it? What was the reasoning behind his trading patterns? And if anything had come out of such a process, then the Court could have analyzed it and made an informed decision about Mr. Coligado's individual typicality and adequacy, instead of waiting for it to come up at the class certification stage – as had happened with NSHEPP.

The second error, carried forward into the Amended Order, is a misallocation of the statutory burden. The PSLRA places the burden on objectors to rebut a presumptive lead plaintiff "only upon proof," 15 U.S.C. § 78u-4(a)(3)(B)(iii)(II); it does not permit a movant's adequacy to be established by the mere absence of opposition. Yet the Amended Order reasons that because the competing movants "did not advance any arguments against Christopher Coligado individually," that silence "further supports that Christopher Coligado is the best choice." Dkt. 696 at 9 n.8. That reverses the PSLRA: it converts the absence of an objection—where none was invited, and where Mr. Coligado was advanced only as one of 17 group members—into affirmative proof of adequacy. A court may consider the largest member of a rejected group as if he had moved alone, *Evangelista v. Late Stage Asset Mgmt., LLC*, 784 F. Supp. 3d 542, 552 (E.D.N.Y. 2025), but that discretion neither dispenses with opposing parties' right to test the new candidate on a developed record nor relieves the movant of his own prima facie burden.

## V.    CONCLUSION

For the foregoing reasons, Mr. Alghaslan respectfully requests that the Court sustain this Objection, set aside the May 29, 2026 Amended Order, and appoint Mr. Alghaslan as Lead Plaintiff of the § 10(b) MDR Subclass and approve his selection of Freedman Normand Friedland LLP as Lead Counsel and Kendall Law Group PLLC as Local Counsel. Should the Court decline to appoint Mr. Alghaslan as sole Lead Plaintiff, he stands ready and willing to serve as part of a properly constituted small lead-plaintiff group.

Dated: June 1, 2026

Respectfully submitted,

By: */s/ Ivy T. Ngo*
Ivy T. Ngo (pro hac vice)
Velvel (Devin) Freedman (pro hac vice)
**FREEDMAN NORMAND FRIEDLAND LLP**
1 SE 3rd Ave., Suite 1240
Miami, Florida 33131
Tel: (786) 924-2900
ingo@fnf.law
vel@fnf.law

*Counsel for Movant Majid Alghaslan*

Brian J. Schall (pro hac vice forthcoming)
**THE SCHALL LAW FIRM**
2049 Century Park East, Suite 2460
Los Angeles, CA 90067
Tel: (310) 301-3335
Fax: (310) 388-0192
brian@schallfirm.com

*Additional Counsel for Movant Majid Alghaslan*

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing was served via the Court's

CM/ECF system on all counsel of record on June 1, 2026.

*/s/ Ivy T. Ngo*
Ivy T. Ngo